UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PATRICK M. BOOTH,

                              Plaintiff,

v.

CITY OF WATERTOWN; WATERTOWN                    5:22-CV-1011
POLICE DEP'T; DUSTIN C. SHAWCROSS,              (BKS/ML)
Police Officer; PEARCE A. PARSONS,
Police Officer; DAVID PAULSEN, County
Attorney; and CHARLES DONOGHUE,
Chief of City Police,

                              Defendants.
_____

APPEARANCES:                                   OF COUNSEL:

PATRICK M. BOOTH
  Plaintiff, *Pro Se*
Jefferson County Jail
753 Waterman Drive
Watertown, New York 13601

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>REPORT and RECOMMENDATION</u>

## I.    INTRODUCTION

Plaintiff Patrick M. Booth ("Plaintiff") commenced this civil rights action *pro se* on

September 26, 2022, asserting claims arising from an interaction he had with members of the

Watertown Police Department on June 24, 2022.  (Dkt. No. 1.)  Plaintiff did not pay the filing

fee for this action and sought leave to proceed *in forma pauperis* ("IFP").  (Dkt. Nos. 2, 3, 4.)

On February 7, 2023, the undersigned denied Plaintiff's IFP applications without prejudice and

with leave to renew.  (Dkt. No. 8.)  The undersigned's order dated February 7, 2023, directed

Plaintiff to, within thirty days, either pay the $402.00 filing fee, or submit a renewed IFP application.  (*Id.*)  On March 14, 2023, the undersigned issued an Order and Report-Recommendation which, *inter alia*, recommended that Plaintiff's Complaint be dismissed without prejudice for failure to comply with the filing fee requirement.  (Dkt. No. 10.)  On April 28, 2023, Chief United States District Judge Brenda K. Sannes adopted the undersigned's Order and Report-Recommendation and dismissed Plaintiff's Complaint without prejudice.  (Dkt. No. 13.)

On May 15, 2023, Plaintiff filed a motion for reconsideration of Chief Judge Sannes's order dismissing the Complaint.  (Dkt. No. 16.)  On May 23, 2023, Chief Judge Sannes granted Plaintiff's motion for reconsideration, directed the Clerk of the Court to re-open the case, and directed Plaintiff to, within thirty days, either (1) pay the $402.00 filing fee, or (2) submit a renewed IFP application.  (Dkt. No. 22.)

On June 5, 2023, the Court received Plaintiff's filing fee in full.  (Docket entry dated 6/05/2023.)

Currently pending before the Court is Plaintiff's Complaint for review pursuant to 28 U.S.C. § 1915A.  For the reasons set forth below, I recommend that Plaintiff's Complaint be accepted in part for filing and dismissed in part with leave to amend.

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that his civil rights were violated by Defendants City of Watertown, the Watertown Police Department, Dustin C. Shawcross (police officer), Pearce A. Parsons (police officer), David Paulsen (County Attorney),

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

and Charles Donoghue (Chief of City Police) (collectively "Defendants"). (*See generally* Dkt. No. 1.)

More specifically, Plaintiff alleges that on June 24, 2022, in the City of Watertown, New York, around 3:00 a.m., Defendants Shawcross and Parsons—who are employed by Defendant Watertown Police Department—put a knee on Plaintiff's neck, which cut off Plaintiff's ability to breathe. (Dkt. No. 1 at 2.) In addition, the Complaint alleges that Defendants Shawcross and Parsons "assault[ed]" Plaintiff by punching him repeatedly in the head and face with closed fists. (*Id.*) Plaintiff alleges that as a result of this interaction with Defendants Shawcross and Parsons, his nerves are damaged, and he experiences panic attacks and nightmares. (*Id.*)

Based on these factual allegations Plaintiff appears to assert the following four causes of action: (1) a claim that Defendants used excessive force against Plaintiff in violation of the Eighth Amendment and 42 U.S.C. § 1983; (2) a claim that Defendants failed to protect Plaintiff in violation of the Eighth Amendment and 42 U.S.C. § 1983; (3) a claim that Defendants violated Plaintiff's right to be free from cruel and unusual punishment in violation of the Eighth Amendment and 42 U.S.C. § 1983; and (4) a claim that Defendants violated Plaintiff's right to life, liberty, and property pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983. (Dkt. No. 1 at 4.)

As relief, Plaintiff seeks compensatory and punitive damages in the amount of $1,500,000.00. (Dkt. No. 1 at 5.)

## II.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

Pursuant to 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any

portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (finding that Section 1915A applies to all actions brought by prisoners against government officials); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both 28 U.S.C. § 1915 and 28 U.S.C. § 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, a court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing Twombly, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  The Supreme Court has stated

that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (cleaned up).

## III. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that a response be required to some of Plaintiff's claims and that other claims be dismissed.

### A. Claims Against Defendant Paulsen

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (Kahn, J.) (citing *Gonzalez v. City of New York*, 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, 96-CV-3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

Here, Plaintiff names Defendant Paulsen as a defendant, but the body of the Complaint lacks any allegations of wrongdoing by this official. (*See generally* Dkt. No. 1.) Moreover, the undersigned has no basis to plausibly infer that this official—who is not employed by the City of Watertown or the Watertown Police Department—possessed the authority to address, in any respect, the alleged wrongdoing detailed in the Complaint. *See, e.g., Kregler v. City of New York*, 821 F. Supp. 2d 651, 658-59 (S.D.N.Y. 2011) ("Because it is undisputed that Schwam and Keenaghan were subordinates and thus lacked the authority to prevent the alleged constitutional

violation caused by their supervisor, Kregler's claim of deliberate indifference fails as a matter of law."); *Kuolkina v. City of New York*, 559 F. Supp. 2d 300, 317 (S.D.N.Y. 2008) (dismissing claims against state officials who "did not have the authority to take action with respect to any constitutional violation plaintiffs may have suffered" (collecting cases)).

For each of these reasons, I recommend that Plaintiff's claims against Defendant Paulsen be dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### B.    Claims Against Defendant Watertown Police Department

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal . . . department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.).

Thus, Defendant Watertown Police Department is not proper a party, which would be amenable to suit.  As a result, I recommend that Plaintiff's claims against Defendant Watertown Police Department be dismissed.

### C.    Claims Against Defendant City of Watertown

A municipality may only be named as a defendant in certain circumstances.  In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983.  A municipality may not be held liable solely because it employs a tortfeasor.  *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).  Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury.  *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation.  *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).  Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees.  *Connick*, 563 U.S. at 51.  However, municipal liability is most tenuous when a claim turns on the failure to train.  *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")).  To satisfy the statute, a municipality's failure to train its employees must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"  *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of a single incident, during which an officer or officers employed by the Watertown Police Department did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendant Watertown Police Department.

As a result, I recommend that Plaintiff's claims against Defendant City of Watertown be dismissed at this time. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### D.    Claims Against Defendant Donoghue

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted).

Courts in this circuit routinely hold that "the doctrine of respondeat superior cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement.  Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control."  *Kinch v. Artuz*, 97-CV-2419, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  Thus, supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority.  *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Colon*, 58 F.3d at 874 (holding that the fact that the defendant occupied a high-ranking position in the New York prison hierarchy, without more, was insufficient to establish personal involvement).

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit concluded that "there is no special rule for supervisory liability," and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.'"  *Tangreti*, 983 F.3d at 618.  The Second Circuit explained that, "'the factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary.  The violation must be established against the supervisory official directly."  *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Here, Plaintiff names Defendant Donoghue as a defendant, but the body of the Complaint lacks any allegations of wrongdoing by this official.  (*See generally* Dkt. No. 1.)  Thus, the Complaint fails to allege the personal involvement of Defendant Donoghue in the wrongdoing detailed in the Complaint.  As a result, I recommend that Plaintiff's claims against Defendant

Donoghue be dismissed for failure to state a claim upon which relief may be granted pursuant to

28 U.S.C. § 1915A(b).

### E.    Claims Against Defendants Showcross and Parsons

#### 1.    Excessive Force

It is well-settled that the Fourth Amendment prohibits the use of excessive force by a

police officer during a "seizure" of a free citizen.  *See Graham v. Connor*, 490 U.S. 386, 395

(1989).  In contrast, the Eighth Amendment prohibits cruel and unusual punishment for

incarcerated persons. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986).[2]

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and

whether the force used is excessive is to be analyzed under that Amendment's reasonableness

standard.'"  *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (quoting *Brown v. City

of New York*, 798 F.3d 94, 100 (2d Cir. 2015)).  "The 'proper application' of this standard

'requires careful attention to the facts and circumstances of each particular case, including the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

flight.'"  *Outlaw*, 884 F.3d at 366 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The

reasonableness determination must include consideration of the fact that law enforcement

officers often are forced to make quick decisions under stressful and rapidly evolving

circumstances rendering the calculation of what amount of force is reasonable difficult.  *See

Graham*, 490 U.S. at 396-97.  Relevant factors include the severity of the crime at issue, whether

---

[2]      As a result, to the extent that Plaintiff's excessive force claim is asserted pursuant to the
Eighth Amendment, I recommend that it be dismissed for failure to state a claim upon which
relief may be granted because the allegations in the Complaint appear to relate to the seizure of
Plaintiff as a free citizen.

the suspect posed an immediate threat to the safety of the officers or others, and whether the

suspect was actively resisting arrest. *See Brown*, 798 F.3d at 100 (citing *Graham*, 490 U.S. at

396).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se*

plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and

without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to

dismiss or for summary judgment, I recommend that a response be required to Plaintiff's

excessive force claim pursuant to the Fourth Amendment against Defendants Shawcross and

Parsons. *See Penree v. City of Utica*, 13-CV-1323, 2016 WL 915252, at *8 (N.D.N.Y. Mar.. 4,

2016) (D'Agostino, J.) ("The Fourth Amendment's prohibitions against unreasonable seizures

applies equally to how an arrest is carried out, and, therefore, *all* claims that law enforcement

officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the

Fourth Amendment." (internal quotation marks and citation omitted)).

### 2.    Failure to Protect/Failure to Intervene[3]

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the

constitutional rights of citizens from infringement by other law enforcement officers in their

presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "[W]here plaintiffs have

properly alleged at least one constitutional violation, courts regularly permit such plaintiffs to

plead in the alternative as to multiple defendants, finding that such plaintiffs are entitled to

discovery to determine which officers participated directly in the constitutional violation."

---

[3]    As set forth above in note 2, to the extent that Plaintiff's failure to intervene claim is
asserted pursuant to the Eighth Amendment, I recommend that it be dismissed for failure to state
a claim upon which relief may be granted because the allegations in the Complaint appear to
relate to the seizure of Plaintiff as a free citizen. However, the undersigned construed the
Complaint liberally as asserting a failure to intervene claim pursuant to the Fourth Amendment.

*Lalonde v. City of Ogdensburg*, 22-CV-0164, 2023 WL 2537626, at *10 (N.D.N.Y. Mar. 16, 2023) (Kahn, J.) (citing *Matthews v. City of New York*, 889 F. Supp. 2d 418, 444 (E.D.N.Y. 2012) ("Because plaintiffs properly allege at least one constitutional violation, plaintiffs are entitled to discovery to determine which officers participated directly in the alleged constitutional violation and which officers were present and failed to intervene."); *Durr v. Slator*, 558 F. Supp. 3d 1, 26 (N.D.N.Y. 2021) (D'Agostino, J.) ("Plaintiff does not allege that either Defendant in particular acted with deliberate indifference by transporting Plaintiff to the Oneida Police Station rather than the Upstate Emergency Department.  As such, Plaintiff is permitted to plead in the alternative that Defendants Clark and Slator failed to intervene in the alleged constitutional violation.").

Liability for failure to intervene pursuant to the Fourth Amendment attaches if police "fail to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Morris v. City of New York*, 14-CV-1749, 2015 WL 1914906, at *5 (E.D.N.Y. 2015); *see Sanabria v. Tezlof*, 11-CV-6578, 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016) (explaining that liability attaches if an officer "observes or has reason to know . . . that a citizen has been unjustifiably arrested").

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's failure to intervene claim pursuant to the Fourth Amendment against Defendants Shawcross and Parsons.

### 3.    Cruel and Unusual Punishment

To the extent that Plaintiff has alleged an Eighth Amendment claim of cruel and unusual punishment, I recommend that it be dismissed for failure to state a claim upon which relief may be granted.  The protections of the Eighth Amendment "only apply to a person who has been criminally convicted and sentenced; they do not apply to the conduct of police officers in connection with the investigation and arrest of suspects prior to conviction and sentencing." *Spicer v. Burden*, 564 F. Supp. 3d 22, 31 (D. Conn. 2021) (citing *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986)); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). "Accordingly, any claim purportedly brought by [P]laintiff under the Eighth Amendment for cruel and unusual punishment must be dismissed."  *McNair v. Utica Police Dep't*, 23-CV-0699, 2023 WL 4935993, at *6 (N.D.N.Y. June 26, 2023) (Baxter, M.J.), *report and recommendation adopted*, 2023 WL 4931609 (N.D.N.Y. Aug. 1, 2023) (Hurd, J.).

### 4.    Right to Life, Liberty, and Property

To prevail on a Fourteenth Amendment procedural due process claim, a plaintiff "must be able to demonstrate (1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process."  *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (citations and quotation marks omitted).

The Complaint fails to allege facts plausibly suggesting that Defendants Shawcross and Parsons deprived Plaintiff of life, liberty, or property or that he was denied constitutionally sufficient process based on the incident that occurred on June 24, 2022.  As a result, I recommend that Plaintiff's procedural due process claim against Defendants Shawcross and Parsons be dismissed for failure to state a claim upon which relief may be granted.

## IV.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se*
litigant without granting leave to amend at least once "when a liberal reading of the complaint
gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05
(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when
justice so requires.").  An opportunity to amend is not required, however, where "the problem
with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."
*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding
L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact
sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated
differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is
not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d
129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1
(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[4]

Although I have serious doubts about whether Plaintiff can replead to assert actionable
claims that I recommend be dismissed here, given that this is the Court's first review of
Plaintiff's pleading, out of an abundance of caution and in light of Plaintiff's status as a *pro se*
litigant, I recommend that he be permitted leave to amend.

---

[4]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be
successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts (1) claims against Defendants Paulsen, Donoghue, City of Watertown, and Watertown Police Department; and (2) claims against Defendants Shawcross and Parsons asserting (a) an excessive force claim pursuant to the Eighth Amendment and 42 U.S.C. § 1983, (b) a failure to protect claim pursuant to the Eighth

Amendment and 42 U.S.C. § 1983, (c) a claim of cruel and unusual punishment pursuant to the

Eighth Amendment and 42 U.S.C. § 1983, and (d) a procedural due process claim pursuant to the

Fourteenth Amendment and 42 U.S.C. § 1983, because it fails to state a claim upon which relief

may be granted pursuant to 28 U.S.C. § 1915A(b); and it is further respectfully

      **RECOMMENDED** that the Court **ACCEPT FOR FILING** Plaintiff's Complaint (Dkt.

No. 1) to the extent that it asserts claims against Defendants Shawcross and Parsons asserting (1)

a claim of excessive force pursuant to the Fourth Amendment and 42 U.S.C. § 1983, and (2) a

claim of failure to intervene pursuant to the Fourth Amendment and 42 U.S.C. § 1983; and it is

further

      **ORDERED** that the Clerk of the Court shall file a copy of this Report and

Recommendation on the docket of this case and serve a copy upon the parties in accordance with

the local rules.[5]

---

[5]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: September 20 , 2023
       Binghamton, New York


Miroslav Lovric
U.S. Magistrate Judge

---

[6]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady County Jail;
Cheryl Clark, M.D.; Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

***DECISION and ORDER***

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New York,* No. 97 CIV. 2246(MGC), 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at \*1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

**\*2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order. [1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

### Footnotes

1    Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

---

End of Document                                                                © 2023 Thomson Reuters. No claim to original U.S. Government Works.

1998 WL 382055
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Angel GONZALEZ, Plaintiff,

v.

THE CITY OF NEW YORK; New York
City Department of Correction; Warden, Otis
Bantum Correctional Center; Corrections
Officer Summer, Shield No. 11856, Defendants.

No. 97 CIV. 2246(MGC).
|
July 9, 1998.

MEMORANDUM OPINION AND ORDER

CEDARBAUM, J.

**\*1** Plaintiff *pro se,* Angel Gonzalez, brings this action under 42 U.S.C. § 1983. He alleges that while in the custody of the New York City Department of Correction ("NYC DOC"), he was beaten by Correction Officer Summer. This is a motion to dismiss the complaint as against the City of New York, Warden of Otis Bantum Correctional Center (the "Warden") and NYC DOC pursuant to Fed.R.Civ.P. 12(b)(6).

On April 22, 1998, a letter was sent to Gonzalez directing him to respond to this motion by June 22, 1998. The letter advised Gonzalez that if he did not respond by June 22, the motion would be decided on the basis of the existing record, and the City of New York, New York City Department of Correction and Warden of Otis Bantum Correctional Facility might be dismissed from the action. Gonzalez has not responded. For the reasons that follow, the motion to dismiss is granted.

BACKGROUND

The complaint alleges that plaintiff was assaulted by Correction Officer Summer while he was incarcerated at Otis Bantum Correctional Center on Rikers Island, New York City. According to the complaint, as plaintiff was coming into the facility's recreation area from the "yard," he passed through a metal detector which registered that he had a metal object on his person. Defendant Summer then swore at plaintiff and told him to hurry up. As plaintiff passed through the

metal detector a second time, he said to Summer, "You don't have to act like that!" Summer then struck plaintiff in the face repeatedly until he lost consciousness. According to the complaint, when plaintiff regained consciousness, he found Summer "still abusing" him and swearing at him. Plaintiff left, found his way back to the housing area and felt as if he "had been hit with a bat to the face ." Plaintiff alleges that he suffered a cut under his left eye, serious swelling of his face and head, and lacerations of his scalp. He alleges that black and blue shadows still show under his eyes, and that he suffers from headaches. He seeks damages in the amount of three million dollars.

DISCUSSION

On a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations of the complaint must be accepted as true, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and all reasonable inferences must be drawn in favor of the plaintiff, *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

1. NYC DOC and the City of New York
Defendants argue that Gonzalez cannot assert a claim against NYC DOC based on any legal theory because it is not a suable entity. They also contend that the complaint fails to state a claim against the City of New York because it does not allege that the actions complained of were the result of an official policy, custom or practice of the City of New York.

**\*2** In addition to the defect that NYC DOC is an agency of the City of New York that is not a suable entity, [1] the complaint fails to state a claim upon which relief can be granted against either NYC DOC or the City. To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege or immunity guaranteed by federal law. To state a claim against a municipality, a plaintiff must also plead that the wrongful action alleged was the result of an official policy, custom or practice of the municipality, and that that policy caused

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 21 of 154

Gonzalez v. City of New York, Not Reported in F.Supp. (1998)

plaintiff's injury. *Monell v. Department of Social Services,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The complaint, however, alleges no official policy, custom or practice resulting in injury to Gonzalez. Indeed, the complaint does not even mention the City of New York or NYC DOC, except to the extent that they are listed as parties.

2. Warden of Otis Bantum Correctional Center

Defendants also urge dismissal of the complaint against the Warden, on the ground that there are no allegations in the complaint concerning that defendant. When an individual defendant is sued under § 1983, that defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to an award of damages. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). For a claim under § 1983, a complaint sufficiently alleges personal involvement of a supervisory official if it alleges one of the following: (a) direct participation in the alleged wrong; (b) failure to remedy a violation after receiving notice of it; (c) creation of a policy or custom under which unconstitutional practices occur; or, (d) grossly negligent management of subordinates who cause the constitutional violation. *See Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

A § 1983 claim against a municipal official in his official capacity is treated as a claim against the municipality itself. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). As noted above, § 1983 imposes liability on a municipality only when the action that is alleged to be unconstitutional implements or executes an official policy or custom. *See Monell,* 436 U.S. at 690–91.

From the complaint, it is unclear whether the warden is being sued in his personal or official capacity. However, *pro se* complaints, if possible, should be construed as asserting both

claims. *Jackson v. Dinkins,* 1995 WL 657075, at *1 (S.D.N.Y. Nov.8, 1995) (citing *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993)).

The complaint does not allege the personal involvement of the Warden. The complaint mentions the Warden only in the caption, and fails to allege any act or omission by that party. *See Crown v. Wagenstein,* 1998 WL 118169, at *1 (S.D.N.Y. Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997) (same).

*3 Finally, to the extent that the complaint asserts an official-capacity claim against the Warden, the claim fails for the same reason that the claims against the City of New York and NYC DOC fail. There are no allegations of any municipal policy or custom that the Warden was executing, or that such a policy or custom caused the alleged violation of the plaintiff's constitutional rights, as required by *Monell.* The absence of any such allegation precludes a finding of liability against the Warden in his official capacity.

Accordingly, the complaint fails to the state a claim against the Warden upon which relief can be granted.

CONCLUSION

For the foregoing reasons, the motion to dismiss the complaint as against defendants the City of New York, New York City Department of Correction, and Warden of Otis Bantum Correctional Facility is granted.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1998 WL 382055

**Footnotes**

1    Defendants correctly point out that New York City agencies, such as NYC DOC, are organizational subdivisions of the City of New York lacking independent legal existence and are not themselves subject to

Gonzalez v. City of New York, Not Reported in F.Supp. (1998)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 22 of 154

suit. *See, e.g.,* 🚩 *Adams v. Galletta,* 966 F.Supp. 210, 212 (S.D.N.Y.1997) ("where a plaintiff has named the Department of Corrections as a defendant, he has sued a non-suable entity").

---

**End of Document**                                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 23 of 154

Crown v. Wagenstein, Not Reported in F.Supp. (1998)

1998 WL 118169
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Lakim CROWN, Plaintiff,

v.

Warden WAGENSTEIN; Parker T. # 10639 of
Emergency Response Unit, et al., Defendants.

No. 96 CIV. 3895(MGC).
|
March 16, 1998.

**Attorneys and Law Firms**

Lakim Crown, Brooklyn, for Plaintiff, Pro Se.

Paul A. Crotty, Esq., Corporation Counsel of the City of New York, Attorney for Defendants Wangenstein and Parker, New York, By Renee R. Nebens, Esq.

OPINION AND ORDER

CEDARBAUM, J.

**\*1** This is an action for damages brought by a pro se plaintiff pursuant to 42 U.S.C. § 1983. Defendant Wangenstein moves, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted against him in either his personal or official capacity. For the reasons discussed below, defendant's motion is granted.

The complaint alleges that on November 28, 1995, while plaintiff was incarcerated at New York City's Otis Bantum Correctional Center ("OBCC"), plaintiff was assaulted by a number of correction officers. (Compl. at 3–4). As a result, plaintiff alleges that he sustained injuries to his head, neck, back, and right leg. (Compl. at 4). In addition to the officers involved in the assault, plaintiff sues Wangenstein, the warden of OBCC at the time of the alleged assault.

Discussion

A motion to dismiss for failure to state a claim must be granted if, when viewed in the light most favorable to the plaintiff and when all allegations of the complaint are accepted as true,

it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *Bolt Electric, Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). In addition, a complaint and supporting papers prepared by a pro se plaintiff must be read liberally and interpreted to "raise the strongest arguments they suggest." *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995).

When an individual defendant is sued under § 1983, that defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to an award of damages. *See Wright v.. Smith,* 21 F.3d 496, 501 (2d Cir.1994). For a claim under § 1983, a complaint sufficiently alleges personal involvement of a supervisory official if it alleges one of the following: (a) direct participation in the alleged wrong; (b) failure to remedy a violation after receiving notice of it; (c) creation of a policy or custom under which unconstitutional practices occur; or (d) grossly negligent management of subordinates who cause the constitutional violation. *See Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

A § 1983 claim against a municipal official in his official capacity is treated as a claim against the municipality itself. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). *Section 1983* imposes liability on municipalities only when the action that is alleged to be unconstitutional implements or executes an official policy or custom. *See Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

From the complaint, it is unclear whether Wangenstein is being sued in his personal or official capacity. However, pro se complaints, if possible, should be construed as asserting both claims. *Jackson v. Dinkins,* 1995 WL 657075 at *1 (S.D.N.Y. Nov.8, 1995)(citing *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.)("a plaintiff who has not clearly identified in her complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other"), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993)).

**\*2** The complaint does allege an assault by certain members of the OBCC Emergency Response Unit. (Compl. at 3–4). It alleges that while the plaintiff was making a telephone call,

members of the Emergency Response Unit entered housing area 1N and defendant Parker verbally harassed the plaintiff, and with the assistance of other members of the Emergency Response Unit, assaulted him. (Compl. at 3–4). However, the complaint does not allege the personal involvement of Warden Wangenstein. The complaint mentions Warden Wangenstein only in the caption, and fails to allege any act or omission by Wangenstein. *See Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)(Edelstein, J.)(finding mere inclusion of warden's name in a complaint insufficient to allege personal involvement).

As for Warden Wangenstein's liability in his official capacity, the complaint fails to allege a municipal policy or custom that defendant was executing, or that such a policy or custom caused the alleged violation of the plaintiff's constitutional rights, as required by *Monell.* The absence of any such allegation prevents a finding of liability for defendant Wangenstein in his official capacity. *See Monell,* 436 U.S. at 694.

Conclusion

Because the complaint fails to state a claim against Warden Wangenstein upon which relief can be granted, the motion to dismiss defendant Wangenstein is granted.

SO ORDERED

**All Citations**

Not Reported in F.Supp., 1998 WL 118169

---

    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 25 of 154

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

2019 WL 981850
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,
v.
SYRACUSE POLICE
DEPARTMENT, et al., Defendants.

Civil Action No. 5:18-CV-1471 (GTS/DEP)
|
Signed 01/07/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: Jeramie White, Pro se, 18-B-0311, Cayuga Correctional Facility, P.O. Box 1186, Moravia, NY 13118.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** This is a civil rights action brought by *pro se* plaintiff Jeramie White, a New York State prison inmate, pursuant to 42 U.S.C. § 1983, against the Syracuse Police Department ("SPD") and five of its officers. In his complaint, plaintiff alleges that defendants violated his constitutional rights during the course of his arrest on February 13, 2017. Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been referred to me for review. Based upon my consideration of those materials, I will (1) grant plaintiff's amended IFP application, (2) recommend dismissal of his claim against the SPD with leave to replead, and (3) recommend that his complaint otherwise be accepted for filing.

I. BACKGROUND

Plaintiff commenced this action on or about December 20, 2018. Dkt. No. 1. According to plaintiff, he and two friends were on their way to play indoor basketball when their vehicle was pulled over for a traffic infraction. *Id.* at 4; Dkt. No. 1-1 at 4. Plaintiff alleges that after the stop, defendant William Kittle forcibly removed White from the vehicle and that Kittle, in addition to defendants Abraham Mamoun and Shawn Hauck, proceeded to use excessive force against him during the course of his arrest. Dkt. No. 1 at 4-5, 6-7; *see also* Dkt. No. 1-1 at 4, 8. Plaintiff further alleges that defendants Altimonda

and Fiorini were present and had an obligation to intervene and prevent the unlawful use of force, but failed to do so. *Id.* at 5, 7.

Plaintiff was ultimately arrested and charged with resisting arrest, in violation of N.Y. Penal Law § 205.30, and second-degree obstruction of governmental administration, in violation of N.Y. Penal Law § 195.05. Dkt. No. 1-1 at 4. As relief, plaintiff seeks compensatory and punitive damages in the amount of $1,000,000. Dkt. No. 1 at 8.

A. Plaintiff's Amended IFP Application [1]

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [2] Because I conclude that plaintiff meets the requirements for IFP status, his amended application for leave to proceed without prepayment of fees is granted. [3]

B. Sufficiency of Plaintiff's Complaint

1. Governing Legal Standard

**\*2** Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("We

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 26 of 154

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis*.").

In deciding whether a complaint states a colorable claim, a court must exercise a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

## 2. Analysis of Plaintiff's Claims

**\*3** Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located. *See Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N.Y.*, 879 F. Supp. 148 (S.D.N.Y. 1995) ); *Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *see also Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department."). Although I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the City of Syracuse in place of the SPD, plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the City of Syracuse. Accordingly, I recommend dismissal of plaintiff's claims asserted against the SPD.

With respect to his remaining claims, although plaintiff makes passing reference to his rights arising under the Eighth and

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 27 of 154

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Fourth Amendments, *see* Dkt. No. 1 at 6, it is clear from the factual allegations that he is asserting claims for excessive force and the failure to intervene arising under the Fourth Amendment. *See generally* Dkt. No. 1; *see also* Edrei v. Maguire, 892 F.3d 525, 533 (2d Cir. 2018) ("Arrestees may invoke the Fourth Amendment's prohibition against 'unreasonable' seizures."). In light of the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and the individual officer defendants should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure. [4]

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branman v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also* Mathon v. Marine Midland Bank, N.A., 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); *see also* Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, while I recommend dismissal of plaintiff's claim against the SPD, plaintiff could potentially amend his complaint to assert a cognizable cause of action against a defendant, such as the City of Syracuse, which is amenable to suit. Accordingly, I recommend that plaintiff be granted leave to amend his complaint. If plaintiff chooses to file an amended complaint, he must clearly and concisely set forth the facts

that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See* Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

## II. SUMMARY, ORDER, AND RECOMMENDATION

**\*4** Having reviewed plaintiff's amended application for leave to proceed in this action IFP, I conclude that he has met the applicable requirements for leave to proceed without prepayment of fees, and will therefore grant his application. Turning to the merits of his complaint, to the extent that it names five police officers and alleges a violation of 42 U.S.C. § 1983, I conclude that those claims are not subject to dismissal at this procedural juncture. I recommend a finding, however, that plaintiff's claim against the SPD is legally deficient and subject to dismissal, but that plaintiff should be afforded an opportunity to amend with respect to that claim. Accordingly, it is hereby

ORDERED that plaintiff's amended application for leave to proceed in this action without prepayment of fees (Dkt. No. 6) is GRANTED; and it is further

ORDERED that plaintiff's original application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is DENIED as moot; and it is further

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be accepted for filing with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini; and it is further

RECOMMENDED that plaintiff's remaining cause of action against the Syracuse Police Department be otherwise DISMISSED with leave to replead within thirty days of the issuance of an order adopting this recommendation; and it is further

RECOMMENDED that, in the event plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 28 of 154

to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini.

NOTICE: Pursuant to 🚩 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 🚩 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; 🚩 *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 981850

---

## Footnotes

[1]    Plaintiff filed both an original and amended motion to proceed in this action IFP. Dkt. Nos. 2, 6. While the two motions contain slightly different information concerning plaintiff's financial status, only the amended motion contains the required certification from an official at the correctional facility in which plaintiff is confined. *Compare* Dkt. No. 3 *with* Dkt. No. 7. Accordingly, plaintiff's original IFP application is denied as incomplete.

[2]    The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* 🚩 28 U.S.C. § 1915(b)(3).

[3]    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

[4]    The court expresses no opinion concerning whether plaintiff's claims can survive a properly filed motion to dismiss or motion for summary judgment, or whether he may prevail at trial.

[5]    If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 29 of 154

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

2014 WL 6685476

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Kylie Ann TURCZYN, Deceased, by and through
Barbara McGREGOR, as Administratrix of
the Estate of Kylie Ann Turczyn, Plaintiff,

v.

CITY OF UTICA et al., Defendants.

No. 6:13–cv–1357 (GLS/ATB).
|
Signed Nov. 26, 2014.

**Attorneys and Law Firms**

Office of Frank Policelli, Frank Policelli, Esq., of Counsel, Utica, NY, for the Plaintiff.

City of Utica—Corporation Counsel, Mark C. Curley, Esq., Merima Smajic, Esq., Zachary C. Oren, Esq., of Counsel, Utica, NY, for the Defendants.

*MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

**I. *Introduction***

**\*1** Plaintiff Kylie Ann Turczyn, deceased, by and through Barbara McGregor, as administratrix of the estate of Kylie Ann Turczyn, commenced this action against defendants City of Utica, City of Utica Police Dept., and Elizabeth Shanley alleging substantive due process claims pursuant to 42 U.S.C. § 1983 and separate state law causes of action. (Am.Compl., Dkt. No. 12.) Pending is defendants' motion to dismiss for failure to state a claim. (Dkt. No. 19.) For the reasons that follow, the motion is granted in part and denied in part.

**II. *Background***

**A. *Facts*** [1]

Shanley, an Oneida County domestic violence investigator, was at all relevant times assigned by the Police Department to

accomplish the goals of reducing "occurrence[s] of domestic violence by increasing reporting and by identifying and tracking repeat victims and/or offenders," and "increas[ing] victims' access to supportive services by encouraging [them] to report their abuse, thereby increasing arrest rates for domestic offenders." (Am.Compl.¶ 10.) On June 22, 2012, Thomas Anderson, Turczyn's former boyfriend and the father of her daughter, broke into Turczyn's home armed with a 9 mm rifle. (*Id.* ¶ 11) Anderson repeatedly shot Turczyn, taking her life in view of their four-year-old daughter, G.T. (*Id.*) Anderson then dispatched himself. (*Id.*)

In the twelve months preceding this horrific event, Turczyn made between five and ten complaints to Utica police officers, "including informing them of a specific threat by Anderson to kill her." (*Id.* ¶ 12.) Turczyn specifically told Shanley "that Anderson was armed and had threatened to kill her." (*Id.* ¶ 12(d).) Despite their knowledge of domestic violence between Turczyn and Anderson, neither Shanley, New York State Police, nor Utica Police took any steps to arrest Anderson, investigate Turczyn's complaints, or follow-up with Anderson "as is the policy and protocol of the domestic violence unit." (*Id.* ¶ 14.)

On June 18, 2012, Shanley told Turczyn to seek an order of protection, which she attempted to do, but was told by an unknown person at the Oneida County Family Court to return the following day because the court was " 'too busy.' " (*Id.* ¶¶ 15–16.) The following day, Turczyn left a voice message for Shanley, explaining that she was unable to obtain an order of protection and that Anderson had a gun and planned to kill her that week. (*Id.* ¶¶ 16–18.) Despite her knowledge, "Shanley took no action." (*Id.* ¶ 17.) Shanley also mistakenly believed that Turczyn's issues with Anderson were outside of the purview of Utica Police and should, instead, be dealt with by New York State Police; however, "she did not inform any other police agency or take any action herself." (*Id.* ¶¶ 18, 19, 20.)

**B. *Procedural History***

Turczyn commenced this action by filing a complaint on October 31, 2013. (Dkt. No. 1.) Defendants thereafter moved to dismiss, (Dkt. No. 10.) In response, Turczyn filed an amended complaint as of right, which is now the operative pleading. (*See generally* Am. Compl.) In her amended complaint, Turczyn alleges the following causes of action: (1) a denial of substantive due process rights under the Fifth and Fourteenth Amendments due to deliberate indifference;

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 30 of 154

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

(2) a *Monell*[2] claim against the City; (3) negligence; (4) a "derivative abandonment" on behalf of G.T.; and (5) negligent infliction of emotional distress. (*Id.* ¶¶ 37–74.) Defendants now move to dismiss the amended pleading pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 19.)

### III. *Standard of Review*

**\*2** The standard of review under Fed.R.Civ.P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N.D.N.Y.2010).

### IV. *Discussion*

#### A. *Preliminary Matters*

At the outset, it is noted that some of Turczyn's claims are deemed abandoned by her failure to oppose their dismissal. *See Barmore v. Aidala,* 419 F.Supp.2d 193, 201–02 (N.D.N.Y.2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." (internal citations omitted)); *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause [the] plaintiff did not address [the] defendant's motion to dismiss with regard to [a particular] claim, it [wa]s deemed abandoned and ... dismissed."). In particular, Turczyn squarely opposed dismissal of her substantive due process claim as against Shanley, (Dkt. No. 20 at 8–12), and scarcely, but sufficiently to save the claim from dismissal for abandonment, offered reasons why her substantive due process claim as against the City should survive defendants' motion, (*id.* at 5–7). Aside from the substantive due process claim, Turczyn failed to offer any opposition to defendants' motion, which also sought dismissal of her pendant causes of action. (Dkt. No. 19, Attach. 6 at 31–40 & n. 15.) Accordingly, Turczyn's pendant state law claims, (Am.Compl.¶¶ 59–74), are dismissed.

Additionally, it is clear that the Police Department must be dismissed as urged by defendants, (Dkt. No. 19, Attach. 6 at 2 n. 2), because "a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." *Varela v. City of Troy,* No. 1:10–cv–1390,

2014 WL 2176148, at \*6 (N.D.N.Y. May 22, 2014) (internal quotation marks omitted). As such, all claims as against the Police Department are dismissed.

The court also notes that both parties have submitted certain evidence that is outside of the pleadings (Dkt. No. 19, Attachs. 3, 4; Dkt. No. 20, Attachs. 1, 2.) Beginning with defendants, they submitted a January 2, 2013 stipulation of discontinuance, which, on its face, purports to memorialize McGregor's agreement to withdraw the notice of claim filed on behalf of Turczyn and to discontinue with prejudice, (Dkt. No. 19, Attach.3), and a December 28, 2012 letter, which appears to memorialize a conversation regarding the discontinuation of legal action and execution of a stipulation, (Dkt. No. 19, Attach.4). Relying on a single out-of-Circuit decision, *see Raines v. Haverford Coll.,* 849 F.Supp. 1009, 1010 (E.D.Pa.1994), which does not appear directly to support their position nor does it give this court confidence that the kinds of documents at issue here were contemplated by that decision, defendants assert that the documents may be considered on their motion to dismiss as "part of the record of this case." (Dkt. No. 19, Attach. 6 at 25 n. 11.) Turczyn argues that defendants' reliance on the stipulation is inappropriate at this juncture, yet she offers the affidavit of McGregor, submitted to dispute the validity of the stipulation, (Dkt. No. 20, Attach.1), without any explanation as to why the court should or may consider it. (Dkt. No. 20 at 12–13.)

**\*3** The court has excluded from its consideration of this motion to dismiss the exhibits offered by defendants as well as the McGregor affidavit. *See* Fed.R.Civ.P. 12(d). The existence of some document or documents that may extinguish a plaintiff's claims, such as a release or stipulation of discontinuance, is an affirmative defense, *see Beede v. Stiefel Labs., Inc.,* No. 1:13–cv–120, 2014 WL 896725, at \*3 (N.D.N.Y. Mar.6, 2014), and " '[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) ... if the defense appears on the face of the complaint,' " *Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.,* 620 F.3d 137, 145 (2d Cir.2010) (quoting *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)).

Here, the stipulation defense is not apparent from the face of the amended complaint. Moreover, the court refuses to consider the documents in question as part of the record of this case, a proposition for which no in-Circuit authority has been offered nor has any been discovered by this court. As such, the documents offered by defendants, (Dkt. No. 19,

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 31 of 154

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Attachs.3, 4), are not properly before the court, and their argument that Turczyn's claims must be dismissed because of those documents is rejected. McGregor's affidavit, (Dkt. No. 20, Attach.1), which was also improvidently submitted for consideration, is likewise excluded. The court now turns to the merits of defendants' arguments regarding the substantive due process and *Monell* claims.

## B. *Rule 8*

First, defendants argue that Turczyn's § 1983 due process claim is subject to dismissal under the Rule 8 plausibility analysis—specifically because of Turczyn's failure to allege facts supportive of a sufficient nexus between Shanley's omissions and Turczyn's death. (Dkt. No. 19, Attach. 6 at 23–24.) The court disagrees. The amended complaint plausibly alleges a causal connection between the conduct of defendants—their alleged conscience-shocking failure to protect Turczyn, (Am.Compl.¶ 49)—and her injuries, *i.e.,* the allegations plausibly suggest that defendants' acts were a substantial factor in bringing about Turczyn's injuries. *See Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir.1998)* ("[I]n all § 1983 cases[ ] the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). Accordingly, this argument is rejected.

## C. *Rule 12(b)(6)*

Defendants argue that Turczyn has failed to state a substantive due process claim as against Shanley or the City. (Dkt. No. 19, Attach. 6 at 220, 26–31.) Defendants contend that Turczyn alleges only passive conduct on the part of Shanley that does not give rise to a substantive due process violation. (*Id.* at 10–12.) More generally, defendants assert that Turczyn has failed to plead facts to show "implicit prior assurances through repeated sustained inaction," and that, even if she did, the state action alleged does not rise to the level of conscience-shocking behavior. (*Id.* at 15–20.) Alternatively, defendants argue that Shanley is entitled to qualified immunity. (*Id.* at 20–23.) With respect to the City, defendants contend that Turczyn has failed to allege facts that support a claim of municipal liability. (*Id.* at 26–31.) For reasons explained below, defendants' motion is denied with respect to Turczyn's substantive due process claim against Shanley, but granted with respect to her *Monell* claim against the City.

**\*4** Only one relevant exception to the general rule that no substantive due process claim lies for a state's failure to protect an individual from private violence, *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989),* potentially applies in this case. That exception imposes liability for failure to protect where state actors in some way affirmatively assist "in creating or increasing the danger to the victim." *Okin v. Vill. of Cornwall–On–Hudson Police Dep't, 577 F.3d 415, 428 (2d Cir.2009)* (internal quotation marks and citation omitted); *see Pena v. DePrisco, 432 F.3d 98, 110 (2d Cir.2005).* "[R]epeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances,' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." *Okin, 577 F.3d at 428* (quoting *Dwares v. City of N.Y., 985 F.2d 94, 99 (2d Cir.1993)*). Moreover, when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct" "even though none of the defendants [is] alleged to have communicated the approval explicitly." *Id.* at 428–29 (quoting *Pena, 432 F.3d at 111*)). In a nutshell, "[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." *Id.* at 429.

A successful substantive due process claim also requires that the plaintiff show "that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* at 431 (quoting *Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).* A hierarchy of intent provides guidance on the likelihood that a particular harm rises to the necessary level. Intentionally inflicted harms are most likely to meet the standard, while reckless and negligent inflictions of harm are each less likely, in graduated downward steps, to show conscience-shocking state action. *Id.* As for recklessly inflicted injuries, " '[d]eliberate indifference that shocks in one environment may not be so patently egregious in another.' " *Id.* (quoting *Lewis, 523 U.S. at 850*). Accordingly, the inquiry is highly fact specific.

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 32 of 154

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Unlike *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), or *Neal v. Lee County,* Civil Action No. 1:08CV262, 2010 WL 582437 (N.D.Miss. Feb.12, 2010)—cases in which police had limited interaction with either the victim or killer prior to the victim's demise, and upon which defendants rely for dismissal of the claim against Shanley, (Dkt. No. 19, Attach. 6 at 3–5, 7–8)—the allegations here go substantially farther. Turczyn alleges several occasions [3] when Shanley knew of Anderson's threatening acts and did nothing, which arguably communicated to him prior assurances that there would be no penalty to pay for his conduct. (Am.Compl.¶¶ 12–13.) "This is so even though none of the defendants are alleged to have communicated the approval explicitly." *Pena,* 432 F.3d at 111. *Okin* has specifically recognized the liability that may arise under these circumstances. *See* 577 F.3d at 428–29 (explaining that liability under § 1983 attaches when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others" (quoting *Pena,* 432 F.3d at 111)).

 **\*5** The amended complaint also pleads facts that demonstrate, at this juncture, egregious behavior that shocks the contemporary conscience. As in *Okin,* the allegations here tend to show that Shanley, who was tasked with accomplishing certain goals related to curbing domestic violence, was deliberately indifferent as to whether or not Anderson would make good on his multiple threats against Turczyn's life over a twelve-month-period. (Am.Compl.¶ ¶ 10, 12.) These allegations sufficiently support that Shanley's affirmative conduct was the product of deliberate indifference that shocks the conscience, and would provide a reasonable jury with a valid basis to so find. *See Conradt v. NBC Universal, Inc.,* 536 F.Supp.2d 380, 394–95 (S.D.N.Y.2008).

Finally, Shanley is not entitled to qualified immunity at this juncture. Her argument on this issue is two-fold. First, Shanley asserts that no constitutional violation occurred, and, second, she claims that, even if a constitutional violation occurred, the right was not clearly established. (Dkt. No. 19, Attach. 6 at 20–23.) The first prong of the argument is easily swept aside by reference to the preceding paragraphs that explain that the amended complaint alleges a cognizable substantive due process violation. As for whether or not the right was clearly established, which is a prerequisite to qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this question has been resolved by the Second Circuit. On the issue, the court has explained that it is "clearly established," under the state-created danger theory, "that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages *intentional* violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply." *Okin,* 577 F.3d at 434. Accordingly, Shanley is not entitled to qualified immunity at this time.

As for the City, defendants assert that Turczyn has failed to plead a *Monell* claim because the amended complaint merely alleges legal conclusions. (Dkt. No. 19, Attach. 6 at 26–31.) With respect to Turczyn's allegation that the City failed to properly train or supervise its employees, defendants contend that the amended complaint is too conclusory, but that, even if adequately pleaded, Turczyn's municipal liability claim must nonetheless fail because she has not alleged deliberate indifference. (*Id.* at 29–31.)

It is well settled that "the inadequacy of police training may serve as the basis for § 1983 liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Oh. v. Harris,* 489 U.S. 378, 380, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The deliberate indifference standard is "stringent" and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* ––– U.S. ––––, ––––, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal quotation marks and citation omitted). A showing of deliberate indifference requires that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.,* 974 F.2d 293, 297–98 (2d Cir.1992) (quoting *City of Canton,* 489 U.S. at 390 n. 10).

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 33 of 154

**\*6** Here, because Turczyn has failed to adequately plead that the City's failure to train and supervise amounted to deliberate indifference, she has failed to state a claim of municipal liability. The amended complaint uses the label "deliberate indifference" in reference to Turczyn's municipal liability claim and generically references the City's failure to properly train and supervise, but it fails to allege facts that support either conclusory notion. (Am.Compl.¶¶ 45, 52.) Turczyn's pleading failure mandates dismissal of her *Monell* claim against the City. *See* ⚠ *Gauthier v. Kirkpatrick,* Civil Action No. 2:13–cv–187, 2013 WL 6407716, at \*10 (D.Vt. Dec.9, 2013) (dismissing failure to train *Monell* claim because the plaintiff failed to plead facts that supported the deliberate difference elements); *Santos v. New York City,* 847 F.Supp.2d 573, 577 (S.D.N.Y.2012); *see also Worrell v. City of N.Y .,* No. 12–CV–6151, 2014 WL 1224257, at \*13 (E.D.N.Y. Mar. 24, 2014).

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims alleged as against the City of Utica Police Dept. and the Clerk is directed to terminate the City of Utica Police Dept. from this action; and

**GRANTED** with respect to Turczyn's *Monell* claim against the City (Am.Compl.¶ ¶ 51–58), which is hereby **DISMISSED WITHOUT PREJUDICE,** and the Clerk is directed to terminate the City of Utica from this action; and

**GRANTED** with respect to all of Turczyn's pendant state law claims, (Am.Compl.¶ ¶ 59–74), which are hereby **DISMISSED;** and **DENIED** in all other respects; and it is further

**ORDERED** that the sole remaining defendant, Shanley, shall file an appropriate responsive pleading within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Andrew T. Baxter in order to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6685476

### Footnotes

1    The facts are presented in the light most favorable to plaintiff.

2    *See* 🚩 *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

3    In fact, Turczyn claims that she lodged five to ten complaints—of which Shanley was aware—with the Utica Police within the twelve months preceding the murder. (Am.Compl.¶¶ 12, 13.) So many occurrences may amount to "repeated [and] sustained inaction ... in the face of potential acts of violence." 🚩 *Okin,* 577 F.3d at 428.

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 34 of 154

2019 WL 974824
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE DEPARTMENT; Abraham
Mamoun, Syracuse Police Dept.; William Kittle,
Syracuse Police Dept.; Shawn Hauck, Syracuse
Police Dept.; Altimonda, Syracuse Police Dept.;
and Fiorini, Syracuse Police Dept., Defendants.

5:18-CV-1471 (GTS/DEP)
|
Signed 02/28/2019

**Attorneys and Law Firms**

JERAMIE WHITE, 18-B-0311, Plaintiff, Pro Se, Cayuga
Correctional Facility, P.O. Box 1186, Moravia, New York
13118.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Jeramie White ("Plaintiff") against the
Syracuse Police Department and five of its employees
("Defendants"), is United States Magistrate Judge David
E. Peebles' Report-Recommendation recommending that (1)
Plaintiff's Complaint be accepted for filing by the Court
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini, and (2) Plaintiff's remaining cause of action against
the Syracuse Police Department be dismissed with leave to
replead within thirty days of the issuance of an Order adopting
the Report-Recommendation. (Dkt. No. 9.) Plaintiff did not
submit an objection to the Report-Recommendation, and the
deadline by which to do so has expired. (*See generally* Docket
Sheet.) [1]

Based upon a review of this matter, the Court can find
no clear error in the Report-Recommendation: [2] Magistrate
Judge Peebles employed the proper standards, accurately
recited the facts, and reasonably applied the law to those
facts. As a result, the Court accepts and adopts the Report-
Recommendation for the reasons stated therein; Plaintiff's
Complaint is accepted for filing with respect to his Fourth
Amendment cause of action against Defendants Mamoun,
Kittle, Hauck, Altimonda and Fiorini; and Plaintiff's
remaining cause of action against the Syracuse Police
Department is dismissed with leave to replead within thirty
days of the issuance of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Peebles' Report-
Recommendation (Dkt. No. 9) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint is accepted for filing
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini; and it is further

**\*2 ORDERED** that Plaintiff's remaining cause of action
against the Syracuse Police Department is **DISMISSED with
leave to replead within THIRTY (30) DAYS** of the issuance
of this Decision and Order.

**ORDERED** that, in the event Plaintiff files an Amended
Complaint within the above-referenced thirty-day period, it
shall be referred to Magistrate Judge Peebles for review; and
it is further

**ORDERED** that, in the event Plaintiff does not file an
Amended Complaint within the above-referenced thirty-
day period, this action shall move forward with respect to
his Fourth Amendment cause of action against Defendants
Mamoun, Kittle, Hauck, Altimonda and Fiorini, and the Clerk
of the Court is directed to issue summonses and USM-285
forms at that time for service by the U.S. Marshal Service.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 974824

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 35 of 154

## Footnotes

1    The Court notes that, on January 11, 2019, Plaintiff filed a letter from the City of Syracuse Citizen Review Board dated December 31, 2018, outlining its findings with respect to this matter. (Dkt. No. 10.) In its letter, the Citizen Review Board upheld Plaintiff's claim for excessive force against "Det. One," recommended a written reprimand against that individual, and absolved "Det. Two," "Sgt. One," and "Lt. One" from wrongdoing regarding the use of excessive force. (*Id.*) The Court does not liberally construe this letter as any sort of Objection to the Report-Recommendation.

2    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**End of Document**                               © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    2

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 36 of 154

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

2019 WL 5002215
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Laytonia FLAGG, Plaintiff,

v.

NYS DIVISION OF PAROLE; Mark Saben,
Parole Officer; Syracuse Police Dept.; Detective
William Summers, ID#409; D.P. Proud, ID#
0140; Richard Curran, ID# 0066; William
J. Fitzpatrick, Onondaga County, District
Attorney; and Sean Chase, D.A., Defendants.

5:19-CV-886 (TJM/ATB)
|
Signed 08/15/2019

**Attorneys and Law Firms**

LAYTONIA FLAGG, Plaintiff pro se

### ORDER and REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

*1 The Clerk has sent me an amended [1] civil rights complaint filed by pro se plaintiff Laytonia Flagg. (Dkt. No. 3). Plaintiff Flagg has also filed an application to proceed in forma pauperis ("IFP"). (Dkt. No. 4).

#### I. IFP Application
A review of plaintiff's IFP application shows that she declares she is unable to pay the filing fee. (Dkt. No. 4). The court finds that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. Neitzke, 490 U.S. at 327; Harkins v. Eldridge, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

#### II. Complaint
Plaintiff states that she is the mother of Mario Leslie, who at the time of the incidents described in the complaint, was on parole. (Amended Complaint ("AC") at 1). [2] On August 8, 2016, defendant New York State Parole Officer ("PO") Mark Saben went to Mr. Leslie's home at 514 Marcellus Street in Syracuse, New York, to conduct a "standard home visit." [3] (Id.) Mr. Leslie lived at the Marcellus Street address with his girlfriend, Tamacha Rodriguez. (Id.) Plaintiff claims that Ms. Rodriguez answered the door for PO Saben, and that Mr. Leslie was "summoned" from his bedroom to speak with defendant Saben. (Id.) After some discussion, PO Saben was walking toward the front door, when he spotted some glassine packets "known to contain heroin." (Id.) Upon discovering the glassine packets, defendant Saben informed Mr. Leslie that he was going to conduct a search of the entire residence according to the conditions of his parole release. (Id.)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 37 of 154

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

**\*2** Plaintiff states that, as a result of the subsequent search, the officer discovered a safe, containing a loaded firearm and $31,925 in United States currency. Defendant Saben also discovered a key chain on which were a set of keys that were identified as keys to plaintiff's residence. Plaintiff claims that "[a]t this point Sr. P.O. Rigby called the Syracuse Police Department." [4] (AC at 2). Plaintiff claims that defendant Rigby spoke to Sergeant A. Llukaci, a detective with the Syracuse Police Department, and Sergeant Llukaci told defendants Detectives William Summers and D.P. Proud to go to the Marcellus Street address. Plaintiff states that upon his arrival, defendant Proud stated that he spoke to Ms. Rodriguez, who told defendant Proud that Mr. Leslie kept his money at his mother's apartment "although there is no affidavit on file to attest to that assertion by the [sic] Det. Proud."

Defendant Summers obtained a warrant for the search of plaintiff's home at 112 Fordham Rd. in Syracuse, New York. (AC Ex. CM/ECF p.16-17). Plaintiff claims that she was not home when the "Syracuse Police" and defendant Saben arrived at her home to execute the search warrant. [5] (AC at 2). The officers entered with the key that was found at Mr. Leslie's Marcellus Street home. [6] (*Id.*) Plaintiff arrived shortly thereafter, but was denied entrance to her home while the search was being executed. (*Id.*) Plaintiff states that the officers searched plaintiff's apartment and recovered $40,000.00 in cash from a safe that was located in plaintiff's bedroom closet. Plaintiff alleges that the officers confiscated the money.

Plaintiff claims that the officers did not have probable cause to obtain the warrant to search her home because there was no proof that Ms. Rodriguez ever made the statement that Mr. Leslie kept his money at his mother's house, and thus, the warrant was obtained improperly. Plaintiff claims that her Fourth Amendment rights were violated as the result of the search of her apartment. Plaintiff then claims that after the seizure of her $40,000.00, she informed defendant Assistant District Attorney ("ADA") Sean Chase that the money did not belong to Mr. Leslie, and that the money was plaintiff's savings which she would be using to purchase a new home. (AC at 5). Plaintiff claims that ADA Chase told her that his "office would return the illegally seized money." (*Id.*)

Plaintiff states that, shortly after the incident, she also filed a "complaint" form to complain about the police "conduct in Plaintiff's home," and to request the "immediate return of the Plaintiff's money." (*Id.*) Plaintiff states that the District Attorney's Office responded to the "property release" request only after plaintiff obtained the intervention of "a 3[rd] party (Feldman, Kramer & Monaco, P.C.)" (*Id.*) Plaintiff claims that the property release form showed that the plaintiff's "legally possessed currency was improperly forfeited along with the monies ($31,925.00) seized at 514 Marcellus St." (AC at 6).

Plaintiff claims that ADA Chase told plaintiff on three separate occasions that her money was going to be returned, but that this was a "stalling tactic" by the District Attorney's Office. ADA Chase told plaintiff that he was waiting to hear from Mr. Leslie's attorney "in hopes of persuading [Mr. Leslie] to sign a forfeiture document that later became clear to the Plaintiff that the forfeiture included what was seized at both residences...." (AC at 6). The forfeiture document states that Mr. Leslie stipulated to the forfeiture of $67,269.00, and that he was not aware of any other person who claimed to be the owner of the property. [7] (AC at 6). Plaintiff alleges that the $40,000.00 was not Mr. Leslie's to forfeit. Plaintiff also alleges that the amount on the stipulation of forfeiture that Mr. Leslie signed does not account for the entire amount seized, even though plaintiff was not given any of her money back. Plaintiff claims that the actual amount seized, including her $40,000.00 was $71,925.00, and that there is $4,656.00 missing from the total. (*Id.*) Plaintiff also claims that the individuals who seized her money did not have the "warrant in hand" and never gave her a receipt for the money that they took. (AC at 7). Plaintiff states that the money taken from her home was not specifically mentioned in any of the paperwork that was subsequently provided to plaintiff as the result of her inquiries. (AC at 8).

**\*3** Plaintiff states that she spoke to then-Chief of the Syracuse Police, Frank Fowler, who told plaintiff that her concerns would be "thoroughly investigated," but then did not provide plaintiff a report of the investigation and told plaintiff to file a Freedom of Information request if she wished to see the report. (*Id.*) Plaintiff has attached correspondence that she received from former Chief Fowler, stating that the report had been forwarded to him and that plaintiff could "be assured that [Fowler would] take the proper administrative action in this case." (AC Ex. CM/ECF p.19).

Although the AC contains a "Second Cause of Action," plaintiff essentially repeats that her Fourth Amendment rights were violated by the defendants' actions in conjunction with the search of her home and the seizure of her money. (AC at 8-9). Plaintiff states that she has not been afforded any

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 38 of 154

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

documentation that would establish probable cause to search her home. (AC at 9). Plaintiff states that there is no connection between her and Mr. Leslie's "illegal activities," and there was nothing "illegal" found in plaintiff's apartment. (*Id.*) In applying a very liberal reading of the AC,[8] the court could interpret plaintiff's second cause of action as a Fourteenth Amendment Due Process claim, asserting that the defendants deprived her of her money without due process of law when they did not return the money after she made various inquiries and did not allow her to challenge the ownership of the money after her son signed the waiver and stipulation.

As stated above, the plaintiff has attached various documents as exhibits to the AC, including (1) the search warrant issued by City Court Judge Kate Rosenthal for plaintiff's apartment at 112 Fordham Rd. (AC Ex. CM/ECF pp.16-17); (2) Plaintiff's Civilian Complaint Report (AC Ex. CM/ECF p.18); a letter to plaintiff from former Chief Fowler (AC Ex. CM/ECF p.19); a letter to plaintiff from David L. Chaplin, II, Esq. on behalf of the Citizen Review Board dated December 2, 2016 (AC Ex. CM/ECF p. 20); a letter to plaintiff from Kimberly M. Osbeck, a paralegal for the Onondaga County District Attorney's Office, dated March 6, 2018 (AC Ex. CM/ECF p. 21); a letter to plaintiff from the Public Integrity Bureau of the New York State Attorney General's Office (AC Ex. CM/ECF p. 22); an "Application for Release of Property," signed by plaintiff on November 2, 2017, together with the unsigned refusal to release the property because the "money [was] forfeited during [a] criminal prosecution." (AC Ex. CM/ECF pp.23-24); the "Waiver and Stipulation," signed by Mr. Leslie on February 28, 2017, relinquishing any rights to the seized money (AC Ex. CM/ECF pp.25-26); "CNYLEADS Narrative Supplement[s]" numbers 1-3, including an "offense page" and a "property supplement," detailing all the property taken from the Marcellus St. address. (AC Ex. CM/ECF pp.27-32).

Plaintiff seeks the return of the $40,000.00 that she claims was taken from her in August of 2016, compensatory damages for the "Syracuse Police Department trashing Plaintiff's two bedrooms at 112 Fordham Rd.," damages for "five hours" worth of lost income[9] on the day of the search, unspecified lost income for the day that she had to appear in court,[10] and "punitive" damages for emotional pain and suffering, including the damages for the delay in purchasing her dream home. (*Id.*)

## III. Eleventh Amendment/New York State Division of Parole

### A. Legal Standards

**\*4** The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). An action against state officers in their official capacities, or an action against an agency of the state, is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991) (official capacity actions); *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (agencies of the state).

### B. Application

In this case, in addition to the individual parole officers who were allegedly responsible for obtaining the warrant to search her apartment, plaintiff has named the "N.Y.S. Division of Parole." (AC at 1). The Eleventh Amendment prevents plaintiff from suing the N.Y.S. Division of Parole. Thus, to the extent that plaintiff seeks to sue the agency separately from the individual officers, the AC may be dismissed with prejudice, but as further discussed below, plaintiff may sue Mark Saben, one of the individuals who allegedly participated in obtaining the warrant for her home.[11]

## IV. Syracuse Police Department/Municipal Liability

### A. Legal Standards

Under New York law, departments, like the Syracuse Police Department that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality, and may not sue or be sued. *Hayes v. County of Sullivan*, Nos. 07-CV-667; 09-CV-2071, 2012 WL 1129373, at *24 (S.D.N.Y. March 30, 2012) (citing inter alia *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)).

### B. Application

To the extent that plaintiff is suing the Syracuse Police Department as an entity separate from the individual police officers who were allegedly involved in obtaining the warrant for her apartment, plaintiff may not do so. Unlike the State of New York itself, against which a suit for damages would

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 39 of 154

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

be barred by the Eleventh Amendment, the City of Syracuse could be named instead of the Syracuse Police Department. However, the municipality itself may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Id.* at 694. To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).

**\*5** As it is written, the AC makes no claims that would allow the plaintiff to name the City of Syracuse as a defendant in this action. Plaintiff essentially complains of a single incident, during which the officers did not act properly in obtaining a warrant for her home and did not act properly in executing the warrant in her case. There is no indication that plaintiff can assert a policy or custom which would support municipal liability based on these facts. While plaintiff may not sue the Syracuse Police Department in any event, and while the court will not sua sponte replace the Syracuse Police Department with the City of Syracuse, the court does not rule out that, upon proper pleading, plaintiff could amend her AC to assert such a claim against the City of Syracuse.

However, plaintiff is warned that any such facts must plausibly suggest her claim, and that simply making a conclusory allegation of a "policy or custom" is insufficient to assert municipal liability. *Sulaymu Bey v. City of New York*, No. 17-CV-3563. 2019 WL 1434597, at \*10 (E.D.N.Y. Mar. 29, 2019); *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 277 (W.D.N.Y. 2014) (conclusory allegations which merely recite the elements for stating a *Monell* claim are insufficient to state a claim for municipal liability) (citing inter alia *Genovese v. Town of Southhampton*, 92 F. Supp. 2d 8, 25 (E.D.N.Y. 2013)). A single incident, particularly if it involved individuals below the policy-making, level is insufficient to state a *Monell* claim. *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). As discussed below, plaintiff may proceed against the individual officers who she claims violated her constitutional rights: Detective Summers, D.P. Proud; and Richard Curran.

## V. Prosecutorial Immunity/Personal Involvement

### A. Legal Standards

### 1. Prosecutorial Immunity

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

### 2. Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 40 of 154

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

subordinates who caused the unlawful condition or event. *Id.* See also *Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**\*6** Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. See *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). See also *Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at \*8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### B. Application

Plaintiff has named the Onondaga County District Attorney, William J. Fitzpatrick, together with one of his Assistant District Attorneys, Sean Chase. (AC ¶ 3(c)). Plaintiff claims that she spoke to ADA Chase "right after the seizure," she explained to him that the money did not belong to her son, the money was hers, and she "produced tax returns" for the last five consecutive years in an effort to show that she "legally possessed the money." (AC at 5). She claims that "[k]nowing this," ADA Chase told plaintiff that his office would return the illegally seized money. (*Id.*) Plaintiff claims that notwithstanding ADA Chase's statement, he did not return the money, and allegedly "stalled" plaintiff until her son signed the waiver of forfeiture document, which included the total amount of money that was seized from both residences. (AC at 6). The initiation of civil asset forfeiture proceedings is a prosecutorial function that has been afforded absolute immunity. See *Byrne v. City of New York*, 736 Fed. App'x 263, 266 (2d Cir. 2018) (Second Circuit precedent affords absolute immunity to government attorneys who initiate civil suits) (quoting *Spear v. Town of W. Hartford*,

954 F.2d 63, 66 (2d Cir. 1992); *Mangiafico v. Blumenthal*, 471 F.3d 391, 395 (2d Cir. 2006)).

ADA Chase was allegedly handling the forfeiture proceeding, and even though he did not have to initiate court proceedings because Mr. Leslie signed the stipulation and waiver, the document stated that "I have concluded that the District Attorney would likely establish that the above-mentioned property is subject to forfeiture pursuant to Article 13-A [of the NY Civil Practice Law and Rules] and the District Attorney would likely prevail in such a forfeiture action." [12] (AC Ex. CM/ECF p.25). This document took the place of an in-court forfeiture proceeding, which would have been held pursuant to *N.Y. Civ. Prac. L. & R. § 1311* (Forfeiture Actions). Thus, ADA Chase is entitled to absolute immunity with respect to his conduct relative to the forfeiture of the money seized, even if plaintiff claimed that some of the money belonged to her. [13] This is true whether ADA Chase's conduct was proper or improper, and whether or not he was mistaken in obtaining Mr. Leslie's waiver and stipulation of forfeiture. Thus, to the extent that plaintiff raises due process violations with respect to her interest in the funds, they must be dismissed as against ADA Chase.

**\*7** Plaintiff has not asserted any facts against defendant Fitzpatrick. [14] He does not appear to have been involved in any way in obtaining the search warrant for plaintiff's apartment, in executing the search warrant for plaintiff's apartment, or in the forfeiture proceedings with respect to the money seized. Thus, any claims against him individually would fail for lack of personal involvement. If he had been personally involved in the forfeiture, he, like ADA Chase, would be entitled to absolute prosecutorial immunity. [15] Thus, plaintiff's amended complaint may be dismissed with prejudice as against defendants ADA Chase and DA Fitzpatrick.

### VI. Search and Seizure

#### A. Legal Standards

"It is well-settled that in cases raising claims under the Fourth Amendment of unauthorized execution of a search warrant '[t]he validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to disclose, to the issuing Magistrate.' " *Arroyo v. City of Buffalo*, No. 15-CV-753, 2018 WL 4376798, at \*3 (W.D.N.Y. Sept. 13, 2018) (quoting *Velardi v. Walsh*, 40 F.3d 569,

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 41 of 154

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

575 n. 2 (2d Cir. 1994) (internal quotation marks omitted)). A warrant is not invalid for section 1983 purposes if it is " 'based on seemingly reliable information which is later found to be erroneous.' " *Id.* (quoting *Lewis v. City of Mt. Vernon, N.Y.*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997)).

### B. Application

Although the court has concerns about the merits of this action, at this stage of the proceedings, the court finds that any Fourth Amendment claims that plaintiff may have against defendants Saben, Summers, Proud, and Curran may survive initial review. [16] Plaintiff seems to claim that the warrant for her home was based on false information given the court, which plaintiff claims was the only basis for the warrant. While it may be that a close review of the documents provided with the amended complaint, together with any other evidence or argument by defendants in a properly supported dispositive motion, may show otherwise, the court is not currently in a position to make factual or other determinations regarding the validity of the warrant or any other claims that plaintiff may have regarding the search of her home.

**\*8** The court also notes that because of the waiver and stipulation, signed by Mr. Leslie, there was no formal forfeiture proceeding in New York State Court as provided in N.Y. Civ. Prac. L. & R. § 1311. Thus, it is unclear how the plaintiff could have challenged the forfeiture. [17] The court also makes no findings regarding the validity of any defenses that the defendants may assert regarding the incident in question.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 4) is **GRANTED**, and it is

**RECOMMENDED**, that the amended complaint (Dkt. No. 3) be **DISMISSED IN ITS ENTIRETY** as against defendants **N.Y.S. DIVISION OF PAROLE; SYRACUSE POLICE DEPARTMENT; WILLIAM J. FITZPATRICK; AND SEAN CHASE**, and it is

**RECOMMENDED**, that to the extent that the AC may be read as naming **SGT. LLUKACI or PO RIGBY**, the AC may be dismissed **WITHOUT PREJUDICE** for failure to state a claim, and it is

**RECOMMENDED**, that if the District Court adopts this Recommendation, the case be returned to me for further proceedings, including an order serving the remaining defendants: **SABEN, SUMMERS, PROUD, and CURRAN**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

### All Citations

Not Reported in Fed. Supp., 2019 WL 5002215

### Footnotes

1    When plaintiff filed her original complaint, the case was administratively closed due to plaintiff's failure to comply with the filing fee requirement. (Dkt. No. 2). Prior to re-filing her motion to proceed IFP, (Dkt. No. 4), plaintiff also filed an amended complaint, which the court will review as the operative pleading. The case was re-opened on August 1, 2019. (Dkt. No. 6).

2    Plaintiff numbered the pages of the "Fact" section of the amended complaint at the bottom of the page. The court will cite to the page numbers contained on the actual document. Plaintiff has attached a series of

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 42 of 154

documents as exhibits to the amended complaint which she did not number. The court will cite to the plaintiff's exhibits ("AC Ex.") with the page number as assigned by the court's electronic filing system ("CM/ECF").

3    Plaintiff was not present for any of the incidents that she describes in her complaint until she arrived at her house during the subsequent search of her property. Plaintiff appears to be taking her recitation of the background facts from the police reports and other documents that she has attached to her amended complaint. (AC Ex. CM/ECF pp. 16-32). The court is stating the facts as plaintiff has described them in the amended complaint.

4    This is the first time that another parole officer was mentioned in plaintiff's statement of facts. The court will assume that defendant Rigby was at the residence from the beginning, but it is not completely clear from the papers.

5    Plaintiff does not allege that PO Rigby participated in the search of her apartment.

6    Plaintiff states that the officers were in possession of the door key "prior to their actual possession of the warrant for 112 Fordham Rd." (AC at 2).

7    Plaintiff has attached a copy of Mr. Leslie's "Waiver and Stipulation." (AC Ex. CM/ECF p.25-26). Plaintiff claims that this document was obtained after she asked for the return of the money several times from the District Attorney's Office, the Citizen Review Board, and the Syracuse Police Department. (AC at 7). When she failed to get a "truthful" response, she contacted Feldman, Kramer & Monaco, P.C. (*Id.*) The document was sent to the attorneys' office after the firm wrote a letter of inquiry. (*Id.*)

8    Plaintiff is pro se, and the court must interpret plaintiff's complaint liberally. 🚩 *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008). The court considers all possible grounds for relief that plaintiff could be raising. *See* 🚩 *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

9    Plaintiff states that she works from home, and could not work for the time that the officers were searching her apartment. (AC at 10).

10   Apparently, on the day that the officers searched plaintiff's apartment, they found a "weed roach" and gave plaintiff an appearance ticket, which was later dismissed after plaintiff appeared in court. (AC at 10). Plaintiff seeks lost income for the time that it took to appear in court. (*Id.*)

11   It is unclear whether plaintiff meant to name PO Rigby as a defendant herein. He is mentioned briefly in the body of the complaint and was apparently present during the Marcellus St. search, but is not listed in the caption of the complaint, and plaintiff submitted no proposed summons for PO Rigby. In addition, it does not appear from the facts as stated by plaintiff that PO Rigby was involved in obtaining the search warrant for plaintiff's apartment, nor is it even apparent that he was present during the search of plaintiff's apartment. Thus, plaintiff does not state any claims against PO Rigby, and to the extent that she meant to name him as a defendant, the AC should be dismissed as against him.

12   Article 13-a is entitled "Proceeds of a Crime -Forfeiture." N.Y. Civ. Prac. L. & R. Art. 13-a

13   Although not relevant to the court's decision because it is based on absolute immunity of the prosecutor, regardless of whether Mr. Leslie's assertions in the document were correct, the court notes that plaintiff's statement herein is contrary to her son's **sworn** assertion in the document. Plaintiff states that ADA Chase told plaintiff that they were waiting to hear from Mr. Leslie's attorney regarding whether he was going to sign the forfeiture document. (AC at 6). Plaintiff claims that her son signed the document "under duress."

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 43 of 154

Plaintiff cannot assert any claims regarding her son, and in any event, her son was, by her own statement, represented by counsel during the matter.

14    Plaintiff requests only damages, including a return of the $40,000.00 as relief in this action. She does not seem to be asking for any form of injunctive relief. Even though plaintiff asks for a "return" of money, the Eleventh Amendment does not "recognize a distinction 'between monetary damages and money in which plaintiff has a property interest.' " 📙 *Local 851 of Internat'l Broth. of Teamsters v. Thyssen Haniel Logistics, Inc.*, 90 F. Supp. 2d 237, 249-50 (E.D.N.Y. 2000) (quoting *Yorktown Medical Lab., Inc. v. Perales*, 949 F.2d 84, 87-88 (2d Cir. 1991)). The District Attorney could have been the proper party in a declaratory judgment under New York State law under N.Y. Civ. Prac. L & R. 1327 (Proceedings to Determine Adverse Claims), which plaintiff could have filed within six months of the stipulation, signed by Mr. Leslie.

15    To the extent that the complaint could be interpreted as suing either ADA Chase or DA Fitzpatrick in their "official capacities," the Eleventh Amendment would bar any such suit. *See Blessinger v. City of New York*, No. 17-CV-108, 2017 WL 3841873, at *1-2 (S.D.N.Y. Sept. 1, 2017) (prosecutors are entitled to Eleventh Amendment immunity when they are acting in their prosecutorial capacity because they are acting as state officials rather than city or county employees) (citing 📙⚠️*Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 157 (S.D.N.Y. 2007) and 📙*Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) (when prosecuting a criminal matter, a district attorney in New York State represents the State not the County)).

16    Although plaintiff has included a proposed summons for Sgt. Llukaci, this individual is not listed in the caption of the AC, nor is he included in the section of the form-AC which lists the individual Syracuse Police Officers. (AC ¶ 3(c)) for whom she has included identification numbers. In any event, plaintiff's only allegations against Sgt. Llukaci are that he sent defendants Proud and Summers to Mr. Leslie's Marcellus St. home after the parole officers found contraband therein. Plaintiff does not allege that he was personally involved in any of the conduct that she claims violated her constitutional rights. He was not at either residence and was not involved in obtaining the allegedly invalid warrant. Thus, to the extent that plaintiff is trying to sue Sgt. Llukaci, the AC may be dismissed as against this defendant.

17    The court does note that 📙 section 1311(7) provides that an innocent owner may challenge the forfeiture and regain the forfeited property if the owner never received notice of the forfeiture. In addition, section 1327 provides for an "interested person" to bring a proceeding to determine adverse claims, even after the forfeiture action was settled by stipulation. *See Tupi Cambios, S.A. v. Morganthau*, 48 A.D.2d 278 (1st Dep't 2008). In *Tupi Cambios*, the District Attorney was the proper "defendant" in New York State Court.

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 4963112

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Laytonia FLAGG, Plaintiff,

v.

NYS DIVISION OF PAROLE; Mark Saben,
Parole Officer; Syracuse Police Dept.; Detective
William Summers, ID#409; D.P. Proud, ID#
0140; Richard Curran, ID# 0066; William
J. Fitzpatrick, Onondaga County, District
Attorney; and Sean Chase, D.A., Defendants.

5:19-CV-886
|
Signed 10/08/2019

**Attorneys and Law Firms**

Laytonia Flagg, Syracuse, NY, pro se.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

*1 This pro se action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. Andrew T. Baxter, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). In his Order and Report-Recommendation dated August 15, 2019 (Dkt. No. 7), Magistrate Judge Baxter grants Plaintiff's application to proceed in forma pauperis, and examines the sufficiency of the allegations set forth in the Amended Complaint ("AC") in light of 28 U.S.C. § 1915. He recommends that the AC (Dkt. No. 3) be dismissed in its entirety as against defendants N.Y.S. Division of Parole, Syracuse Police Department, William J. Fitzpatrick, and Sean Chase; that to the extent that the AC may be read as naming

Sgt. Llukaci or PO Rigby, the AC be dismissed without prejudice for failure to state a claim; and that if the Court adopts these recommendations that the case be returned to him for further proceedings, including an order serving the remaining defendants Saben, Summers, Proud, and Curran. No objections to the Report-Recommendation have been filed, and the time to do so has expired.

**II. DISCUSSION**

After examining the record, this Court has determined that the Order and Report-Recommendation is not subject to attack for plain error or manifest injustice.

**III. CONCLUSION**

Accordingly, the Court **ACCEPTS and ADOPTS** the recommendations in the Order and Report-Recommendation (Dkt. No. 7) for the reasons stated therein. Therefore, it is hereby

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 3) is **DISMISSED IN ITS ENTIRETY** as against defendants N.Y.S. DIVISION OF PAROLE, SYRACUSE POLICE DEPARTMENT, WILLIAM J. FITZPATRICK, and SEAN CHASE, and it is further

**ORDERED** that to the extent the Amended Complaint may be read as naming SGT. LLUKACI or PO RIGBY, it is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim, and it is further

**ORDERED** that the case be returned to Magistrate Judge Baxter for further proceedings, including an order serving the remaining defendants: SABEN, SUMMERS, PROUD, and CURRAN.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4963112

---

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Kinch v. Artuz, Not Reported in F.Supp. (1997)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 45 of 154

1997 WL 576038
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Danilo KINCH, Plaintiff,

v.

Superintendent C. ARTUZ; Deputy Superintendent
D. Bliden; Rabbi M. Chill, Defendants.

No. 97 CIV. 2419 (LAP).
|
Sept. 15, 1997.

*MEMORANDUM AND ORDER*

PRESKA, District J.

**\*1** Plaintiff, a prisoner currently an inmate in the custody of the Green Haven Correctional Facility ("Green Haven"), brings this *pro se* action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Rabbi M. Chill ("Rabbi Chill") denied plaintiff access to Jewish Sabbath Services provided at Green Haven as well as the right to participate in the kosher food program at Green Haven. Defendant Superintendent C. Artuz ("Artuz") and defendant Deputy Superintendent D. Bliden ("Bliden") have moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil procedure. For the reasons that follow, defendants' motion to dismiss is granted.

*BACKGROUND*

Kinch is currently an inmate at Green Haven. (Complaint ("Compl.") at 2). Artuz and Bliden are employed by the New York State Department of Correctional Services ("DOCS") as Superintendent and Deputy Superintendent for Programs at Green Haven, respectively. (Compl. at 3).

Plaintiff alleges that Rabbi Chill discriminated against plaintiff in violation of DOCS' Directive 4202. (*Id.*). Directive 4202 provides as follows:

> Resident Chaplains are responsible for pastoral care for the entire inmate population and for staff. They also provide spiritual guidance, religious activities and volunteers, ongoing pastoral counseling, and religious education for particular faith groups. Chaplains report directly to the Deputy Superintendent for Program Services, but as situations warrant, may consult directly with the superintendent.

Plaintiff claims that he attempted to attend Sabbath Services but was denied the right to attend because he is a Black Hebrew Israelite. (*Id.*). Plaintiff further alleges that on September 6, 1996, Rabbi Chill informed plaintiff that Hebrew Israelites could not participate in the kosher food program at Green Haven. (*Id.* at 3-a). Two days later plaintiff made a written request for an interview with Rabbi Chill. (*Id.*). Rabbi Chill responded to plaintiff's request with a request for documentation verifying plaintiff's affiliation with the Jewish faith. Plaintiff subsequently provided Rabbi Chill with a letter from a rabbi outside of DOCS by the name of Simeon Ben Israel verifying that plaintiff was in fact a Jew/Hebrew. (*Id.*). Plaintiff claims that although Rabbi Chill acknowledged receipt of this verification, Rabbi Chill continued to deny plaintiff access to the kosher food program. (*Id.*). Nowhere in the body of the complaint does plaintiff allege that either Artuz or Bliden played any role whatsoever in the denial of religious services.

*DISCUSSION*

I. Standard Applicable to A Motion to Dismiss

When deciding a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations of the complaint and must draw all inferences in favor of the pleader. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993); *see City of Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 493 (1986); *Miree v. DeKalb County,* 433 U.S. 25, 27 n.2 (1977) (both referring to "well-pleaded allegations"). "'[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *International Audiotext Network, Inc. v. American Tel. and Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied sub nom. Cortec Indus.,*

*Inc. v. Westinghouse Credit Corp.,* 503 U.S. 960 (1992)). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), *quoted by Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *accord Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir. 1994). "The latter principle is to be applied with particular strictness when the plaintiff complains of a civil rights violation." *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991).

**\*2** Furthermore, because Mr. Kinch filed this action *pro se,* I must judge his pleadings by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, *reh'g denied,* 405 U.S. 948 (1972); *accord Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [the *pro se* party's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."); *Hanlin v. Mitchelson,* 794 F.2d 834, 838-39 (2d Cir. 1986) (citing *Haines* to support the principle that *pro se* pleadings are given a liberal construction); *see Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir. 1988) (referring to the "special solicitude" afforded *pro se* litigants when confronted with motions for summary judgment).

Nevertheless, proceeding *pro se* does not altogether relieve Mr. Kinch from the usual pleading requirements. *See Lee v. Coughlin,* 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (holding that a "*pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment") (citing *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir. 1991)), *reh'g granted on other grounds,* 914 F. Supp. 1004 (S.D.N.Y. 1996); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080 (PKL), 1994 WL 681763, at \*5 (S.D.N.Y. Dec. 5, 1994) ("The work product of *pro se* litigants should be generously and liberally construed, but [the *pro se*'s] failure to allege either specific facts or particular laws that have been violated renders his attempt to oppose defendants' motion ineffectual."); *Stinson v. Sheriff's Dep't,* 499 F. Supp. 259, 262 (S.D.N.Y. 1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended"). Applying these standards to plaintiff's complaint, I find that plaintiff has not stated a claim upon which relief may be granted.

## II. Section 1983 Claim Requirement of Personal Involvement

Kinch has sued under 42 U.S.C. § 1983. According to this provision,

> [e]very person who, under any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Under section 1983, "[p]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied,* 434 U.S. 1087 (1978) (citations omitted)). Furthermore, the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control. *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir. 1995); *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319 (2d Cir. 1986); *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir. 1974). Although both Artuz's and Bliden's names appear in the caption of the complaint, the complaint contains no allegations with respect to Artuz or Bliden. Nowhere in the complaint does plaintiff suggest that either of these two defendants was personally involved in the alleged deprivation of plaintiff's rights. Nor does the complaint suggest that defendants were grossly negligent in managing their subordinates who caused the alleged constitutional

Kinch v. Artuz, Not Reported in F.Supp. (1997)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 47 of 154

violation or that they created a policy or custom permitting the alleged violation to occur.

 **\*3** Plaintiff does assert in his memorandum that he wrote Bliden on October 14, 1996 and again on November 18, 1996 "to have him correct the on going discriminatory practices of Rabbi Chill." (Plaintiff's Memorandum in Support of Opposition to Motion to Dismiss at 1, 4). Plaintiff also asserts in his memorandum that he "made no direct claim as to Artuz and Bliden's involvement because their function, responsibilities, authorities, and duties are covered under the Department of Correctional Services directives. Even if these allegations had been contained in plaintiff's complaint and thus could properly be considered as part of plaintiff's pleadings, such allegations would be insufficient to withstand a motion to dismiss.

With respect to plaintiff's first argument, even if a letter complaining of discrimination were sufficient to plead a claim under § 1983, plaintiff has not even alleged that any such letter was sent to Artuz. Thus, regardless of the significance of plaintiff's letter, plaintiff has not alleged any involvement whatsoever on behalf of Artuz. Furthermore, even if the letter had been sent or forwarded to Artuz, sending a letter to a supervisory official does not amount to the level of personal involvement necessary to state a claim under § 1983, because

> ... it is well established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegation made therein is insufficient to hold that official liable for the alleged violations.

*Greenwald v. Coughlin,* 1995 WL 232736, \*4 (S.D.N.Y. 1995); *see also Zamakshari v. Dvoskin,* 899 F. Supp. 1097, 1110 (S.D.N.Y. 1997) (citing *Candelaria v. Coughlin,* 787 F. Supp. 368, 373 (S.D.N.Y. 1992), *aff'd,* 979 F.2d 845 (2d Cir. 1992); *Garrido v. Coughlin,* 716 F. Supp. 98, 100 (S.D.N.Y. 1989)).

Plaintiff's second argument is directly contrary to the holdings of *Monell* and its progeny. *Monell v. N.Y.C. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S. Ct. 2018 (1978); *accord City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S. Ct. 915 (1988); *see also Hendricks v. Coughlin,* 114 F.3d 390, 394 (2d Cir. 1997); *Champion v. Artuz,* 76 F.3d 483, 486-87 (2d Cir. 1996); *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir. 1995); *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir. 1995). Plaintiff argues that Artuz and Bliden are liable by virtue of their supervisory position with respect to Rabbi Chill. In *Monell,* however, the Supreme Court stated unequivocally that a plaintiff may not rely on the doctrine of *respondeat superior* to impose liability on a supervisory official in a § 1983 action. *Monell,* 436 U.S. at 691, 98 S. Ct. at 2036. Accordingly, plaintiff's motion with respect to defendants Artuz and Bliden must be dismissed.

*CONCLUSION*

For the reasons set forth above, the motion of defendants Artuz and Bliden to dismiss plaintiff's claims against them is granted.

SO ORDERED:

Dated: New York, New York
 **\*4** September 10, 1997

**All Citations**

Not Reported in F.Supp., 1997 WL 576038

---

🚩 KeyCite Yellow Flag - Negative Treatment

Called into Doubt by  Lanning v. City of Glens Falls,   2nd Cir.,   November 7, 2018

2016 WL 915243

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Daniel PENREE and D-M.W., a minor
child, by Daniel Penree, his father, Plaintiffs,

v.

CITY OF UTICA, NEW YORK; City of Utica Police
Department Chief of Police, Mark Williams; City of
Utica Police Sergeant Watson; City of Utica Police
Officer Ciccone; City of Utica Police Officer Skabinski;
John Does and Jane Does, whose identities are yet
to be ascertained, and who are members of the City
of Utica Police Department as Officers, Defendants.

6:13-cv-01323 (MAD/ATB)

|

Signed 03/04/2016

**Attorneys and Law Firms**

NORMAN P. DEEP, ESQ., DEEP LAW OFFICE, 6599
Martin Street, Rome, New York 13440, Attorney for Plaintiff
Daniel Penree.

A.J. BOSMAN, ESQ., THE CHILDREN'S RIGHTS
INITIATIVE, INC., 6599 Martin Street, Rome, New York
13440, Attorneys for Plaintiff D-M.W.

ZACHARY C. OREN, ESQ., MARK C. CURLEY,
ESQ., MERIMA SMAJIC, ESQ., CITY OF UTICA
CORPORATION COUNSEL, 1 Kennedy Plaza, 2nd Floor,
Utica, New York 13502, Attorneys for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge

**I. INTRODUCTION**

**\*1** On October 23, 2013, Daniel Penree and D-M.W.
("Plaintiffs") commenced this action pursuant to 🚩 42 U.S.C.
§ 1983 and New York law. See Dkt. No. 1. On June 23, 2014,

Plaintiffs filed an amended complaint. See Dkt. No. 19. In
the amended complaint, Plaintiffs assert claims for excessive
force, failure to intervene, and failure to train, supervise, or
discipline in violation of the United States Constitution (the
"Constitution"). Additionally, Plaintiff Penree asserts claims
for false arrest, illegal search, and malicious prosecution in
violation of the Constitution. See id. Plaintiffs also assert
claims under New York law for negligence, gross negligence,
and assault and battery, and Plaintiff Penree asserts claims
under New York law for malicious prosecution and false
arrest. See id. Presently before the Court is Defendants'
summary judgment motion pursuant to Rule 56 of the Federal
Rules of Civil Procedure, seeking dismissal of this action
against them. See Dkt. No. 37.

**II. BACKGROUND**

Plaintiff Penree is the property owner of the residence located
at 1673 Nielson Street in the City of Utica. See Dkt. No.
37-6 at 13. In April 2012, he resided there with his two
minor children, including infant Plaintiff D-M.W. See id. at
13. Plaintiff has not ever kept any firearms in his house. [1] See
id. at 15. Danielle Williams is the mother of Plaintiff Penree's
children. See id. at 17. Plaintiff Penree and Danielle Williams
had a domestic incident on April 22, 2012, which involved
Danielle Williams leaving Plaintiff Penree's residence with
their children in the early hours of that morning. See Dkt.
No. 41-3. Plaintiff Penree called the police when he awoke
and found that his children were not present in his home. See
Dkt. No. 37-6 at 16-17. Plaintiff Penree's concern was that
Danielle Williams was intoxicated four hours earlier, and she
left the residence with the children some time during those
early morning hours. See id. The police were able to assist
Plaintiff Penree in locating his children at the residence of
Danielle Williams' parents. See id. at 18.

The responding police officers described their interaction
that day in the incident reports. See Dkt. Nos. 41-2; 41-3.
Officer Dzenan Sabanovic responded to Plaintiff Penree's call
reporting that Danielle Williams had endangered his children.
See Dkt. No. 41-2 at 2. Officer Sabanovic stated that he
did not have probable cause to call child protective services
("CPS") but that he would check on the children. See id. When
he arrived at the Williams' residence, he was confronted by
Williams who told him to "get the fuck out of here." See id.

He left and returned less than an hour later, and he observed
Plaintiff Penree exit his vehicle. See id. Plaintiff Penree

advised Officer Sabanovic that he wanted to get his children back, and they went together to the front door. *See id.* When Danielle Williams came to the door, an argument ensued and culminated in Danielle Williams' mother, Kim Williams, getting a large hammer and raising it above her head like she was going to swing it at them. *See id.* Plaintiff Penree became irate, and Officer Sabanovic repeatedly ordered Kim Williams to drop the hammer, but she refused. *See id.* Eventually, the door was closed and Plaintiff Penree walked away and, according to the report, said "I will fucking kill all of you" before driving away. *See id.* As a result, both Kim Williams and Plaintiff Penree were charged with obstructing governmental administration. *See id.* at 3.

**\*2** The last police interaction that day was described by Utica police officer Adam Howe in a separate incident report, and the narrative report was reviewed and electronically signed by Defendant Lieutenant James Watson ("Defendant Watson") on April 22, 2012. *See* Dkt. No. 41-3. According to that report, Officer Howe arrived at the Williams' residence at about the same time that Plaintiff Penree arrived. *See id.* Plaintiff Penree asked for police assistance in delivering several items of clothing, a cell phone, and some infant formula to Danielle Williams and his children at her parents' residence. *See id.* Officer Howe delivered the items to Danielle Williams. *See id.* That was the fifth time the Utica Police Department was called on April 22, 2012 regarding "the ongoing dispute between Penree and Williams." *See id.*

The following day, April 23, 2012, Danielle Williams returned to Plaintiff Penree's residence to bring the children to him. *See* Dkt. No. 41-4. According to Plaintiff Penree, he asked Danielle Williams to leave his residence, and she reacted with violence towards him. *See* Dkt. No. 37-6 at 28. When Danielle Williams continued to be physically aggressive, he physically removed her from his home and took the key to his house from her. *See* Dkt. No. 37-6 at 29-30. He then called 9-1-1 and reported that the mother of his children had attacked him in front of his children. *See* Dkt. No. 45-1 at 39. The police records indicate that they were advised that there were no weapons or alcohol in the house. *See* Dkt. No. 37-3 at 17.

Plaintiff Penree advised the responding police officers that Danielle Williams came after him again in front of his kids. *See id.* at 41. The police officers who initially arrived at Plaintiff Penree's residence are Defendants Joshua Skibinski [2] ("Defendant Skibinski") and Titus Ciccone ("Defendant Ciccone"). *See* Dkt. No. 45-1 at 8. Plaintiff

Penree advised them that he had visitation with his kids at that time and had documentation to prove it. *See id.* at 8, 41. He told the officers that the kids were safe, and he asked them to have Danielle Williams removed from his property. *See id.* at 41.

When Defendants Skibinski and Ciccone arrived at the residence, they observed Danielle Williams standing in front of the house on the sidewalk. *See* Dkt. Nos. 41-4; 45-1 at 9. Danielle Williams was known to Defendant Skibinski from previous police interactions. *See* Dkt. No. 45-1 at 9. She complained that she had gotten into a physical altercation with Plaintiff Penree that ended with him on top of her. *See id.* at 10. This altercation was witnessed by Plaintiff D-M.W. *See id.* Danielle Williams described that Plaintiff Penree pushed her out the front door which led to her falling down the stairs. *See* Dkt. No. 41-4.

Defendants Skibinski and Ciccone approached Plaintiff Penree while he was standing on his front porch and asked if they could enter his home. *See* Dkt. No. 41-4 at 3. Plaintiff Penree denied their request to enter the home but spoke with the officers from his porch. *See id.* Defendant Skibiniski asked to see the children to ensure that they were "ok." *See id.* Plaintiff Penree again would not allow the officers to enter his home, but he brought the children out onto the porch so that they could be observed. *See id.* Defendant Skibiniski records in his report that the children "appeared ok." *See id.* Defendant Skibinski observed that the children were not crying, and Plaintiff Penree claims that Defendant Skibinski said "they look good to me." *See id.* at 42-43. Plaintiff Penree then went back into his house with the children, and the officers returned to their car. *See* Dkt. Nos. 37-6 at 36; 45-1 at 42-43.

**\*3** Defendant Skibinski testified that he did not act when the children were outside on the porch of the house because he did not have any reasonable basis to do so. *See* Dkt. No. 45-1 at 23. Further, Defendant Skibinski stated that if the children had not been in the house, the police would not have entered Plaintiff Penree's residence without a warrant. *See id.* at 19. Defendant Skibiniski articulated that his decision to enter the home to make an arrest on April 23, 2012 was because the police "were concerned for the welfare of the children." *See* Dkt. No. 45-1 at 18. Specifically, Defendant Skibinski explained that the police did not know "what the conditions were in the home, there's no way to — who knows if stuff got broken while [Plaintiff Penree and Danielle Williams] were fighting. There could be glass on the floor or he may not

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 50 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

have food there for them. They might not have clothes and stuff." *See id.* at 18. The police officers did not attempt to get a warrant to arrest Plaintiff and they did not attempt to call child protective services at any time on April 23, 2012., *See id.* at 34.

According to Plaintiff Penree, the officers left the area of his front door for approximately thirty to forty-five minutes, and, in that time, he was able to put his youngest child down for a nap. *See* Dkt. Nos. 45-1 at 47; 37-6 at 36. During that time, Defendant Skibinski prepared a written complaint for harassment in the second degree, which was reviewed and signed by Danielle Williams. *See* Dkt. No. 41-4 at 3. It was also during this time that Defendant James Watson, a sergeant with the City of Utica Police Department, arrived on the scene. *See* Dkt. Nos. 37-3 at 9; 37-7 at 6-8. Defendant Watson spoke with Defendants Ciccone and Skibinski as well as Danielle Williams about the situation. *See* Dkt. Nos. 37-3 at 9; 37-7 at 9-10. Defendant Skibinski informed Defendant Watson that he had seen the children and that they looked "ok." *See* Dkt. No. 37-7 at 12. The on-scene officers also told Defendant Watson that they were concerned for the children because they felt "[Plaintiff Penree's] mental state maybe wasn't such that he would be able to take care of children at that point." *See id.* at 12. Defendant Watson testified that he had the right to enter into Plaintiff Penree's home because he believed that Plaintiff Penree was under arrest for harassment in the second degree against Danielle Williams. *See id.* at 23.

Danielle Williams did not ever represent to the police officers that the house was her residence. *See* Dkt. No. 45-1 at 25. According to the police report, Danielle Williams did advise that she had an additional key to Plaintiff Penree's home, and her father, Terry Williams, arrived on the scene with that key to the house. *See* Dkt. No.41-4 at 3. Plaintiff Penree heard people coming up the outside stairs to his enclosed mud room and observed Defendant Watson and Terry Williams standing in front of his door with the house key. *See* Dkt. No. 37-6 at 40. Plaintiff Penree yelled out that they were not permitted to enter his house, and he dead bolted the lock to the interior door of the mud room. *See id.* at 40-41.

Plaintiff Penree observed that Defendant Watson and Terry Williams were attempting to open the lock of the interior mud room door that led to the interior of his home. *See id.* at 41. Defendant Watson stated that, while standing inside Plaintiff Penree's mud room, he used the key to attempt to unlock the interior door of that room but he was unsuccessful because Plaintiff Penree "made it back to the door." *See* Dkt. No.

37-3 at 10. Defendant Watson continued to asked Plaintiff Penree to open his door so that they could talk with him, and Plaintiff Penree continued to decline to open the door. *See id.* at 42. The police officers continued in this manner for an additional period of time. *See id.* According to the police reports, it was one hour from the time that Defendants Skibinski and Ciccone first responded to Plaintiff Penree's 9-1-1 call until the time that Defendants Skibinski, Ciccone, and Watson arrested him. *See* Dkt. Nos. 37-3 at 4; 41-4; 41-8. Plaintiff Penree was advised that he was not under arrest, and he asked that everyone leave his property. *See* Dkt. No. 37-6 at 43. He felt threatened at this time. *See id.*

**\*4** Defendants Skibinski, Ciccone, and Watson again entered the enclosed mud room with Danielle Williams and further requested that Plaintiff Penree provide some of her belongings from inside the house. *See* Dkt. No. 41-4 at 3. After Plaintiff Penree refused, the officers had Danielle Williams leave the enclosed mud room while they continued to speak with Plaintiff Penree through the windowed door. *See id.* Eventually, they convinced him to provide some belongings that he would pass through the door. *See id.* Defendants Skibinski, Ciccone, and Watson had contrived this plan to induce Plaintiff Penree into opening the door so that Danielle Williams could make a citizen's arrest. *See* Dkt. No. 45-1 at 16, 26.

While Plaintiff Penree was collecting some of Danielle Williams belongings, Defendants Skibinski, Ciccone, and Watson had her enter the enclosed mud room again so that when the door opened, she could place Plaintiff Penree under a citizen's arrest. *See* Dkt. No. 41-4 at 3. While Defendants were standing inside the mud room, Defendant Skibinski asked Danielle Williams if there were any fire arms in the house, and she responded that "he used to but she didn't know if he still did." *See id.* Before the door was opened, Plaintiff Penree confirmed that he was not under arrest and advised the officers that he was holding Plaintiff D-M.W. *See* Dkt. No. 37-6 at 44. When Plaintiff Penree cracked open his front door, Defendants Skibinski, Watson, and Ciccone forced the door open and further entered Plaintiff Penree's residence. *See* Dkt. Nos. 37-6 at 45; 45-1 at 46. At that point in time, none of the officers said that he was under arrest. *See* Dkt. No. 45-1 at 27-28.

As Defendants were "slamming" the door open, Plaintiff Penree turned and went upstairs to his bedroom with Plaintiff D-M.W. *See* Dkt. No. 37-6 at 45. Defendants proceeded up the stairs after them, and Plaintiff Penree shut his bedroom

door and attempted to barricade himself in with his body. *See id.* at 47. Defendants were pushing on the bedroom door and, when Plaintiff Penree heard the door start to break, he feared for his child's safety and moved away from the door. *See id.* Defendants Watson, Skibinski, and Ciccone then entered into the bedroom and deployed taser darts into Plaintiff Penree's back while he was holding Plaintiff D-M.W. *See* Dkt. Nos. 37-6 at 48-49; 41-4 at 3. Both Plaintiffs fell to the ground and Plaintiff D-M.W. sustained a head injury. *See id.* at 49-75.

Plaintiff Penree claims that he was not ever told that he was under arrest prior to being handcuffed. *See* Dkt. No. 37-6 at 48. Defendants do not dispute that they were aware Plaintiff Penree was holding the toddler when they entered the bedroom. *See* Dkt. No. 41-4 at 3. According to the police report, Defendants Watson, Skibinski, and Ciccone discussed the use of force just prior to forcibly pushing further into Plaintiff Penree's residence, and they had decided that, if necessary, the taser was preferable to pepper spray. *See* Dkt. No. 37-3 at 9. Plaintiff DM.W.'s head injury is depicted in photographs. *See* Dkt. No. 37-12 at 2-4. Defendant Watson picked up Plaintiff D-M.W. from the floor, and Plaintiff Penree was then handcuffed by Defendants Ciccone and Watson. *See* Dkt. Nos. 37-3 at 10; 37-6 at 51.

Plaintiff Penree was transported to the police station and complained that the handcuffs were too tight. *See* Dkt. No. 37-6 at 52. Plaintiff Penree was examined by an emergency medical person from the fire department, and Defendant Skibinski prepared and filed the criminal complaint. *See* Dkt. Nos. 37-3 at 15; 41-4 at 3; 41-8. Plaintiff was charged with (1) harassment in the second degree in violation of New York Penal Law § 240.26(1) based upon the complaint filed by Danielle Williams; (2) harassment in the second degree in violation of New York Penal Law § 240.26(1) based upon the complaint filed by Defendant Skibinski; (3) endangering the welfare of a child in violation of New York Penal Law § 260.10(1) based upon Plaintiff Penree's attempt to push the door closed on Defendants and his run up the stairs while holding Plaintiff DM.W.; and (4) resisting arrest in violation of New York Penal Law § 205.30. *See* Dkt. Nos. 37-3; 41-7; 41-8. As a result, an order of protection was issued against Plaintiff Penree ordering him to stay away. *See* Dkt. No. 37-3 at 15. Plaintiff Penree was released on bail that same evening. *See* Dkt. No. 37-3 at 12. On June 15, 2012, Danielle Williams had a dispute with the police department and advised them that she was no longer willing to come to court. *See* Dkt. No. 37-3 at 15.

**\*5** On November 29, 2012, a *Payton* hearing was conducted, *see* Dkt. No. 45-1 at 1-63, and, on November 22, 2013, a city court judge dismissed all the criminal charges against Plaintiff Penree finding that no exigent circumstances existed that would have allowed the warrantless arrest of Plaintiff Penree in his home, *see* Dkt. No. 41-10. The city court judge also found that in thirty to forty-five minutes, the police would have been able to obtain an arrest warrant. *See id.*

On October 23, 2013, Plaintiffs commenced this action alleging violations of their constitutional rights as well as state tort claims. *See* Dkt. No. 1. An amended complaint was filed on June 23, 2014. *See* Dkt. No. 19. Defendants appeared in this action and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, have moved for summary judgment dismissing the amended complaint. *See* Dkt. Nos. 12; 21; 37. For the reasons set forth, Defendants motion is granted in part and denied in part.

## III. DISCUSSION

### A. Legal Standard
A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the undisputed facts warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). "The moving party bears the burden of showing that he or she is entitled to summary judgment." *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party must identify those portions of the record which demonstrate that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Chambers*, 43 F.3d at 36-37 (quotation marks and other citation omitted).

Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex*, 477 U.S. at 324 (citing FED. R. CIV. P. 56(c), (e)). In assessing whether any such issues of material fact exist within the record, the court is required to resolve all ambiguities and draw all reasonable inferences in

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 52 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

**B. State Tort Claims**

Plaintiff Penree alleges a state law claim for false arrest based on his claim that Defendants Watson, Ciccone, and Skibinski arrested him without a warrant and without probable cause, detained him, and transported him against his will. *See* Dkt. No. 19 at ¶¶ 65-66. Plaintiff Penree's eighth cause of action is for malicious prosecution under state law. *See id.* at ¶¶ 75-79. Plaintiffs allege assault claims against Defendants Watson, Ciccone, and Skibinski claiming that Defendants placed them in immediate apprehension of imminent harmful or offensive contact without privilege. *See id.* at ¶¶ 56-58. Plaintiffs also allege that Defendants unlawfully, intentionally, and recklessly touched and battered the Plaintiffs. *See id.* Plaintiffs maintain that Defendant City of Utica and Defendant Police Chief Williams were negligent and, in turn, their negligence caused the offending conduct of Defendants Watson, Ciccone, and Skibinski. *See id.* at ¶¶ 61-63.

Federal courts apply state statutes of limitations to state law claims, *see Vincent v. Money Store*, 915 F. Supp. 2d 553, 560-61 (S.D.N.Y. 2013) (stating that it makes no difference if the state law claims are presented in federal court based on diversity jurisdiction or supplemental jurisdiction), and apply state notice of claim statutes to state law claims as well. *See Reyes v. City of New York*, 992 F. Supp. 2d 290, 300 (S.D.N.Y. 2014) (quoting *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999)). The Second Circuit has stated that New York's General Municipal Law controls when a plaintiff sues a city for tortious conduct, and it also controls those claims against any employee of a city "if the municipality is required to indemnify the defendant pursuant to the General Municipal Law or any other statutory provision and is therefore 'the real party in interest.'" *Conte v. Cty. of Nassau*, 596 Fed. Appx. 1, 5 (2d Cir. 2014) (quoting *Ruggiero v. Phillips*, 292 A.D.2d 41 (4th Dep't 2002)). General Municipal Law § 50-j provides that a city is "liable for ... any duly appointed police officer of such municipality, authority or agency for any negligent act or tort, provided such police officer, at the time of the negligent act or tort complained of, was acting in the performance of his duties and within the scope of his employment." *See also LaGrange v.*

*Ryan*, 142 F. Supp. 2d 287, 295 (N.D.N.Y. 2001) (stating that notice of claim requirements are not limited to just negligence claims but must also be served for "intentional tort actions against police officers."). Defendants have admitted that the individually named officers were employees of the City of Utica. *See* Dkt. Nos. 19 at ¶ 5; 21 at ¶ at 1.

**\*6** The statute of limitations for any state claims for tortious conduct, including false arrest/false imprisonment, malicious prosecution, negligence, gross negligence, assault, and battery against Defendants is one year and ninety days pursuant to New York General Municipal Law § 50-i. In this case, the alleged conduct of negligence, gross negligence, assault, and battery took place on April 23, 2012, and, therefore, the statute of limitations on Plaintiff Penree's state law personal injury claims expired on July 22, 2013, which is three months before Plaintiffs commenced this action. *See* Dkt. Nos. 1, 19. The Court dismisses Plaintiff Penree's fourth and fifth causes of action for negligence, gross negligence, assault, and battery as barred by the statute of limitations.

Plaintiff Penree was arrested and brought to the Utica Police Department where the charges were filed against him. *See* Dkt. Nos. 37-6 at 54; 41-7. Some time later, Plaintiff Penree was able to post bail and was released from police custody on April 23, 2012. *See* Dkt. No. 41-7 at 54, 57. The time limitations of General Municipal Law § 50-i also controls the state tort of false imprisonment/false arrest, which is an intentional tort under state law. *See Peresluha v. City of New York*, 60 A.D.2d 226, 229 (1st Dep't 1977); *see also Rosado v. City of New York*, 713 F. Supp. 124, 126 (S.D.N.Y. 1989) (listing the claim of false imprisonment as an intentional tort). Having been arrested and released from custody on April 23, 2012, Plaintiff Penree had until July 22, 2013 to commence an action under state law for false arrest/false imprisonment, and he did not file his complaint until October 23, 2013. The Court dismisses Plaintiff Penree's state claim for false arrest/false imprisonment because it is also barred by the statute of limitations.

However, Plaintiff D-M.W.'s claims for negligence, gross negligence, assault, and battery are not barred by the one year and ninety day statute of limitations because D-M.W.'s status as an infant tolls the time limitation. *See Cohen v. Pearl River Union Free Sch. Dist.*, 51 N.Y.2d 256, 262-63 (1980). In addition, Plaintiff D-M.W.'s time to serve a late notice of claim is likewise tolled for infancy. *See id.* at 263. Therefore, the Court will address the substance of Plaintiff DM.W.'s

negligence, assault, and battery claims. When negligence is claimed against a municipality, it is necessary to determine "whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose." 🚩 *Applewhite v. Accuhealth, Inc.,* 21 N.Y.3d 420, 425 (2013). A proprietary function is being carried out when the municipality's "'activities essentially substitute for or supplement traditionally private enterprises.'" *Id.* (quoting 🚩 *Sebastian v. State,* 93 N.Y.2d 790, 793 (1999)). If the municipal function is proprietary, then the municipality is subject to the ordinary rules of negligence that are applicable to non-governmental parties. *See id.*

If the governmental entity was acting in a governmental capacity, meaning that "its acts are 'undertaken for the protection and safety of the public pursuant to the general police powers,'" then the plaintiff must show that he or she was owed a "special duty." *Id.* (quoting 🚩 *Sebastian,* 93 N.Y.2d at 793); *see also* 🚩 *Velez v. City of New York,* 730 F.3d 128, 135 (2d Cir. 2013). Actions taken "for the protection and safety of the public pursuant to the general police powers" are governmental functions. 🚩 *Velez,* 730 F.3d at 134-35. The New York Court of Appeals stated that "[p]olice and fire protection are examples of long-recognized, quintessential governmental functions." 🚩 *Applewhite,* 21 N.Y.3d at 425 (citing 🚩 *Valdez v. City of New York,* 18 N.Y.3d 69, 75 (2011)).

*7 Here, the alleged negligence of Defendant City of Utica and Defendant Williams was taken pursuant to their general police powers, and, therefore, Plaintiff D-M.W. must prove that a special relationship existed between the minor and Defendants City of Utica and Williams. *See* 🚩 *Velez,* 730 F.3d at 135 ("The core principle is that to sustain liability against a municipality, the duty breached must be more than that owed the public generally") (internal quotation marks and citations omitted). A "special relationship" requires four elements to be present, which are:

> (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to

harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

🚩 *Velez,* 730 F.3d at 135. Plaintiff D-M.W. has failed to establish that any of these elements were present, and, without meeting that burden, Plaintiff D-M.W.'s claims for negligence fail. The Court dismisses Plaintiff D-M.W.'s claims for negligence.

Plaintiff D-M.W. also maintains state claims for assault and battery. *See* Dkt. No. 19 at ¶¶ 56-59. Under New York law, assault is "the intentional placing of another in apprehension of imminent harmful or offensive contact," and battery is "(1) bodily contact, which is (2) harmful or offensive in nature, and (3) made with intent." *Merzon v. Cty. of Suffolk,* 767 F. Supp. 432, 448 (E.D.N.Y. 1991). In this case, Plaintiff D-M.W. was being held in his father's arms at the time of the alleged assault and battery. *See* Dkt. No. 37-3 at 10-11, 14. The fact that Defendants Watson, Ciccone, and Skibinski did not act with the specific intent to put Plaintiff D-M.W. in apprehension of either a harmful or offensive bodily contact, or did not act with the specific intent to cause harmful or offensive bodily contact to him, is not fatal to Plaintiff D-M.W.'s claims. Plaintiff D-M.W.'s allegations that these Defendants acted with the requisite intent toward Plaintiff Penree is sufficient to withstand dismissal of his or her claims for assault and battery. *See* *Parler v. North Ins. Co.,* 129 A.D.3d 926, 928 (2d Dep't 2015) (stating that "the fact that the bar stool made physical contact with [the plaintiff] and not the intended target does not negate the conclusion that the act was done with the intention to commit an assault or a battery."); *Jones v. State,* 96 A.D.2d 105, 110-11 (4th Dep't 1983) (stating that the defendants do not escape liability because the intent was to injure someone else but the plaintiff was unintentionally struck). The Court denies Defendants' motion for summary judgment on Plaintiff D-M.W.'s assault and battery claims.

## C. Fourth Amendment Claims

Plaintiff Penree claims that Defendants Watson, Ciccone, and Skibinski restrained him against his will without probable cause and without a warrant, and Defendants "arrested, detained and transported" him against his will. *See* Dkt. No. 19 at ¶¶ 65-66. According to Plaintiff Penree, the

---

Case 5:22-cv-01011-BKS-ML   Document 30   Filed 09/20/23   Page 54 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

entrance into his home by Defendants Watson, Ciccone, and Skibinski was an unreasonable search and seizure in violation of his constitutional rights. *See id.* at ¶¶ 67-68. Plaintiffs also contend the use of force by Defendants prior to and during Plaintiff Penree's arrest was excessive and objectively unreasonable in violation of Plaintiff Penree's Fourth Amendment rights. *See id.* at ¶¶ 31-36. Finally, Plaintiff Penree's seventh cause of action alleges that Defendants maliciously prosecuted him in violation of the Fourth Amendment. [3] *See id.* at ¶¶ 69-73.

**\*8** The Fourth Amendment of the United States Constitution (the "Fourth Amendment") provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Supreme Court in *Payton v. New York,* 445 U.S. 573, 585 (1980), stated that "[u]reasonable searches or seizures conducted without any warrant at all are condemned by the plain language of the first clause of the Amendment." The warrantless arrest of a person is a seizure, which the Fourth Amendment requires to be reasonable. *See id.* at 585. Further, the "'physical entry of the home is the chief evil against which the working of the Fourth Amendment is directed.'" *Id.* (quoting *United States v. United States Dis. Court,* 407 U.S. 297, 313 (1972)). A warrantless arrest within the home implicates not only the "invasion attendant to all arrests but also an invasion of the sanctity of the home." *United States v. Reed,* 572 F.2d 412, 423 (2d Cir. 1978).

The Fourth Amendment's prohibitions against unreasonable seizures applies equally to how an arrest is carried out, and, therefore, "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest ... should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490

U.S. 386, 395 (1989). Also, the Fourth Amendment provides the basis for a Section 1983 claim that alleges malicious prosecution. *See Singer v. Fulton Cty. Sheriff,* 63 F.3d 110, 115 (2d Cir. 1995) (citing *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (concluding that claims for malicious prosecution are analyzed under the Fourth Amendment and not substantive due process of the Fourteenth Amendment)).

### *1. False Arrest*

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted). A Section 1983 claim for false arrest/false imprisonment (collectively "false arrest") is analyzed under the law of the state where the arrest occurred. *See Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir. 2006). "Under New York law, false arrest is considered to be a species of false imprisonment, and the two claims have identical elements." *Mejia v. City of New York,* 119 F. Supp. 2d 232, 252 (E.D.N.Y. 2000) (citing *Singer,* 63 F.3d at 118).

The elements for a Section 1983 claim for false arrest are as follows: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer,* 63 F.3d at 118 (citing *Broughton v. State,* 37 N.Y.2d 451, 456 (1975)); *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994).

**\*9** A warrantless arrest, as was the case here, is "presumptively unlawful." *See Raysor v. Port Auth.,* 768 F.2d 34, 40 (2d Cir. 1985) (stating that "the plaintiff need not prove either malice or want of probable cause"); *see also Jenkins v. City of New York,* 478 F.3d 76, 88 (2d Cir. 2007). However, "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer,* 63 F.3d at 118 (citing *Bernard,* 25 F.3d at 102). Accordingly, the presumption that a warrantless arrest

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 55 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

is unlawful can be rebutted by the defendant if it is established that there was probable cause for the arrest. *See Jenkins,* 478 F.3d at 88. The existence of probable cause is a complete defense, for which the defendant bears the burden of proof. *See Dickerson v. Napolitano,* 604 F.3d 732, 751 (2d Cir. 2010); *Weyant,* 101 F.3d at 852 (citing *Bernard,* 25 F.3d at 102).

There is "probable cause to arrest ... when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant,* 101 F.3d at 852 (citations omitted). The standard is "a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *United States v. Delossantos,* 536 F.3d 155, 159 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Maryland v. Pringle,* 540 U.S. 366, 370 (2003)) (stating that probable cause protects "'citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime'" (quoting *Brinegar v. United States,* 338 U.S. 160, 176 (1949)).

"[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly,* 439 F.3d at 153 (citing *Devenpeck v. Alford,* 543 U.S. 146, 153 (2004)). The significance of those facts can be "enhanced" or "diminished" by the surrounding circumstances of the arrest, *see Jenkins,* 478 F.3d at 90, because the standard is fluid and contextual, *see Delossantos,* 536 F.3d at 159. The circumstances "must be considered from the perspective of a reasonable police officer in light of his training and experience." *Id.*

In determining whether there was probable cause for the arrest, the Court's analysis is not limited to the offense invoked by the arresting officer or the crimes that are ultimately charged, but, instead, probable cause "'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'" *Jaegly,* 439 F.3d at 153-54 (quoting *Devenpeck,* 543 U.S. at 152-53). Accordingly, the Court must focus on the "validity of the *arrest,* and not on the validity of each charge." *Id.* at 154. Whether there was probable cause is a question that can be determined as a matter of law on summary judgment "if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant,* 101 F.3d at 852; *see also Jenkins,* 478 F.3d at 88. Summary judgment should be granted in favor of the defendants where the facts, construed in favor of the plaintiff, establish that the officer's probable cause determination was objectively reasonable. *See Jenkins,* 478 F.3d at 88.

In the present case, Defendants Watson, Skibinski, and Ciccone entered into Plaintiff Penree's home with the stated intention to attempt to take Plaintiff Penree into custody based upon Danielle Williams' complaint for harassment in the second degree. *See* Dkt. Nos. 37-7 at 30; 45-1 at 18. Defendants Watson, Ciccone, and Skibinski were attempting to coerce Plaintiff Penree out of his home under the false pretenses of asking for some of Danielle Williams' belongings. *See* Dkt. No. 45-1 at 26. Their plan was to have Danielle Williams tell Plaintiff Penree that he was under citizen's arrest when he opened the interior door of his mud room. *See* Dkt. Nos. 37-3 at 14; 37-7 at 23, 30; 45-1 at 16. When Plaintiff Penree cracked open the door, Defendants claim that Danielle Williams said he was under arrest. *See* Dkt. No. 37-3 at 11. None of the officers said that he was under arrest. *See* Dkt. No. 54-1 at 27-28.

**\*10** The only argument made by Defendants in their motion for summary judgment is that Defendants had probable cause to arrest Plaintiff Penree for harassment in the second degree based on Danielle Williams' written complaint together with the red marks on her legs, the absence of marks on Plaintiff Penree's arms, and an alleged threat that Plaintiff Penree made the day before "arguably" toward Danielle Williams. *See* Dkt. No. 37-23 at 18-20.[4] "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest *absent* circumstances that raise doubts as to the victim's veracity." *Singer,* 63 F.3d at 119 (emphasis added); *see also Breitbard v. Mitchell,* 390 F. Supp. 2d 237, 245 (E.D.N.Y. 2005). Probable cause should be found to exist even if the information is incorrect, so long as the reliance was reasonable. *See Bernard,* 25 F.3d at 103.

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 56 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

Here, Danielle Williams claimed to be the victim of a statutory violation, so the Court's inquiry is "whether there were 'circumstances that raise[d] doubts'" as to her veracity. *Rae v. Cty. of Suffolk*, 693 F. Supp. 2d 217, 224 (E.D.N.Y. 2010) (quoting *Singer*, 63 F.3d at 119). To begin with, Defendants admit that they were familiar with Plaintiff Penree and Danielle Williams due to repeated domestic incidents requiring police intervention. *See* Dkt. Nos. 37-3 at 9; 45-1 at 11. The previous domestic incidents listed on the Utica Police Department's records, submitted by Defendants, indicate that Plaintiff Penree had multiple domestic incidents prior to April 23, 2012 where the "caller" reported harassment and other domestic disputes against Plaintiff Penree that were determined to be unfounded by the responding police officers. *See* Dkt. No. 37-5 at 5-7. Those same records indicate that Plaintiff Penree was the *victim* of harassment and other domestic disputes. *See id.* The police record is so replete with these incidents that an overall familiarity with the domestic disputes between Danielle Williams and Plaintiff Penree would indicate to a reasonable officer that Danielle Williams was an unreliable witness.

Also, Danielle Williams' version of the domestic dispute with Plaintiff Penree, as described in the complaint, was vague as to her own violent behavior. *See* Dkt. No. 41-4 at 3. She told Defendant Skibinski that she was arguing with Plaintiff Penree and "they had a physical altercation which lead [sic] to her being on the floor with Dan on top of her." *See* Dkt. No. 45-1 at 10. Her version of events was disputed by Plaintiff Penree's statement to Defendants Skibinski and Ciccone. *See* Dkt. No. 41-4 at 3. Plaintiff Penree called the police and reported that he had been attacked in his home by the mother of his children. *See id.* at 40. When Defendants Skibinski and Ciccone responded, Plaintiff Penree told them Danielle Williams attacked him in front of the children and that he restrained her so that she could not strike him again. *See id.* at 41. He also advised Defendants that he wanted Danielle Williams removed from his property and that he had a custody order to show that he had visitation with his kids at that time. *See id.* While Defendant Watson testified that Plaintiff Penree did not use any foul language at him during their conversations, Danielle Williams is described in the police report as hysterical. *See* Dkt. Nos. 37-3 at 13; 45-1 at 12.

Defendants were aware of Plaintiff Penree and Danielle Williams' domestic disputes on April 22, 2012 where Plaintiff Penree allegedly made a threat to "kill all of you." *See* Dkt. No. 37-3 at 14. The threat was made at the residence of Danielle Williams' parents after her mother retrieved a "large

hammer" and threatened to strike Plaintiff Penree and the police officer. *See* Dkt. No. 41-2 at 2. Although the police report documents that Plaintiff Penree was charged with obstructing governmental administration, Plaintiff Penree was not charged with any violations or crimes related to the "threat." *See* Dkt. No. 41-2 at 2. On the evening of April 22, 2012, Defendant Watson reviewed the report related to the fifth and final domestic call from that day related to Plaintiff Penree and Danielle Williams where Plaintiff Penree asked for police assistance to deliver clothing, a cell phone, and infant formula to Danielle Williams. *See* Dkt. No. 41-3.

**\*11** Defendants reliance on this proposed "threat" made the day before as a basis for probable cause to arrest Plaintiff Penree on an unrelated event is insufficient. Plaintiff Penree was not charged with any violations related to his statement. The Court notes that 'the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 415 (2d Cir. 1999) (internal quotations marks and citations omitted) (finding that there is no probable cause based on the plaintiff's statement to a police office that "One day you're going to get yours"). "As a result, provocative speech directed at police officers is protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Id.* (internal quotation marks and citations omitted) (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949) (stating that the meaning of a statement must be interpreted within the "context, tone, accompanying action, and a variety of other circumstances")). Here, where the police officer did not charge Plaintiff Penree with any violations for his statement, it is reasonable to believe that the officer did not find the statement to be a direct or immediate threat to him or anyone else. Accordingly, probable cause has not been established as a matter of law based upon Defendants' reliance on a statement made the day before as Plaintiff Penree was walking away from a contentious situation after being threatened with a hammer.

Plaintiff Penree argues his arrest was a violation of his Fourth Amendment rights because Defendants were not authorized under New York law to execute an arrest for a criminal violation that they did not witness. *See id.* at 7-11. Plaintiff Penree is correct that harassment in the second degree is a violation and that police officers are not authorized to make a warrantless arrest for a violation unless the offense takes

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 57 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

place in his or her presence. *See* N.Y. CRIM. PROC. LAW § 140.10(1); N.Y. PENAL LAW §§ 10.00(3), 240.26. Under New York law, harassment in the second degree must take place in the officer's presence to provide probable cause to arrest. *See Ramos v. City of New York,* 298 Fed. Appx. 84, 86 (2d Cir. 2008).

However, "a violation of state law does not, *ipso facto,* offend federal law; the Constitution, in other words, is not concerned with the restrictions that New York chooses to place on its police officers." *Mikulec v. Town of Cheektowaga,* 909 F. Supp. 2d 214, 225 (W.D.N.Y. 2012) (citing *Virginia v. Moore,* 553 U.S. 164, 176 (2008)); *see also Hotaling v. LaPlante,* 167 F. Supp. 2d 517, 522 (N.D.N.Y. 2001) (stating that the Fourth Amendment does not require that a police officer "personally witness the conduct upon which he or she relies to establish the existence of probable cause"); *Picciano v. McLoughlin,* 723 F. Supp. 2d 491, 504 (N.D.N.Y. 2010) (finding that a violation of a New York statute does not mean that the arrest lacked probable cause under the Fourth Amendment).

Further, Plaintiff Penree argues that Defendants' actions constituted an unreasonable seizure under the Fourth Amendment because they waited outside his home and "devised a scheme" to induce Plaintiff Penree to open the door to his residence. *See* Dkt. No. 44 at 7-11. The use of trickery or deception by police officers does not necessarily violate a suspect's Fourth Amendment rights. *See United States v. Giraldo,* 743 F. Supp. 152, 154 (2d Cir. 1990) (citing *Lewis v. United States,* 385 U.S. 206 (1966)). Plaintiff Penree does not raise facts that implicate an unlawful coercion because his free choice was not compromised by Defendants' request for Ms. Williams' belongings, even if that request was deceptive. Also, the police are permitted to seize a suspect before entering or after leaving a residence. *See Steagald v. United States,* 451 U.S. 204, 221 (1981) (noting that the need to obtain a search warrant can be avoided by simply waiting for a suspect to leave a residence). Accordingly, the Court does not agree with Plaintiff Penree that the police action of waiting outside of his home or deceiving him violated his rights under the Fourth Amendment.

In any event, the Court finds that Defendants did not meet their burden in establishing that there was probable cause to arrest Plaintiff Penree for harassment in the second degree.

Defendants did not show as a matter of law that Defendants Watson, Ciccone, and Skibinski had reasonably trustworthy information to believe that Plaintiff Penree committed a crime against Danielle Williams.

### *2. Unreasonable Search*

**\*12** The warrantless entry into a home is presumptively unreasonable under the Fourth Amendment. *See Welsh v. Wisconsin,* 466 U.S. 740, 749 (1984); *Payton,* 445 U.S. at 586. An arrest within the home is "simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances ... even when probable cause is clearly present." *Payton,* 445 U.S. at 589 (citations omitted) (explaining that "the warrant procedure minimizes the danger of needless intrusions" into the home). Absent exigent circumstances, the threshold to a home "may not reasonably be crossed without a warrant." *Id.* at 590. Even an invasion of a "fraction of an inch is too much to be tolerated." *See Loria v. Gorman,* 306 F.3d 1271, 1284 (2d Cir. 2002) (internal quotation marks omitted) (quoting *Kyllo v. United States,* 533 U.S. 27, 37 (2001)). Therefore, to make a lawful entry into a home, the Fourth Amendment requires that probable cause *plus* exigent circumstances exist in order to "overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh,* 466 U.S. at 750; *see also Loria,* 306 F.3d at 1283.

The Fourth Amendment protection accorded to the home includes the curtilage of the home, that is the "area to which extends the intimate activity associated with the sanctity of a [person's] home and the privacies of life." *United States v. Hayes,* 551 F.3d 138, 146 (2d Cir. 2008); *see also United States v. Dunn,* 480 U.S. 294, 300-01 (1987) (quoting *Oliver v. United States,* 466 U.S. 170, 180 (1984)). In order to determine whether an area is included in the curtilage of a home and, thus, entitled to the same privacy protections as the home, the courts examine several factors, which are "(1) the area's proximity to the main residence; (2) any enclosure of the property or area; (3) use of the property or area; and (4) steps taken to protect the property or area from view." *Hayes,* 551 F.3d at 146.

The Second Circuit applies these factors and further evaluates curtilage with an objective question, "'whether society would recognize the particular area claimed as within the curtilage of the home,'" and a subjective question, "'whether the defendant has manifested a subjective expectation of privacy in that area.'" *Hayes,* 551 F.3d at 146 (quoting *United States v. Titemore,* 437 F.3d 251, 258 (2d Cir. 2006)). Without this further evaluation, a Fourth Amendment analysis is incomplete because "it is possible that an area might fall within the curtilage of the home, as that concept was defined at common law, but the owner or resident may fail to manifest a subjective expectation of privacy in that area." *Titemore,* 437 F.3d at 258.

Here, Defendants Watson, Skibinski, and Ciccone entered into an area, described by Plaintiff Penree as the mud room, which is attached to the home and completely enclosed by exterior walls and an exterior door with a lock. [5] *See* Dkt. Nos. 37-6 at 39; 37-11 at 6. It is not disputed that initially the exterior door to the mud room was closed. *See* Dkt. Nos. 37-3 at 9; 37-6 at 39. Defendant Watson's report indicates that this door was locked, and he permitted Danielle Williams to open the exterior door with a key that one of her parents brought to the scene. *See* Dkt. Nos. 37-3 at 9; 37-6 at 39.

Defendants Watson, Skibinski, and Ciccone reported that they entered into the enclosed area with Danielle Williams and "encountered another locked door." *See* Dkt. Nos. 37-3 at 9; 37-7 at 21. Defendant Watson permitted Danielle Williams to attempt to unlock the interior door, but Plaintiff Penree prevented her by "dead lock[ing]" that interior door. *See* Dkt. No. 37-3 at 9. Danielle Williams was asked to leave the interior area, and, at some point after, Defendant Watson also used the key to attempt to unlock the interior door, but he was unsuccessful. *See* Dkt. No. 37-3 at 10.

**\*13** Applying the curtilage-determining factors to the subject area, the Court finds that the mud room was "curtilage *per se.*" *Titemore,* 437 F.3d at 258." The mud room is physically attached to the main residence of the home and is enclosed on the other three sides by exterior walls with a roof. *See* Dkt. Nos. 37-6 at 39; 37-11 at 6. The area is described by Plaintiff as his mud room, and the exterior door of this mud room was closed and locked when approached by Defendants. *See* Dkt. No. 37-3 at 9.

However, as noted above, the Court must further evaluate whether Plaintiff Penree "manifested a subjective expectation

of privacy in that area." *Hayes,* 551 F.3d at 146. The Court finds Plaintiff Penree's actions of locking the exterior door and referring to the enclosed space as his mud room demonstrates his subjective expectation of privacy in that space. *See* Dkt. No. 37-6 at 38. Further, Plaintiff Penree testifies that the exterior door is the door to his home, *see* Dkt. No. 37-6 at 36, the front door, *see id.* at 38, and the initial door to his home, *see id.* at 39. The undisputed facts in the record, clearly establish Plaintiff Penree's subjective expectation of privacy in his mud room.

Next, the Court turns to whether exigent circumstances justified a warrantless entry into Plaintiff Penree's home. "In determining whether exigent circumstances exist, '[t]he core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to render aid or take action.'" *United States v. Simmons,* 661 F.3d 151, 157 (2d Cir. 2011) (quoting *United States v. Klump,* 536 F.3d 113, 117-18 (2d Cir. 2008)); *Loria,* 306 F.3d at 1284 (citing *United States v. McDonald,* 916 F.2d 766, 769 (2d Cir. 1990)). This test "is an objective one that turns on the district court's examination of the totality of the circumstances confronting law enforcement agents in the particular case." *McDonald,* 916 F.2d at 769 (citations omitted). The Second Circuit set forth the following factors as guides to determine if such exigent circumstances existed:

> (1) the gravity or violent nature of the offense with which the aspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause ... to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

*Loria,* 306 F.3d at 1284 (stating that the list of factors is not an "exhaustive canon"); *see also* *United States v.*

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 59 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

*Reed*, 572 F.2d 412, 424 (2d Cir. 1978) (adopting the exigent circumstances factors set forth in 🚩⚠ *Dorman v. United States*, 435 U.S. 385, 392-93 (D.C. Cir. 1970)).

The gravity or violent nature of the underlying offense is a factor that weighs heavily in the determination of whether exigent circumstances exist. *See* 🚩 *Welsh*, 466 U.S. at 750-52. However, the Court is mindful that exigent circumstances are not created simply because there is probable cause to believe that a serious crime has been committed. *See* 🚩 *Welsh*, 466 U.S. at 753. Moreover "[w]hen the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate." 🚩 *Id.* at 750. The "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense ... has been committed." 🚩 *Id.* at 741.

 **\*14** Defendants Watson, Ciccone, and Skibinski entered into Plaintiff Penree's home seeking to arrest him for harassment in the second degree pursuant to the domestic complaint by Danielle Williams. *See* Dkt. No. 41-4 at 3. Under New York law, harassment in the second degree is a violation, *see* 🚩 N.Y. PENAL LAW § 240.26, which "means an offense, other than a 'traffic infraction,' for which a sentence to a term for imprisonment in excess of fifteen days cannot be imposed," 🚩 N.Y. PENAL LAW § 10.00(3); *see also* 🚩 N.Y. CRIM. PROC. LAW § 140.10(1). Harassment in the second degree is not a crime, meaning it is not a misdemeanor or a felony, in New York. *See* 🚩 N.Y. PENAL LAW § 10.00(6). Therefore, the gravity-of-the-offense factor weighs against finding that exigent circumstances existed prior to Defendant officers entering into Plaintiff Penree's home.

The second factor is whether "the suspect is reasonably believed to be armed" because the "[d]elay in arrest of an armed felon may well increase danger to the community ... or to the officers at time of arrest." *See* 🚩⚠ *Dorman*, 435 F.2d at 392. This consideration also "bears materially on the justification for a warrantless entry." *Id.* The "mere suspicion or probable cause for belief of the presence of a firearm does

not, on its own, *create* urgency." 🚩 *Harris v. O'Hare*, 770 F.3d 224, 236 (2d Cir. 2014).

The undisputed facts are that while Defendants Watson, Skibinski, and Ciccone were waiting with Danielle Williams in the enclosed mud room of Plaintiff Penree's home, she was asked by Defendants if there were any guns in the house. *See* Dkt. No. 37-3 at 10, 14. She responded that Plaintiff Penree "had hunting guns in the past but wasn't sure if he had any in the house." *See id.* The Court has already determined that the entry into the residence occurred when Defendants entered into the mud room. There was no basis at that time to believe that Plaintiff Penree was armed.

Even if the Court were to consider that the threshold had not been breached when Defendants entered into the mud room, the facts discredit any belief that Plaintiff Penree was armed. First, the police records from the 9-1-1 call document that Plaintiff Penree advised that there were no weapons or alcohol in the house. *See* Dkt. No. 37-3 at 17. Next, Defendants Watson and Skibinski testified that they were able to observe Plaintiff Penree "every few seconds" while he was moving through his house, and they could see him most of the time. *See id.*; Dkt. No. 37-7 at 19. Defendant Watson and Skibinski could also hear him speaking on the phone to his brother, a police officer, about the circumstances. Dkt. No. 37-3 at 9-10, 14. In their observation of him, Defendants do not claim that they saw a weapon. Defendants also asked Danielle Williams to stand with them in the mud room, which is in close proximity to the locked door, while waiting for Plaintiff Penree to open the door. Defendants' actions do not reflect that they had any concern that she was in immediate danger or that the public at large was in immediate danger from Plaintiff Penree. *See* Dkt. No. 37-3 at 9-10, 14.

Defendant Skibinski described Plaintiff Penree's past interaction with police as "passively aggressed." *See* Dkt. No. 45-1 at 19. Although Plaintiff Penree was observed by Defendants to be agitated in his residence, he was not violent, and he did not use any foul language. *See* Dkt. No. 37-7 at 18, 20. Defendants have failed to present evidence in this case that is sufficient to establish a reasonable belief that Plaintiff Penree was armed, and, accordingly, the second *Dorman* factor also weighs against finding exigent circumstances.

The third factor is whether there was a "clear showing of probable cause" not just "the minimum of probable cause[ ] that is requisite even when a warrant has been

issued." *See* 🚩⚠️ *Dorman, 435 F.2d at 392-93*. A clear showing of probable cause includes "'reasonably trustworthy information,' to believe that the suspect committed the crime involved." 🚩⚠️ *Dorman, 435 F.2d at 392-93* (quoting 🚩 *Beck v. State of Ohio, 379 U.S. 89, 91 (1964)*). According to Defendant Watson, Defendants entered into Plaintiff Penree's home to take him into custody on an arrest for harassment in the second degree. *See* Dkt. No. 37-7 at 24. The Court does not find that a clear showing of probable cause existed to justify a warrantless entry. Danielle Williams's version of the altercation is disputed by Plaintiff Penree's report to Defendants. Defendants did not witness the altercation, and, under New York law, a non-warrant arrest for a violation is authorized only when committed in the arresting officer's presence. *See* 🚩 *N.Y. PENAL LAW § 140.10(1)(a).*

**\*15** Also, Defendant Skibinski testified that he was familiar with Danielle Williams from previous domestic incidents. *See* Dkt. No. 45-1 at 11. Based upon Defendant Skibinski's familiarity with Danielle Williams and Plaintiff Penree's domestic incidents, which are previously described, the Court finds that Defendants could not rely upon Danielle Williams' disputed complaint of a violation as a source of "reasonable trustworthy information" to justify a warrantless entry into Plaintiff Penree's home.

The fourth factor, a strong reason to believe that the suspect is in the premises, is satisfied here and not in dispute. The fifth factor is a likelihood that the suspect will escape if not swiftly apprehended. Defendants contend that they were in hot pursuit of a fleeing suspect, *see* Dkt. No. 37-23 at 33-36, but this assertion is found to be without any basis in the record. Defendants argue that Plaintiff Penree moved to flee inside the threshold of his residence, but this argument fails because Defendants entered into Plaintiff Penree's residence at the time they entered into the mud room. At that time, Plaintiff Penree was not within sight, let alone fleeing. Further, Defendants did not chase Plaintiff Penree from a public location or the scene of a crime into his home such that their "hot pursuit" of him justified a warrantless entry.

*See* 🚩 *Stanton v. Sims, 134 S. Ct. 3, 6 (2013)* (describing "hot pursuit" as an immediate or continuous pursuit of a "fleeing felon" from the scene of a crime); 🚩 *United States v. Santana, 427 U.S. 38, 43 (1976)* (finding a true "hot pursuit" is a chase, no matter how long, that is set in motion in a public place).

The sixth factor takes into consideration the peaceful circumstances of the entry because, if entry was not forcible, it shows a "reasonableness of police attitude and conduct."

🚩⚠️ *Dorman, 435 F.2d at 393*. When Defendants Watson, Skibinski, and Ciccone entered the outer entrance into the mud room, the evidence indicates that it was a peaceful entry because they used a key, and then they encountered another locked door preventing further entry into the interior of the home. *See* Dkt. Nos. 37-3 at 9; 37-7 at 21. However, the testimonies of Defendants Watson and Skibinski concentrate on the entry made at the interior door of the mud room, which was a forcible entry further into the home and involved Plaintiff D-M.W., a toddler.

According to Plaintiff Penree, he cracked open his front door while positioning his foot to prevent the door from opening wider. *See* Dkt. Nos. 37-6 at 45; 45-1 at 46. Defendants Watson, Ciccone, and Skibiniski then forcibly pushed the door open, even after the door stopped against his foot, and pressed their way into the home. *See* Dkt. Nos. 37-6 at 45; 45-1 at 46. Therefore, the Court does not find that Defendants have demonstrated peaceful circumstances that weigh in favor of the reasonable attitude and conduct of Defendants considering the circumstances of the subsequent forcible entry further into the interior of the home.

Considering the factors under *Dorman*, the Court concludes that Defendants have not established that exigent circumstances existed to justify a warrantless entry into Plaintiff Penree's home. "When an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to some real immediate and serious consequences if he postponed action to get a warrant."

🚩 *Welsh, 466 U.S. at 751* (internal quotation marks omitted) (quoting 🚩 *McDonald, 335 U.S. 451, 459-60 (1948)*). Here, Defendants have not established any real immediate and serious consequences.

**\*16** Defendants contend that exigency existed under "the emergency aid doctrine." *See* Dkt. No. 37-23 at 33-34. The emergency aid doctrine is an exigency obviating the requirement of a search warrant, but this doctrine applies when there is a need to "render emergency assistance to an injured occupant or to protect an occupant from *imminent* injury." 🚩 *Brigham City v. Stuart, 547 U.S. 398, 403 (2006)*. Defendants have failed to establish on the facts, even from their perspective, that their entry was objectively reasonable.

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 61 of 154

Defendants briefly assert this legal argument, but they do not direct the Court to facts that support these contentions.

The police record demonstrates that Defendants were present outside of Plaintiff Penree's home for, at a minimum, an hour before they made a warrantless entry. Defendants Watson, Skibinski, and Ciccone were aware that Defendant Skibinski observed the children and concluded that they were "okay." For a portion of that hour, Defendants Watson, Skibinski, and Ciccone could observe and hear Plaintiff Penree inside of his home as well as Plaintiff D-M.W. Presumably Defendants claim that they needed to provide emergency aid to Plaintiff Penree's children. However, Defendant Watson described his concern for the children because Plaintiff Penree's "mental state *maybe* wasn't such that he would be able to take care of children at that point." Dkt. No. 37-7 at 12. Defendant Skibinski testified that he was concerned for the welfare of the children because the police did not know "what the conditions were in the home, there's no way to — who knows if stuff got broken while [Plaintiff Penree and Danielle Williams] were fighting." *See* Dkt. No. 45-1 at 18. Defendant Skibinski also stated that "[t]here could be glass on the floor or he may not have food there for them," or "[t]hey might not have clothes and stuff." *See id.*

The Court finds that Defendants' speculated concern for the children was not a sufficient basis together with the other factors discussed to establish that emergency aid needed to be rendered inside Plaintiff Penree's home such that an exception should be made to his Fourth Amendment rights.

### 3. Malicious Prosecution

Plaintiffs' seventh and eighth causes of action are a state law claim and a Section 1983 claim, respectively, alleging that Defendants maliciously prosecuted Plaintiff Penree for resisting arrest, acting in a manner injurious to a child, and two counts of harassment in the second degree. *See* Dkt. No. 19 at ¶¶ 69-79. In order to state a claim for malicious prosecution under Section 1983, a plaintiff must allege the elements under the state law claim and a post arraignment liberty restraint sufficient to implicate the plaintiff's Fourth Amendment rights. *See* Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002); Janetka v. Dabe, 892 F.2d 187, 189 (2d Cir. 1989) (stating that a Section 1983 claim for malicious prosecution is "governed by state law in the absence of federal common law").

Under New York law, the elements of a malicious prosecution claim are

> (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.

*See* Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997) (quoting Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995)); *see also* Martinez v. City of Schenectady, 97 N.Y.2d 78, 84 (2001). Defendants move to dismiss these claims arguing that Plaintiff Penree's criminal proceeding did not terminate in his favor, that there was probable cause for commencing the criminal proceeding, and that there is no evidence of malice by Defendants. *See* Dkt. No. 37-23 at 20-23.

**\*17** The Second Circuit has stated that a "favorable termination is not so much an element of a malicious prosecution claim as it is a prerequisite to commencement of the action." Janetka, 892 F.2d at 189 (noting that the requirement of favorable termination prevents inconsistent judgments). A malicious prosecution plaintiff is not required to prove "that the termination of the criminal proceeding was indicative of innocence," Rothstein v. Carriere, 373 F.3d 275, 287 (2d Cir. 2004) *see also* Smith-Hunter v. Harvey, 95 N.Y.2d 191, 199 (2000) ("[D]ispositions inconsistent with innocence ... cannot be viewed as favorable to the accused"), but, "the absence of a conviction is not itself a favorable termination," Martinez, 97 N.Y.2d at 84.

"As a general rule, under the common law any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action." Smith-Hunter, 95 N.Y.2d at 195. However, the common law also provides for an exception to this general rule where the termination of the criminal proceedings is inconsistent with the innocence of the accused.

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 62 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

*Id.* at 196; *see also Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001). Accordingly, the plaintiff's burden when bringing a malicious prosecution claim is to demonstrate a final termination of his or her criminal proceeding that is not inconsistent with innocence. *Rothstein*, 373 F.3d at 287; *see also Cantalino*, 96 N.Y.2d at 395; *Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 158 (E.D.N.Y. 2014). These determinations are case specific and are made "under the circumstances of each case." *Cantalino*, 96 N.Y.2d at 396 (citing *Smith-Hunter*, 95 N.Y.2d at 196-97 (describing that the specific circumstances of each case dictate whether a final termination in the plaintiff's favor is inconsistent with innocence)).

Defendants' contention that a final disposition of a criminal proceeding is favorable only when it is "indicative of innocence" is incorrect. Dkt. No. 37-23 at 21; *see also Smith-Hunter*, 95 N.Y.2d at 199-202 (clarifying that the "indicative of innocence" test is not correct). As stated above, Plaintiff Penree is required to show that the criminal proceeding termination was not inconsistent with innocence. The criminal proceedings against Plaintiff Penree were dismissed by a city court judge in a four-page decision outlining the factual circumstances prior to Plaintiff's arrest and concluding that there were no exigent circumstances to enter Plaintiff Penree's residence to arrest him. *See* Dkt. No. 41-10 at 4. The criminal proceeding was dismissed and could not be brought again. *See* Dkt. No. 41-10. There is no indication that the evidence recited would result in a conviction but for the unlawful arrest. *See id.*

To the contrary, the city court judge commented that there was no evidence offered that the children's health, safety, or welfare were in danger. *See id.* The city court judge did not state any facts beyond the forcible entry into Plaintiff Penree's residence. *See id.* Accordingly, the decision dismissing Plaintiff Penree's criminal charges is not inconsistent with innocence. The termination of a criminal proceeding is not unfavorable because "the underlying prosecution did not reach the merits." *Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 158 (E.D.N.Y. 2014). Applying New York common law, Plaintiff Penree's criminal proceeding terminated in his favor for purposes of maintaining a malicious prosecution claim.

This case is distinguishable from other cases where dismissals based upon faulty search warrants were not found to be favorable terminations. *See, e.g., Layou v. Crews*, No. 9:11-CV-0114, 2013 WL 5494062, *13 (N.D.N.Y. Sept. 30, 2013); *Martinez*, 97 N.Y.2d at 84-85. In both *Layou* and *Martinez*, the plaintiffs were convicted at their criminal trials, but the convictions were reversed on appeal because the evidence was obtained through faulty search warrants. *See Layou*, 2013 WL 5494062, at *13; *Martinez*, 97 N.Y.2d at 85. The courts found that the criminal proceedings were not favorable terminations because the plaintiffs' convictions at trial were inconsistent with innocence. *See Layou*, 2013 WL 5494062, at *13; *Martinez*, 97 N.Y.2d at 85.

**\*18** Defendants next argue that probable cause to arrest Plaintiff Penree for harassment in the second degree also fulfills the required probable cause element of malicious prosecution. *See* Dkt. No. 37-23 at 22. Defendants further argue that the facts that Plaintiff "would not let the Defendant officers open the house door," continued to hold his toddler child when Defendants forced their way into his residence, pulled his arm away from Defendant Skibinski, and pushed Defendant Watson away constitute probable cause for the charges of harassment in the second degree, resisting arrest, and acting in a manner injurious to a child. *See id.*

In the context of a malicious prosecution claim, there must be probable cause to believe that the plaintiff could be successfully prosecuted, which is distinct from probable cause to arrest a suspect. *See Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999). It is error to "conflate" these two elements. *See id.*; *D'Angelo v. Kirschner*, 288 Fed. Appx. 724, 726-27 (2d cir. 2008). The question before the Court, therefore, is whether there was "'knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Roundseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (quoting *Pandolfo v. U.A. Cable Sys. of Watertown*, 171 A.D.2d 1013, 1013 (4th Dep't 1991)).

The "finding of probable cause to arrest as to one charge does not necessarily defeat a claim of malicious prosecution as to other criminal charges that were resolved in the plaintiff's favor." *Id.* Also, the element of probable cause in a malicious prosecution claim "must relate to the specific crime charged in the criminal proceeding." *Genovese v. County of Suffolk*,

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 63 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

No. 10-CV-3470, 2015 WL 5210550, *3 (E.D.N.Y. Sept. 8, 2015).

As discussed above, Defendants did not rebut the presumption that their warrantless entry and arrest was unlawful and in violation of Plaintiff Penree's Fourth Amendment rights. Defendants Watson, Skibinski, and Ciccone illegally entered into Plaintiff Penree's home to arrest him for harassment in the second degree without a warrant, without probable cause, and without exigent circumstances. "The fruit of the poisonous tree doctrine is an evidentiary rule that operates in the context of criminal procedure" to preclude evidence obtained from or as a result of unlawful police activity. *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999); *see also* *Costello v. United States*, 365 U.S. 265, 280 (1961). Although the fruit of the poisonous tree doctrine does not apply in Section 1983 claims, *see* *Townes*, 176 F.3d at 145, evidence obtained illegally that "would clearly not be admissible" cannot then be the basis for probable cause to believe the prosecution could succeed. *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003) ("postulating that the plaintiff's statement, if given without *Miranda* warnings, would not be admissible and "then there would be no probable cause to believe the prosecution could succeed"); *see also* *Gannon v. City of New York*, 917 F. Supp. 2d 241, 245 (S.D.N.Y. 2013); *Mazyck v. Johnson*, No. 08-CV-548, 2009 WL 2707360, *5 (E.D.N.Y. Aug. 25, 2009) (stating that the Second Circuit was clear in *Boyd* that "the question is not whether there exists probable cause to prosecute, but rather whether there is probable cause to *believe that a prosecution will succeed*").

As to Plaintiff Penree's first charge of harassment in the second degree in violation of New York Penal Law § 240.26(1) based upon the complaint filed by Danielle Williams, the Court finds that Defendants did not establish as a matter of law that there was probable cause to initiate proceedings. First, the Court's finding that Defendants failed to establish that there was probable cause to arrest Plaintiff Penree, "entails the rejection of [Defendants'] present argument about probable cause." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 413 (2d Cir. 1999).

**\*19**  As already stated by the Court, under New York law, a violation must occur in the officer's presence in order for there to be authority to arrest a suspect. *See* N.Y.

CRIM. PROC. LAW § 140.10(1); N.Y. PENAL LAW §§ 10.00(3), 240.26. Moreover, "the offense must occur in the officer's presence to provide probable cause to arrest for second-degree harassment." *See* *Ramos v. City of New York*, 298 Fed. Appx. 84, 86 (2d Cir. 2008). Although the Court previously noted that probable cause to arrest under the Fourth Amendment is not affected by New York law, for purposes of evaluating whether there is probable cause to believe a suspect could be successfully prosecuted, the specific New York statute is determinative. *See* *D'Angelo v. Kirschner*, 288 Fed. Appx. 724, 726 (2d Cir. 2008); *Posr*, 180 F.3d at 413 (2d Cir. 1999); *Genovese*, 2015 WL 5210550, at *3 (stating that probable cause must relate to the specific crime charged). Here, there was no probable cause to believe that Plaintiff Penree would be successfully prosecuted when his arrest was unlawful pursuant to New York law.

As for the other charges against Plaintiff Penree, they are each based on actions taken after Defendants Watson, Skibinski, and Ciccone entered into the mud room. Because the evidence obtained after Defendants Watson, Skibinski, and Ciccone entered into Plaintiff Penree's mud room without a warrant, without probable cause to arrest, and without exigent circumstances was clearly going to be inadmissible evidence at a criminal trial, there was no reasonable belief that Defendants would be able to successfully prosecute him on those charges. Accordingly, Defendants have failed to establish probable cause as a defense to Plaintiff Penree's claim for malicious prosecution.

In a malicious prosecution claim, the lack of probable cause creates an inference of malice. *See* *Ramos*, 298 Fed. Appx. at 86 (citing *Boyd*, 336 F.3d at 78); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997). Defendants argument that there was no direct evidence of malice is not persuasive in light of this permissible inference.

### 4. Excessive Force

Plaintiff Penree alleges that the use of force by Defendants Watson, Skibinski, and Ciccone was excessive during his arrest. *See* Dkt. No. 19 at ¶¶ 31-36. Specifically, Plaintiff Penree alleges that the use of a Taser Handheld Conducted Electrical Weapon [6] ("Taser CEW") and the manner in which the handcuffs were applied violated his constitutional rights. *See id.* Further, he alleges that Defendant City of Utica's police department has a policy and practice that directly

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 64 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

encourages the misconduct complained of in this case by failing to train, supervise, or control its officers regarding the use of force and by failing to adequately punish and discipline prior instances of similar misconduct. *See id.* Defendants argue that the use of the taser was objectively reasonable because Plaintiff Penree (1) was a large, muscular person, (2) was actively resisting arrest, (3) allegedly threatened officers the day before, and (4) had barricaded himself in his bedroom. *See* Dkt. No. 37-23 at 11.

Where an excessive force claim arises in the context of an arrest, it is the protections of the Fourth Amendment that are invoked. *See* 🔖 *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Accordingly, the Court must apply the reasonableness test of the Fourth Amendment, which is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." 🔖 *Graham*, 490 U.S. at 397 (quoting 🔖 *Scott v. United States*, 436 U.S. 128, 137-39 (1978)). The Court does not evaluate the record in hindsight but, instead, from the "perspective of a reasonable officer on the scene." 🔖 *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (internal citations and quotation marks omitted). The reasonableness test must carefully review the totality of the circumstances of each particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempted to evade arrest by flight."

*See* 🔖 *Graham*, 490 U.S. at 396; *see also* 🔖 *Tracy*, 623 F.3d at 95-96; 🔖 *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

**\*20** In the present case, Defendants Watson, Skibinski, and Ciccone entered into Plaintiff Penree's home to arrest him for harassment in the second degree, *see* Dkt. No. 41-4 at 3, which is an offense that is not a crime under New York law, *see* 🔖 N.Y. CRIM. PROC. LAW § 140.10(1); 🔖 N.Y. PENAL LAW §§ 10.00(3), (6). Plaintiff Penree was inside his home with his two small children. *See* Dkt. No. 45-1 at 14. Defendants have not raised or produced any evidence to indicate that there was any danger Plaintiff Penree might flee the home. However, it is undisputed that Plaintiff Penree ran up the stairs and into his bedroom to get away from Defendants, and he attempted to shut the bedroom door on the officers. *See* Dkt. No. 37-6 at 45-47.

Both Defendant Watson and Skibinski stated in their reports that they could see that Plaintiff Penree was holding Plaintiff D-M.W. in his arms and that he was turned away with his back facing the officers. *See* Dkt. No. 37-3 at 10, 14. Plaintiff Penree was in a corner of the room. *See* Dkt. No. 37-3 at 10. Defendant Skibinski stated that he reached out to grab Plaintiff Penree's arm but that Plaintiff Penree pulled his arm away so Defendant Skibinski drew the Taser CEW from its holster, announced "Taser Taser Taser," and deployed it. *See id.* at 14. Defendants' expert report states two probes, each with a barbed dart on the end, were launched out of the Taser CEW at fifty-five meters per second and lodged into Plaintiff Penree's back. *See* Dkt. No. 37-15 at 9. An electrical discharge then flowed between the darts "resulting in widespread loss of voluntary muscle control (or incapacitation) and generalized intense pain." *See id.*

Defendant Watson did not state in the police report that Plaintiff Penree pulled away or pushed Defendant Skibinski but, instead, states that he was grabbing the child when he heard Defendant Skibinski say "Taser." *See id.* at 10. At his deposition, Defendant Watson testified that he was not pushed but that "there was some pushing, some of that." *See* Dkt. No. 37-7 at 31. Plaintiff Penree testified that at no time did Defendants tell him he was under arrest prior to being handcuffed, but Defendants did tell him to stop resisting when he tried to shut them out of the bedroom. *See* Dkt. No. 37-6 at 48. Plaintiff Penree also claims that Defendants did not give any warning before deploying the Taser CEW. *See id.* at 49. Plaintiff claims that he voluntarily moved away from blocking the door but that, as soon as they came into the bedroom, he was shot with the Taser CEW. *See id.* Defendants argue in their brief, and the police report supports, that Defendants Watson, Skibinski, and Ciccone concluded that Plaintiff Penree was a threat of safety to the officers and planned to use the Taser CEW over the pepper spray before they forced entry through the mud room door. *See* Dkt. Nos. 37-3 at 9; 37-23 at 13.

It is possible that a jury could find that the use of the Taser CEW was reasonable, but it is also possible that a jury could find that the use of the Taser CEW was not a reasonable response to the circumstances. *See* 🔖 *Amnesty*, 361 F.3d at 124 (finding that the reasonableness of the forced used in that case was one for the jury); 🔖 *Jackson v. City New York*, 939 F. Supp. 2d 235, 254 (E.D.N.Y. 2013) (identifying the significant dispute between the officers' story that the plaintiff was resisting arrest and the plaintiff's story that she was

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 65 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

defensively struggling against the officer's unlawful arrest). Accordingly, the Court finds that the determination as to the objective reasonableness of the force used is one to be made by a jury following a trial.

**\*21** With regard to Plaintiff Penree's claim that the manner in which he was handcuffed was unreasonable, the Court finds that Defendants have established as a matter of law that the handcuffing of Plaintiff Penree did not involve an unreasonable amount of force, and Plaintiff Penree did not raise any genuine questions of material fact in opposition. In order for handcuffs to be effective, they must be reasonably tight. *See* 🚩 *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008). However, "overly tight handcuffing can constitute excessive force." 🚩 *Id.* at 468. "To assess a claim for excessive force based on handcuffing, the court should consider evidence that: '1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists.'" 🚩 *Pelayo v. Port Auth.*, 893 F. Supp. 2d 632, 642 (S.D.N.Y. 2012) (quoting 🚩 *Matthews v. City of New York*, 889 F. Supp. 2d 418, 441-42 (E.D.N.Y. 2012)). The force used must be sufficiently serious or harmful to be actionable in a claim for excessive force. *See* 🚩 *Pelayo*, 893 F. Supp. 2d at 642; 🚩 *Drummond v. Castro*, 522 F. Supp. 2d 667, 678 (S.D.N.Y. 2012).

Plaintiff Penree testified that while he was being transported by car to the police station, he complained that the handcuffs were too tight. *See* Dkt. No. 37-6 at 56. He described that he has big wrists. *See id.* When Plaintiff arrived in the booking area, his handcuffs were loosened, which occurred about five minutes after arriving at the police station. *See id.* Different handcuffs were then used that were not too tight. *See id.*

In opposition to Defendants' motion, Plaintiffs argue that the timing for when Defendants placed two linked sets of handcuffs on Plaintiff Penree is in dispute. *See* Dkt. No. 44 at 17. However, even assuming Plaintiffs' time line of events, the handcuffs were apparently not too tight until Plaintiff Penree was sitting on his hands during the transport to the police station, and the handcuffs were loosened shortly after arrival. *See* Dkt. No. 37-6 at 52, 55-56. Further, Plaintiff Penree indicated that he had some redness on his wrist but does not claim to have any other injury as a result. *See* Dkt. No. 37-6 at 55. He did not receive any medical treatment for his wrists at the police station, and he does not have

any outstanding medical bills for treatment. *See* Dkt. No. 37-6 at 53, 60-61. The Court finds that Plaintiff did not submit evidence that could lead a reasonable juror to find that Defendants used excessive force in the application of the handcuffs. *See* 🚩 *Drummond*, 522 F. Supp. 2d at 679.

### D. Fourteenth Amendment

Plaintiff D-M.W. also claims that Defendants Watson, Skibinski, and Ciccone used excessive force against him when they discharged the Taser CEW. *See* Dkt. No. 19 at ¶¶ 31-36. Defendants argue that they did not cause any physical injury to Plaintiff D-M.W. *See* Dkt. No. 37-23 at 23-25. According to Defendants the electrical current would travel only between the two probes of the Taser CEW and, therefore, no electrical current would have injured Plaintiff DM.W. *See* Dkt. No. 37-23 at 23-25. In the alternative, Defendants argue that, even if there was causation, their actions were not conscience shocking in violation of his Fourteenth Amendment rights. *See id.* at 25-27. Plaintiffs argue that there was a seizure of Plaintiff D-M.W. in violation of his constitutional rights because he was deprived of his ability to leave the room through his custodial parent, Plaintiff Penree. *See* Dkt. No. 44 at 22.

A seizure under the Fourth Amendment is "'an intentional acquisition of physical control.'" 🚩 *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 795 (1st Cir. 1990) (quoting 🚩 *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989)). Fourth Amendment seizure is not "police action that simply *causes* a particular result." 🚩 *Id.* at 795 (clarifying further that the intention requirement is not met by the deliberateness with which a given action is taken). Seizure under the Fourth Amendment "does not occur whenever there is a governmentally caused termination of an individuals' freedom of movement, ... but only when there is a governmental termination of freedom of movement *through means intentionally applied*." 🚩 *Brower*, 489 U.S. at 596-97. The restraint of liberty must result from an attempt to gain control of the particular individual. *See* 🚩 *Landol-Rivera*, 906 F.2d at 795 (citing 🚩 *Brower*, 489 U.S. at 596).

**\*22** Defendants use of the Taser CEW against Plaintiff Penree was not a Fourth Amendment seizure of Plaintiff D-M.W. because Plaintiff D-M.W. was not the intended object when they aimed the Taser CEW. *See* 🚩 *id.* at 795 (stating that the plaintiff's decedent was not seized when he was not

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 66 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

the object of the police bullet that struck him). Defendants Watson, Skibinski, and Ciccone did not intend to terminate Plaintiff D-M.W.'s freedom of movement when they deployed the Taser CEW, and, accordingly, he was not seized under the Fourth Amendment.

Plaintiffs further argue the "custodial seizure" of Plaintiff D-M.W. *See* Dkt. No. 44 at 22. In support of this contention, Plaintiffs cite *Wallace v. Poulos*, Civil Action No. DKC 2008-0251, 2009 WL 3216622 (D. Md. Sept. 29, 2009). In that case, the plaintiff father was the sole custodian of the infant plaintiff when the defendant police officers executed a temporary protective order that was falsely-obtained from the infant plaintiff's mother. The defendant police officers wrongly believed that the order transferred custody of the infant plaintiff to the biological mother, who did not have any custodial rights or visitation. *See id.* After an altercation with the defendant police officers, the plaintiff father was arrested and the infant plaintiff was taken from the home and given into the custody of the biological mother by the defendant police officers. *See id.* at *12. The court found that the infant plaintiff was seized by the defendants under these circumstances because the plaintiff father was not permitted to direct the temporary custody of the infant plaintiff. *See id.*

Here, the facts are distinguishable because Plaintiff Penree does not claim to have sole custody of his children. He and Danielle Williams have shared custody and/or visitation of their children pursuant to a custody order. *See* Dkt. No. 45-1 at 8, 41. At the time that Plaintiff Penree was under arrest and taken into custody, Danielle Williams, Plaintiff D-M.W.'s legal custodian and parent, was present and took her children into her custody. *See* Dkt. No. 37-3 at 10. Plaintiffs have failed to show that Plaintiff D-M.W. was seized under the Fourth Amendment by Defendants when his mother rightfully took him into her care.

Having determined that there was no Fourth Amendment seizure of Plaintiff D-M.W., the Court must consider Plaintiff D-M.W.'s excessive force claims under substantive due process of the Fourteenth Amendment. [7] *See* *Tierney v. Davidson*, 133 F.3d 189, 199 (2d Cir. 1998) (citing *Graham*, 490 U.S. at 394-95) (stating that where there is not a seizure or arrest, excessive force claims are governed by the Due Process Clause of the Fourteenth Amendment); *Piper v. City of Elmira*, 12 F. Supp. 3d 577, 587 (W.D.N.Y. 2014). The Second Circuit applies the four-part test of *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), to determine

whether the force applied was excessive under the Fourteenth Amendment. *See* *Tierney*, 133 F.3d at 199.

> Those factors are: '[1] the need for the application of force, [2] the relationship between the need and the amount of force that was used, [3] the extent of injury inflicted, and [4] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'

*Id.* (quoting *Johnson*, 481 F.2d at 1033).

**\*23** In this case, the Court cannot conclude that Plaintiff D-M.W.'s claim fails as a matter of law after considering these four factors. It is a question for the jury to consider the circumstances and determine whether there was a need to apply force and to weigh the relationship between that need with the force used. Plaintiff D-M.W. sustained a physical injury to his head as a result of Defendants' actions, and he was examined by emergency medical responders at the scene. *See* Dkt. Nos. 37-3 at 10; 37-6 at 49; 37-12 at 2, 4. Plaintiffs allege that Plaintiff D-M.W. sustained injury from the electrical current released from the Taser CEW. *See* Dkt. No. 37-6 at 49. Defendants argue that his claim should be dismissed because they have submitted unopposed expert's opinion that the electricity from the Taser CEW would take the path of least resistance between the two probes. *See* Dkt. No. 37-15 at 4. According to Defendants, this expert's opinion precludes Plaintiffs from showing any injury and so the claim fails. *See id.* As noted, Plaintiff DM.W.'s alleged injuries were not limited to just electrocution but also included a head injury. Therefore, Plaintiff D-M.W.'s excessive force claim does not fail for lack of electrocution injury. Further, a jury could reject the expert opinion proffered by Defendants. After all, a jury is free to refuse to credit an expert's opinion even when there is no expert rebuttal. *See* *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 398 (S.D.N.Y. 2010); *Giles v. Rhodes*, 171 F. Supp. 2d 220, 226-27 (S.D.N.Y. 2001) (citing *Powers v. Bayliner Marine Corp.*, 83 F.3d 789, 798 (6th Cir. 1996)).

While standing in Plaintiff Penree's mud room, Defendants Watson, Ciccone, and Skibinski discussed the potential use of force, concluding that the use of the Taser CEW was better than the use of pepper spray because of the children's presence inside. *See* Dkt. No. 37-3 at 9. [8] The evidence shows that Defendants could visualize Plaintiff D-M.W. in Plaintiff

Penree's arms at the time they forcibly entered through the interior door and when the Taser CEW was deployed. *See* Dkt. No. 37-3 at 10-11, 14. Defendants have failed to establish as a matter of law that a jury could not find that the deployment of the Taser CEW under these circumstances to be shocking to the conscience. Therefore, the Court denies Defendants' motion for summary judgment on Plaintiff D-M.W.'s constitutional claim of excessive force. *See Piper*, 12 F. Supp. 3d at 87 (stating that the issue is not how likely it is a jury could find a Fourteenth Amendment violation but whether a jury could not reach that conclusion); *Masihuddin v. Gavin*, No. 10 Civ. 06006, 2014 WL 1091157, *5 (S.D.N.Y. Mar. 17, 2014).

**E. Municipal Liability**

Plaintiffs allege a claim against the City of Utica, the City of Utica Police Department, and Police Chief Mark Williams for failure to train, supervise, and discipline Defendants Watson, Skibinski, and Ciccone in their use of force when making arrests. *See* Dkt. No. 19 at ¶¶ 43-54. Further, Plaintiffs allege that Defendants City of Utica, City of Utica Police Department, and Williams made policies or procedures to inadequately train, supervise, or discipline the members of its police officers, which caused excessive force to be used against both Plaintiffs. *See id.* Defendants contend that they have established through the submission of training certificates and proof that the Utica Police Department has been an accredited agency by the New York State Accreditation Council, which requires compliance with 133 standards, that their policies and procedures were adequate in training, supervising, and disciplining their officers. *See* Dkt. No. 37-23 at 37-38. Defendants also contend that Plaintiffs' claims fail because there is no showing of the requisite deliberate indifference to the constitutional rights of citizens. *See id.*

**\*24**  As an initial matter, it appears that Plaintiffs may have voluntarily discontinued their action against the City of Utica Police Department, but, to the extent that they did not, the Court dismisses Plaintiffs' complaint against the City of Utica Police Department. In New York, departments are administrative arms of a municipal corporation and are not separate legal entities capable of being a party to a lawsuit. *See Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999); *Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990).

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), the Supreme Court established that municipalities and local governments can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." A governmental custom, even if it "has not received formal approval through the body's official decision[-]making channels," is equally actionable under Section 1983. *Id.* at 691 (reasoning that the practices of state officials could be so well settled that they "constitute a 'customs or usage' with the force of law" (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

Here, Plaintiffs do not allege that there is a written policy or ordinance that is itself unconstitutional but that Defendants City of Utica and Williams' deliberate indifference created a custom of its police officers carrying out their duties in an unconstitutional manner. *See* Dkt. No. 19 at ¶¶ 44-54. A city can be liable under these circumstances "where the city is aware that its policy may be unconstitutionally applied by inadequately trained employees but the city consciously chooses not to train them, ... or where the city's official policy on the reasonable use of force in arrests is valid, but the city's actual practice is to use excessive force." *Amnesty Am.*, 361 F.3d at 125-26.

Where, as here, the allegations focus on a city employee's single tortious action, "the inquiry focuses on whether the actions of the employee in question may be said to represent the conscious choices of the municipality itself." *Id.* at 126. In this case, there is no proof, and the parties do not argue, that the acts were "taken by, or attributable to, one of the city's policymakers." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986) (finding that a single act by a policymaker with final authority can establish Section 1983 liability for an unconstitutional policy)). The mere delegation of authority by the policymakers to a subordinate does not implicate liability against the municipality because that would be the equivalent of respondeat superior liability. *Id.* However, liability can be shown by proving that "'the authorized policy makers approve[d] a subordinate's decision and the basis for it.'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion)).

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 68 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

Of course, a policymaking official can be implicated by direct evidence that they ordered a subordinate's action. *See id.* There is no evidence in this case that this occurred. A policymaking official can also be implicated through a subordinate's conduct by showing "that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Id.* (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992)). "Thus, where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city "policy or custom" that is actionable under § 1983.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

**\*25** Unless the unconstitutional incident includes proof that it was caused by an *existing*, unconstitutional municipal policy by a policymaker, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). The existence of an unconstitutional policy, and its origin, must be proven separately to have a valid claim. *See id.* at 824. Further, where "the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Id.*

Plaintiffs claim to demonstrate a ratified policy of inadequate training and supervision by Defendants City of Utica and Williams through their deliberate indifference to Defendants Watson, Skibinski, and Ciccone's unconstitutional acts towards Plaintiffs. *See* Dkt. Nos. 19 at ¶¶ 43-54; 44 at 26. Plaintiffs assert that the alleged use of excessive force by Defendants Watson, Skibinski, and Ciccone is attributable to the municipal Defendants because, at his deposition in this case, Defendant Williams found his officers' actions on April 23, 2012 were proper. *See* Dkt. No. 44 at 26. Ostensibly, Plaintiffs' theory is that the municipal Defendants were deliberately indifferent to the possibility that Defendants Watson, Skibinski, and Ciccone were prone to use excessive force. According to Plaintiffs, "this indifference was demonstrated by the failure of the City defendants to exercise reasonable care in investigating claims of police

brutality in order to supervise the officers in the proper use of force." *Fiacco v. City of Rensselaer*, 783 F.2d 319, 326 (2d Cir. 1986).

Plaintiffs rely soley on Defendant Williams' review of the alleged excessive force at issue in this civil rights lawsuit to establish that the municipal Defendants were deliberately indifferent to these practices. *See* Dkt. No. 44 at 26. "[T]he existence of a policy of nonsupervision amounting to deliberate indifference to constitutional rights cannot be established by inference soley from evidence of the occurrence of the incident in question." *See id.* at 328; *see also City of Oklahoma City*, 471 U.S. at 824. Therefore, Defendant Williams' "deliberate indifference" to Plaintiffs' allegations alone cannot establish an inference of a municipal policy. *See Fiacco*, 783 F.2d at 328 (stating that a plaintiff cannot prevail on such a claim without other evidence). Plaintiffs' sole reliance on this evidence to prove a municipal policy of inadequate supervision is fatal. *See City of Oklahoma City*, 471 U.S. at 824.

Moreover, Plaintiffs' claim that Defendants City of Utica and Williams' policy and procedure of inadequate training caused the excessive force of unjustified tasing of Plaintiff Penree is also flawed. *See* Dkt. No. 19 at ¶¶ 45-49. In *City of Canton*, the Supreme Court established municipal liability under Section 1983 for its failure to train its employees. *See id.* at 387-90. "[A] municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." *Amnesty Am.*, 361 F.3d at 129 (citing *City of Canton*, 489 U.S. at 387-90). To establish liability due to the inadequacy of a municipality's training program, a plaintiff must (1) "identify a specific deficiency in the city's training program," (2) "establish that [the identified] deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation," and (3) establish that the failure to train constitutes deliberate indifference to the plaintiff's constitutional rights. *See id.* at 129.

**\*26** In this case, Plaintiffs have not provided any evidence of the City of Utica Police Department's training programs, and Plaintiffs have not identified a specific deficiency in a training program or a close causal relationship to the constitutional injuries sustained. These required elements ensure that "'the

officer's shortcomings ... resulted from ... a faulty training program' rather than from the negligent administration of a sound program." *Id.* at 129 (quoting *City of Canton,* 489 U.S. at 391) (concluding that to state a failure to train claim under Section 1983, the plaintiffs are required "to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor"). Without some evidence showing how the training was performed and without evidence showing how the training, if performed correctly, could have prevented the constitutional violations alleged, no reasonable jury "could conclude that the excessive force occurred as a result of training deficiencies." *Amnesty Am.,* 361 F.3d at 130.

For these reasons, the Court dismisses the claims against Defendants City of Utica and Williams.

## G. Qualified Immunity

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Tracy v. Freshwater,* 623 F.3d 90, 95-96 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Kelsey v. Cty. of Schoharie,* 567 F.3d 50, 60-61 (2d Cir. 2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982))). The Court is mindful that qualified immunity is "'an entitlement not to stand trial or face the other burdens of litigation,'" and that this privilege is "'effectively lost if a case is erroneously permitted to go to trial.'" *Saucier v. Katz,* 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). The Court applies a two-part inquiry to determine whether the doctrine of qualified immunity bars a suit against government officials. *See Jones v. Parmley,* 465 F.3d 46, 55 (2d Cir. 2006). The Court considers whether the facts, construed in favor of the party asserting the injury, "demonstrate a violation of a constitutional right." *See id.* (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). The Court must also determine "whether the officials' actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). It is within the Court's discretion to decide the order these two

prongs are considered. *See Pearson v. Callahan,* 555 U.S. 223, 243 (2009).

"A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir. 1996) (citing *Anderson v. Creighton,* 483 U.S. 635, 641 (1987)). The plaintiff can successfully defeat the defense of qualified immunity on summary judgment by raising a genuine issue of material fact. *See Jones v. Parmley,* 465 F.3d 46, 63 (2006) (finding that a question of material fact precludes the court's finding as a matter of law that the defendants are entitled to qualified immunity); *Usavage v. Port Auth.,* 932 F. Supp. 2d 575, 593 (S.D.N.Y. 2013) (citing *Green v. Montgomery,* 219 F.3d 52, 59 (2d Cir. 2013)).

A clearly established constitutional right is one that's "contours" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). An official's actions are not protected by qualified immunity by virtue of the fact that his or her action in question has not previously been held unlawful. *See id.; Terebesi v. Torreso,* 764 F.3d 217, 231 (2d Cir. 2014) ("An officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury"). "[I]f decisions from this or other circuits clearly foreshadow a particular ruling on the issue," the Court may treat the law as clearly established. *See Terebesi,* 764 F.3d at 231 (internal quotation marks omitted) (stating that the courts "consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law" in determining whether the law is clearly established) (quoting *Varrone v. Bilotti,* 123 F.3d 75, 79 (2d Cir. 1997)).

### 1. Fourth & Fourteenth Amendments

**\*27** Defendants assert that Plaintiff Penree's Fourth Amendment rights and Plaintiff D-M.W.'s Fourteenth Amendment rights "are no longer clearly established because the current law conflicts with the Fourteenth Amendment

Rights of the Domestic Violence victim under a state created danger Substantive Due Process theory." Dkt. No. 37-23 at 29. According to Defendants, they are entitled to qualified immunity against all of Plaintiffs' Fourth and Fourteenth Amendment claims because there is a lack of clearly established law. *See id.* The Second Circuit has established "that the Due Process Clause may be violated when police officers' *affirmative* conduct–as opposed to passive failures to act–creates or increases the risk of private violence, and thereby enhances the danger to the victim." *Okin v. Village of Cornwall-On-Hudon Police Dep't,* 577 F.3d 415, 428-29 (2d Cir. 2009) ("The affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence").

In *Okin*, the court applied this state-created danger doctrine to a domestic violence situation. *See id.* In that case, the police responded to the plaintiff's complaint of being beaten and choked, and the police proceeded to have a conversation about football with the aggressor. *See id.* at 430. The aggressor also told one of the defendant officers that he was not able to "help it sometimes when he smacks [the plaintiff] around," and the defendants did not make an arrest. *See id.* There, the defendants also responded to numerous occasions of domestic incident complaints by the plaintiff without filing a domestic incident report, interviewing the aggressor, or making an arrest. *See id.* Under those circumstances, the Court found that there was a reasonable view of the evidence to support a finding that the defendants' actions were affirmative reassurances to the aggressor that no action would be taken against him for his acts of violence against the victim. *See id.*

Without any support, Defendants argue that Plaintiffs' asserted Fourth and Fourteenth Amendment Rights are no longer clearly established because their rights are in conflict with the *Okin* decision from Second Circuit. *See* Dkt. No. 37-23 at 28-33. It is Defendants' contention that they had to choose between securing the safety of domestic violence victims and Plaintiffs' constitutional rights secured by the Fourth and Fourteenth Amendments. *See id.* The Court finds that Defendants have no legal or logical basis for this assertion. The establishment of case law that police officers, through affirmative acts of creating and increasing the risk of domestic violence against a victim, violated that victim's constitutional rights does not change or effect the clarity of established rights under the Fourth and Fourteenth Amendments. The *Okin* decision does not imply that an alleged domestic violence offender has lesser constitutional rights under the Fourth or Fourteenth Amendments.

### 2. Excessive Force

With regard to Defendants' specific contention that they are entitled to qualified immunity on Plaintiffs' claims of excessive force, they argue that "qualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force." *See* Dkt. No. 37-23 at 36. Qualified immunity is an affirmative defense and, as such, Defendants bear the burden of proving that the privilege of qualified immunity applies. *See Coolick v. Hughes,* 699 F.3d 211, 219 (2d Cir. 2012). The Court finds that Defendants' abbreviated arguments fail to raise any factual or legal support for their entitlement to qualified immunity against Plaintiffs' claims of excessive force. Accordingly, the Court denies their motion for summary judgment on the invocation of qualified immunity against Plaintiffs' excessive force claims.[9]

**\*28** Even if the Court were to find that Defendants met their prima facie burden, the Court would find that Plaintiffs have raised questions of material fact that must be resolved by a jury prior to determining whether it would have been clear to a reasonable officer that his conduct was unlawful in this situation. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396 (1989) (internal quotation marks and citations omitted) (quoting *Tennessee v. Garner,* 471 U.S. at 8).

Courts have described the use of a taser to be more than a trivial use of force but less than deadly force. *Towsley v. Frank,* No. 5:09-cv-23, 2010 WL 5394837, \*10 (D. Vt. Dec. 28, 2010) (citing *Mattos v. Aragano,* 590 F.3d 1082, 1087 (9th Cir. 2010)). The use of a taser is a "'serious intrusion into the core of the interests protected by the Fourth Amendment.'" *Id.* (quoting *Mattos,* 590 F.3d at 1087). The law is clearly established that any "significant degree of force ... should not be used lightly or gratuitously against an arrestee who is complying with police commands or otherwise poses no immediate threat to the arresting officer." *Tracy,* 623 F.3d

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 71 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

at 98 (citing *Henderson v. Munn*, 439 F.3d 497, 502-03 (8th Cir. 2006); *Vinyard v. Wilson*, 311 F.3d 1340, 1348-49 (11th Cir. 2002); *Headwaters Forest Def. v. Cty. of Humboldt*, 276 F.3d 375, 286 (9th Cir. 2002); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994)).

In 2011, the Ninth Circuit found that the police officer's use of a taser was an excessive use of force and a constitutional violation. *See Mattos*, 661 F.3d at 451. There, the officers gave no warning that the taser would be used, the suspects had no weapons, and there were children present in the home. *See id.* The court found a constitutional violation under those circumstances even factoring in that the situation was potentially dangerous. *See id.* at 451. In that case, the court found that "an officer's failure to warn, when it is plausible to do so, weighs in favor of finding a constitutional violation." *Id.* ("[T]he fact that [the defendant] gave no warning to [the plaintiff] before tasing her pushes this use of force far beyond the pale"); *see also Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010) (considering that if it was feasible to give a warning that the use of force was imminent if there was not compliance and a warning was not issued, then the facts weigh against a finding of reasonable force); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007) ("The absence of any warning–or of facts making clear that no warning was necessary– makes the circumstances of this case especially troubling")).

In 2009, the Eighth Circuit found that "it is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *See Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009). In 2010, the Tenth Circuit held that the law was clearly established in 2003 that an officer "could not use his Taser on a nonviolent misdemeanant who did not pose a threat and was not resisting or evading arrest without first giving a warning." *See Cavanaugh v. Woods Cross City*, 625 F.3d 661, 667 (10th Cir. 2010).

Accepting Plaintiff Penree's version of the facts, he was repeatedly told that he was not under arrest, and he was not told that he was under arrest until being handcuffed. *See* Dkt. No. 37-6 at 48. Further, according to Plaintiff Penree, he had moved away from the bedroom door and was no longer

actively resisting their entrance. *See id.* at 45-47. Defendants were aware that Plaintiff Penree was holding a toddler and facing the corner of the bedroom. *See id.*; Dkt. No. 41-4 at 3. Defendants had discussed the potential use of force and the preference for the Taser CEW prior to any alleged resistance. *See* Dkt. No. 37-3 at 9. Plaintiff Penree claims that his interactions with Defendants had been calm and no profanity was being used up until the time the officers forcibly entered the mud room door. *See* Dkt. Nos. 37-7 at 18, 20; 45-1 at 12. Also, a significant factor in this case, was that Defendants did not give Plaintiffs any warnings before using the Taser CEW. Plaintiff claims that as soon as Defendants came through his bedroom door, he was tased. *See* Dkt. Nos. 37-6 at 48-49; 41-4 at 3. Accordingly, the Court finds that Defendants have not established that they are entitled to the privilege of qualified immunity.

### 3. False Arrest

**\*29** Defendants' argue that they are entitled to qualified immunity on Plaintiff Penree's claim that he was falsely arrested because there was arguable probable cause for his arrest. *See* Dkt. No. 37-23 at 35. Plaintiff Penree's right to be free of arrest without probable cause was clearly established at the time of his arrest. *See Jenkins*, 478 F.3d at 87 (citing *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). Arguable probable cause exists when officers of reasonable competence could disagree on whether there was probable cause. *See Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010); *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004); *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002). Arguable probable cause does not mean "almost" probable cause. *See Jenkins*, 478 F.3d at 87. Considering, as the Court must, the information possessed by Defendants Watson, Skibinski, and Ciccone at the time of the arrest, the Court finds that there are questions of material fact that must be resolved by a jury before qualified immunity for false arrest can be determined.

Defendants contend that there was arguable probable cause to arrest Plaintiff Penree on the charge of harassment in the second degree based upon Danielle Williams written complaint describing that she was pushed down to the ground and out the door, which caused her to fall down some stairs. *See* Dkt. No. 37-23 at 18-20, 36. The Court has already determined that Defendants failed to rebut the presumption that the warrantless arrest was unlawful. The Court found that

there is a question of material fact as to whether Danielle Williams' statement to Defendants Skibinski and Ciccone was reasonably reliable under the circumstances. The Court finds this question of fact precluding summary judgment on probable cause also precludes a legal finding on qualified immunity for the unlawful arrest claim. Therefore, the Court denies Defendants' motion for summary judgment on Plaintiff Penree's claim for false arrest in violation of his Fourth Amendment rights.

#### *4. Malicious Prosecution*

Defendants contend that they are entitled to qualified immunity against Plaintiffs' claims for malicious prosecution because arguable probable cause existed for all the charges brought against Plaintiff Penree. *See* Dkt. No. 37-23 at 22-23, 35-36. Probable cause in the context of a malicious prosecution claim is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Jackson v. City of New York*, 939 F. Supp.2d 235, 250 (E.D.N.Y. 2013) (internal quotation marks and citations omitted) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994)).

The Court finds that Defendants have failed to establish that they are entitled to qualified immunity against Plaintiff Penree's malicious prosecution claims. Construing the evidence in favor of Plaintiffs, no reasonably competent officer could agree that there was probable cause to successfully prosecute Plaintiff Penree. As the Court set forth in its discussion of malicious prosecution, New York law is determinative when evaluating the probable success for a prosecution of each specific crime. *See Genovese v. Cty. of Suffolk*, No. 10–CV–3470, 2015 WL 5210550, at *3. Under New York law, police officers are not authorized to arrest a suspect for harassment in the second degree unless the violation is witnessed by the officer. *See* N.Y. CRIM. PROC. LAW § 140.10(1); N.Y. PENAL LAW § 10.00(3), 240.26. By New York statute, if the alleged violation takes place outside of the officer's presence, there is no probable cause to arrest. *See Ramos v. City of New York*, 298 Fed. Appx. 84, 86 (2d Cir. 2008). Based upon the fact that there was no probable cause to arrest pursuant to statute, the Court finds that there was no arguable probable cause to believe that Plaintiff Penree could successfully be prosecuted pursuant to that unlawful arrest. *See Boyd*, 336 F.3d at 77.

**\*30** There is also no arguable probable cause to believe that Plaintiff Penree could be successfully prosecuted for the remaining criminal charges filed against him because each of those charges are based upon acts that were taken after Defendants Watson, Skibiniski, and Ciccone illegally entered into Plaintiff Penree's residence. Without a warrant, without probable cause, and without exigent circumstances, any evidence of Plaintiff Penree's actions were not going to be admissible as evidence at any criminal trial. *See id.* Therefore, Defendants are not entitled to dismissal under qualified immunity.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and, for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Dkt. No. 37) is **GRANTED in part and DENIED in part**; [10] and the Court further

**ORDERS** that Plaintiff Penree's state law claim for false arrest is **DISMISSED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment as to Plaintiff Penree's claim for false arrest pursuant to 42 U.S.C. § 1983 is **DENIED**; and the Court further

**ORDERS** that Plaintiff Penree's state law claims for assault and battery are **DISMISSED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment as to Plaintiff D-M.W.'s claims for assault and battery are **DENIED**; and the Court further

**ORDERS** that Plaintiff Penree's claims for negligence and gross negligence are **DISMISSED**; and the Court further

**ORDERS** that Plaintiff D-M.W.'s claims for negligence and gross negligence are **DISMISSED**; and the Court further

**ORDERS** that Plaintiff Penree's claim for excessive force pursuant to 42. U.S.C. § 1983 against Defendant City of Utica

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 73 of 154

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

and Defendant Mark Williams is **DISMISSED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment as to Plaintiff Penree's claim for excessive force pursuant to 42 U.S.C. § 1983 related to the use of the Taser CEW against Defendant Watson, Defendant Ciccone, and Defendant Skibinski is **DENIED**; and the Court further

**ORDERS** that Plaintiff Penree's claim for excessive force pursuant to 42 U.S.C. § 1983 related to the use of handcuffs against Defendant Watson, Defendant Ciccone, and Defendant Skibinski is **DISMISSED**; and the Court further

**ORDERS** that Plaintiff D-M.W.'s claim for excessive force pursuant to 42 U.S.C. § 1983 against Defendant City of Utica and Defendant Mark Williams is **DISMISSED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment as to Plaintiff D-M.W.'s claim for excessive force pursuant to 42 U.S.C. § 1983 against Defendant Watson, Defendant Ciccone, and Defendant Skibinski is **DENIED**; and the Court further

**ORDERS** that Plaintiff Penree's and Plaintiff D-M.W.'s claims for failure to train, supervise, or discipline pursuant to 42 U.S.C. § 1983 against Defendant City of Utica and Defendant Mark Williams is **DISMISSED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment as to Plaintiff Penree's claim for unreasonable search pursuant to 42 U.S.C. § 1983 is **DENIED**; and the Court further

**\*31** **ORDERS** that Defendants' motion for summary judgment as to Plaintiff Penree's claim for malicious prosecution pursuant to 42 U.S.C. § 1983 is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment as to Plaintiff Penree's state claim for malicious prosecution is **DENIED**; and the Court further

**ORDERS** that Plaintiffs' claims against Defendant City of Utica Police Department are **DISMISSED**; and the Court further

**ORDERS** that Defendant City of Utica and Defendant Mark Williams are **DISMISSED** from this action; and the Court further

**ORDERS** that Plaintiffs' claims against John Does and Jane Does are **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 915252

---

### Footnotes

1      Unless otherwise indicated, facts are presented in the light most favorable to Plaintiffs.

2      Although the caption names City of Utica Police Officer Skabiniski, the correct spelling is "Skibinski."

3      Plaintiffs also maintain claims against Defendants Watson, Ciccone, and Skibinski for failure to intervene and prevent the harm caused by the unconstitutional acts of another police officer. *See* Dkt. No. 19 at ¶¶ 37-42. Defendants have not move for summary judgment on this claim.

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    26

Penree v. City of Utica, New York, Not Reported in Fed. Supp. (2016)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 74 of 154

4    Defendants do not raise any argument that there was probable cause to arrest related to any other violation or crime. *See* Dkt. No. 37-23 at 19-20. Also, Defendants have not proceeded with the theory that Plaintiff Penree was under a citizen's arrest. *See id.*

5    The area is described by Defendant Watson and Defendant Skibinski as an "enclosed porch," and Defendant Ciccone described the area as a foyer and the exterior door as the "main door to the dwelling." *See* Dkt. No. 37-3 at 9, 11, 14.

6    The conducted electrical weapon used by Defendant Skibinski against Plaintiff Penree was a TASER X26. *See* Dkt. No. 37-15. The Taser CEW can cause death or serious injury. *See* Dkt. No. 41-11. The CEW is intended to temporarily incapacitate a person. *See id.*

7    Plaintiffs only argue a violation Plaintiff D-M.W.'s Fourteenth Amendment rights in their memorandum of law despite their contention that Plaintiff D-M.W. was seized. *See* Dkt. No. 44 at 20-22.

8    In the Second Circuit, a defendant can be a direct participant if he or she "authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." ⚑ *Terebesi v. Torreso,* 764 F.3d 217, 234 (2d Cir. 2014). In *Terebesi,* the Court found that individuals who plan for a search or seizure that results in an unconstitutionally excessive use of force can be liable under ⚑ Section 1983. *See id.* ("Even if the plan expressly contemplated only a search, the same Fourth Amendment protections would apply").

9    Although Defendants raise immunity under New York law against Plaintiffs' claims for negligence and gross negligence, Defendants do not raise immunity under New York law against Plaintiff D-M.W.'s claim for assault and battery.

10   Those claims that have not been dismissed are as follows: (1) Plaintiff Penree's claim for malicious prosecution under state law and under the Fourth Amendment; (2) Plaintiff D-M.W.'s claim for assault and battery; (3) Plaintiff Penree's claim for excessive force under the Fourth Amendment; (4) Plaintiff D-M.W.'s claim for excessive force under the Fourteenth Amendment; (5) Plaintiff Penree's claim for false arrest under the Fourth Amendment; and (6) Plaintiff Penree's claim for unlawful entry under the Fourth Amendment.

---

**End of Document**                                             © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2537626

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Timothy LALONDE & Theresa Lalonde, Plaintiffs,

v.

CITY OF OGDENSBURG, et al., Defendants.

8:22-CV-0164 (LEK/DJS)

|

Signed March 16, 2023

**Synopsis**

**Background:** Arrestee, who was legally blind and partially disabled, and his spouse, brought action against city, city police department and officers, county, county sheriff department, and officer within department, asserting § 1983 claims for violations of Fourth and Fourteenth Amendments, claims for violations of Americans with Disabilities Act (ADA) and Rehabilitation Act, civil rights conspiracy, and state law claims. Defendants moved to dismiss.

**Holdings:** The District Court, Lawrence E. Kahn, J., held that:

[1] arrestee plausibly alleged that municipal and county policymakers knew to moral certainty that officers would confront situations like that giving rise to arrestee's claims, as factor for determining whether municipality and county could be held liable under § 1983 for failure to train;

[2] arrestee stated claims for civil rights conspiracy;

[3] arrestee could maintain claim against municipal and county law enforcement officers for failure to prevent conspiracy to deprive arrestee of his civil rights;

[4] arrestee stated claim for supervisory liability against county sheriff and municipal police chief;

[5] arrestee state claim for violation of ADA and Rehabilitation Act;

[6] arrestee's spouse stated claim under New York law for negligent infliction of emotional distress; and

[7] negligent infliction of emotional distress claims were not cognizable.

Motions granted in part and denied in part.

**Procedural Posture(s):** Motion to Dismiss for Failure to State a Claim.

West Headnotes (101)

**[1]    Federal Civil Procedure** 🔑 Motion and proceedings thereon

A defendant has the burden of proof on a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

**[2]    Civil Rights** 🔑 Substantive or procedural rights

Section 1983 itself creates no substantive rights, but instead provides only a procedure for redress for the deprivation of rights established elsewhere. 🚩 42 U.S.C.A. § 1983.

**[3]    Arrest** 🔑 Use of force

**Assault and Battery** 🔑 Excessive or unreasonable force

Arrestee would be allowed to proceed against law enforcement officers with civil assault and battery claims under New York law, where arrestee plausibly stated excessive force claims under § 1983, and such claims were based upon same factual circumstances. U.S. Const. Amend. 4; 🚩 42 U.S.C.A. § 1983.

**[4]    Searches and Seizures** 🔑 Fourth Amendment and reasonableness in general

Question of whether a search is "reasonable" within the meaning of the Fourth Amendment does not depend on the law of the particular state in which the search occurs. U.S. Const. Amend. 4.

**[5]**  **Searches and Seizures** 🔑 Constitutional and statutory provisions

Although individual states may construe their own constitutions as imposing more stringent constraints on police conduct than does the federal Constitution, state law did not alter the context of the Fourth Amendment. U.S. Const. Amend. 4.

**[6]**  **Arrest** 🔑 Mode of stop

**Arrest** 🔑 Use of force

A free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure of his person is properly analyzed under the Fourth Amendment's objective reasonableness standard. U.S. Const. Amend. 4.

**[7]**  **Arrest** 🔑 Use of force

Every person has Fourth Amendment right to be free from excessive force by police officers, including during course of arrest. U.S. Const. Amend. 4.

**[8]**  **Arrest** 🔑 Use of force

The reasonableness inquiry in a Fourth Amendment excessive force case is objective, i.e., whether law enforcement officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. U.S. Const. Amend. 4.

**[9]**  **Arrest** 🔑 Use of force

Proper application of the reasonableness inquiry in a Fourth Amendment excessive force case requires careful attention to the facts and circumstances at issue, such as whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. U.S. Const. Amend. 4.

**[10]**  **Searches and Seizures** 🔑 Fourth Amendment and reasonableness in general

The reasonableness of searches and seizures under the Fourth Amendment does not depend on state law. U.S. Const. Amend. 4.

**[11]**  **Assault and Battery** 🔑 Assault in general

Under New York law, a "civil assault" is an intentional placing of another person in fear of imminent harm or offensive conduct.

**[12]**  **Assault and Battery** 🔑 Fear or Apprehension of Harm

Under New York law, to recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact.

**[13]**  **Assault and Battery** 🔑 Battery in general

Under New York law, a "civil battery" is an intentional wrongful physical contact with another person without consent, and may be accomplished either personally or by means of an instrumentality.

**[14]**  **Federal Courts** 🔑 Jurisdiction of Entire Controversy; Pendent and Supplemental Jurisdiction

Claims form part of the "same case or controversy" as federal claims, for purposes of supplemental jurisdiction, if claims derive from a common nucleus of operative fact. 🚩 28 U.S.C.A. § 1367(a).

**[15]**  **False Imprisonment** 🔑 Nature and form of remedy

Under New York law, the common law tort of false arrest is a species of false imprisonment, which is an action derived from the ancient common-law action of trespass that protects the personal interest of freedom from restraint of movement.

**[16]    Civil Rights** 🔑 Arrest and detention

Section 1983 claims for false arrest and false imprisonment are substantially the same in all relevant respects as claims for false arrest and false imprisonment under New York law. U.S. Const. Amend. 4; 🚩 42 U.S.C.A. § 1983.

**[17]    False Imprisonment** 🔑 Nature and form of remedy

Under New York law, the tort of false arrest is synonymous with false imprisonment.

**[18]    False Imprisonment** 🔑 Nature and Elements of False Imprisonment

In order to establish claim for false arrest or false imprisonment under New York law, plaintiff must show that: (1) defendant intentionally confined plaintiff, (2) plaintiff was conscious of confinement, (3) plaintiff did not consent to confinement, and (4) confinement was not otherwise justified.

**[19]    Federal Civil Procedure** 🔑 Alternate, Hypothetical and Inconsistent Claims

Arrestee would be permitted to plead in alternative as to defendant law enforcement officers, and obtain discovery to determine which officers participated directly in alleged constitutional violation, in § 1983 action for excessive force and false arrest; although complaint did not specifically identify officer who dragged arrestee into patrol car, handcuffed him, or removed him from patrol car upon arrival at police station, complaint properly alleged at least one constitutional violation. U.S. Const. Amend. 4; 🚩 42 U.S.C.A. § 1983.

**[20]    Federal Civil Procedure** 🔑 Alternate, Hypothetical and Inconsistent Claims

With respect to inconsistent pleadings, a complaint may plead in the alternative and the inconsistency may lie either in the statement of the facts or in the legal theories adopted. Fed. R. Civ. P. 8(d).

**[21]    Federal Civil Procedure** 🔑 Alternate, Hypothetical and Inconsistent Claims

Flexibility in pleading causes of action in the alternative is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims. Fed. R. Civ. P. 8(d).

**[22]    Federal Civil Procedure** 🔑 Alternate, Hypothetical and Inconsistent Claims

A plaintiff pleading causes of action in the alternative may not be able to recover on both theories if the allegations conflict. Fed. R. Civ. P. 8(d).

**[23]    Federal Civil Procedure** 🔑 Alternate, Hypothetical and Inconsistent Claims

Rule governing federal pleading allows the district court to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party, as the court must do on motions to dismiss. Fed. R. Civ. P. 8(d)(2), 12.

**[24]    Federal Civil Procedure** 🔑 Alternate, Hypothetical and Inconsistent Claims

Arrestee would be permitted to plead in alternative as to defendant law enforcement officers, and obtain discovery to determine which officers participated directly in alleged constitutional violation, in § 1983 action for failure to intervene arising from incidents surrounding his arrest; although complaint

did not specifically identify officers who failed to intervene to stop other officers from violating arrestee's constitutional rights, complaint properly alleged at least one constitutional violation. 🚩 42 U.S.C.A. § 1983.

**[25]    Civil Rights** 🔑 Police, Investigative, or Law Enforcement Activities

All law enforcement officials have affirmative duty to intervene to protect constitutional rights of citizens from infringement by other law enforcement officers in their presence.

**[26]    Federal Civil Procedure** 🔑 Alternate, Hypothetical and Inconsistent Claims

Under federal pleading rules, even if a plaintiff's alternative claims are somehow inconsistent, a court can entertain them both. Fed. R. Civ. P. 8(d).

**[27]    Federal Civil Procedure** 🔑 Alternate, Hypothetical and Inconsistent Claims

Arrestee would be permitted to plead in alternative as to defendant law enforcement officers, and obtain discovery to determine which officers participated directly in alleged constitutional violation, in § 1983 action alleging fabrication of evidence to justify his arrest; although complaint did not specifically identify officers who fabricated evidence, complaint properly alleged at least one constitutional violation. 🚩 42 U.S.C.A. § 1983.

**[28]    Arrest** 🔑 Officers and Assistants, Arrest Without Warrant

A constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer. U.S. Const. Amend. 4.

**[29]    Civil Rights** 🔑 Governmental Ordinance, Policy, Practice, or Custom

Municipalities are liable under § 1983 to be sued as "persons" within the meaning of that statute, when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom. 🚩 42 U.S.C.A. § 1983.

**[30]    Civil Rights** 🔑 Governmental Ordinance, Policy, Practice, or Custom

Constitutional deprivations actionable under § 1983 need not be contained in an explicitly adopted rule or regulation, for purposes of municipal liability. 🚩 42 U.S.C.A. § 1983.

**[31]    Civil Rights** 🔑 Governmental Ordinance, Policy, Practice, or Custom

Constitutional deprivations actionable under § 1983 may be visited upon a municipality pursuant to governmental custom even though such custom has not received formal approval through the body's official decisionmaking channels. 🚩 42 U.S.C.A. § 1983.

**[32]    Civil Rights** 🔑 Governmental Ordinance, Policy, Practice, or Custom

To hold municipalities liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. 🚩 42 U.S.C.A. § 1983.

**[33]    Civil Rights** 🔑 Governmental Ordinance, Policy, Practice, or Custom

**Civil Rights** 🔑 Lack of Control, Training, or Supervision; Knowledge and Inaction

To establish an official policy, custom, or practice, as required to hold municipalities liable under § 1983 for the unconstitutional actions of its employees, a plaintiff may allege the existence of: (1) a formal policy officially endorsed by the municipality, (2) actions taken by government officials responsible for

establishing the municipal policies that caused the particular deprivation in question, (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware, or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. ⚑ 42 U.S.C.A. § 1983.

**[34]    Civil Rights** 🔑 Lack of Control, Training, or Supervision; Knowledge and Inaction

Three requirements must be met before municipality's failure to train or supervise constitutes deliberate indifference to constitutional rights of citizens, such that municipality may be held liable under § 1983: (1) plaintiff must show that policymaker knows to moral certainty that her employees will confront given situation, (2) plaintiff must show that situation either presents employee with difficult choice of sort that training or supervision will make less difficult or that there is history of employees mishandling situation, and (3) plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. ⚑ 42 U.S.C.A. § 1983.

**[35]    Civil Rights** 🔑 Lack of Control, Training, or Supervision; Knowledge and Inaction

A policymaker does not exhibit deliberate indifference, for purposes of municipal liability under § 1983 for failure to train, by failing to train municipal employees for rare or unforeseen events. ⚑ 42 U.S.C.A. § 1983.

**[36]    Arrest** 🔑 Use of force

Deadly force may constitutionally be applied to apprehend a fleeing suspect only when the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm and when, where possible, some warning has been given. U.S. Const. Amend. 4.

**[37]    Civil Rights** 🔑 Lack of Control, Training, or Supervision; Knowledge and Inaction

Municipal policymakers may appropriately concentrate training and supervision resources on those situations where employee misconduct is likely to deprive citizens of constitutional rights, without exhibiting deliberate indifference to constitutional rights of its citizens so as to expose municipality to liability under § 1983. ⚑ 42 U.S.C.A. § 1983.

**[38]    Civil Rights** 🔑 Criminal law enforcement; prisons

Arrestee bringing claims against municipal and county law enforcement officers for excessive force and false arrest plausibly alleged that municipal and county policymakers knew to moral certainty that officers would confront situations like that giving rise to arrestee's claims, i.e., responding to emergency call reporting loud argument late at night, arresting and transporting arrestee to police station, and causing criminal charges to be filed against him, as factor for determining whether municipality and county could be held liable under § 1983 for failure to train; it could be inferred that officials knew that officers would make reasonable suspicion and probable cause determinations, seize and arrest individuals, provide medical care to detainees, and transmit evidence to prosecutors, because those were basic facets of law enforcement jobs. U.S. Const. Amend. 4; ⚑ 42 U.S.C.A. § 1983.

**[39]    Federal Civil Procedure** 🔑 Response, reply, and surreply; reply and surreply briefs

Arguments may not be made for the first time in a reply brief.

**[40]**    **Conspiracy** 🔑 Definition and Elements in General

To prevail on a § 1983 conspiracy claim, the plaintiff must establish: (1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing damages. 🚩 42 U.S.C.A. § 1983.

**[41]**    **Conspiracy** 🔑 Definition and Elements in General

To sustain a claim for conspiracy under § 1983, a plaintiff must demonstrate that the defendants acted in a willful manner, culminating in an agreement, understanding, or meeting of the minds, that violated the plaintiff's rights secured by the constitution or federal courts. 🚩 42 U.S.C.A. § 1983.

**[42]**    **Conspiracy** 🔑 Civil rights conspiracies

Arrestee plausibly alleged facts to suggest that law enforcement officers had meeting of minds to use excessive force when arresting him, as required to state claim under § 1983 for conspiracy to violate his constitutional rights; arrestee alleged that one officer was standing at scene in firm control of readily deescalated event with arrestee, who was blind man holding cane and wearing dark sunglasses, when other officers arrived and attacked him, allegedly in manner that was not spontaneous reaction to any threat, and provided extensive factual allegations pleading that attack was coordinated, with various officers acting in concert. U.S. Const. Amend. 4; 🚩 42 U.S.C.A. § 1983.

**[43]**    **Conspiracy** 🔑 Direct or circumstantial evidence in general

Although there are legal limitations upon the inferences which may be drawn from circumstantial evidence, a conspiracy is often difficult to prove and a court may, at times, have to rely on circumstantial evidence of a conspiracy.

**[44]**    **Conspiracy** 🔑 Form of agreement; express or implied agreement

Conspiracy need not be shown by proof of explicit agreement but can be established by showing that parties have tacit understanding to carry out prohibited conduct.

**[45]**    **Conspiracy** 🔑 Equal privileges and immunities; equal protection

To state a civil rights conspiracy, a plaintiff must allege: 1) a conspiracy, 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and 3) an act in furtherance of the conspiracy, 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. 🚩 42 U.S.C.A. § 1985(3).

**[46]**    **Conspiracy** 🔑 Intent, motive, or animus

Statute prohibiting conspiracy for purpose of depriving person or class of equal protection of laws or equal privileges and immunities under laws is applicable only if the plaintiff can show that some racial, or otherwise class-based invidiously discriminatory, animus lay behind the conspirators' action. 🚩 42 U.S.C.A. § 1985(3).

**[47]**    **Conspiracy** 🔑 Equal privileges and immunities; equal protection

Establishment of a conspiracy claim, under statute prohibiting conspiracy for purpose of depriving person or class of equal protection of laws or equal privileges and immunities under laws, requires proof of a conspiracy between two or more persons. 🚩 42 U.S.C.A. § 1985(3).

**[48]    Conspiracy 🔑 Government entities in general**

The term "persons," in statute prohibiting conspiracy between two or more persons for purpose of depriving person or class of equal protection of laws or equal privileges and immunities under laws, includes municipalities.

🚩 42 U.S.C.A. § 1985(3).

**[49]    Conspiracy 🔑 Civil rights conspiracies**

A claim for conspiracy under statute prohibiting conspiracy for purpose of depriving person or class of equal protection of laws or equal privileges and immunities under laws may be established against a state if it is proved that the state is involved in the conspiracy, or that the aim of the conspiracy is to influence the activity of the state. 🚩 42 U.S.C.A. § 1985(3).

**[50]    Conspiracy 🔑 Law enforcement and criminal prosecution; Fourth Amendment**

Arrestee, who was blind and had physical disability due to removal of back and shoulder muscles after flesh-eating bacteria infection, plausibly alleged that law enforcement officers acted out of animus to arrestee's protected disability status in using excessive force in arresting him and failing to accommodate his disability during process of arrest and booking him at police station, as required to state claim for civil rights conspiracy under statute prohibiting conspiracy for purpose of depriving person or class of equal protection of laws or equal privileges and immunities under laws; complaint alleged that it was readily apparent that arrestee was disabled when officers attacked him, and that officers acted with that knowledge when arresting him and processing him at police station. 🚩 42 U.S.C.A. § 1985(3).

**[51]    Conspiracy 🔑 Classes protected**

Disability is a class protected under statute prohibiting conspiracy for purpose of depriving person or class of equal protection of laws or equal privileges and immunities under laws.

🚩 42 U.S.C.A. § 1985(3).

**[52]    Conspiracy 🔑 Law enforcement and criminal prosecution; Fourth Amendment**

Arrestee, who was blind and had physical disability due to removal of back and shoulder muscles after flesh-eating bacteria infection, plausibly alleged that law enforcement officers had tacit understanding to act with discriminatory animus to arrestee's protected disability status in using excessive force in arresting him and failing to accommodate his disability during process of arrest and booking him at police station, so as to allege meeting of minds necessary to state claim for civil rights conspiracy under statute prohibiting conspiracy for purpose of depriving person or class of equal protection of laws or equal privileges and immunities under laws; complaint alleged that officers carried out coordinated attack and continued their actions in concert when transporting him to police station, and intentionally and mockingly refused to accommodate arrestee's disability. 🚩 42 U.S.C.A. § 1985(3).

**[53]    Civil Rights 🔑 Failure to act or protect or to enforce law**

A valid claim under statute providing cause of action against any person who fails to prevent civil rights conspiracy despite knowledge of conspiracy and power to prevent it must be predicated upon a valid claim under statute prohibiting conspiracy for purpose of depriving person or class of equal protection of laws or equal privileges and immunities under laws.

🚩 42 U.S.C.A. §§ 1985, 1986.

**[54]    Civil Rights 🔑 Arrest, search, and detention**

Arrestee could maintain claim against municipal and county law enforcement officers for failure to prevent conspiracy to deprive arrestee of his civil rights, in action alleging that officers

conspired to deprive arrestee of his civil rights based on animus to arrestee's protected disability status, where arrestee plausibly stated claim for civil rights conspiracy under statute prohibiting conspiracy for purpose of depriving person or class of equal protection of laws or equal privileges and immunities under laws. 42 U.S.C.A. §§ 1985(3), 1986.

**[55]** **Civil Rights** ☞ Vicarious liability and respondeat superior in general; supervisory liability in general

Government officials may not be held liable under § 1983 for unconstitutional conduct of their subordinates under theory of respondeat superior. 42 U.S.C.A. § 1983.

**[56]** **Civil Rights** ☞ Liability of Public Employees and Officials

A § 1983 plaintiff must plead and prove that each government official defendant, through official's own individual actions, has violated constitution. 42 U.S.C.A. § 1983.

**[57]** **Civil Rights** ☞ Criminal law enforcement; prisons

Arrestee plausibly alleged that county sheriff and municipal police chief were "policymakers" responsible for implementing and maintaining policies to protect against constitutional deprivations and abuse by their subordinate law enforcement officers, as required to state supervisory liability claims under § 1983 alleging that sheriff and chief violated Fourteenth Amendment by failing to protect arrestee; complaint alleged that both sheriff and chief had oversight responsibility for training, hiring, screening, instruction, supervision and discipline of officers, and were reckless in failing to supervise subordinates. U.S. Const. Amend. 14; 42 U.S.C.A. § 1983.

**[58]** **Civil Rights** ☞ Liability of Public Employees and Officials

Official's conduct in making and executing policy, or failing to make or execute policy, may satisfy personal involvement requirement for liability under § 1983, if such conduct meets elements required to establish underlying constitutional violation and is undertaken with required state of mind. 42 U.S.C.A. § 1983.

**[59]** **Civil Rights** ☞ Liability of Public Employees and Officials

A plaintiff may establish a policy-making official's personal involvement in a constitutional violation, as required to hold official liable under § 1983, by (1) alleging facts from which it may be reasonably inferred the official was responsible for making relevant policies, and thus that there was a tangible connection between their policymaking conduct and the alleged harm, and (2) establishing the elements of the underlying claim directly against each defendant. 42 U.S.C.A. § 1983.

**[60]** **Constitutional Law** ☞ Conditions

To plead a § 1983 failure-to-protect Fourteenth Amendment due process claim, a pretrial detainee must show that defendant officers acted with deliberate indifference. U.S. Const. Amend. 14; 42 U.S.C.A. § 1983.

**[61]** **Constitutional Law** ☞ Conditions

To plead a § 1983 failure-to-protect Fourteenth Amendment due process claim, a pretrial detainee must satisfy two prongs: (1) an objective prong showing that the failure to protect was sufficiently serious to constitute objective deprivations of the right to due process, and (2) a subjective prong, mens rea prong, or mental element prong, showing that the defendant acted with at least deliberate

indifference to the challenged conditions. U.S. Const. Amend. 14; 📁 42 U.S.C.A. § 1983.

**[62]** **Constitutional Law** 🔑 Conditions
**Constitutional Law** 🔑 Safety and security

To satisfy the mens rea or mental element prong of a § 1983 failure-to-protect Fourteenth Amendment due process claim, a pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee, even though the defendant knew, or should have known, that the condition posed an excessive risk to health or safety. U.S. Const. Amend. 14; 📁 42 U.S.C.A. § 1983.

**[63]** **Constitutional Law** 🔑 Conditions

The subjective prong, or mens rea prong, of a pretrial detainee's § 1983 failure-to-protect Fourteenth Amendment due process claim is defined objectively, and deliberate indifference can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind. U.S. Const. Amend. 14; 📁 42 U.S.C.A. § 1983.

**[64]** **Constitutional Law** 🔑 Conditions

To plead the first objective prong of a § 1983 failure-to-protect Fourteenth Amendment due process claim, the deprivation alleged by the pretrial detainee must be, objectively, sufficiently serious, and the detainee must show that he is detained under conditions posing a substantial risk of serious harm. U.S. Const. Amend. 14; 📁 42 U.S.C.A. § 1983.

**[65]** **Constitutional Law** 🔑 Conditions
**Sentencing and Punishment** 🔑 Conditions of Confinement

Pretrial detainees have even more stringent constitutional protections under the Fourteenth Amendment Due Process Clause than prisoners do under the Eighth Amendment, because pretrial detainees, unlike convicted prisoners, cannot be punished at all, much less maliciously and sadistically. U.S. Const. Amends. 8, 14.

**[66]** **Arrest** 🔑 Custody and Disposition of Prisoner
**Constitutional Law** 🔑 Conduct
**Constitutional Law** 🔑 Safety and security
**Municipal Corporations** 🔑 Police and fire
**Prisons** 🔑 Protection from violence, assault, or abuse
**Sheriffs and Constables** 🔑 Liabilities for acts or omissions of deputies or assistants

Arrestee, who was blind and had physical disability due to removal of back and shoulder muscles after flesh-eating bacterial infection, sufficiently alleged that he was detained under conditions posing substantial risk of serious harm, and thus plausibly pleaded objective deliberate indifference prong of § 1983 failure-to-protect Fourteenth Amendment claims against county sheriff and municipal police chief, under theory of supervisory liability, where arrestee alleged that he was maliciously and sadistically attacked by several law enforcement officers outside his home, and was further abused at police station during pretrial detention. U.S. Const. Amend. 14; 📁 42 U.S.C.A. § 1983.

**[67]** **Civil Rights** 🔑 Criminal law enforcement; prisons

Whether state knew or should have known of substantial risk of harm to a pretrial detainee, as a prong of a § 1983 failure-to-protect Fourteenth Amendment Due Process claim, is question of fact subject to demonstration in usual ways, including inference from circumstantial evidence. U.S. Const. Amend. 14; 📁 42 U.S.C.A. § 1983.

**[68]**  **Constitutional Law** 🔑 Conditions

In a § 1983 failure-to-protect Fourteenth Amendment Due Process claim, a factfinder may conclude that a government official knew of a substantial risk to a pretrial detainee from the very fact that the risk was obvious. U.S. Const. Amend. 14; 🚩42 U.S.C.A. § 1983.

**[69]**  **Federal Civil Procedure** 🔑 Fraud, mistake and condition of mind

Federal preluding rules provide a relaxed standard for pleading intent or knowledge at the motion to dismiss stage. 🚩Fed. R. Civ. P. 9(b).

**[70]**  **Federal Civil Procedure** 🔑 Fraud, mistake and condition of mind

Complaint is allowed to contain general allegations as to defendant's knowledge, because plaintiff realistically cannot be expected to plead defendant's actual state of mind, but plaintiffs are required to include allegations of the facts or events they claim give rise to an inference of knowledge. 🚩Fed. R. Civ. P. 9(b).

**[71]**  **Arrest** 🔑 Custody and Disposition of Prisoner

**Constitutional Law** 🔑 Conduct

**Municipal Corporations** 🔑 Police and fire

**Sheriffs and Constables** 🔑 Liabilities for acts or omissions of deputies or assistants

Arrestee, who was blind and had physical disability due to removal of back and shoulder muscles after flesh-eating bacteria infection, sufficiently alleged that county sheriff and municipal police chief were reckless in their failure to supervise their respective subordinate law enforcement officers, knew or should have known that subordinates were deliberately failing to effectuate constitutionally permissible arrests, seizures, detentions, transportation, and imprisonments, and knew or should have known that violent attacks carried out by police officers

posed excessive risk to health or safety requiring corrective action, and thus plausibly pleaded subjective deliberate indifference prong of § 1983 failure-to-protect Fourteenth Amendment claims under theory of supervisory liability. U.S. Const. Amend. 14; 🚩42 U.S.C.A. § 1983.

**[72]**  **Civil Rights** 🔑 Handicap, Disability, or Illness

As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. Americans with Disabilities Act of 1990 § 2, 42 U.S.C.A. § 12101 et seq.

**[73]**  **Civil Rights** 🔑 Elements of discrimination claims in general

In order to establish a violation under the ADA, the plaintiffs must demonstrate that (1) they are qualified individuals with a disability, (2) that the defendants are subject to the ADA, and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities. Americans with Disabilities Act of 1990 § 202, 🚩42 U.S.C.A. § 12132.

**[74]**  **Civil Rights** 🔑 Publicly assisted programs

To establish a violation under the Rehabilitation Act provision prohibiting disability discrimination by recipients of federal financial assistance, a plaintiff must show that the defendants receive federal funding. Rehabilitation Act of 1973 § 504, 🚩29 U.S.C.A. § 794.

**[75]**  **Civil Rights** 🔑 Grounds and subjects; compensatory damages

To recover monetary damages under Title II of the ADA or the Rehabilitation Act provision prohibiting disability discrimination by recipients of federal financial assistance, a plaintiff must demonstrate intentional discrimination. Rehabilitation Act of 1973 § 504, 🚩 29 U.S.C.A. § 794; Americans with Disabilities Act of 1990 § 202, 🏳️ 42 U.S.C.A. § 12132.

1 Case that cites this headnote

[76]    **Civil Rights** 🔑 Publicly assisted programs

"Intentional discrimination," under Title II of the ADA or the Rehabilitation Act provision prohibiting disability discrimination by recipients of federal financial assistance, does not require personal animosity or ill will, and a plaintiff may recover under either Act upon a showing of a statutory violation resulting from deliberate indifference to the rights secured the disabled by the Acts. Rehabilitation Act of 1973 § 504, 🚩 29 U.S.C.A. § 794; Americans with Disabilities Act of 1990 § 202, 🏳️ 42 U.S.C.A. § 12132.

[77]    **Civil Rights** 🔑 Criminal law enforcement; prisons

Although Title II of ADA and Rehabilitation Act provision prohibiting disability discrimination by recipients of federal financial assistance did not provide individual capacity suits against law enforcement officials, in action by arrestee alleging that officers used excessive force in arresting him and discriminated against him during arrest and while in detention, arrestee could maintain official capacity claims against officials. Rehabilitation Act of 1973 § 504, 🚩 29 U.S.C.A. § 794; Americans with Disabilities Act of 1990 § 202, 🏳️ 42 U.S.C.A. § 12132.

[78]    **Civil Rights** 🔑 Liability of Public Employees and Officials

Neither Title II of the ADA nor Rehabilitation Act provision prohibiting disability discrimination by recipients of federal financial assistance provides for individual capacity suit. Rehabilitation Act of 1973 § 504, 🚩 29 U.S.C.A. § 794; Americans with Disabilities Act of 1990 § 202, 🏳️ 42 U.S.C.A. § 12132.

[79]    **Federal Courts** 🔑 Political Subdivisions

**Federal Courts** 🔑 Municipal corporations; cities

State sovereign immunity does not extend to local governments or municipalities. U.S. Const. Amend. 11.

[80]    **Federal Courts** 🔑 Civil rights and discrimination in general

Abrogation of Eleventh Amendment sovereign immunity under Title II of the ADA is a congruent and proportional response to the history of discrimination against the disabled. U.S. Const. Amend. 11; Americans with Disabilities Act of 1990 § 202, 🏳️ 42 U.S.C.A. § 12132.

[81]    **Federal Courts** 🔑 Civil rights and discrimination in general

Because abrogation of Eleventh Amendment sovereign immunity under Title II of the ADA is a valid exercise of Congressional power under the Fourteenth Amendment, sovereign immunity is not a ground which bars a plaintiff's ADA claims against a state. U.S. Const. Amends. 11, 14; Americans with Disabilities Act of 1990 § 202, 🏳️ 42 U.S.C.A. § 12132.

[82]    **Federal Courts** 🔑 Civil rights and discrimination in general

Where the immunity of the individual defendants sued in their official capacities under ADA parallels that of the state, because sovereign

immunity does not shield the state, it does not shield the individual defendants in their official capacities. U.S. Const. Amend. 11; Americans with Disabilities Act of 1990 § 202, ⚑42 U.S.C.A. § 12132.

**[83]    Civil Rights** 🔑 Liability of Public Employees and Officials

**Federal Courts** 🔑 Civil rights and discrimination in general

**Federal Courts** 🔑 Suits for injunctive or other prospective or equitable relief;  Ex parte Young doctrine

Neither Rehabilitation Act provision prohibiting disability discrimination by recipients of federal financial assistance nor Title II of the ADA displays any intent by Congress to bar a suit against state officials in their official capacities for injunctive relief, nor does either create a remedial scheme so elaborate that it could be thought to preclude relief under ⚑*Ex parte Young* exception to sovereign immunity. Rehabilitation Act of 1973 § 504, 🚩29 U.S.C.A. § 794; Americans with Disabilities Act of 1990 § 202, ⚑42 U.S.C.A. § 12132.

**[84]    Civil Rights** 🔑 Arrest and detention

Arrestee, who was blind and had physical disability due to removal of back and shoulder muscles after flesh-eating bacteria infection, sufficiently alleged that law enforcement officers acted with at least deliberate indifference to arrestee's federally protected rights under ADA and Rehabilitation Act provision prohibiting disability discrimination by recipients of federal financial assistance, where complaint alleged that it was readily apparent that arrestee was blind and sightless because he was holding cane and wearing dark sunglasses in middle of night, and that officers were aware of arrestee's disabilities when allegedly attacking him and refusing to accommodate his disabilities while he was in custody. Rehabilitation Act of 1973 § 504, 🚩29 U.S.C.A. § 794; Americans with

Disabilities Act of 1990 § 202, ⚑42 U.S.C.A. § 12132.

**[85]    Civil Rights** 🔑 Discrimination by reason of handicap, disability, or illness

**Civil Rights** 🔑 Publicly assisted programs

Intentional discrimination under Title II of the ADA and under the Rehabilitation Act provision prohibiting disability discrimination by recipients of federal financial assistance does not require personal animosity or ill will. Rehabilitation Act of 1973 § 504, 🚩29 U.S.C.A. § 794; Americans with Disabilities Act of 1990 § 202, ⚑42 U.S.C.A. § 12132.

1 Case that cites this headnote

**[86]    Civil Rights** 🔑 Discrimination by reason of handicap, disability, or illness

**Civil Rights** 🔑 Publicly assisted programs

To plead intentional discrimination under the Rehabilitation Act provision prohibiting disability discrimination by recipients of federal financial assistance and Title II of the ADA, plaintiffs must demonstrate deliberate indifference, which does not require personal animosity or ill will. Rehabilitation Act of 1973 § 504, 🚩29 U.S.C.A. § 794; Americans with Disabilities Act of 1990 § 202, ⚑42 U.S.C.A. § 12132.

**[87]    Civil Rights** 🔑 Presumptions, Inferences, and Burdens of Proof

Intentional discrimination in violation of the ADA and the Rehabilitation Act provision prohibiting disability discrimination by recipients of federal financial assistance may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom. Rehabilitation Act of 1973 § 504, 🚩29 U.S.C.A. § 794;

Americans with Disabilities Act of 1990 § 202,
🚩 42 U.S.C.A. § 12132.

**[88]    Civil Rights** 🔑 **Vicarious or respondeat
superior liability in general**

Vicarious liability principles apply under the
ADA. Americans with Disabilities Act of 1990 §
2, 42 U.S.C.A. § 12101 et seq.

1 Case that cites this headnote

**[89]    Damages** 🔑 **Natural and probable
consequences of torts**

Under New York law, where defendant
negligently exposes plaintiff to unreasonable
risk of bodily injury or death, plaintiff may
recover, as proper element of his or her damages,
damages for injuries suffered in consequence of
observation of serious injury or death of member
of his or her immediate family, assuming that
it is established that defendant's conduct was
substantial factor in bringing about such injury
or death.

**[90]    Damages** 🔑 **Injury or Threat to Another;
Bystanders**

Under New York law, "zone-of-danger rule"
allows one who is himself or herself threatened
with bodily harm in consequence of defendant's
negligence to recover for emotional distress
resulting from viewing of death or serious
physical injury of member of his or her
immediate family, provided that the emotional
disturbance suffered is serious and verifiable.

**[91]    Damages** 🔑 **Injury or Threat to Another;
Bystanders**

Under New York law, in order for a plaintiff
threatened with bodily harm in consequence of
defendant's negligence to recover for emotional
distress resulting from viewing of death or
serious physical injury of member of his or her
immediate family, the compensable emotional
distress must be tied, as a matter of proximate

causation, to the observation of the serious injury
or death of the family member, and such injury
or death must have been caused by the conduct
of the defendant.

**[92]    Damages** 🔑 **Other particular cases**

Arrestee's spouse plausibly alleged that she
was in "zone of danger" when her disabled
spouse was violently arrested and she witnessed
his resultant injuries, and thus stated claim
under New York law for negligent infliction of
emotional distress arising from arrest; arrestee's
spouse alleged that she stormed out of house to
accost arresting officers for attacking arrestee,
that she was in immediate vicinity as arrestee,
and that there was more than reasonable chance
that she herself would have been physically
accosted and threatened with similar beating as
arrestee.

**[93]    Damages** 🔑 **Mental suffering and emotional
distress**

Under New York law, whether a plaintiff was in
the "zone of danger," for purposes of establishing
a claim for emotional distress resulting from
viewing of death or serious physical injury of
member of plaintiff's immediate family, may
raise factual questions that must be resolved by
a jury.

**[94]    Limitation of Actions** 🔑 **Continuing injury
in general**

Under New York law, claims against law
enforcement officials, for intentional infliction
of emotional distress by arrestee and his spouse,
arising from alleged pattern of harassment,
intimidation, humiliation, and abuse, were
governed by continuing tort doctrine, and
thus were not barred by relevant statutes of
limitations, where arrestee and spouse plausibly
alleged that officers' conduct giving rise to claim
continued beyond initial incident. 🚩 N.Y. CPLR
§ 215(1); 🚩 N.Y. General Municipal Law § 50-
i(c).

**[95]**    **Civil Rights** 🔑 Time to Sue

**Federal Courts** 🔑 Civil rights and discrimination cases

In § 1983 actions, the applicable limitations period is found in the general or residual state statute of limitations for personal injury actions. 🚩 42 U.S.C.A. § 1983.

**[96]**    **Federal Civil Procedure** 🔑 Anticipating defenses

A complaint need not anticipate, or attempt to plead around, potential affirmative defenses.

**[97]**    **Federal Civil Procedure** 🔑 Anticipating defenses

**Federal Civil Procedure** 🔑 Limitations and laches

A statute of limitations is an affirmative defense that need not be addressed in the complaint, and plaintiffs are not required to allege facts in their complaint to rebut a potential statute of limitations affirmative defense that might be waived.

**[98]**    **Federal Civil Procedure** 🔑 Limitations and laches

**Federal Civil Procedure** 🔑 Fact issues

Determining a statute of limitations defense ordinarily requires a consideration of the merit of both parties' claims and defenses, which generally cannot occur on a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

**[99]**    **Limitation of Actions** 🔑 Continuing injury in general

Under New York law, in an intentional infliction of emotional distress action based on a pattern of harassment, intimidation, humiliation and abuse, the "continuing tort doctrine" permits the plaintiff to rely on wrongful conduct occurring more than one year prior to commencement of the action, and thus outside of the limitations period, so long as the final actionable event occurred within one year of the suit. 🚩 N.Y. CPLR § 215.

**[100]**    **Damages** 🔑 Particular cases

**Damages** 🔑 Other particular cases

Under New York law, claims against law enforcement officials, for negligent infliction of emotional distress by arrestee and his spouse, arising from alleged constitutional violations during and after arrest, were not cognizable to extent that were properly construed as false arrest and false imprisonment claims.

**[101]**    **Public Employment** 🔑 Law enforcement personnel

Under New York law, a plaintiff may proceed with negligence claims brought against law enforcement officials if such claims are not duplicative of false arrest, false imprisonment, or malicious prosecution.

**Attorneys and Law Firms**

Jesse P. Ryder, Ryder Law Firm, East Syracuse, NY, A. Cabral Bonner, Charles A. Bonner, Law Offices of Bonner & Bonner, Sausalito, CA, Eric R. Seifert, New York, NY, for Plaintiffs.

John D. Aspland, Corey A. Ruggiero, Fitzgerald Morris Baker Firth, P.C., Glens Falls, NY, Scott Goldie, Ducharme Goldie & Adams P.C., Canton, NY, for Defendants City of Ogdensburg, City of Ogdensburg Police Department.

Anneliese Aliasso, John L. Murad, Jr., Hancock Estabrook, LLP, Syracuse, NY, for Defendants Saint Lawrence County, Saint Lawrence County Sheriffs' Department, Brooks Bigwarfe, Matthew Merria.

John D. Aspland, Fitzgerald Morris Baker Firth, P.C., Glens Falls, NY, Scott Goldie, Ducharme Goldie & Adams P.C.,

Canton, NY, for Defendants Robert Wescott, Charles Shaver, Danielle Pryce, Joshua Sirles, Scott Wilson.

**MEMORANDUM-DECISION AND ORDER**

LAWRENCE E. KAHN, United States District Judge

**I. INTRODUCTION**

**\*1** Plaintiffs Timothy Lalonde and Theresa Lalonde (collectively, "Plaintiffs") commenced this civil action on February 18, 2022, against Defendants the City of Ogdensburg, the City of Ogdensburg Police Department, Ogdensburg Police Department Chief Robert Westcott, Police Officers Charles Shaver, Danielle Pryce, Joshua Sirles, Scott Wilson, and Does 1–100 (collectively, "Ogdensburg Defendants"), as well as Saint Lawrence County, the Saint Lawrence County Sheriffs' Department, Saint Lawrence County Sheriff Brooks Bigwarfe, Sheriff Matthew Merria, and the aforementioned Does 1–100 (collectively, "Saint Lawrence Defendants"). [1] Dkt. No. 1 ("Complaint").

Saint Lawrence Defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 9 ("Saint Lawrence Defendants' Motion to Dismiss"). Subsequently, Ogdensburg Defendants filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Dkt. No. 10 ("Ogdensburg Defendants' Motion to Dismiss"). Plaintiffs filed a response to Saint Lawrence Defendants' Motion to Dismiss, Dkt. No. 12 ("Plaintiffs' Response to Saint Lawrence Defendants"), and a response to Ogdensburg Defendants' Motion to Dismiss, Dkt. No. 17 ("Plaintiffs' Response to Ogdensburg Defendants"). Thereafter, Ogdensburg Defendants filed a reply, Dkt. No. 19 ("Ogdensburg Defendants' Reply") and Saint Lawrence Defendants filed a reply, Dkt. No. 20 ("Saint Lawrence Defendants' Reply"). [2]

For the reasons that follow, the Court grants in part and denies in part Saint Lawrence Defendants' and Ogdensburg Defendants' Motions to Dismiss.

**II. BACKGROUND**

The following facts, which the Court assumes to be true at this stage, are taken from the Complaint. *See* Vega v. Hempstead Union Free School Dist., 801 F.3d 72, 76 (2d Cir. 2015).

Timothy Lalonde "was rendered legally blind and partially disabled" because "of the aftermath of a life-threatening disease that severely diminished [his] physical abilities." Compl. ¶ 18. Specifically, "[o]n account of encountering and surviving a life-threatening flesh-eating bacteria in or around the year 2000" he "was left without his back, stomach, and right shoulder muscles which the surgeons had to remove in order to save [his] life." Id. ¶ 32. "In addition, the bacteria attacked his optic nerves which left him legally blind." Id. Thus, Plaintiff "lost the complete use of his vision, the right side of his upper body, any strength in his core torso having lost the muscles in his back, stomach and right shoulder" and experienced "chronic emotional and psychological stress from his disabled state." Id. ¶ 51.

**\*2** On Sunday, March 1, 2020, at approximately 12:29 A.M., Officer Shaver "responded to 510 Pleasant Avenue, Ogdensburg, NY pursuant to a neighbor's 911 call informing dispatch that two neighbors were loudly arguing in front of one of the neighbor's homes." Id. ¶ 17. Shaver "heard the tail end of an exchange" between Timothy Lalonde and "his daughter's boyfriend, Randall Outlaw, who, along with [Timothy Lalonde's] daughter Ashley, resided at [Timothy Lalonde's] second home located next door to his residence at 506 Pleasant Avenue, Ogdensburg, NY." Id.

Before Timothy Lalonde's argument with Outlaw that evening, Theresa Lalonde, "[Timothy Lalonde's wife,] had picked up her husband from town and drove them to their home." Id. at ¶ 18. Theresa Lalonde is "charged with having to assist [Timothy] with various tasks relating to the maintenance of his personal hygiene and sight required tasks." Id. at ¶ 51. "Upon arriving at home[,]" Timothy Lalonde "exited the car and with his long white cane, tapped on the curb and made his way over to his second house" and had the "intention of speaking with his daughter's boyfriend, Randall Outlaw ...." Id. at ¶ 19. Timothy Lalonde "found Mr. Outlaw at home and strongly criticized him for discharging a firearm outside of [Timothy Lalonde's home] while his daughter Ashley was not home, and her three younger children were present." Id.

Thereafter, an argument between Timothy Lalonde and Outlaw ensued and "[c]oncerned with such a late-night confrontation, a nearby neighbor called 911 to report the argument." Id. ¶ 20. When Shaver arrived "the exchange between [Timothy Lalonde] and Mr. Outlaw had run its course." Id. ¶ 21. Because Timothy Lalonde is "legally blind [he] was unaware that" Shaver "had just momentarily

arrived." Id. Theresa Lalonde asked Shaver "to inform her husband who he on account [of] her husband [being] unable to see." Id. At this time, Timothy Lalonde "regained his composure and the encounter between" Timothy Lalonde and Outlaw "was complete." Id. ¶ 22.

However, "[a]pproximately three minutes after both [Shaver's] arrival and the complete de-escalation of the exchange between [Timothy Lalonde] and his daughter's boyfriend, several law enforcement patrol cars came screeching to halt in front of [Timothy Lalonde's] property." Id. ¶ 23. Officers Pryce and Sirles "leaped out of their [Ogdensburg Police Department] patrol vehicles and Sheriff Merria "jumped out" of his [Saint Lawrence County Sheriffs' Department] vehicle. Id. ¶ 24. Without "acknowledgement" of or "consultation" with Shaver "who was standing at the scene in firm control of a readily deescalated event with a blind man holding a cane and wearing dark sunglasses[,]" Pryce, Sirles and Merria "surrounded" Timothy Lalonde. Id. ¶ 25.

"Despite it being readily apparent that [Timothy Lalonde] was blind and sightless," Pryce "charged towards [him] and began screaming at him while circling around him." Id. ¶ 26. "On account of being sightless" Timothy Lalonde "tracked" Pryce's voice and "turned his body in her voice's direction." Id. ¶ 27. After Timothy Lalonde turned, Sirles, Shaver, and Merria "forcefully rushed toward [Timothy Lalonde] and slammed his body with such force that [his] body came to rest upon a driveway on the opposite side of the street." Id. ¶ 28. Upon "[h]earing the commotion," Theresa Lalonde "stormed out of her house screaming to" Pryce, Sirles, Shaver, and Merria "that her husband is blind and that 'you're killing my husband.' " Id. ¶ 29.

Sirles, Shaver, and Merria "pounced onto [Timothy Lalonde's] back," while Pryce "with her knee lifted, dropped her knee downward onto [his] ear[,] shattering and lacerating its inner cartilage." Id. ¶ 30. While these officers were "bashing [Timothy Lalonde's] head against the pavement," Merria "was yanking [his] left arm [and] ordering him to release it from under the weight of his body." Id. ¶ 31. However, Timothy Lalonde "responded that he couldn't do it as he was disabled." Id. Timothy Lalonde "screamed that he was unable to comply with [Pryce, Sirles, Shaver, and Merria's] commands to move his body in order to free up his immobilized arm." Id. ¶ 33. As noted above, Timothy Lalonde "was left without his back, stomach, and right shoulder muscles" because surgeons had removed them in order to save

his life after he encountered "a life-threatening flesh-eating bacteria ...." Id. ¶ 32.

**\*3** Although Shaver "had just minutes before witnessed the de-escalation of [Timothy Lalonde's] encounter with his daughter's boyfriend[,]" including Plaintiff's "complete return to composure[,]" Shaver "inflicted two taser shots that jolted [Timothy Lalonde's] body." Id. ¶ 34. At the same time, Merria "ignor[ed Timothy Lalonde's] assertion that his disability prevented him from moving" and Merria "began aggressively yanking on [Timothy Lalonde's] left wrist, elbow and arm resulting in an audible 'pop' that left [him] numb with excruciating pain and a shattered broken wrist, fractured and dislocated elbow, and torn rotator cuff." Id. ¶ 35.

"With blood pouring from his ear and [Timothy Lalonde] grimacing with pain [while] crying out that his arm, elbow and wrist were broken," Pryce, Sirles, Shaver, and Merria "dragged him to the patrol car." Id. ¶ 36. However, because Timothy Lalonde "lacked stomach and back muscles to keep him upright when shackled with his handcuffs behind his back," Pryce, Sirles, Shaver, and Merria " 'improvised' by lifting [Timothy Lalonde's] body and throwing him laterally into the patrol car[,] sending his head crashing against the opposite passenger door." Id. ¶ 37. "To secure [Timothy Lalonde] in the back of the patrol car," Pryce, Sirles, Shaver, and Merria "cuffed [his] right wrist and extending out his previously disabled right arm, attached it to the vehicle's ceiling while [he] lay prone across the back seats shivering with pain and repeatedly requesting medical assistance." Id. ¶ 38.

Pryce, Sirles, Shaver, and Merria arrived at the police station with Timothy Lalonde and "yanked [his] feet to pull him out from his prone position in the backseat of the patrol car" but "forg[ot] that they had secured [his] right arm and wrist to the back passenger ceiling ...." Id. ¶ 39. "After several forceful tugs that resulted in straining his previously disabled right arm, rotator cuff, and wrist that was attached to the vehicle['s] ceiling," Pryce, Sirles, Shaver, and Merria finally "recalled the means by which they secured him to the patrol car and released the handcuff from the ceiling." Id. Thereafter, Pryce, Sirles, Shaver, and Merria "yank[ed]" Plaintiff "out of the patrol car by his feet wherein he forcefully crashed to the ground in a heap." Id. ¶ 40. Then Pryce, Sirles, Shaver, and Merria "yanked [him] off the ground by his belt and back of his pants with such force that his jeans ripped and his leather belt tore in half." Id.

Despite the "knowledge" that Timothy Lalonde "was legally and categorically blind," the Defendant law enforcement officials "intentionally and mockingly refused to accommodate [Timothy Lalonde's] disability" as they brought him "into the police department to complete his arrest processing." Id. ¶ 41. Plaintiff was disoriented and "[w]ithout guiding [him] to a chair," Pryce, Sirles, Shaver, and Merria "watched [him] attempt to orient himself in the office seeking to locate a place to sit down." Id. While he was disoriented, Timothy Lalonde "accidentally brushed against" one of the Defendant officers "who screamed, 'don't touch me or I'll shoot you.' " Id.

During this time, Officers Does 1–100 and Chief Westcott "persisted in ridiculing and refusing to accommodate [Timothy Lalonde] by requiring him to stand facing the wall with his hands stretched out touching the wall while they interrogated and booked him on charges of disorderly conduct and resisting arrest." Id. ¶ 42. Throughout "[t]he entirety of this time, blood from [Timothy Lalonde's] ruptured cartilage continued to trickle out from his ear while he additionally experienced excruciating pain of a broken wrist, elbow and torn rotator cuff." Id. ¶ 43. When Plaintiff "repeatedly requested medical attention" he was "repeatedly ignored." Id.

 *4  Subsequently, Timothy Lalonde was interrogated, during which time Defendant law enforcement officials "fabricated" an "incident meant to provide an alternative explanation to account for [Plaintiff's] injuries ...." Id. ¶ 44. Defendant officers, including Wilson and Chief Westcott, "concocted a fallacious series of events that served to justify the grounds for their arrest and/or infliction of 'reasonable' force, i.e., [Plaintiff's] injuries occurred on account of his being drunk and inciting the [officers] to beat him, while purportedly claiming earlier in the evening that he was God and wanted to die, and that previous to his police encounter, he was 'jumped' by four unidentified men on Patterson Street in Ogdensburg." Id. ¶¶ 44, 91.

"After being made to stand against the stationhouse wall for one hour" while Defendant officers "attempted to have [Timothy Lalonde] subscribe and 'confess' to their fabrications, [Plaintiff] was finally permitted to obtain medical attention." Id. ¶ 45. When Plaintiff "was transported to Claxon-Hepburn Medical Center in Ogdensburg" the "Claxon-Hepburn medical staff rapidly evaluated that [his] medical condition was so severe and dire that he needed immediate transport to Upstate Medical University in Syracuse, New York, some three hours away." Id. ¶ 46.

"After medical evaluation, it was determined that [Timothy Lalonde] incurred a severe cervical sprain, a broken left wrist, concussion syndrome, a torn rotator cuff tendon, a dislocated and fractured left elbow, and torn inner ear cartilage." Id. ¶ 47.

Subsequently, "[i]n order to substantiate [Timothy Lalonde's] arrest without probable cause and the unwarranted and patently unreasonable force inflicted upon him, the [Saint Lawrence County] District Attorney, upon reliance" of Defendant officers' "fabricated police reports, persisted in charging [Timothy Lalonde] with disorderly conduct and resisting arrest." Id. ¶ 48. "After defending the fabricated charges by having to appear before the criminal court on approximately five court appearances, [Timothy Lalonde's] charges were dismissed on or about July 21, 2020." Id. ¶ 49.

Plaintiff asserts that the aforementioned conduct "has had an exponentially debilitative impact on [his] previous disabled state." Id. ¶ 50. Among the injuries Timothy Lalonde experienced were: "sustained brain damage, a torn left side rotator cuff tendon, a dislocated and fractured left elbow, and a torn cartilage in his right ear." Id. ¶ 52. "These injuries required [him] to undergo three surgeries resulting in the almost total incapacitation of his left upper body which previous to March 1, 2020 was his only functional and operational side on account of the damages caused by the flesh-eating bacteria." Id. This has rendered him "fully dependent on his wife [Theresa Lalonde's] assistance for all aspects of his daily needs." Id. Accordingly, Timothy Lalonde asserts that he "will require such complete and full care assistance, as well as requiring continuing medical treatment, for the balance of his life." Id. ¶ 53. Furthermore, Timothy Lalonde states that he has "incurred a loss of hearing on account of [Pryce's] ... assault with her knee" and he has also "been exponentially afflicted by anxiety, mental and emotional distress, humiliation, fear, loss of enjoyment, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery." Id. ¶ 54.

The charges against Timothy Lalonde were dismissed on or about July 21, 2020. Id. ¶ 49. However, on or about April 1, 2021, "approximately one year" after the aforementioned conduct and "eight months after his criminal charges were dismissed," id. ¶ 55, "[u]pon the direction of the Ogdensburg Police Department and Chief Westcott, Officer Wilson "was ordered to make a service call to [Timothy Lalonde's] residence" and Wilson requested Timothy Lalonde "accompany him to the Police station[,]" id. ¶ 56. Wilson "informed [Plaintiff] that for some undisclosed reason,

the [Ogdensburg Police Department] failed to take [his] fingerprints, mugshots, and gather other information with respect to [Plaintiff's] March 1, 2020 arrest and subsequent prosecution." Id. Wilson told Plaintiff that "if he refused to accompany him to the Police station, that the [Ogdensburg Police Department] would seek a warrant for his appearance." Id. "Upon requesting an accommodation on account of his disability, [Wilson] vehemently refused." Id.

**\*5** Timothy Lalonde "agreed to be taken to the Police station where" Wilson and Chief Westcott "commenced with re-interrogating him regarding the March 1, 2020 arrest" including the "utter fabrications" Plaintiffs allege had been previously made to attempt to justify the conduct of Shaver, Pryce, Sirles, and Merria. Id. ¶ 57. During this time, Plaintiff "experienc[ed] post traumatic and emotional distress under the circumstances ...." Id. Plaintiff asserts that Wilson and Chief Westcott were pursuing "an ongoing attempt to secure a coverup for their actions on [March 1, 2020], perpetuating the fabrication that [Timothy Lalonde] was attacked by four unidentified assailants on Patterson Street in Ogdensburg on the same evening that" Shaver, Pryce, Sirles, and Merria "attacked [Plaintiff] in front of his house." Id. ¶ 58.

Plaintiffs assert: (1) 42 U.S.C. § 1983 ("Section 1983") claims pursuant to the Fourth Amendment for false arrest, assault, battery, false imprisonment, and excessive force against Shaver, Pryce, Sirles, Merria, Wilson, Chief Westcott, and Does 1–100; (2) Section 1983 claims pursuant to the Fourth and Fourteenth Amendment for failure to intervene against Shaver, Pryce, Sirles, Merria, Chief Westcott, and Does 1–100; (3) Section 1983 claims pursuant to the Fourteenth Amendment for deliberate indifference to medical needs against Shaver, Pryce, Sirles, Merria, Chief Westcott, and Does 1–100; (4) Section 1983 conspiracy claims against Shaver, Pryce, Sirles, Merria, Wilson, Chief Westcott, and Does 1–100; (5) Section 1983 claims pursuant to the Fourteenth Amendment for fabrication of evidence against Shaver, Pryce, Sirles, Merria, Chief Westcott, and Does 1–100; (6) Section 1983 municipal liability claims pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) against the City of Ogdensburg and Saint Lawrence County; (7) Section 1983 supervisory liability claims against Chief Westcott, Sheriff Bigwarfe, and Does 1–100; (8) claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701, et seq., against all Defendants; (9) 42 U.S.C. § 1985(3) ("Section 1985(3)") claims for conspiracy to deprive rights against all Defendants; (10) 42 U.S.C. § 1986 ("Section 1986") claims for neglect to prevent conspiracy to deprive rights against all Defendants; (11) New York State law claims for negligent infliction of emotional distress against Shaver, Pryce, Sirles, Merria, and Does 1–100; (12) New York State law claims for intentional infliction of emotional distress against Shaver, Pryce, Sirles, Merria, and Does 1–100; (13) New York State law claims for negligence against all Defendants; (14) a New York State law trespass claim against Wilson; and (15) New York State law claims for loss of consortium with respect to Theresa Lalonde against all Defendants. Id. ¶¶ 60–182. Plaintiffs also request injunctive relief. Id. at 36–38.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b), "a party may assert the following [defense] by motion: ... (6) failure to state a claim upon which relief can be granted ...." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss for failure to state a claim, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This plausibility standard, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955). The Supreme Court has stated that while "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955).

**\*6** **[1]** "[A] defendant has the burden of proof on a Rule 12(b)(6) motion[.]" A.S. v. City Sch. Dist. of Albany, 585 F. Supp. 3d 246, 272 (N.D.N.Y. 2022); see also Pearl River Union Free Sch. Dist. v. Duncan, 56 F. Supp. 3d 339, 351 (S.D.N.Y. 2014) (" '[T]he movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6).' " (quoting Gonzalez v. Option One Mortg. Corp., No. 12-CV-1470, 2014 WL 2475893 at \*2, 2014 U.S. Dist. LEXIS 76789 at \*7 (D. Conn. June 3, 2014))). Moreover, in the context of a Rule 12(b)(6) motion the Court "construe[s] plaintiffs' complaint liberally, 'accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiffs' favor.' " Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) (quoting Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008)).

## IV. DISCUSSION

### A. Defendants' Arguments as to Plaintiffs' Assault and Battery and False Imprisonment Claims

**[2]** Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States] shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

**[3]** Saint Lawrence Defendants argue, "[w]ith respect to assault and battery claims, there is no federal common law for such torts, and thus, there can be no assault and battery claim grounded in § 1983." Dkt. No. 9-3 at 6 ("Saint Lawrence Defendants' Memorandum of Law"). Saint Lawrence Defendants assert: "Instead, such claims are construed as an excessive force claim." Id. Additionally, Saint Lawrence Defendants state: "Likewise, claims for false arrest and false imprisonment are cut from the same cloth, and the false imprisonment claim is dismissed in favor of the false arrest claim." Id. at 6–7. Ogdensburg Defendants reiterate the arguments "noted in co-defendant St. Lawrence County's Memorandum of Law." Dkt. No. 10-1 at 3 ("Ogdensburg Defendants' Memorandum of Law").

Plaintiffs respond:

> Despite ... wide breadth of protection afforded under Section 1983 claims grounded on Fourth Amendment protections and the distinction between the kinds of seizures that the Amendment protects, district courts in New York effectively conflate, as one cause of action, the otherwise distinct Fourth Amendment violations of false arrest and false imprisonment under the guise that these two seizures are effectively the same, i.e., that in the interest of sound judicial administration, the diminishment of the breadth and reach of the rights afforded are otherwise justified.

Pls.' Resp. to Saint Lawrence Defs.' at 3. Furthermore, Plaintiffs assert that Saint Lawrence Defendants "have misconstrued Plaintiffs' first cause of action as seeking separate Section 1983 claims under the Fourth Amendment, when instead, Plaintiffs have elicited the various means by which Defendants violated Mr. Lalonde's rights under the Fourth Amendment in order to advance the full breadth of his rights despite the court's limitation thereof on account of sound judicial discretion." Id. at 3–4.

**\*7** The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

**[4]** **[5]** " '[W]hether or not a search is reasonable within the meaning of the Fourth Amendment,' [the Supreme Court has] said, never 'depend[ed] on the law of the particular State in which the search occurs." Virginia v. Moore, 553 U.S. 164, 172, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) (quoting California v. Greenwood, 486 U.S. 35, 43, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988)). "While '[i]ndividual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution,' state law did not alter the context of the Fourth Amendment." Moore, 553 U.S. at 172, 128 S.Ct. 1598 (citation omitted) (quoting Greenwood, 486 U.S. at 43, 108 S.Ct. 1625). The Supreme Court "ha[s] applied the same principle in the seizure context." Moore, 553 U.S. at 172, 128 S.Ct. 1598. As the Supreme Court stated in Moore: "We thought it obvious that the Fourth Amendment's meaning did not change with local law enforcement practices—even practices set by rule. While those practices 'vary from place to place and from time to time,' Fourth Amendment protections are not 'so variable' and cannot 'be made to turn upon such trivialities.' " 553 U.S. at 172, 128 S.Ct. 1598 (quoting Whren v. United States, 517 U.S. 806, 815, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)).

**[6]** **[7]** **[8]** **[9]** "[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person ... are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard ...."

Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Thus, "[e]very person has a Fourth Amendment right to be free from excessive force by police officers, including during the course of an arrest." Jackson v. Cnty. of Ulster, No. 22-CV-148, 2022 WL 2954370, at *2, 2022 U.S. Dist. LEXIS 132123, at *5 (N.D.N.Y. July 26, 2022) (citing Graham, 490 U.S. at 395, 109 S.Ct. 1865). "As in other Fourth Amendment contexts ... the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397, 109 S.Ct. 1865. "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' ... its proper application requires careful attention to the facts and circumstances at issue, whether the subject poses an immediate threat to the safety of the officers or others and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396, 109 S.Ct. 1865 (citation omitted) (quoting Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

**[10]** **[11]** **[12]** **[13]** Thus, the Supreme Court has stated that the reasonableness of searches and seizures under the Fourth Amendment does not depend on state law. See Moore, 553 U.S. at 172, 128 S.Ct. 1598. It is true that "a number of courts ... have held that the Fourth Amendment excessive force standard applies to assault and battery claims against a police officer under New York State law." Jackson, 2022 WL 2954370, at *9, 2022 U.S. Dist. LEXIS 132123, at *27; see also Posr v. Doherty, 944 F.2d 91, 95 (2d Cir. 1991) (stating that "except for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims] [a]re substantially identical" under New York State law).[3] However, the starting point for such analysis is "the Graham Fourth Amendment standard" which is "based upon the use of excessive force by the police." Jackson, 2022 WL 2954370, at *9, 2022 U.S. Dist. LEXIS 132123, at *27. Accordingly, in Jackson, the court found that "because Plaintiff has stated a plausible Fourth Amendment claim against [a police-officer-defendant] based on the use of excessive force, and because Plaintiff's excessive force and battery claims are based upon the same factual circumstances, Plaintiff has stated a plausible civil battery claim against [the police-officer-defendant]." Id. at *9, 2022 U.S. Dist.

LEXIS 132123, at *27–28. Based on the plaintiff's plausible statement of a Fourth Amendment claim, the Jackson court said that "the civil battery claim will be allowed to proceed." Id. at *9, 2022 U.S. Dist. LEXIS 132123, at *28.

**\*8** Here, Saint Lawrence Defendants and Ogdensburg Defendants do not contest Plaintiffs' claims as to Fourth Amendment excessive force. Saint Lawrence Defs.' Mem. of Law at 6–7; Ogdensburg Defs.' Mem. of Law at 3. Indeed, both Saint Lawrence Defendants and Ogdensburg Defendants ask only for "partial dismissal" of the assault and battery claims. Saint Lawrence Defs.' Mem. of Law at 6; Ogdensburg Defs.' Mem. of Law at 3 (emphasis omitted). Saint Lawrence Defendants and Ogdensburg Defendants argue that this is necessary because such claims could be considered duplicative. Saint Lawrence Defs.' Mem. of Law at 7; Ogdensburg Defs.' Mem. of Law at 3.

**[14]** Because Saint Lawrence Defendants and Ogdensburg Defendants appear to concede that Plaintiffs have plausibly stated Section 1983 Fourth Amendment excessive force claims "and because Plaintiff's excessive force and [assault and] battery claims are based upon the same factual circumstances[,]" the Court finds that "Plaintiff[s] ha[ve] stated a plausible [civil assault and] civil battery claim against" Shaver, Pryce, Sirles, Merria, Wilson, Chief Westcott, and Does 1–100. Jackson, 2022 WL 2954370, at *9, 2022 U.S. Dist. LEXIS 132123, at *27–28. Therefore, in addition to Plaintiffs' Section 1983 Fourth Amendment excessive force claims, which are allowed to proceed, the Court also finds that the civil assault and "the civil battery claim[s] will be allowed to proceed" under New York State law. Id. at *9, 2022 U.S. Dist. LEXIS 132123, at *28. [4]

**[15]** **[16]** **[17]** **[18]** "The *common law tort of false arrest is a species of false imprisonment*, an action 'derived from the ancient common-law action of trespass [that] protects the personal interest of freedom from restraint of movement.' " Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (emphasis added) (quoting Broughton v. State of New York, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (N.Y. 1975)). Therefore, " Section 1983 claims for false arrest and false imprisonment are 'substantially the same' in all relevant respects as claims for false arrest and false imprisonment under state law." Levantino v. N.Y. State Police, 56 F. Supp. 3d 191, 199 (E.D.N.Y. 2014)

(citing Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003)). Indeed, "[i]n New York, the tort of false arrest is synonymous with false imprisonment." Williams v. Olsen, No. 18-CV-1446, ––– F.Supp.3d ––––, ––––, 2022 WL 16572043 at *14, 2022 U.S. Dist. LEXIS 198224 at *40 (N.D.N.Y. Nov. 1, 2022) (Kahn, J.) (citing Jacques v. Sears, Roebuck & Co., 30 N.Y.2d 466, 473, 334 N.Y.S.2d 632, 285 N.E.2d 871 (N.Y. 1972) and Posr, 944 F.2d at 96). [5]

**\*9** Similar to Plaintiffs' excessive force and assault and battery claims, Saint Lawrence Defendants and Ogdensburg Defendants do not dispute that Plaintiffs have plausibly stated claims as to Fourth Amendment false arrest. Saint Lawrence Defs.' Mem. of Law at 6–7; Ogdensburg Defs.' Mem. of Law at 3. As stated above, both Saint Lawrence Defendants and Ogdensburg Defendants request "partial dismissal" of the false imprisonment claims. Saint Lawrence Defs.' Mem. of Law at 6; Ogdensburg Defs.' Mem. of Law at 3 (emphasis omitted). Similarly, Saint Lawrence Defendants and Ogdensburg Defendants argue that false arrest and false imprisonment claims are duplicative. Saint Lawrence Defs.' Mem. of Law at 7; Ogdensburg Defs.' Mem. of Law at 3.

However, because "false arrest and false imprisonment are synonymous causes of action because the elements of the claims are identical[,]" Levantino, 56 F. Supp. 3d at 200, the Court sees no need to dismiss the false imprisonment claims. Since Saint Lawrence Defendants and Ogdensburg Defendants appear to concede that Plaintiffs have plausibly stated Section 1983 Fourth Amendment false arrest claims, and because " Section 1983 claims for false arrest and false imprisonment are 'substantially the same' in all relevant respects as claims for false arrest and false imprisonment under state law[,]" Levantino, 56 F. Supp. 3d at 199, the Court finds that Plaintiffs' Section 1983 Fourth Amendment false arrest claims and New York State false imprisonment claims are allowed to proceed.

**[19]** In addition, Saint Lawrence Defendants assert that "Plaintiff failed to allege any specific acts Officer Merria took which acted as a violation of Mr. Lalonde's rights." Saint Lawrence Defs.' Mem. of Law at 7. Saint Lawrence Defendants argue that Plaintiffs have not specifically identified the officer who dragged Timothy Lalonde into the patrol car, handcuffed him, or removed him from the patrol car upon arrival at the police station. Id. Similarly, Ogdensburg Defendants argue with regard to Pryce, Shaver,

and Sirles, that "[n]o specific officer is identified" as to the aforementioned conduct. Ogdensburg Defs.' Mem. of Law at 3.

**[20]    [21]    [22]    [23]** Under Federal Rule of Civil Procedure 8(d): "A party may set out two or more statements of a claim or defense alternatively or hypothetically, either a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Rule 8(d) also states: "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Thus, "[w]ith respect to inconsistent pleadings, 'a complaint may plead in the alternative.' " Ajinomoto Co. v. CJ Cheiljedang Corp., No. 16-CV-03498, 2021 WL 4430200, at *3, 2021 U.S. Dist. LEXIS 184945, at *7 (S.D.N.Y. Sept. 27, 2021) (quoting Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp. 2d 609, 616 n.10 (S.D.N.Y. 2003)). "The inconsistency may lie either in the statement of the facts or in the legal theories adopted ...." Henry v. Daytop Village, 42 F.3d 89, 95 (2d Cir. 1994) (quotations omitted).[6] This "flexibility ... is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims."

Id. "A plaintiff may not, however, be able to recover on both theories if the allegations conflict." Ajinomoto, 2021 WL 4430200, at *3, 2021 U.S. Dist. LEXIS 184945, at *7. "When viewed as alternative claims in the initial pleading stage on a motion to dismiss, Rule 8(d)(2) allows the Court 'to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as [the Court must do on] motions to dismiss ....' Id. at *4, 2021 U.S. Dist. LEXIS 184945, at *9 (quoting Adler v. Pataki, 185 F.3d 35, 41 (2d Cir. 1999)).[7]

**\*10** Accordingly, because Plaintiffs have properly alleged at least one constitutional violation, Plaintiffs are permitted to plead in the alternative as to Defendants, and Plaintiffs are entitled to discovery to determine which officers participated directly in the constitutional violation. See Moore, 2019 WL 251725, at *4, 2019 U.S. Dist. LEXIS 8342, at *11 (finding under Rule 8(d)(2) and Henry, 42 F.3d at 95 that "it would be most appropriate to construe Plaintiff's pleadings—which indicate that Plaintiff is unsure of which officer [was] Officer Russel and which [was] Officer Brunson—to allege that the Caucasian officer who arrested him was *either* Brinson

or Russell" (emphasis in original) (citations and quotations omitted)).

**B. Defendants' Arguments as to Plaintiffs' Failure-to-Intervene and Fabrication of Evidence Claims**

**[24]    [25]** "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). Saint Lawrence Defendants and Ogdensburg Defendants both concede this proposition. Saint Lawrence Defs.' Mem. of Law at 7; Ogdensburg Defs.' Mem. of Law at 4. However, Saint Lawrence Defendants contend that Plaintiffs cannot allege that Merria was both a direct participant in the alleged conduct and that he failed to intervene, arguing that "an officer who is alleged to have used excessive force cannot also be held liable for failure to intervene, because the officer's conduct as a direct participant in the violation of Plaintiff's rights precludes a finding that the officer passively collaborated in the deprivation of rights by a fellow officer." Saint Lawrence Defs.' Mem. of Law at 7–8. Likewise, Ogdensburg Defendants argue that Plaintiffs cannot allege that Pryce, Shaver, and Sirles, or other Ogdensburg Police Officers were both direct participants in the purported conduct and also failed to intervene. Ogdensburg Defs.' Mem. of Law at 4. Additionally, both Saint Lawrence Defendants and Ogdensburg Defendants reiterate their arguments that Plaintiffs did not specifically identify which officers were involved in dragging Plaintiff from the car or fabrication of evidence. Saint Lawrence Defs.' Mem. of Law at 8–10; Ogdensburg Defs.' Mem. of Law at 4–5.

**[26]** As discussed above, where plaintiffs have properly alleged at least one constitutional violation, courts regularly permit such plaintiffs to plead in the alternative as to multiple defendants, finding that such plaintiffs are entitled to discovery to determine which officers participated directly in the constitutional violation. See, e.g., Matthews v. City of New York, 889 F. Supp. 2d 418, 444 (E.D.N.Y. 2012) ("Because plaintiffs properly allege at least one constitutional violation, plaintiffs are entitled to discovery to determine which officers participated directly in the alleged constitutional violation and which officers were present and failed to intervene."); Durr v. Slator, 558 F. Supp. 3d 1, 26 (N.D.N.Y. 2021) ("Plaintiff does not allege that either Defendant in particular acted with deliberate indifference by transporting Plaintiff to the Oneida Police

Station rather than the Upstate Emergency Department. As such, Plaintiff is permitted to plead in the alternative that Defendants Clark and Slator failed to intervene in the alleged constitutional violation."). Moreover, under Rule 8(d) "[e]ven if [a plaintiff's] claims were somehow inconsistent ... [a court] could and would entertain them both." Henry, 42 F.3d at 95–96. This "flexibility ... is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims." Id.

*11  Accordingly, the Court finds that Plaintiffs are permitted to plead in the alternative as to Defendants with regard to the failure-to-intervene claims, and are entitled to discovery to determine which officers participated directly in the constitutional violations. See Matthews, 889 F. Supp. 2d at 444; Durr, 558 F. Supp. 3d at 26.

[27]  [28]  " 'It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer.' " Harris v. City of New York, 222 F. Supp. 3d 341, 351 (S.D.N.Y. 2016) (quoting Zahrey v. Coffey, 221 F.3d 342, 355 (2d Cir. 2000)). Saint Lawrence Defendants and Ogdensburg Defendants do not contest Plaintiffs' fabrication of evidence claims against Chief Westcott, Compl. ¶ 44, Defendants argue that Plaintiffs did not specifically identify which other officers were involved in the alleged fabrication of evidence. Saint Lawrence Defs.' Mem. of Law at 9–10; Ogdensburg Defs.' Mem. of Law at 5.[8] Because Defendants do not challenge that Plaintiffs have properly alleged at least one constitutional violation of fabrication of evidence, the Court finds that Plaintiffs are permitted to plead in the alternative as to Defendants with regard to the fabrication of evidence claims, and are entitled to discovery to determine which officers participated directly in the constitutional violations. As the Second Circuit has stated, this "flexibility ... is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims." Henry, 42 F.3d at 95–96.

### C. Defendants' Arguments as to Plaintiffs' Monell Claims

[29]  [30]  [31]  In Monell, the Supreme Court concluded that "Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies." Monell, 436 U.S. at 690, 98 S.Ct. 2018 (emphasis omitted). However, the Supreme Court also stated that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. (emphasis in original). Municipalities are "liable under § 1983 to be sued as 'persons' within the meaning of that statute, when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." Reynolds v. Giuliani, 506 F.3d 183, 190 (2d Cir. 2007). "Constitutional deprivations actionable under § 1983 need not be contained in an explicitly adopted rule or regulation." Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992). "Constitutional deprivations actionable under § 1983 may be 'visited pursuant to the governmental custom even though such custom has not received formal approval through the body's official decisionmaking channels.' " Id. (cleaned up) (quoting Monell, 436 U.S. at 691, 98 S.Ct. 2018).

[32]  [33]  "[T]o hold [municipalities] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (citing Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)). "A plaintiff may satisfy the 'policy, custom or practice' requirement in one of four ways." Brandon v. City of New York, 705 F. Supp. 2d 261, 276 (S.D.N.Y. 2010). Accordingly,

*12  [t]he plaintiff may allege the existence of (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a

custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Id. at 276–77 (citations omitted).

**[34]** **[35]** **[36]** **[37]** "[T]hree requirements ... must be met before a municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens." Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992). The Second Circuit has defined these three requirements:

First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation. Thus, a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events.

Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Whether to use deadly force in apprehending a fleeing suspect qualifies as a "difficult choice" because more than the application of common sense is required. Instead, police officers must adhere to the rule of Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), that deadly force may constitutionally be applied to a fleeing suspect only when the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm and when, where possible, some warning has been given. A choice might also be difficult where, although the proper course is clear, the employee has powerful incentives to make the wrong choice.

Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. Thus, municipal policymakers may appropriately concentrate training and

supervision resources on those situations where employee misconduct is likely to deprive citizens of constitutional rights.

Id. at 297–98 (citations omitted) (quotations omitted). "Where the plaintiff establishes all three elements, then ... it can be said with confidence that the policymaker should have known that inadequate training or supervision was 'so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.' " Id. at 298 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

**[38]** Saint Lawrence Defendants argue that "Plaintiffs fail to allege any similar constitutional violations that could even conceivably demonstrate a pattern of unconstitutional conduct." Saint Lawrence Defs.' Mem. of Law at 15. Saint Lawrence Defendants cite to Buari v. City of New York, 530 F. Supp. 3d 356 (S.D.N.Y. 2021), asserting that "[t]he decision in Buari, although the Monell liability claim was upheld on a motion to dismiss, provides helpful guidance to this Court." Saint Lawrence Defs.' Mem. of Law at 15. Saint Lawrence Defendants argue that Buari stands for the principle that a plaintiff must plead systemic corruption in order to proceed on a Monell claim, arguing: "Not once do the Plaintiffs allege that there were other instances of misconduct and Plaintiffs do not identify any other lawsuits, report, complaints, or other evidence to support their claim that the acts against Mr. Lalonde were part of a pattern." Id. at 16. Similarly, Ogdensburg Defendants assert that "there is not a single allegation of instances of similar conduct or that the City of Ogdensburg knew of such prior actions by its police officers." Ogdensburg Defs.' Mem. of Law at 9.

**\*13** However, the Supreme Court has stated: "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). "So long as the single challenged act was the decision of a municipal policymaker, the municipality could be held liable." Walker, 974 F.2d at 296. Accordingly, "[i]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of

the [municipality] can reasonable be said to have been deliberately indifferent to the need." 🚩 City of Canton, 489 U.S. at 390, 109 S.Ct. 1197. "For example, [municipal] policymakers know to a moral certainty that their officers will be required to arrest fleeing felons." 🚩 Id. at 390 n.10, 109 S.Ct. 1197.

The Court turns to the three-prong test set forth in 🚩 Walker. Under the first prong of 🚩 Walker, "the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation." 🚩 974 F.2d at 297. The Court finds that Saint Lawrence Defendants' characterization of the 🚩 Buari case is unavailing. In 🚩 Buari, the court inferred that the "Bronx DA [("district attorney")] officials plainly knew, to a moral certainty, that ADAs [("assistant district attorneys")] would make probable cause assessments, offer testimonial evidence in court, confront false or misleading testimony, and acquire 🚩 Brady[ v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] material 'because these are basic facets of an ADA's job.' " 🚩 Buari, 530 F. Supp. 3d at 406 (quoting 🚩 Bertuglia v. City of New York, 839 F. Supp. 703, 738 (S.D.N.Y. 2012)). Likewise, the Court infers here that Saint Lawrence County and City of Ogdensburg policymakers plainly knew to a moral certitude that Saint Lawrence County sheriffs and City of Ogdensburg police officers would make reasonable suspicion and probable cause determinations, seize and arrest individuals, provide medical care to detainees, and transmit evidence to prosecutors, "because these are basic facets" of law enforcement officials' jobs. Buari, 530 F. Supp. 3d at 406 (quoting 🚩 Bertuglia, 839 F. Supp. 2d at 738) Therefore, the Court finds that Plaintiffs have plausibly pled the first prong of 🚩 Walker.

[39]  Saint Lawrence Defendants and City of Ogdensburg did not address the second or third prongs of 🚩 Walker in their Motions to Dismiss. See generally Saint Lawrence Defs.' Mem. of Law; Ogdensburg Defs.' Mem. of Law. Saint Lawrence Defendants raised the second prong of 🚩 Walker in their Reply. Saint Lawrence Defs.' Reply at 10–11. However, "[a]rguments may not be made for the first time in a reply brief." 🚩 Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993); 🚩 Chevron Corp. v. Donziger, 325 F. Supp. 3d 371, 379 n.21 (S.D.N.Y. 2018) ("It is well established, of course, that arguments first raised in reply briefs are forfeited or

waived."). As noted above, the "movant[,] bears the burden of pro[ving no cognizable claim has been stated] on a motion to dismiss under Rule 12(b)(6)." Leon v. Rockland Psychiatric Ctr., 232 F. Supp. 3d 420, 426–27 (S.D.N.Y. 2017); see also United Rentals, Inc. v. Wilper, 626 F.Supp.3d 546 (D. Conn. 2022) ("The defendant bears the burden of proof on a motion to dismiss for failure to state a claim under Rule 12(b)(6)."). Because Saint Lawrence Defendants and City of Ogdensburg Defendants have not met their burden of proving that Plaintiffs have not stated cognizable 🚩 Monell claims under Rule 12(b)(6), Defendants' Motions to Dismiss are denied as to Plaintiffs' 🚩 Monell claims.

### D. Defendants' Arguments as to Plaintiffs' 🚩 Section 1983 Conspiracy Claims, 🚩 Section 1985(3) Conspiracy Claims, and Section 1986 Neglect to Prevent Conspiracy Claims

#### 1. 🚩 Section 1983 Conspiracy Claims

**\*14** [40]  [41]  "To prevail on a 🚩 Section 1983 conspiracy claim, the plaintiff must establish: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." 🚩 Fiedler v. Incandela, 222 F. Supp. 3d 141, 165 (E.D.N.Y. 2016) (quotations omitted). "To sustain a claim for conspiracy under 🚩 Section 1983, a plaintiff must demonstrate that [the] defendant[s] 'acted in a willful manner, culminating in an agreement, understanding, or meeting of the minds, that violated the plaintiff's rights ... secured by the constitution or federal courts.' " 🚩 Morpurgo v. Inc. Vill. of Sag Harbor, 697 F. Supp. 2d 309, 331 (E.D.N.Y. 2010) (quoting 🚩 Malsh v. Corr. Officer Austin, 901 F. Supp. 757, 765 (S.D.N.Y. 1995)), report and recommendation adopted by 🚩 697 F. Supp. 2d 309 (E.D.N.Y. 2010).

[42]  Saint Lawrence Defendants argue that Plaintiffs have failed to plausibly plead a factual basis supporting a meeting of the minds, arguing that Plaintiffs' allegations that "Defendant Officers 'acted in concert' and 'reached a mutual understanding[,]' " Saint Lawrence Defs.' Mem. of Law at 10 (quoting Compl. ¶¶ 88, 93), "are conclusory and are not entitled to the presumption of truth." Saint Lawrence

Defs.' Mem. of Law at 10. Additionally, Saint Lawrence Defendants argue that "the only reason Plaintiffs allege that they believe there was a conspiracy under 🏳 § 1983 is because the Defendant Officers arrived on scene at the same time and confronted Mr. Lalonde at the same time and in the same manner." Id. Saint Lawrence Defendants contend: "In essence, Plaintiffs are asking this Court to believe that because the officers acted the same way in responding to the scene, they must have conspired." Id. at 10–11. Ogdensburg Defendants reiterate the arguments that "co-defendant St. Lawrence County points out in its brief ...." Ogdensburg Defs.' Mem. of Law at 6.

Plaintiffs argue that "[a] plaintiff is not required to list the place and date of defendants' meeting and summary of their conversations but the existence of an agreement can be inferred from circumstantial evidence of an agreement and concerted action." Pls.' Resp. to Saint Lawrence Defs.' at 9. According to Plaintiffs, "[w]hile it is imperative that a plaintiff must allege a mutual understanding or meeting of the minds in order to set out a prima facie claim for conspiracy, it is well established that such meeting of the minds can take the form of a 'tacit understanding' rather than an explicit agreement." Id. at 8 (quoting 🏳 LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1995)).

 [43]  [44]  The Court agrees with Plaintiffs. While " 'there are legal limitations upon the inferences which may be drawn from circumstantial evidence[,]' " 🏳 Puglisi v. Underhill Park Taxpayer Assoc., 947 F. Supp. 673, 706 (S.D.N.Y. 1996) (quoting 🏳 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 580, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)), "a conspiracy is often difficult to prove and ... the court, may at times, have to rely on circumstantial evidence of a conspiracy," 🏳 Puglisi, 947 F. Supp. at 706. Moreover, "a conspiracy 'need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct[.]' " 🏳 Foskey v. Northrup, No. 20-CV-0504, 2021 WL 1146217, at *5, 2021 U.S. Dist. LEXIS 56684, at *12 (N.D.N.Y. Mar. 25, 2021) (Kahn, J.) (quotations omitted) (quoting 🏳 LeBlanc-Sternberg, 67 F.3d at 427).

In 🏳 Foskey, this Court observed that in the context of a 🏳 Section 1983 conspiracy claim, "a meeting of the minds is plausibly suggested by the coordinated nature of the

alleged attack, and the fact that the attack was not a spontaneous reaction to any instant threat." 🏳 Foskey, 2021 WL 1146217, at *5, 2021 U.S. Dist. LEXIS 56684, at *11– 12. The Court finds a similar situation here. The Defendant officers allegedly attacked Plaintiff in a manner that was not a spontaneous reaction to any threat—as Plaintiffs aver, Shaver "was standing at the scene in firm control of a readily deescalated event with a blind man holding a cane wearing dark sunglasses." Compl. ¶ 25. Moreover, as described above in great detail, Plaintiffs lay out extensive factual allegations pleading that the attack was coordinated, with various Defendant officers acting in concert. See, e.g., Compl. ¶¶ 25–45. Therefore, the Court finds that Plaintiffs have plausibly pled a meeting of the minds as to 🏳 Section 1983 conspiracy. Accordingly, Defendants have not met their burden, and Defendants' Motions to Dismiss are denied with regard to Plaintiffs' 🏳 Section 1983 conspiracy claims.

### 2. 🏳 Section 1985(3) Conspiracy Claims

 *15  [45]    [46]  The relevant portion of 🏳 Section 1985(3) states:

> If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the

party so injured or deprived may
have an action for the recovery of
damages, occasioned by such injury or
deprivation, against any one or more of
the conspirators.

42 U.S.C. § 1985(3). Thus,

[t]o state a civil rights conspiracy
under § 1985(3), a plaintiff must
allege: 1) a conspiracy; 2) for the
purpose of depriving, either directly
or indirectly, any person or class of
persons of the equal protection of
the laws, or of equal privileges and
immunities under the laws; and 3) an
act in furtherance of the conspiracy; 4)
whereby a person is either injured in
his person or property or deprived of
any right or privilege of a citizen of the
United States.

Britt v. Garcia, 457 F.3d 264, 269 n.4 (2d Cir. 2006)
(quoting Gray v. Town of Darien, 927 F.2d 69, 73 (2d
Cir. 1991)). Section 1985(3) "is applicable only if the
plaintiff can show that 'some racial, or perhaps otherwise
class-based invidiously discriminatory animus [lay] behind
the conspirators' action.' " LeBlanc-Sternberg, 67 F.3d at
427 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91
S.Ct. 1790, 29 L.Ed.2d 338 (1971)).

[47] [48] [49] "Establishment of a § 1985(3) claim
requires proof of a conspiracy between 'two or more persons.'
" LeBlanc-Sternberg, 67 F.3d at 427. "A conspiracy,
for these purposes, need not be shown by proof of an
explicit agreement but can be established by showing that the
'parties have a tacit understanding to carry out the prohibited
conduct.' " Id. (quoting United States v. Rubin, 844
F.2d 979, 984 (2d Cir. 1988)); see also Webb v. Goord, 340
F.3d 105, 110 (2d Cir. 2003) ("In order to maintain an action
under Section 1985, a plaintiff 'must provide some factual

basis supporting a meeting of the minds, such that defendants
entered into an agreement, express or tacit, to achieve the
unlawful end.' ") (quoting Romer v. Morgenthau, 119 F. Supp.
2d 346, 363 (S.D.N.Y. 2000)). "The term 'persons' for the
purposes of § 1985(3) includes municipalities, and a claim
under § 1985(3) may be established against a state if 'it is
proved that the State is involved in the conspiracy or that the
aim of the conspiracy is to influence the activity of the state[.]'
" LeBlanc-Sternberg, 67 F.3d at 427 (citations omitted)
(quoting United Brotherhood of Carpenters & Joiners of
Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 830, 103
S.Ct. 3352, 77 L.Ed.2d 1049 (1983)) (citing Owens v.
Haas, 601 F.2d 1242, 1247 (2d Cir. 1979), cert. denied, 444
U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979)).

*16  [50]  Saint Lawrence Defendants argue that "Plaintiffs
fail to allege any facts by which this Court could infer
discriminatory intent behind Defendants['] actions." Saint
Lawrence Defs.' Mem. of Law at 12. Specifically, Saint
Lawrence Defendants assert that Plaintiffs have not explained
why failure to consult with Shaver was motivated by
discriminatory animus, id., and argue that "the act of ordering
Mr. Lalonde to remove his arm from behind his back"
was "motivationally neutral[,]" id. Similarly, Ogdensburg
Defendants argue that "there is no factual assertion that
the Ogdensburg Police Officers were motivated by a
discriminatory animus." Ogdensburg Defs.' Mem. of Law at
7.

[51]  Plaintiffs plead that under Section 1985(3), Timothy
Lalonde was protected in order "to be free from
discrimination based upon disability ...." Compl. ¶ 139.
"[T]he Second Circuit has recognized mental disability as a
class protected by Section 1985 ...." B.D.S. v. Southold
Union Free Sch. Dist., No. 08-CV-1864, 2009 WL 1875942,
at *20 n.8, 2009 U.S. Dist. LEXIS 55981, at *61 n.8 (E.D.N.Y.
June 24, 2009) (citing People by Abrams v. 11 Cornwell
Co., 695 F.2d 34, 42–43 (2d Cir. 1982), vacated in part
on other grounds, 718 F.2d 22 (2d Cir. 1983)). "[T]hus, it
logically follows that persons with other types of disabilities,
i.e., learning and developmental disabilities, would also be
part of a class protected by Section 1985." B.D.S., 2009
WL 1875942, at *20 n.8, 2009 U.S. Dist. LEXIS 55981, at
*61 n.8. Likewise, "it logically follows that persons with other
types of disabilities[,]" id., such as Timothy Lalonde's

blindness and other physical disabilities, Compl. at ¶¶ 32, 51, would be a part of a class protected by 🚩 Section 1985(3).

The Second Circuit has stated that a plaintiff's "🚩 § 1985(3) action cannot be judged groundless" where the plaintiff "stood a reasonable chance of inducing a court to find that [the defendant's] actions were based on a[ ] [class-based] animus ...." 🚩 Colombrito v. Kelly, 764 F.2d 122, 130 (2d Cir. 1985). Plaintiffs plead that it was "readily apparent that [Timothy Lalonde] was blind and sightless[,]" Compl. ¶ 26, because Timothy Lalonde was "holding a cane wearing dark sunglasses" at night when Defendant officers were present, id. ¶ 25. Moreover, after Timothy Lalonde was allegedly "slammed" onto the ground by Defendant officers, id. ¶ 28, Theresa Lalonde "scream[ed] to the Defendant Officers that 'her husband is blind ....' " Id. ¶ 29. In addition, after Merria "was yanking upon [Timothy Lalonde's] left arm ordering him to release it from under the weight of his body [Timothy Lalonde] responded that he couldn't do it as he was disabled." Id. ¶ 31. Timothy Lalonde "screamed that he was unable to comply with the [Defendant officers'] commands to move his body in order to free up his immobilized arm." Id. ¶ 33. Thereafter, Defendant officers "inflicted two taser shots" on Timothy Lalonde, id. ¶ 34, "ruthlessly ignor[ed] Timothy Lalonde's] assertion that his disability prevented him from moving" and instead "aggressively yank[ed Timothy Lalonde's] left wrist, elbow and arm resulting in an audible 'pop' that left [him] numb with excruciating pain and a shattered broken wrist, fractured and dislocated elbow, and torn rotator cuff[,]" id. ¶ 35. In addition, due to Timothy Lalonde's "lack[ ] [of] stomach and back muscles to keep him upright when shackled with handcuffs behind his back" the Defendant officers " 'improvised' by lifting [his] body and throwing him laterally into the patrol car sending his head crashing against the opposite passenger door[,]" id. ¶ 37.

Subsequently, Defendant officers "intentionally and mockingly refused to accommodate [Timothy Lalonde's] disability when they ushered him into the police department to complete his arrest processing[,]" id. ¶ 41, Doe Officers and Chief Westcott "persisted in ridiculing and refusing to accommodate [Timothy Lalonde] by requiring him to stand facing the wall with his hands stretched out touching the wall while they interrogated and booked him[,]" id. ¶ 42, and forced Timothy Lalonde "to stand against the stationhouse for one hour while [the officers] attempted to have [Timothy Lalonde] subscribe and 'confess' to their fabrications[,]" id. ¶ 45. Accordingly, the Court finds that Plaintiffs' pleading

demonstrates that Plaintiffs "st[an]d a reasonable chance of inducing a court to find that [Defendants'] actions were based on a[ ] [class-based] animus[,]" based on disability —here, the impairment of blindness and physical disability. 🚩 Colombrito, 764 F.2d at 130.

**\*17** **[52]** Saint Lawrence Defendants and Ogdensburg Defendants also contend that Plaintiffs have not alleged a meeting of the minds with regard to 🚩 Section 1985(3) conspiracy. Saint Lawrence Defs.' Mem. of Law at 11; Ogdensburg Defs.' Mem. of Law at 6–7. However, as noted above, "[a] conspiracy, for these purposes, need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.' " 🚩 LeBlanc-Sternberg, 67 F.3d at 427 (quoting 🔺 Rubin, 844 F.2d at 984). Plaintiffs have alleged that the Defendant officers carried out a coordinated attack outside his home and continued their actions in concert while transporting him to the police station, Compl. ¶¶ 25–40, that the Defendant officers acted in concert as they "intentionally and mockingly refused to accommodate [Timothy Lalonde's] disability when they ushered him into the police department to complete his arrest processing[,]" id. ¶ 41, and that Doe Officers and Chief Westcott together "persisted in ridiculing and refusing to accommodate [Timothy Lalonde] by requiring him to stand facing the wall with his hands stretched out touching the wall while they interrogated and booked him[,]" id. ¶ 42. The Court concludes that Plaintiffs have plausibly pled that the "parties have a tacit understanding to carry out the prohibited conduct[,]" thereby plausibly pleading meeting of the minds under 🚩 Section 1985(3). 🚩 LeBlanc-Sternberg, 67 F.3d at 427 (quotations omitted). Therefore, Defendants have not met their burden, and Defendants' Motions to Dismiss are denied with respect to Plaintiffs' 🚩 Section 1985(3) claims.

### 3. *Section 1986* Neglect to Prevent Conspiracy Claims

**[53]** The relevant portion of Section 1986 states:

"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [🚩 42 U.S.C. § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses

so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action ....”

42 U.S.C. § 1986. “[A] valid § 1986 claim must be predicated upon a valid 🚩 § 1985 claim.” 🚩 Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993).

 [54]  Here, Saint Lawrence Defendants state that “if the Court agrees with the County Defendants that Plaintiffs’ § 1985 conspiracy claim should be dismissed, then Plaintiffs’ § 1986 failure to prevent conspiracy claim should also be dismissed.” Saint Lawrence Defs.’ Mem. of Law at 13. Similarly, Ogdensburg Defendants assert: “This court must dismiss Plaintiffs’ section 1986 claim that Defendants failed to prevent a conspiracy to deprive the Plaintiffs of their rights if it dismisses their 🚩 Section 1985 conspiracy claim.” Ogdensburg Defs.’ Mem. of Law at 8.

Because the Court did not dismiss Plaintiffs’ 🚩 Section 1985(3) conspiracy claim, and because Saint Lawrence Defendants’ and Ogdensburg Defendants’ arguments hinge on this, the Court finds that Defendants have not met their burden, and Defendants’ Motions to Dismiss are denied with regard to Plaintiffs’ Section 1986 claims.

### E. Defendants’ Arguments as to Plaintiffs’ Supervisory Liability Claims

 [55]   [56]  “Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.” 🚩 Iqbal, 556 U.S. at 676, 129 S.Ct. 1937. “[A]fter 🚩 Iqbal, there is no special test for supervisory liability.” 🚩 Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020). “Instead, a plaintiff must plead and prove ‘that each Government-official defendant, through the official's own individual actions, has violated the Constitution.’ ” 🚩 Id. (quoting 🚩 Iqbal, 556 U.S. at 676, 129 S.Ct. 1937).

 [57]  Saint Lawrence Defendants and Ogdensburg Defendants make generalized arguments, asserting that

Plaintiffs have failed to plausibly plead claims of supervisory liability as to Sheriff Bigwarfe and Chief Westcott. Regarding Sheriff Bigwarfe, Saint Lawrence Defendants argue that “not one paragraph in the Complaint alleges that Sheriff Bigwarfe had any role in arresting Mr. Lalonde, was present for the arrest, or was present or played a role in any of the alleged post-arrest deprivations.” Saint Lawrence Defs.’ Mem. of Law at 17. Ogdensburg Defendants assert that “[t]here is no particularity in the allegations with respect to what policy Chief Westcott is even alleged to have created or condoned, let alone the conduct his deliberately disregarded.” Ogdensburg Defs.’ Mem. of Law at 11.

 **\*18**   [58]   [59]  “ 🚩 Tangreti makes clear that, ‘after 🚩 Iqbal, [a p]laintiff can no longer succeed on a 🚩 § 1983 claim against [a d]efendant by showing that a supervisor behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, *unless* that is the same state of mind required for the constitutional deprivation.” Myers v. Davenport, No. 21-CV-0922, 2022 WL 3017367, at *5, 2022 U.S. Dist. LEXIS 134572, at *12 (N.D.N.Y. July 29, 2022) (Kahn, J.) (emphasis in original) (quoting 🚩 Tangreti, 983 F.3d at 618). “Thus, an official's conduct in making and executing policy, or failing to make or execute policy, may satisfy 🚩 Iqbal’s requirement of personal involvement if such conduct meets the elements required to establish an underlying constitutional violation and is undertaken with the required state of mind.” Myers, 2022 WL 3017367, at *5, 2022 U.S. Dist. LEXIS 134752, at *12. “Accordingly, a plaintiff may establish a policy-making official's personal involvement by, first, alleging facts from which it may be reasonably inferred the official was responsible for making relevant policies, and thus there was a tangible connection between their policymaking conduct and the alleged harm.” Id. at *5, 2022 U.S. Dist. LEXIS 134752, at *12–13. “Second, a plaintiff must establish the elements of the underlying claim directly against each defendant.” Id. at *5, 2022 U.S. Dist. LEXIS 134752, at *13.

Here Plaintiffs bring, inter alia, Fourteenth Amendment failure-to-protect claims. Plaintiffs plead that Sheriff Bigwarfe was “a supervisory person with the [County of Saint Lawrence's Sheriff's Department] with oversight for training, hiring, screening, instruction, supervision and discipline of [Merria] ....” Compl. ¶ 118. Plaintiffs also plead that Chief Westcott “was, at the relevant times, supervisory personnel with Defendant [City of Ogdensburg Police] with oversight responsibility for training, hiring,

screening, instruction, supervision and discipline of [Pryce, Sirles, Shaver, and Wilson] ...." Id. ¶ 117. According to Plaintiffs, Sheriff Bigwarfe and Chief Westcott "were reckless in their failure to supervise their respective subordinates and either knew or should have known that they were deliberately failing to effectuate connotationally permissible arrests with probable cause, seizures, detentions, transportation, imprisonments ...." Id. ¶ 120. Plaintiffs also assert that "[a]s a direct and proximate result of the unconstitutional actions, omissions, customs, polices, practices and procedures of [Sheriff Bigwarfe and Chief Westcott] ... [Timothy Lalonde] has suffered: brain damage, a severe cervical sprain, whiplash, a broken left wrist, concussion syndrome, a torn left side rotator cuff tendon, a dislocated and fractured left elbow, torn cartilage in his right ear, hearing loss, anxiety, mental and emotional distress, humiliation, fear, discomfort, loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery." Id. ¶ 123. Thus, the Court finds that Plaintiffs have plausibly pled that Sheriff Bigwarfe and Chief Westcott "were responsible for implementing and maintaining policies to protect ... against constitutional deprivations and abuse ...." Myers, 2022 WL 3017367, at *6, 2022 U.S. Dist. LEXIS 134752, at *14. Accordingly, the Court finds that these facts plausibly show that Sheriff Bigwarfe and Chief Westcott were policymakers.

"The Supreme Court [has] extended the protections for prisoners established in Estelle [v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)] to civil detainees under the Due Process Clause of the Fourteenth Amendment, reasoning that persons in civil detention deserve at least as much protection as those who are criminally incarcerated." Charles v. Orange Cnty., 925 F.3d 73, 82 (2d Cir. 2019). "[D]eliberate indifference means the same thing for each type of claim under the Fourth Amendment[,]" "such as from unconstitutional conditions of confinement, or the failure-to-protect ...." Darnell v. Pineiro, 849 F.3d 17, 33 n.9 (2d Cir. 2017); see also Charles, 925 F.3d at 87.

[60]    [61]    [62]    [63] To plead a Section 1983 failure-to-protect Fourteenth Amendment claim, "[a] pretrial detainee" plaintiff must "show[ ] that the officers acted with deliberate indifference ...." Darnell, 849 F.3d at 29. The "pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the [failure-to-protect was] sufficiently serious to constitute objective deprivations of

the right to due process, and a 'subjective prong'—perhaps better classified as a 'mens rea' prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." Id. To show this mens rea or mental element prong, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant knew, or should have known, that the condition posed an excessive risk to health or safety." Id. at 35. Thus, "the 'subjective prong' (or 'mens rea' prong') of a deliberate indifference claim is defined objectively[,]" id., and "deliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind[,]" Charles, 925 F.3d at 86.

*19  [64]    [65] To plead the first objective prong, "the deprivation alleged must be, objectively, 'sufficiently serious,' " Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)), and "[f]or a claim ... based on a failure to prevent harm" the detainee "must show that he is [detained] under conditions posing a substantial risk of serious harm[,]" Farmer, 511 U.S. at 834, 114 S.Ct. 1970. "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' " Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). Pretrial detainees have even more stringent constitutional protections under the Fourteenth Amendment than prisoners do under the Eighth Amendment, because "most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.' " Kingsley v. Hendrickson, 576 U.S. 389, 400, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015) (citing Ingraham v. Wright, 430 U.S. 651, 671–72 n.40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) and Graham, 490 U.S. at 395 n.10, 109 S.Ct. 1865).

[66] Here, the Court finds that Plaintiffs' factual allegations, asserting that Timothy Lalonde was maliciously and sadistically attacked by several Defendant Officers outside his home and was further abused at the police station during

his detention, Compl. ¶ 26–45, plausibly show that Timothy Lalonde was detained under conditions posing a substantial risk of serious harm. Thus, Plaintiffs have plausibly pled the objective deliberate indifference prong.

[67] [68] Under the second mens rea or mental element prong, "[w]hether the state knew or should have known of the substantial risk of harm to the detainee is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Charles, 925 F.3d at 87*. " 'A factfinder may conclude that a [government] official knew of a substantial risk from the very fact that the risk was obvious." *Charles, 925 F.3d at 87* (quoting *Farmer, 511 U.S. at 842, 114 S.Ct. 1970*).

[69] [70] "*Federal Rule of Civil Procedure 9(b)* provides a relaxed standard for pleading intent or knowledge at the motion to dismiss stage." *Myers, 2022 WL 3017367, at *7, 2022 U.S. Dist. LEXIS 134752, at *16; see also Fed. R. Civ. P. 9(b)* ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Therefore, "[a] complaint is allowed to contain general allegations as to a defendant's knowledge, because 'a plaintiff realistically cannot be expected to plead a defendant's actual state of mind.' " *Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842, 864 (2d Cir. 2021)* (citations omitted) (citing *Fed. R. Civ. P. 9(b)*) (quoting *Connecticut Nat'l Bank v. Flour Corp., 808 F.2d 957, 962 (2d Cir. 1987)*) "[P]laintiffs are required to include allegations of the facts or events they claim give rise to an inference of knowledge." *Kaplan, 999 F.3d at 864*.

[71] Here, Plaintiffs have alleged that Sheriff Bigwarfe and Chief Westcott "were reckless in their failure to supervise their respective subordinates and either knew or should have known that they were deliberately failing to effectuate constitutionally permissible arrests with probable cause, seizures, detentions, transportation, imprisonments ...." *Id.* ¶ 120. As noted above, Plaintiffs also assert that "[a]s a direct and proximate result of the unconstitutional actions, omissions, customs, polices, practices and procedures of [Sheriff Bigwarfe and Chief Westcott][,]" Timothy Lalonde has suffered numerous serious injuries. *Id.* ¶ 123. The Court finds that Plaintiffs have alleged facts sufficient to infer that Sheriff Bigwarfe and Chief Westcott "knew, or should have known, that" violent attacks carried out by police officers

"posed an excessive risk to health or safety" and that they needed to take corrective action to prevent such attacks. *Darnell, 849 F.3d at 29*. The Court finds that Sheriff Bigwarfe and Chief Westcott knew or should have known of this risk " 'from the very fact that the risk was obvious.' " *Charles, 925 F.3d at 87* (quoting *Farmer, 511 U.S. at 842, 114 S.Ct. 1970*).

*20 Accordingly, Plaintiffs have plausibly stated "a tangible connection between" Sheriff Bigwarfe and Chief Westcott's "policymaking conduct and the alleged harm," *Myers, 2022 WL 3017367, at *5, 2022 U.S. Dist. LEXIS 134752, at *13*, and have plausibly stated "the elements of the underlying claim directly against each defendant[,]" *id.* Thus, Plaintiffs have plausibly stated Fourteenth Amendment failure-to-protect supervisory liability claims against Sheriff Bigwarfe and Chief Westcott.

Defendants' arguments are phrased in general terms, arguing that Plaintiffs' Complaint has a "sheer lack of factual allegations[,]" Saint Lawrence Defs.' Mem. of Law at 17, and that "there is no particularity in the allegations with respect to what policy Chief Westcott is even alleged to have created or condoned[,]" Ogdensburg Defs.' Mem. of Law at 11. Thus, Defendants assert generically that Plaintiffs failed to provide factual allegations to plausibly state a claim, but did not address which specific claims they are contesting. While "a defendant has the burden of proof on a Rule 12(b) (6) motion[,]" *A.S., 585 F. Supp. 3d at 272*, Defendants did not explain which supervisory claims they were contesting, and as a result the Court finds that because Plaintiffs have, at a minimum, plausibly stated a Fourteenth Amendment failure-to-protect supervisory liability claim against Sheriff Bigwarfe and Chief Westcott, Defendants' general arguments that Plaintiffs have failed to state a supervisory liability claim are insufficient. Thus, the Court need not address other supervisory liability claims as to Sheriff Bigwarfe and Chief Westcott brought by Plaintiffs, such as Plaintiffs' Fourteenth Amendment deliberate medical indifference claims, although the Court would likely arrive at similar conclusions to those set forth above. *See, e.g., Charles, 925 F.3d at 87* (stating that "the same [deliberate indifference] standard applies to claims for deliberate indifference to medical needs because 'deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment") (quoting *Darnell, 849 F.3d at 33 n.9*).

Accordingly, the Court agrees with the Tenth Circuit's conclusion in Dodds v. Richardson, which the Second Circuit cited approvingly in Tangreti, 983 F.3d at 618:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or his subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights ... secured by the Constitution ...."

Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010) (quoting 42 U.S.C. § 1983). Thus, Defendants' Motions to Dismiss are denied with regard to Plaintiffs' supervisory claims as to Sheriff Bigwarfe and Chief Westcott.

### F. Defendants' Arguments as to Plaintiffs' ADA and RA Claims

**[72]** "As a remedial statute, 'the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.' " Nat'l Fed'n of the Blind v. Scribd Inc., 97 F. Supp 3d 565, 573 (D. Vt. 2015) (quoting Mary Jo C. v. New York State and Local Ret. Sys., 707 F.3d 144, 160 (2d Cir. 2013)).

**\*21** "Under Title II of the ADA, 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.' " Fera v. City of Albany, 568 F. Supp. 2d 248, 259 (N.D.N.Y. 2008) (Kahn, J.) (quoting 42 U.S.C. § 12132). "Section 504 of the Rehabilitation Act similarly provides in pertinent part that '[n]o otherwise qualified individuals with a disability ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." Fera, 568 F. Supp. 2d at 259 (quoting 29 U.S.C. § 794).

**[73]** **[74]** "In order to establish a violation under the ADA, the plaintiffs must demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003). "Additionally, to establish a violation under the Rehabilitation Act, a plaintiff must show that the defendants receive federal funding." Id.

**[75]** **[76]** "To recover monetary damages, a plaintiff must demonstrate intentional discrimination." Fera, 568 F. Supp. 2d at 259. "Intentional discrimination does not require personal animosity or ill will[,]" id., and "[a] plaintiff may recover under Title II [of the ADA] or Section 504 upon a showing of a statutory violation resulting from deliberate indifference to the rights secured the disabled by the acts[,]" id. (quotations omitted); see also Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009) (stating that "[t]he standard for intentional violations is deliberate indifference to the strong likelihood of a violation" and that "intentional discrimination against the disabled does not require personal animosity or ill will" (internal quotations omitted)).

**[77]** Saint Lawrence Defendants argue that "Title II of the ADA does not allow actions against a person in their individual capacity." Saint Lawrence Defs.' Mem. of Law at 19. Ogdensburg Defendants reiterate the arguments that "co-defendant St. Lawrence County well points out in its brief ...." Ogdensburg Defs.' Mem. of Law at 12. Saint Lawrence Defendants contend that "Plaintiffs, as a matter of law, cannot state a claim for relief for violations of the ADA against Officers Merria, nor Sherriff [sic] Bigwarfe[,]" Saint Lawrence Defs.' Mem. of Law at 19, and Ogdensburg Defendants assert that "Plaintiffs cannot legally state a claim for relief under the Americans with Disabilities Act against Chief Robert Westcott, and Officers Charles Shaver, Danielle Pryce, Joshua Sirles and Scott Wilson[,]" Ogdensburg Defs.' Mem. of Law at 12.

**[78]** The Court agrees with Defendants that, to the extent that Plaintiffs are suing the *individual Defendants* in their *individual capacities*, "neither Title II of the ADA nor § 504

of the Rehabilitation Act provides for individual capacity suit ...." Fera, 568 F. Supp. 2d at 259 (quotations omitted).

**[79]** **[80]** **[81]** **[82]** **[83]** However, Defendants do not address Plaintiffs' suit against Defendants insofar as Plaintiffs are suing Defendants in their *official capacities*. "Sovereign immunity does not ... extend to local governments or municipalities." Leitner v. Westchester Cmty. College, 779 F.3d 130, 134 (2d Cir. 2015).[9] Therefore, the Court dismisses Plaintiffs' ADA and RA claims with regard to Merria, Sheriff Bigwarfe, Shaver, Pryce, Sirles, Wilson, and Chief Westcott to the extent that as Plaintiffs are suing these individual Defendants in their individual capacities. However, Plaintiffs' claims may proceed under the ADA and RA insofar as Plaintiffs are brining claims against Merria, Sheriff Bigwarfe, Shaver, Pryce, Sirles, Wilson, and Chief Westcott in their official capacities.

**\*22** **[84]** Saint Lawrence Defendants and Ogdensburg Defendants "do[ ] not argue that Plaintiff [Timothy Lalonde] is not a qualified individual with a disability or that [they] are not a public entity." Fera, 568 F. Supp. 2d at 259; see also Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998) (stating that under the ADA "[a] local police department falls 'squarely within the statutory definition of public entity' ") (quotations omitted) (quoting Pa. Dep't of Corrs. v. Yeskey, 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998)).

Saint Lawrence Defendants argue that Plaintiffs must allege "allege facts showing that a policy maker acted with ill will or personal animosity toward him because of his disability" to satisfy deliberate indifference under Title II of the ADA. Saint Lawrence Defs.' Mem. of Law at 22 (quoting Vassenelli v. State Univ. of N.Y., No. 17-CV-00082, 2018 WL 1406629 at *5, 2018 U.S. Dist. LEXIS 44200 at *8 (N.D.N.Y. Mar. 19, 2018)). Ogdensburg Defendants offer a similar argument and also cite to Vassenelli. Ogdensburg Defs.' Mem. of Law at 14.

The Court first addresses the standard discussed in Vassenelli. When stating the standard under Title II of the ADA, Vassenelli stated: "To prove intentional discrimination under Title II, a plaintiff must allege facts showing that a policymaker acted with ill will or personal animosity toward him because of his disability or that the policy maker acted with deliberate indifference to his rights under the ADA." 2018 WL 1406629, at *3, 2018 U.S. Dist. LEXIS 44200, at *8

(quotations omitted). The urtext for this principle is Garcia v. State Univ. of N.Y. Health Scis. Ctr., 280 F.3d 98, 115 (2d Cir. 2001), which Vassenelli cited to when setting forth the aforementioned standard, see 2018 WL 1406629, at *3, 2018 U.S. Dist. LEXIS 44200, at *8. However, immediately after citing to Garcia, Vassenelli then stated that "[d]eliberate indifference does not require personal animosity or ill will." Id. at *3, 2018 U.S. Dist. LEXIS 44200, at *8 (citing Loeffler, 582 F.3d at 275). Clearly, these two standards are at odds—it would require the plaintiff to plead that a policymaker acted with ill will or personal animosity while at the same time it would not require personal animosity or ill will. This contradiction can be resolved, however, because the Garcia standard no longer governs Title II ADA suits.

The Second Circuit case Bartlett v. New York State Bd. of Law Exm'rs set forth the standard for intentional discrimination under the RA, although Bartlett appeared to treat the ADA and RA interchangeably: "In the context of the Rehabilitation Act, intentional discrimination against the disabled does not require personal animosity or ill will." 156 F.3d 321, 331 (2d Cir. 1998), vacated on other grounds by 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999). However, Garcia argued that deliberate indifference under the ADA was a different standard than under the RA. Garcia stated that "[i]n enacting Title II [of the ADA], Congress purported to rely on its authority under both the Commerce Clause of Article I and § 5 of the Fourteenth Amendment." 280 F.3d at 108. Garcia argued that "Title II in its entirety exceeds Congress's authority under § 5 [of the Fourteenth Amendment]" but said that "Title II need only comport with Congress's § 5 authority to the extent that the title allows private damage suits against states for violations." Id. at 110. Garcia asserted: "The question, therefore, is how Title II monetary claims against the states can be limited so as to comport with Congress's § 5 authority. The answer, we believe, is to require plaintiffs bringing such suits to establish that the Title II violation was motivated by discriminatory animus or ill will based on the plaintiffs' disability." Id. at 111. Garcia argued that "unlike Title II of the ADA, § 504 [of the RA] was enacted pursuant to Congress's authority under the Spending Clause of Article I." Id. at 113 (citing U.S. Const. art. I, § 8, cl.

1). Because of this purported difference, Garcia stated that it "alter[ed] that holding [in Bartlett] by requiring proof of discriminatory animus or ill will for Title II damage claims brought against states ...." Id. at 115.

**\*23** **[85]** However, subsequently the Supreme Court issued Tennessee v. Lane, 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) and United States v. Georgia, 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006), and "[i]t [became] far from clear whether the discriminatory animus requirement [set forth in Garcia] remains in place following the Supreme Court's decisions in Lane and Georgia." Goonewardena, 475 F. Supp. 2d at 324 n.2. As discussed above in note 7, courts have "concluded that abrogation [of Eleventh Amendment sovereign immunity] under Title II [of the ADA] is a valid exercise of Congressional power under section 5 [of the Fourteenth Amendment] ...." Id. at 327; see also Ali v. Hogan, No. 12-CV-0104, 2013 WL 5503321, at *11, 2013 U.S. Dist. LEXIS 141239, at *30 (N.D.N.Y. Sept. 11, 2013) (adopting the approach taken in Goonewardena), report and recommendation adopted by 2013 WL 5466302, 2013 U.S. Dist. LEXIS 142001 (N.D.N.Y. Sept. 30, 2013). Accordingly, in light of Lane and Georgia's displacement of Garcia's finding as to § 5 of the Fourteenth Amendment, it appears that Garcia's discriminatory animus requirement no longer governs Title II actions brought under the ADA, which this Court has made clear: "Intentional discrimination [under Title II of the ADA and under the RA] does not require personal animosity or ill will." Fera, 568 F. Supp. 2d at 259. To find otherwise would run counter to the well-settled principle that "[a]s a remedial statute, 'the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.' " Scribd, 97 F. Supp 3d at 573 (quoting Mary Jo C., 707 F.3d at 160).

**[86]** Accordingly, to plead intentional discrimination under the RA and Title II of the ADA, Plaintiffs must demonstrate deliberate indifference, which does not require personal animosity or ill will. See Fera, 568 F. Supp. 2d at 259.

Therefore, the Court finds that Defendants err in arguing that a plaintiff needs to plead animosity or ill will in the context of a Title II claim under the ADA.

In addition, Saint Lawrence Defendants argue that "Plaintiffs' Complaint does not plead facts sufficient to infer that the [Saint Lawrence] County Defendants were directly or vicariously involved in any alleged discrimination, nor that Plaintiff was discriminated against because of his disability." Saint Lawrence Defs.' Mem. of Law at 20. Similarly, Ogdensburg Defendants contend that "Plaintiffs do not plead facts sufficient to infer that the City of Ogdensburg or its officers were involved in any alleged discrimination or that Mr. Lalonde was discriminated against because of his disability." Ogdensburg Defs.' Mem. of Law at 12.

**[87]** **[88]** "[I]ntentional discrimination may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the [challenged] policy ... [or] custom." Bartlett, 156 F.3d at 331 (quotations omitted). Furthermore, it is well-settled that vicarious liability principles apply under the ADA. See Morales v. City of New York, No. 13-CV-7667, 2016 WL 4718189, at *7, 2016 U.S. Dist. LEXIS 121471, at *22 (S.D.N.Y. Sept. 7, 2016) ("[T]he law is clear that municipalities may be held vicariously liable for violations of Title II of the ADA and Section 504 of the Rehabilitation Act committed by their agents."); Bowen v. Rubin, 385 F. Supp. 2d 168, 180 (E.D.N.Y. 2005) (stating that "[g]eneral common law agency principles apply to the ADA" and finding at the summary judgment stage that "applying the principles of vicarious liability, the plaintiffs have demonstrated a genuine issue of material fact as to whether the ... defendants may be held liable under the ADA and the Rehabilitation Act").

Here, Plaintiffs plead that it was "readily apparent that [Timothy Lalonde] was blind and sightless[,]" Compl. ¶ 26, because Timothy Lalonde was "holding a cane wearing dark sunglasses" in the middle of the night when Defendant officers were present, id. ¶ 25. In addition, Plaintiffs aver that after Timothy Lalonde was "slammed" onto the ground by Defendant officers, id. ¶ 28, Theresa Lalonde "scream[ed] to the Defendant Officers that 'her husband is blind ....' " Id. ¶ 29. Furthermore, as Merria "was yanking upon [Timothy Lalonde's] left arm ordering him to release it from under the weight of his body [Timothy Lalonde] responded that he couldn't do it as he was disabled." Id. ¶ 31. [10] Timothy

Lalonde "screamed that he was unable to comply with the [Defendant officers'] commands to move his body in order to free up his immobilized arm." Id. ¶ 33. Defendant officers then "inflicted two taser shots" on Timothy Lalonde, id. ¶ 34, "ruthlessly ignor[ed Timothy Lalonde's] assertion that his disability prevented him from moving" and instead "aggressively yank[ed Timothy Lalonde's] left wrist, elbow and arm resulting in an audible 'pop' that left [him] numb with excruciating pain and a shattered broken wrist, fractured and dislocated elbow, and torn rotator cuff[,]" id. ¶ 35, and because of Timothy Lalonde's "lack[ ] [of] stomach and back muscles to keep him upright when shackled with handcuffs behind his back" the Defendant officers " 'improvised' by lifting [his] body and throwing him laterally into the patrol car sending his head crashing against the opposite passenger door[,]" id. ¶ 37.

**\*24** Thereafter, Defendant officers "intentionally and mockingly refused to accommodate [Timothy Lalonde's] disability when they ushered him into the police department to complete his arrest processing[,]" id. ¶ 41, Doe Officers and Chief Westcott "persisted in ridiculing and refusing to accommodate [Timothy Lalonde] by requiring him to stand facing the wall with his hands stretched out touching the wall while they interrogated and booked him[,]" id. ¶ 42, and compelled Timothy Lalonde "to stand against the stationhouse for one hour while [the officers] attempted to have [Timothy Lalonde] subscribe and 'confess' to their fabrications[,]" id. ¶ 45. Based on these numerous factual allegations, the Court finds that "intentional discrimination may be inferred" here because Plaintiffs' allegations plausibly show that Defendants "acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights w[ould] result" under the ADA and RA from Defendants' actions. 🚩 Bartlett, 156 F.3d at 331. [11]

Finally, Saint Lawrence Defendants argue that the Second Circuit case 🟡 Tardif v. City of New York, 991 F.3d 394 (2d Cir. 2021), as interpreted by a different court in this District in Butchino v. City of Plattsburgh, No. 20-CV-796, 2022 WL 137721, 2022 U.S. Dist. LEXIS 7995 (N.D.N.Y. Jan. 14, 2022), precludes Plaintiffs' ADA claims as they relate to excessive force. Saint Lawrence Defs.' Mem. of Law at 20–22. Ogdensburg Defendants reiterate Saint Lawrence Defendants' argument. Ogdensburg Defs.' Mem. of Law at 13.

As Butchino explained the reasoning of 🟡 Tardif:

In 🟡 Tardif, the plaintiff, a pre-arraignment detainee, was on a strict medication schedule for epilepsy and informed an officer of her medical needs. Although the plaintiff received her first dose, she did not receive her second dose, had a seizure, and was transported to the hospital. The Second Circuit held that Tardif's epilepsy did not cause a deprivation of medical services, it was just the motivation for seeking out such services.

Butchino, 2022 WL 137721, at \*12, 2022 U.S. Dist. LEXIS 7995, at \*32 (citations omitted). 🟡 Tardif based this holding on the principle that " '[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability.' " Id. (quoting 🟡 Tardif, 991 F.3d at 406).

Based on the principle that the ADA prohibits discrimination because of disability but not inadequate treatment for disability, Butchino states: " 🟡 Tardif would preclude an ADA claim for excessive force itself, not the failure to provide a reasonable accommodation," Butchino, 2022 WL 137721, at \*12, 2022 U.S. Dist. LEXIS 7995, at \*32. Butchino asserted that a reasonable accommodation in an excessive force situation could include "a cooling off period[,]" id., and stated that "[t]he failure to provide such a reasonable accommodation is squarely cognizable under the ADA[,]" id. at \*12, 2022 U.S. Dist. LEXIS 7995, at \*32–33. Thus, Butchino found that a plaintiff could bring an ADA claim based on failure to provide a reasonable accommodation in the context of an excessive force situation. As Butchino explains: "Whereas the failure to provide medical care is a generalized issue that applies beyond the ambit of disability law, the failure to provide reasonable accommodation to a service or benefit—a cooling off period for an individual with PTSD—is a quintessential failure to accommodate disability claim." Id. at \*12, 2022 U.S. Dist. LEXIS 7995, at \*33. Accordingly, the Court finds that Defendants' arguments as to Butchino and 🟡 Tardif are misplaced. Butchino actually demonstrates that a plaintiff can bring an ADA claim in the context of an excessive force situation, as long as that situation involved discrimination because of disability.

**\*25**  Moreover, Butchino does not definitively foreclose an ADA claim predicated on excessive force, but instead merely states: "Plaintiff does not bring an ADA claim to remain free from excessive force, which would *likely* fail following 🚩 Tardif." Id. (emphasis added). As the Second Circuit in 🚩 Tardif stated: "[W]here an individual challenges 'the substance of the services provided'—rather than 'illegal discrimination'—there is no ADA violation." 🚩 Tardif, 991 F.3d at 405 (quoting 🚩 Doe v. Pfrommer, 148 F.3d 73, 84 (2d Cir. 1998)). Thus, neither Butchino nor 🚩 Tardif foreclose an excessive force claim pursuant to the ADA that is predicated on illegal discrimination based on disability.

However, the Court need not address this question because Plaintiffs argue: "Defendants are misguided in their assertion that Mr. Lalonde's ADA claim is simply founded on his belief that the entirety of his claim relies upon a theory that he has a right to a reasonable accommodation to be free from excessive force." Pls.' Resp. to Saint Lawrence Defs.' at 20. Saint Lawrence Defendants asserted: "Plaintiffs argument is that because Mr. Lalonde is blind, he should never have been subjected to force." Saint Lawrence Defs.' Mem. of Law at 22. Ogdensburg Defendants reiterate this argument, stating that Plaintiffs argue "[i]n essence because he is blind, Mr. Lalonde should not be subjected to force." Ogdensburg Defs.' Mem. of Law at 13. Plaintiffs argue that, instead, that they are arguing that Defendants failed to reasonably accommodate Timothy Lalonde's disabilities throughout his encounter with Saint Lawrence County and City of Ogdensburg law enforcement officials. For example, Plaintiffs assert: "Defendant officers should have considered Mr. Lalonde's sight impairment, i.e., accommodated for it by engaging in a verbal exchange to assess the necessity of having to assume a tactical arrest formation." Pls.' Resp. to Saint Lawrence Defs.' at 21. Additionally, Plaintiffs argue that "Defendant Officers ... intentionally refused to accommodate Mr. Lalonde's physical disability which prevented him from sitting upright in the back of Defendants' squad car." Id. at 22.

Plaintiffs' reasonable accommodation claims are precisely the types of ADA claims courts in this Circuit have found are cognizable. See 🚩 Williams v. City of New York, 121 F.Supp.3d 354, 368 (S.D.N.Y. 2015) (stating that when law enforcement officials carry out on-the-street interactions, "the only reasonable interpretation of Title II [of the ADA] is that

law enforcement officers who are acting in an investigative or custodial capacity are performing services, programs, or activities within the scope of Title II" (quotations omitted));

🚩 Nicholas v. City of Binghamton, No. 10-CV-1565, 2012 WL 3261409, at \*13, 2012 U.S. Dist. LEXIS 111736, at \*34 (N.D.N.Y. Aug. 7, 2012) ("An arrest or seizure of an individual, including post arrest transportation and investigation is a service, activity, or benefit of a police department and is thus covered under the ADA." (quotations omitted)); cf. 🚩 Ryan v. Vt. State Police, 667 F. Supp. 2d 378 (D. Vt. 2009) ("The ADA requires police officers to take appropriate steps to ensure that communication between deaf arrestees, and the police is at least as effective as communication that would occur between the police and hearing arrestees.").

Because Defendants' arguments as to Butchino and 🚩 Tardif are misplaced, and because Plaintiffs' ADA claims based on Defendants' failure to provide reasonable accommodations are the types of ADA claims courts regularly permit, the Court finds that Defendants have not met their burden. Therefore, Defendants' Motions to Dismiss are denied with regard to Plaintiffs' ADA claims, [12] insofar as Plaintiffs are not suing individual Defendants in their individual capacities.

### G. Defendants' Arguments as to Plaintiffs' State Law Claims for Negligent Infliction of Emotional Distress

**\*26**  **[89]**    **[90]**    **[91]**  Under New York State law the New York State Court of Appeals has

> h[e]ld that where a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover, as a proper element of his or her damages, damages for injuries suffered in the consequence of the observation of the serious injury or death of a member of his or her immediate family— assuming ... that it is established that the defendants' conduct was a substantial factor in bringing about such injury or death.

*Bovsun v. Sanperi*, 61 N.Y.2d 219, 231, 473 N.Y.S.2d 357, 461 N.E.2d 843 (N.Y. 1984). This is governed by the "zone-of-danger rule, which allows one who is himself or herself threatened with bodily harm in consequence of the defendant's negligence to recover for emotional distress resulting from the viewing of the death or serious physical injury of a member of his or her immediate family ...." *Id.* at 228, 473 N.Y.S.2d 357, 461 N.E.2d 843. Moreover, "the emotional disturbance suffered must be serious and verifiable." *Id.* at 231, 473 N.Y.S.2d 357, 461 N.E.2d 843 (citation omitted). "Additionally, the compensable emotional distress must be tied, as a matter of proximate causation, to the observation of the serious injury or death of the family member and such injury or death must have been caused by the conduct of the defendant." *Id.* at 231–32, 473 N.Y.S.2d 357, 461 N.E.2d 843.

[92]  Here, Saint Lawrence Defendants assert that "Plaintiffs have failed to even make a conclusory allegation that [Theresa] Lalonde's physical safety was threatened or endangered, and there are no facts to suggest that Mrs. Lalonde was in any way part of her husband's interaction with the officers ...." Saint Lawrence Defs.' Mem. of Law at 23. Likewise, the Ogdensburg Defendants argue: "There are no facts alleged suggesting that Mrs. Lalonde was in any way part of her husband's interaction with the officers such that she feared for her own safety." Ogdensburg Defs.' Mem. of Law at 14.

Plaintiffs averred in the Complaint that Theresa Lalonde "stormed out of her house" to accost the Defendant Officers for attacking her husband, Compl. ¶ 29, and Plaintiffs argue that "Theresa Lalonde was in the immediate vicinity as her husband[,]" Pls.' Resp. to Saint Lawrence Defs.' at 24, and that "there is more than reasonable chance that she herself would have been physically accosted and threatened with a similar beating as her husband[,]" *id.*

[93]  "Whether a plaintiff was in the 'zone of danger,' ... may raise factual questions that must be resolved by a jury." *Sullivan v. Ford Motor Co.*, No. 97-CV-0593, 2000 WL 343777 at *8, 2000 U.S. Dist. LEXIS 4114 at *24 (S.D.N.Y. Mar. 31, 2000) (citing *Leverock v. Hall & Fuhs, Inc.*, 245 A.D.2d 550, 551, 666 N.Y.S.2d 729 (N.Y. App. Div. 1997) and *Malstrom v. Mackey*, 182 A.D.2d 1006, 1006–07, 583 N.Y.S.2d 28 (N.Y. App. Div. 1992)). "[D]rawing

all reasonable inferences in the plaintiffs' favor[,]" *Holmes*, 568 F.3d at 335 (citation omitted), and noting that the zone of danger analysis is a factual matter better suited to later stages in the litigation when such facts have been more fully developed, the Court finds that Plaintiffs have plausibly pled Theresa Lalonde's presence in the zone of danger as to their negligent infliction of emotional distress claims. Accordingly, because Defendants argue only that "Plaintiffs failed to plead one element of this cause of action," Saint Lawrence Defs.' Mem. of Law at 24; *see also* Ogdensburg Defs.' Mem. of Law at 14, the Court finds that Defendants have not met their burden under Rule 12(b)(6), and Defendants' Motions to Dismiss are denied as to Plaintiffs' negligent infliction of emotional distress claims.

### H. Defendants' Arguments as to Plaintiffs' State Law Claims for Intentional Infliction of Emotional Distress

*27  [94]  Saint Lawrence Defendants and Ogdensburg Defendants contend that Plaintiffs' state law claim for intentional infliction of emotional distress is time barred by the relevant statute of limitations. Saint Lawrence Defs.' Mem. of Law at 24; Ogdensburg Defs.' Mem. of Law at 15.

[95]  While "[i]n section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions,' " which is "three years" under New York State law, *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)), Plaintiffs' state law claims for intentional infliction of emotional distress may be governed by either New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") § 215 or New York General Municipal Law § 50-i, *see Durr*, 558 F. Supp. 3d at 37. Under N.Y. C.P.L.R. § 215, "an action against a sheriff ... or constable, upon a liability incurred by him by doing an act in his official capacity or by omission of an official duty ..." "shall be commenced within one year ...." N.Y. C.P.L.R. § 215(1). Under New York General Municipal Law § 50-i:

> No action or special proceeding shall be prosecuted or maintained against a city, county, town, village, fire district or school district for personal injury ...

alleged to have been sustained by reason of the negligence or wrongful act of such city, county, village, fire district or school district of any officer, agent or employee thereof ... unless (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based ....

N.Y. Gen. Mun. § 50-i(c). "Whether the statute of limitations outlined in [N.Y.] GML § 50-i(c) or NY CPLR § 215 applies 'depends upon who is the real party in interest.' " Durr, 558 F. Supp. 3d at 37 (quoting Coe v. Town of Conklin, 94 A.D.3d 1197, 1198, 942 N.Y.S.2d 255 (N.Y. App. Div. 2012)). "Where an individual 'was acting solely on his own behalf' " NY CPLR § 215 applies." Durr, 558 F. Supp. 3d at 37 (quoting Coe, 94 A.D.3d at 1198, 942 N.Y.S.2d 255). "Where an individual is alleged to have been 'acting within the scope of his employment with the Town, however, the Town may be liable for his conduct and would thus be the real party in interest; in those circumstances, General Municipal Law § 50-i(c) would apply.' " Durr, 558 F. Supp. 3d at 37–38 (quoting Coe, 94 A.D.3d at 1198–99, 942 N.Y.S.2d 255).

Defendants appear to assume that N.Y. C.P.L.R. § 215(1) applies to this case, rather than N.Y. Gen. Mun. § 50-i(c), although they do not explain why this is the case or address who is the real party in interest under New York State law. Saint Lawrence Defs.' Mem. of Law at 24; Ogdensburg Defs.' Mem. of Law at 15.

[96]   [97]   "It is well established that '[c]omplaints need not anticipate, or attempt to plead around, potential affirmative defenses.' " Kattu v. Metro Petroleum, Inc., No. 12-CV-54, 2013 WL 4015342, at *4, 2013 U.S. Dist. LEXIS 110413, at *10 (W.D.N.Y. Aug. 6, 2013) (quoting High Falls Brewing Co., LLC v. Boston Beer Corp., 852 F. Supp. 2d 306, 310 (W.D.N.Y. 2011)). "Accordingly, 'a statute of limitations is an affirmative defense that need not be addressed in the complaint,' and plaintiffs are not required to allege facts in their complaint to rebut a potential statute of limitations affirmative defense that might be waived." Kattu, 2013 WL 4015342, at *4, 2013 U.S. Dist. LEXIS 110413, at *11 (quoting E.E.O.C. v. Davis, No. 07-CV-6434, 2008 WL 4415177, at *6, 2008 U.S. Dist. LEXIS 72911, at *18 (W.D.N.Y. Sept. 24, 2008)). "Requiring plaintiffs to allege in a complaint facts sufficient to overcome a statute of limitations affirmative defense would shift the burden to raise and prove the affirmative defense from defendants, as their burden is allocated and imposed by Rule 8(c)(1) of the Federal Rules of Civil Procedure, to plaintiffs." Kattu, 2013 WL 4015342, at *4, 2013 U.S. Dist. LEXIS 110413, at *11.

*28   [98]   "Determining a statute of limitations defense ordinarily 'requires a consideration of the merit of both parties' claims and defenses.' " Id. at *4, 2013 U.S. Dist. LEXIS 110413, at *12 (quoting Addison v. Reitman Blacktop, Inc., 283 F.R.D. 74, 83 (E.D.N.Y. 2011)). "A 'motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) ... generally cannot reach the merits of an affirmative defense' except in the 'rare' circumstance in which facts sufficient to rule on the affirmative defense are alleged in the complaint." Acosta v. Jardon & Howard Techs., Inc., No. 18-CV-16, 2018 WL 5779506 at *2, 2018 U.S. Dist. LEXIS 187927 at *4 (E.D.N.Y. Nov. 2, 2018) (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc)); Kattu, 2013 WL 4015342, at *4, 2013 U.S. Dist. LEXIS 110413, at *12 ("Because the [statute of limitations] defense requires consideration on the merits, it is heavily fact dependent, which makes a statute of limitations '[d]ismissal under Rule 12(b)(6) ... irregular.' " (quoting Davis, 2008 WL 4415177, at *6, 2008 U.S. Dist. LEXIS 72911, at *18)).

Plaintiffs argue that the statute of limitations defense does not apply here because of the "continuing violation doctrine ...." Pls.' Resp. to Saint Lawrence Defs.' at 25. Plaintiffs assert that "that Defendant Merria, Shaver, Pryce, and Sirles engaged in a conspiracy" and allege that the "co-conspirator[s] and co-Defendants[ ] Chief Robert Westcott and Ogdensburg police officer Scott Wilson ... on or about April 1, 2021, resuscitated the conspiracy's false narratives in order to bolster their conspiracy's coverup" by "order[ing Timothy] Lalonde, under threat of warrant, to return to the [Ogdensburg Police Department] stationhouse to purportedly retake fingerprints and mugshots despite his criminal case being dismissed in July 21, 2020." Id. During this time, Plaintiffs state that "co-conspirators Westcott and Wilson proceeded to re-interrogate Mr. Lalonde regarding their fantastical fabricated narrative ....." Id.

[99] Under New York State law, the New York State Supreme Court, Appellate Division, First Department, has found that based on "a pattern of harassment, intimidation, humiliation and abuse" an "intentional infliction of emotional distress" action "was not barred by the one-year Statute of Limitations (⚑CPLR 215)" and "was instead governed by the continuing tort doctrine" which "permit[s] the plaintiff to rely on wrongful conduct occurring more than one year prior to commencement of the action, so long as the final actionable event occurred within one year of the suit." ⚑Shannon v. MTA Metro-North R.R., 269 A.D.2d 218, 219, 704 N.Y.S.2d 208 (N.Y. App. Div. 2000). Accordingly, under Plaintiffs' argument, the statute of limitations did not commence until on or about April 1, 2021, and therefore, Plaintiffs' filing of the Complaint on February 18, 2022, was well within the statute of limitations time period set forth by ⚑N.Y. C.P.L.R. § 215(1) or ⚑N.Y. Gen. Mun. § 50-i(c). See generally Compl.

Thus, for the purposes of resolving Defendants' Motions to Dismiss, the Court finds that Plaintiffs' intentional infliction of emotional distress claims are not time barred by the statute of limitations, and the Court will not shift the burden of pleading and proving facts that underpin the potential statute of limitations defense from Defendants onto Plaintiffs. Cf. Kattu, 2013 WL 4015342, at *5, 2013 U.S. Dist. LEXIS 110413, at *13–14 ("In this action, some of plaintiffs' claims may have accrued before the two- or three-year statute of limitations bar date, but plaintiffs sufficiently raise equitable tolling in response to defendant['s] ...Rule 12(b)(6) motion to dismiss to avoid the dismissal of their claims for failure to state a claim. In light of plaintiff['s] response to the motion to dismiss, it is not clear from the complaint that any plaintiffs' claims are time-barred. On the other hand, undisputed facts may later justify a motion for summary judgment to significantly narrow the issue for trial. At this juncture, the Court will not shift the burden of pleading and proving facts that underlie the potential statute of limitations defense, a defense that is waived if not alleged in an answer, from defendant to plaintiffs."). Accordingly, Defendants' Motions to Dismiss are denied as to Plaintiffs' intentional infliction of emotional distress claims.

### I. Defendants' Arguments as to Plaintiffs' Negligence Claims

**\*29** [100] Saint Lawrence Defendants and Ogdensburg Defendants both argue that because conduct cannot be both negligent and intentional, the Court should dismiss Plaintiffs' negligence claims. Saint Lawrence Defs.' Mem. of Law at 24–25; Ogdensburg Defs.' Mem. of Law at 15. As discussed at length above, it is well-settled that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." ⚑Fed. R. Civ. P. 8(d)(3). Accordingly, the Court finds that Defendants' arguments with regard to inconsistency of pleadings are inapposite under Rule 8.

Saint Lawrence Defendants assert that "Plaintiffs' negligence claim must also be dismissed because plaintiffs may not recover in negligence where a law enforcement officer fails to exercise some requisite amount of care in effectuating an arrest or initiating a prosecution." Saint Lawrence Defs.' Mem. of Law at 25. Ogdensburg Defendants reiterate the same argument: "[N]egligence claims must be dismissed where it is alleged that the law enforcement officer was negligent by failing to exercise certain care in effectuating the arrest or initiating prosecution." Ogdensburg Defs.' Mem. of Law at 15. Both groups of Defendants cite to the Second Circuit decision ⚑Bernard v. United States, which stated: "Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effectuating an arrest or initiating a prosecution." ⚑25 F.3d 98, 102 (2d. Cir. 1994); Saint Lawrence Defs.' Mem. of Law at 25; Ogdensburg Defs.' Mem. of Law at 15.

[101] ⚑Bernard relies on ⚑Boose v. City of Rochester, 71 A.D.2d 59, 421 N.Y.S.2d 740 (N.Y. App. Div. 1979), a decision issued by the New York State Supreme Court, Appellate Division, Fourth Department, in support of its finding. See ⚑Bernard, 25 F.3d at 102. ⚑Boose stated: "Plaintiff may not recover under broad general principles of negligence ... but must proceed by way of the traditional remedies of false arrest and imprisonment and malicious prosecution." ⚑71 A.D.2d at 62, 421 N.Y.S.2d 740. However, a plaintiff may proceed with negligence claims brought against law enforcement officials if such claims are not duplicative of false arrest, false imprisonment, or malicious prosecution. See Woods v. Town of Cheektowaga, No. 11-CV-343, 2012 WL 5288767, at *7, 2012 U.S. Dist. LEXIS 152229, at *22–23 (W.D.N.Y. Oct. 23, 2012) (addressing "Defendants['] argue[ment] that this claim [for negligence] must be dismissed because the negligence alleged is based upon activities relating to an arrest, [and] therefore Plaintiffs must resort to the traditional remedies of false

imprisonment and malicious prosecution and cannot recover under the broader principles of negligence" but finding that "[u]nlike the cases on which Defendants rely, however, Plaintiffs' negligence claim here is not duplicative of a false arrest or malicious prosecution claim" (citations omitted) (quotations omitted)).

Accordingly, the Court agrees with Defendants that Plaintiffs may not pursue negligence claims against Pryce, Sirles, Shaver, Wilson, Merria, and Chief Westcott for actions and omissions that are properly construed as false arrest and false imprisonment claims. Therefore, these claims are dismissed. However, insofar as Plaintiffs seek to bring other negligence claims that are not duplicative of false arrest and false imprisonment, those claims may proceed because Defendants have not met their burden with regard to those other negligence claims. Thus, Defendants' Motions to Dismiss are denied as to Plaintiffs' negligence claims that are not duplicative of false arrest and false imprisonment.

### J. Ogdensburg Defendants' Arguments as to Plaintiffs' Trespass Claim Against Wilson

**\*30** Ogdensburg Defendants argues that the Court should dismiss Plaintiffs' trespass claim against Wilson. Ogdensburg Defs.' Mem. of Law at 16–17. Ogdensburg Defendants contend that two New York State Court of Appeals cases support their argument, specifically ⬜ Valdez v. City of New York, 18 N.Y.3d 69, 936 N.Y.S.2d 587, 960 N.E.2d 356 (N.Y. 2011), and ⬜ McLean v. City of New York, 12 N.Y.3d 194, 878 N.Y.S.2d 238, 905 N.E.2d 1167 (N.Y. 2009). Ogdensburg Defs.' Mem. of Law at 16. However, the two cases that Ogdensburg Defendants cite address *municipal liability* whereas Plaintiffs' Complaint seeks to bring a trespass claim only against Wilson. Compl. ¶¶ 171–76. For example, the passage of ⬜ Valdez quoted by Ogdensburg Defendants states: " 'A public employee's discretionary acts—meaning conduct involving the exercise of a reasoned judgment—may not result in the *municipality's liability* even when the conduct is negligent.' " Ogdensburg Defs.' Mem. of Law at 16 (emphasis added) (quoting ⬜ Valdez, 18 N.Y.3d at 76, 936 N.Y.S.2d 587, 960 N.E.2d 356). Likewise, ⬜ McLean states that "discretionary *municipal acts* may never be a basis for liability, while ministerial acts may support liability only where a special duty is found." ⬜ McLean v. City of New York, 12 N.Y.3d at 202, 878 N.Y.S.2d 238, 905 N.E.2d 1167. Thus, the ⬜ Valdez and ⬜ McLean cases are inapplicable

in the context of Plaintiffs' trespass claim against Wilson. Accordingly, Ogdensburg Defendants have failed to meet their burden of proving that Plaintiffs have not stated a cognizable claim against Wilson for trespass, and Ogdensburg Defendants' Motion to Dismiss is denied with regard to Plaintiffs' trespass claim against Wilson.

### V. CONCLUSION
Accordingly, it is hereby:

**ORDERED**, that Saint Lawrence Defendants' Motion to Dismiss (Dkt. No. 9) is **GRANTED in part**, pursuant to Rule 12(b)(6), to the extent that Plaintiffs are seeking to sue individual Defendants in their individual capacities under the ADA; however, Saint Lawrence Defendants' Motion to Dismiss is **DENIED** with regard to all of Plaintiffs' other ADA claims against Defendants—including those claims brought against Defendants in their official capacities—and Plaintiffs' other ADA claims may proceed; and it is further

**ORDERED**, that Saint Lawrence Defendants' Motion to Dismiss is **GRANTED in part**, pursuant to pursuant to Rule 12(b)(6), insofar as Plaintiffs are seeking to sue Defendants for negligence for acts or omissions that are properly construed as false arrest and false imprisonment; however, Saint Lawrence Defendants' Motion to Dismiss is **DENIED** with regard to all of Plaintiffs' other negligence claims that are not duplicative of false arrest and false imprisonment, and Plaintiffs' other negligence claims are permitted to proceed; and it is further

**ORDERED**, that Saint Lawrence Defendants' Motion to Dismiss is **DENIED** as to all other claims Saint Lawrence Defendants seek to dismiss; and it is further

**ORDERED**, that Ogdensburg Defendants' Motion to Dismiss (Dkt. No. 10) is **GRANTED in part**, pursuant to Rule 12(b)(6), to the extent that Plaintiffs are seeking to sue individual Defendants in their individual capacities under the ADA; however, Ogdensburg Defendants' Motion to Dismiss is **DENIED** with regard to all of Plaintiffs' other ADA claims against Defendants—including those claims brought against Defendants in their official capacities—and Plaintiffs' other ADA claims may proceed; and it is further

**ORDERED**, that Ogdensburg Defendants' Motion to Dismiss is **GRANTED in part**, pursuant to pursuant to Rule 12(b)(6), insofar as Plaintiffs are seeking to sue Defendants for negligence for acts or omissions that are properly

construed as false arrest and false imprisonment; however, Ogdensburg Defendants' Motion to Dismiss is **DENIED** with regard to all of Plaintiffs' other negligence claims that are not duplicative of false arrest and false imprisonment, and Plaintiffs' other negligence claims are permitted to proceed; and it is further

**ORDERED**, that Ogdensburg Defendants' Motion to Dismiss is **DENIED** as to all other claims Ogdensburg Defendants seek to dismiss; and it is further

**ORDERED**, that the Clerk of the Court is respectfully directed to serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2023 WL 2537626

## Footnotes

1   The Court refers to the Ogdensburg Defendants and the Saint Lawrence Defendants collectively as "Defendants."

2   Saint Lawrence Defendants and Ogdensburg Defendants requested oral argument with respect to the Motions to Dismiss. Saint Lawrence Defs.' Mot. to Dismiss at 1; Ogdensburg Defs.' Mot. to Dismiss at 1. Local Rule 7.1(a) states: "Motions are decided without oral argument unless scheduled by the Court. Parties may make a written request for oral argument, which is subject to the discretion of the presiding judge." L.R. 7.1(a). The Court denies these requests for oral argument.

3   "Under New York Law, a civil assault is an intentional placing of another person in fear of imminent harm or offensive conduct." Jackson, 2022 WL 2954370, at *9, 2022 U.S. Dist. LEXIS 132123, at *25–26 (citing Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001)). "To recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact." Jackson, 2022 WL 2954370, at *9, 2022 U.S. Dist. LEXIS 132123, at *26 (citing Morgan v. City of Utica, No. 20-CV-1424, 2021 WL 2036680, at *5, 2021 U.S. Dist. LEXIS 97271, at *11–12 (N.D.N.Y. May 21, 2021)). "A civil battery is an intentional wrongful physical contact with another person without consent, and may be accomplished either personally or by means of an instrumentality ...." Jackson, 2022 WL 2954370, at *9, 2022 U.S. Dist. LEXIS 132123, at *27 (citations omitted) (citing Girden, 262 F.3d at 203 and Relf v. City of Troy, 169 A.D.3d 1223, 1226, 94 N.Y.S.3d 672 (N.Y. App. Div. 2019)).

4   Supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which states: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Under § 1367(a), claims " 'form part of the same case or controversy' " if these claims, " 'derive from a common nucleus of operative fact.' " Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011) (quoting Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004)). Pursuant to § 1367(a), "a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639, 129 S.Ct. 1862,

173 L.Ed.2d 843 (2009). The Court exercises this subject matter jurisdiction over all of Plaintiffs' New York State law claims.

5    "In order to establish a claim for false arrest or false imprisonment under New York State law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." Levantino, 56 F. Supp. 3d at 200.

6    "Rule 8(d)[ ] [was] formerly Rule 8(e) ...." 🚩 St. John's Univ. v. Bolton, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010). While "[t]he court in 🚩 Henry cited to former Rule 8(e)(2) .... [t]he relevant provision was restyled as Rule 8(d)(2)–(3) in 2007 ...." 🚩 Moore v. Samuel S. Stratton VAH, No. 16-CV-475, 2019 WL 251725, at *4 n.3, 2019 U.S. Dist. LEXIS 8342, at *12 n.3 (N.D.N.Y. Jan. 17, 2019) (Kahn, J.).

7    Some courts also look to Rule 20 when addressing pleading in the alternative when a plaintiff pleads claims against multiple defendants. Rule 20(a)(2) states: "Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B). Applying Rule 20(a)(2)(A), the Eleventh Circuit permitted a plaintiff to plead in the alternative as to three law enforcement officials, although plaintiff could not identify which specific official had struck him: "Because we conclude that [plaintiff] sufficiently alleged that one of the three agents struck him in violation of his Fourth Amendment rights, and that all three agents were present at the time, [plaintiff] can plead in the alternative and pursue discovery to uncover the identity of the agent who allegedly struck him." 🚩 Saunders v. Duke, 766 F.3d 1262, 1268 n.2 (11th Cir. 2014).

8    Saint Lawrence Defendants only argue against Plaintiffs' fabrication of evidence claims as they relate to Merria. Saint Lawrence Defs.' Mem. of Law at 9–10. Ogdensburg Defendants only argue against Plaintiffs' fabrication of evidence claims as they relate to "Shaver, Pryce, Sirles and Wilson ...." Ogdensburg Defs.' Mem. of Law at 5.

9    Even if sovereign immunity were at issue, the Court notes that "abrogation [of Eleventh Amendment sovereign immunity] under Title II [of the ADA] is a congruent and proportional response to the history of discrimination against the disabled ...." 🚩 Goonewardena v. New York, 475 F. Supp. 2d 310, 326 (S.D.N.Y. 2007). Because "abrogation under Title II [of the ADA] is a valid exercise of Congressional power under section 5 [of the Fourteenth Amendment], sovereign immunity is not a ground which bars" a plaintiff's claims against the State. 🚩 Id. Additionally, where "the immunity of the individual defendants sued in their official capacities parallels that of the State[,]" because "sovereign immunity does not shield [the State], it does not shield the individual defendants in their official capacities." 🚩 Id. at 326–27.

Likewise, even if sovereign immunity were at issue in this case, it would not bar a plaintiff's claims for injunctive relief brought against state actors in their official capacities. "Neither § 504 nor Title II [of the ADA] displays any intent by Congress to bar a suit against state officials in their official capacities for injunctive relief, nor does either create a remedial scheme so elaborate that it could be thought to preclude relief under 🚩 Ex parte Young[, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)]." 🚩 Henrietta D., 331 F.3d at 289. Accordingly, ("there is no basis for holding that the ADA or Rehabilitation Act intended to create the kind of comprehensive enforcement scheme that would preclude prospective injunctive relief against a state official in her official capacity.").

10    Saint Lawrence Defendants regard Plaintiffs' factual claims as to this incident as inconsistent, Saint Lawrence Defs.' Mem. of Law at 20, but the Court reiterates what it stated above—under Rule 8, a plaintiff's pleadings may have inconsistencies and "[t]he inconsistency may lie either in the statement of the facts or in the legal theories adopted ...." ⚑ Henry, 42 F.3d at 95.

11    Insofar as Ogdensburg Defendants assert that "no facts have been alleged that [Chief Westcott] was a 'policy maker,' " Ogdensburg Defs.' Mem. of Law at 14, the Court finds that this argument is inapposite. See ⚑ Wilson v. Robert Riley Baucom, No. 20-CV-311, 2021 WL 7081523 at *8, 2021 U.S. Dist. LEXIS 253806 at *25 (W.D. Tex. Jan. 25, 2021) ("Neither a policymaker nor an official policy need be identified for ADA claims; a public entity 'is liable for the vicarious acts of any of its employees as specifically provided by the ADA.' " (quoting Leeper v. Travis Cnty., No. 16-CV-819, 2018 WL 5892377, at *8, 2018 U.S. Dist. LEXIS 191755, at * (W.D. Tex. Nov. 19, 2018))).

12    To the extent that Saint Lawrence Defendants again reiterate their argument as to inconsistencies in Plaintiffs' Complaint, in the context of these ADA claims, Saint Lawrence Defs.' Mem. of Law at 22, the Court again finds that Plaintiffs may plead in the alternative under Rule 8.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1914906
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Peggy MORRIS, Plaintiff,

v.

The CITY OF NEW YORK, et al., Defendants.

No. 14–cv–1749 (JG)(LB).
|
Signed April 27, 2015.

**Attorneys and Law Firms**

Peggy Morris, St. Albans, NY, pro se.

Zachary W. Carter, Corporation Counsel of the City of New York, by: Rosemari Y. Nam, New York, NY, for Defendants.

*MEMORANDUM AND ORDER*

JOHN GLEESON, District Judge.

 **\*1** Peggy Morris brought this action against the City of New York (the "City"), several New York Police Department officers (the "NYPD Defendants"), judicial defendants, and private defendants under 42 U.S.C. §§ 1982, 1983, 1985, and 1988, as well as various sections of the United States Code and additional state law claims. On May 1, 2014, I dismissed Morris's § 1982 and § 1985 claims. I also dismissed the § 1983 claims against the private and judicial defendants, and allowed the § 1983 claims against the City and the NYPD Defendants[1] to proceed. Order (ECF No. 4) at 8–10. Morris moved for reconsideration of my decision dismissing the private defendants. On August 8, 2014, I granted that motion in part and reinstated the claims against Serena A. May, McCrary's Justice Center, Dawnett Simpson–Clark,[2] the Law Offices of Salami Oyakhilome, P.C., and Sadatu Salami–Oyakilome. Order (ECF No. 16) at 1–2.

On October 10, 2014, the City moved to dismiss Morris's remaining § 1983 claims. I heard oral argument on April 13, 2015, at which Morris appeared by telephone. For the

reasons discussed below, Morris's false arrest claims against arresting officers Marcantonio, Skobla, and Villanueva may proceed. All other claims against the City and the NYPD Defendants are dismissed.

## BACKGROUND

For the purposes of the memorandum, I assume a familiarity with the facts as outlined in my decision dated May 1, 2014. The facts underlying Morris's claims stem from a series of interactions with the NYPD Defendants that culminated in Morris's arrest on August 22, 2013. What follows is a brief summary of the claims that are the subject of this motion to dismiss.

Morris alleges that the NYPD Defendants violated her constitutional rights by failing to intervene in several disputes arising from an "illegal eviction" campaign against Morris (see Compl. ¶¶ 48–59) and by arresting her on August 22, 2013, in violation of her Fourth Amendment rights. *See id.* ¶¶ 60–80. She also claims the NYPD Defendants violated her rights to free speech and due process under the First and Fourteenth Amendments. *Id.* ¶¶ 90, 94. Morris alleges the NYPD officers "engaged in a joint venture and formed agreement to violate [Morris's] rights" and "assisted each other and the civilian protagonists in performing the various described conduct lending their physical presence and support and the authority of their office to each other during the said events in order to accomplish a false arrest in furtherance of unlawful ends." *Id.* ¶ 83. As for the City, Morris claims that it failed to train and supervise the NYPD Defendants (*id.* ¶¶ 99–103) and created a policy or custom under which the unconstitutional practices occurred. *Id.* ¶ 105.

## DISCUSSION

A. *Standard of Review*

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys. This means I am required to read Morris's *pro se* complaint and opposition liberally and "interpret them to raise the strongest arguments that they suggest." *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006) (internal quotations omitted). This is especially true where the pro se plaintiff asserts civil rights violations. *See Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008).

**\*2** In deciding a motion to dismiss, "I must assume the truth of all well-pleaded factual allegations, draw all inferences in the light most favorable to the plaintiff[ ], and grant the motion only if the complaint so viewed fails 'to raise a right to relief above the speculative level.' " *Allstate Ins. Co. v. Lyons,* 843 F.Supp.2d 358, 367 (E.D.N.Y.2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). The complaint need not provide "detailed factual allegations," *Twombly,* 550 U.S. at 555, but it must be supported by more than "mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). In deciding a motion to dismiss, a court considers "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken ...." *Thomas v. City of New York,* No. 12–cv–6327 (JG), 2014 WL 1312006, at \*2 (E.D.N.Y. Mar. 31, 2014) (quoting *Samuels v. Air Transp. Local* 504, 992 F.2d 12, 15 (2d Cir.1993)).

B. *The* Section 1983 *Claims*

Section 1983 imposes civil liability on anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. It "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris–Hayes v. Board of Educ. of Chester Union Free Sch. Dist.,* 423 F.3d 153, 159 (2d Cir.2005). "[T]he core purpose of § 1983 is 'to provide compensatory relief to those deprived of their federal rights by state actors.' " *Hardy v. New York City Health and Hosps. Corp.,* 164 F.3d 789, 795 (2d Cir.1999) (quoting *Felder v. Casey,* 487 U.S. 131, 141 (1988)).

In addition to arguing that Morris fails to state claims under § 1983 for constitutional violations, the police officer defendants assert the defense of qualified immunity. Qualified immunity shields governmental officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Poe v. Leonard,*

282 F.3d 123, 131 (2d Cir.2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

1. *The False Arrest and Threatened Arrest Claims*

The Fourth Amendment's prohibition of unreasonable search and seizure requires that any arrest made without a warrant be based on probable cause to believe that some offense is being (or has been) committed by the arrested person. *See, e.g., United States v. Fisher,* 702 F.2d 372, 375 (2d Cir.1983) (citing cases). A warrantless arrest in the absence of probable cause violates the Fourth Amendment. "[A] plaintiff claiming false arrest must show, *inter alia,* that the defendant intentionally confined him without his consent and without justification." *Covington v. City of New York,* 171 F.3d 117, 122 (2d Cir.1999) (internal quotations omitted). If probable cause existed, the arrest is considered privileged and the officer has a "complete defense to an action for false arrest whether that action is brought under state law or under § 1983." *Weyant,* 101 F.3d at 852 (internal quotations and citation omitted); *see also Singer v. Fulton County Sheriff,* 63 F.3d 110, 118–19 (2d Cir.1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). Additionally, "[t]he question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant,* 101 F.3d at 852.

**\*3** "Probable cause exists if police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." *United States v. Cole,* 26 F. App'x 45, 46–47 (2d Cir.2001) (internal quotations omitted). Generally, if an arresting officer is made aware of a criminal charge by the victim, there is probable cause. *See Singer,* 63 F.3d at 119; *see also Miloslavsky v. AES Engineering Soc., Inc.,* 808 F.Supp. 351, 355 (S.D.N.Y.1992) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth."), *aff'd* 993 F.2d 1534 (2d Cir.1993).

As mentioned above, the arresting officers claim they are entitled to qualified immunity. On a false arrest claim, qualified immunity protects an arresting officer if he or she can establish that there was "arguable probable cause" to arrest. *See* Cerrone v. Brown, 246 F.3d 194, 203 (2d Cir.2001) ( "[T]he court must grant police officers qualified immunity when the court concludes that the only conclusion a reasonable jury could reach is that reasonable officers would disagree on the constitutionality of the seizure."). Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Morris v. City of New York, No. 12–cv–3959 (JG), 2013 WL 5781672, at *5 (E.D .N.Y. Oct. 28, 2013), *aff'd sub nom.* Morris v. Silvestre, No. 14–1188, 2015 WL 1061124 (2d Cir. Mar. 12, 2015) (hereinafter *Silvestre* ) (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir.2004)).

The defendants argue that Morris's arrest was based on probable cause arising from an allegation in a criminal complaint that "Peggy Morris threw a small television down the stairs from the third floor to the second floor landing, almost hitting the complainants [Dawnett Simpson–Clarke and Tanyalee Murray] and [Clarke's] ten year old son." *See* Nam Decl. (ECF No. 39), Ex. B (Criminal Compl.); Def. Br. 10–11. I can consider the criminal complaint because it is referred to specifically in Morris's complaint, and it is a public record. *See* Compl. ¶ 64; *see also* Liang v. City of New York, No. 10–cv–3089 (ENV)(VVP), 2013 WL 5366394, at *4–5 (E.D.N.Y. Sept. 24, 2013) ("[O]n a motion to dismiss, a court may only consider [1] the pleading itself, [2] documents that are referenced in the complaint, [3] documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and [4] matters of which judicial notice may be taken.") (internal quotations omitted).

**\*4** A criminal complaint is generally sufficient to support a finding of probable cause unless there are "circumstances that raise doubts as to the victim's veracity." Singer, 63 F.3d at 119. Indeed, there are times when an accuser's veracity should be doubted, such as when there is a preexisting relationship between the victim and the accused. *See* Mistretta v. Prokesch, 5 F.Supp.2d 128, 133 (E.D.N.Y.1998); *see generally* 2 Wayne A. LaFave, *Search and Seizure* § 3.4(a)

(5th ed.2012). Morris argues that this is one of those cases. She alleges the arresting officers did not believe Clark's allegations and knew of her previous contentious relationship with Clark. Compl. ¶¶ 64, 85. Morris claims that the nature of her relationship with Clark was something "all the responding officers and Sergeant McCormick knew about," and that Clark had an "axe to grind." Pl. Opp. at 11. [3]

In a previous case where Morris claimed false arrest based on the police officers' knowledge of an antagonistic relationship between Morris and the complainant, I found that officers of reasonable competence could disagree about whether there was probable cause and dismissed Morris's complaint on the grounds of qualified immunity. *See* Silvestre, 2013 WL, at *5–72013 WL, at *5–7. In *Silvestre,* Morris was arrested when the son of Osborne Miller, Morris's terminally ill domestic partner, made a criminal complaint that Morris had unlawful possession of Miller's bank card and was making unauthorized withdrawals. *Id.* at *1. In affirming the decision that the officers had arguable probable cause to arrest Morris, the Second Circuit noted that Morris's prosecution was supported by her admission—after an earlier denial—that she would appear on an ATM surveillance video using Morris's bank card. *Silvestre,* 2015 WL, at *22015 WL, at *2.

Like *Silvestre,* the present case involves an arrest supported by little more than a "complaint by an individual whose preexisting, antagonistic relationship with Morris was known to the police." *Id.* But in this case, assuming, as I must, the truth of Morris's allegations on a motion to dismiss, I cannot conclude that reasonable officers could disagree on the question of probable cause. Unlike *Silvestre,* where the arrest was supported by Morris's admission about the ATM footage, in this case there are no independent facts that corroborate Clark's allegation. Instead, Morris alleges that the officers had "knowledge of [Clark's] established pattern of making and filing unbelievable and false complaints against [Morris]." Compl. ¶ 85. Morris also alleges that the officers knew of her previous complaints against Clark. She describes previous interactions with the officers in the precinct where she made complaints regarding conduct by Clark and they characterized the complaints as "Bull S__t." Compl. ¶ 51. Morris also argues that "Clark and others" first made this television throwing allegation against her on August 6 by (Pl. Opp. at 5) and that officer Pena from the 113th Precinct heard the allegation on August 20 and told Morris that he did not believe she threw the television. Compl. ¶ 64.

**\*5** In sum, Morris has sufficiently alleged that she was arrested without probable cause. Moreover, I conclude that she has alleged facts that "indicate that any reasonably competent officer should have known that [Clark] was an unreliable victim-informant whose statement, under the circumstances, could not form the sole basis for an arrest." *McGee v. Doe,* 568 F. App'x 32, 37–38 (2d Cir.2014), *as amended* (July 2, 2014). As in *McGee,* Morris's complaint alleges that some of the police defendants had longstanding relationships with both Morris and Clark and knew of their ongoing dispute. She has further alleged facts that support an inference that the real reason she was arrested was because the officers were annoyed by her numerous complaints about others. The qualified immunity defense fails at this juncture because if those alleged facts and the reasonable inferences that could be drawn from them are true, then no reasonable law enforcement officer would believe it was permissible to arrest Morris. It may well be necessary to revisit this issue on a motion for summary judgment, when the facts are more fully developed. However, at this stage, for the reasons discussed above, the motion to dismiss the false arrest claims against Marcantonio, Skobla, and Villanueva is denied.

Finally, Morris alleges that Defendant Martinez threatened to arrest her repeatedly and that on August 21, 2013, the day before her arrest, he informed Emergency Medical Service responders that she was a "mentally disturbed individual" before following her down the street as she tried to walk away. Compl. ¶¶ 64–65. However, the mere threat of arrest does not constitute a Fourth Amendment violation. *Bodek v. Bunis,* No. 06–cv–6022L (DL), 2007 WL 1526423, at \*9 (W.D.N.Y. May 23, 2007). Therefore, Morris's Fourth Amendment claim against Martinez is dismissed.

### 2. The Failure to Intervene Claims

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994) (collecting cases). An officer who fails to intervene is liable for the preventable harm caused by other officers where that officer observes or has reason to know that other officers have committed a constitutional violation, including the use of excessive force or unjustifiable arrest. *See id.* For liability to attach, "there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id. See also Armstead v. New York*

*City Police Dep't,* No. 13–cv–891 (ENV)(JMA), 2013 WL 1148803, at \*3 (E.D.N.Y. Mar. 19, 2013).

Morris claims that Officers Banks, Bradley, Marmara, and McCormick, who did not arrest her—but also did not intervene to stop her arrest—broke the law. She asserts that they had dismissed previous claims made by Morris as "Bull S__ t complaints" and that her efforts to get protection against those making threatening calls to her were "all in vain," for instance. Compl. ¶¶ 51–52. However, police officers have no affirmative duty to investigate complaints, as the government and its agents are under no general duty to provide public services or protection to individual citizens. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 197 (1989). In addition, filing a complaint with an officer has not been found to be enough to give rise to a special relationship in which the officer has a duty to protect the complainant. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 534 (2d Cir.1993).

**\*6** Morris also asserts that the officers at the station on August 22, 2013 had knowledge that her arrest was unjustified and failed to intervene. Pl. Opp. 13. However, Morris cannot establish a claim for failure to intervene, as she cannot overcome to hurdle of qualified immunity. A police officer cannot be held liable for failure to intervene unless such a failure permitted fellow officers to "violate a suspect's clearly established statutory or constitutional rights" and was under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights. *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 129 (2d Cir.1997) (internal quotations omitted). When Morris was brought into the 113th precinct, I cannot say it would have been objectively unreasonable for an observing police officer to believe she had been properly arrested. Therefore, qualified immunity applies to the non-arresting officers.

### 3. Municipality Liability

Morris argues that the City should be held liable for failure to properly train and supervise the NYPD Defendants, and for creating a policy or custom that allows what Morris considers to be false arrests to occur regularly. In a previous action brought by Morris I addressed a very similar claim against the City. *See Morris v. Katz,* No. 11–CV–3556 (JG), 2011 WL 3918965 (E.D.N.Y. Sept. 4, 2011) ("In order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal defendant such as the City of New York, a plaintiff must

show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right."). As in that case, there are no facts here from which a reasonable jury could find that any of the wrongful acts in which individual officers allegedly engaged were the result of a municipal policy or custom. I therefore grant the motion to dismiss Morris's 🚩§ 1983 claim against the City.

### 4. *The First Amendment Claims*

Morris alleges that her First Amendment rights were violated when unidentified "police personnel" and unspecified court officials "silenced" her when she advocated for property rights and spoke out about due process and the court's lack of jurisdiction and that this "resulted in a chilling effect on [her] willingness to speak up as a citizen." Comp. ¶¶ 129–31. To make out a claim for violations of her First Amendment rights, Morris must show: "1) [she] has a right protected by the First Amendment; 2) defendants' actions were motivated or substantially caused by [her] exercise of that right; and 3) defendants' actions effectively chilled the exercise of [her] First Amendment right." *See* 🚩*Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001).

Morris's statement that she experienced a "chilling effect on her willingness to speak up" is not a sufficient injury to establish a First Amendment violation. Morris's First Amendment claim fails because she is required to show "that the defendant's actions had some actual, non-speculative chilling effect." 🚩*Colombo v. O'Connell,* 310 F.3d 115, 117 (2d Cir.2002) (citation omitted). To experience a chilling effect, Morris would have to feel as if she could not speak up because of some specific action taken against her in order to silence her. Morris has alleged no facts to establish that the officers' actions had a real effect on her. To the contrary, Morris alleges that she "is a life-long community advocate" and a housing specialist (Compl.¶ 33), and she shows no intention of ceasing her efforts to prevent unlawful foreclosures and evictions.

### CONCLUSION

**\*7** For the reasons discussed above, the motion to dismiss the false arrest claims against arresting officers Marcantonio, Skobla, and Villanueva is denied. The defendants' motion is granted in all other respects. I certify pursuant to 🚩28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. 🚩*Coppedge v. United States,* 369 U.S. 438, 444–445 (1962).

So ordered.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1914906

### Footnotes

1    The police officers named in the complaint are defendants Marcantonio, Skobla, Villanueva, McCormick, Martinez, Bradley, Marmara, and Banks.

2    Morris refers to Clark as "Simpson–Clark" and "Clark." The criminal complaint referenced by the City refers to her as "Simpson–Clarke." *See* Nam Decl. (ECF No. 39) Ex. B.

3    Morris also takes issue with the fact that the reasons for arrest were not made clear at the time of arrest, but that is not a requirement for establishing probable cause for an arrest. Probable cause analysis is not limited to the specific charges contemplated or presented by the arresting officer—facts and circumstances known to the officers at time of arrest may be retroactively analyzed and if there was probable cause to arrest for any charge, then no false arrest claim lies. *See* 🚩*Devenpeck v. Alford,* 543 U.S. 146, 152–55 (2004).

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 4371750
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Eric SANABRIA, Plaintiff,
v.
DETECTIVE SHAWN TEZLOF, et al., Defendants.

11-CV-6578 (NSR)
|
Signed 08/12/2016

**Attorneys and Law Firms**

Eric Sanabria, Coxsackie, NY, pro se.

Harold L. Moroknek, Marshall, Dennehey, Warner, Coleman and Goggin, Rye Brook, NY, for Defendants.

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

**\*1** Plaintiff Eric Sanabria ("Plaintiff") brings this action under 42 U.S.C. § 1983 for claims of excessive force and illegal seizure in violation of his Fourth Amendment rights, as well as claims for failure to intervene to prevent the use of excessive force and denial of medical care in violation of his Fifth Amendment rights.[1] Plaintiff initially brought this action *pro se* naming as defendants "Warwick Police Department; Chester Police Department; [and] State Police Trooper F?" pursuant to a complaint filed September 7, 2011. (ECF No. 1) On December 30, 2011, the Court dismissed the claims against the Warwick Police Department and Chester Police Department, directed the Clerk to add as defendants the Town of Warwick, the Town of Chester, Detective Tezlof, Detective Hommein, and John Does 1-25. and directed the Towns of Warwick and Chester to assist Plaintiff in identifying John Does 1-25. On May 17, 2013, Plaintiff filed an Amended Complaint dropping the Town of Chester and Detective Hommein as defendants, keeping Tezlof and the Town of Warwick as defendants, and adding as defendants Fredrick M. Hoffmen, Christopher Blackwell, John Radar, Alton Morley, Brian Luthan, Kevin Terry, Felix Oresto, Kevin Harsey, Jason March, Michael Mooney, Micheal Kearse, and J. Feragola (together with Tezlof, "Individual Defendants") (collectively, including Town of Warwick, "Defendants").[2]

Before the Court is the Defendants' motion to dismiss.[3] For the following reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

**FACTUAL BACKGROUND**

**\*2** The following facts are taken from Plaintiff's Amended Complaint and Motion for Leave to Amend the Complaint. Where warranted, the Court considers additional facts provided in Plaintiff's original complaint, because Plaintiff did not re-plead the entirety of facts put forth in his original complaint. *Farbstein v. Hicksville Pub. Library,* No. CV 02-6438 DRH/MLO, 2006 WL 288251, at \*1 (E.D.N.Y. Feb. 6, 2006), aff'd, 254 Fed.Appx. 50 (2d Cir. 2007) (considering allegations in both the original and amended complaints because plaintiff was *pro se*).

On March 25, 2010, at approximately 10:30 P.M. in the town of Warwick, NY, Plaintiff was in a taxi cab driven by Plaintiff's friend when he was pulled over by approximately 20 to 25 police officers. (Compl., ECF No. 1, at 3; Amended Compl., ECF No. 34, ¶ 1(a).) The officers, with guns pointed at the vehicle, asked the driver to step out of the vehicle. Detective Shawn Tezlof, Sergeants John Rader and Alton Morely, and Officers Brian Luthan, Kevin Terry, Felix Oresto, Kevin Harsey, Jason Marsh, Michael Mooney, Michael Kearse, and J. Feragola all forced Plaintiff out of the car, pulled him to the ground, handcuffed him tightly, and struck his knee. (Amended Compl., ¶ 1(a).) The officers additionally stepped on Plaintiff's hands and back so that he could not move. (Compl. at 3.) Sergeants Christopher Blackwell, Rader, and Morely, and Detectives Hoffman and Tezlof witnessed these events but did not prevent or stop the officers' actions. (Amended Compl. ¶ 1(b).) Plaintiff was then arrested and brought to the Town of Warwick police station. (Compl. at 3.)

Prior to the events of March 25, Plaintiff had been seeing an orthopedist and had plans to undergo a knee replacement surgery. (*Id.*) At the jail, Plaintiff was given minimal medical treatment, including pain medication (naproxen) and a knee brace. (*Id.*) Since the incident, Plaintiff's knee fills up with fluid all of the time and causes difficulty walking. (*Id.*)

**DISCUSSION**

*I. Statute of Limitations*

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 125 of 154

Sanabria v. Detective Shawn Tezlof, Not Reported in Fed. Supp. (2016)

Section 1983 claims are subject to a three-year statute of limitations in New York, *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015). Plaintiff's Amended Complaint was filed on May 17, 2013, more than three years after the alleged incident. The claims in Plaintiff's Amended Complaint, however, will be deemed timely to the extent they relate back to the original complaint. Specifically, in order to bring claims against the John Doe officers once their identities are discovered, the amended complaint must "relate back" to the original complaint pursuant to Federal Rule of Civil Procedure 15(c). Fed. R. Civ. P. 15(c). However, Federal Rule of Civil Procedure 15(c)(1)(C), which provides one avenue for relation back, "preclude[s] relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities." *Hogan*, 738 F.3d at 517 (citing *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)).

*See Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995) ("As the amended complaint adding the individual police officers does not relate back to the complaint naming the 'John Doe' officers, the claims brought against those officers are untimely."). Therefore, any claim against a John Doe officer newly named in the Amended Complaint cannot relate back to the original complaint under Rule 15(c)(1)(C)[4]

**\*3** Federal Rule of Civil Procedure 15(c)(1)(A), alternatively, permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). Under CPLR § 1024, a complaint relates back where: (1) the plaintiff "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant by name"; and (2) the plaintiff "describe[d] the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." *Hogan*, 738 F.3d at 519 (internal quotations and citations omitted). To meet the first requirement, a plaintiff must "show that he or she made timely efforts to identify the correct party before the statute of limitations expired." *Strada v. City of New York*, No. 11-CV-5735 MKB, 2014 WL 3490306, at \*5 (E.D.N.Y. July 11, 2014) (quoting *Justin v. Orshan*, 14 A.D.3d 492, 492—93, 788 N.Y.S.2d 407 (2d Dep't 2005)) (quotation marks omitted). "These efforts might include, inter alia, serving discovery demands on any known parties or

seeking disclosures pursuant to a Freedom of Information Law request." *Bender v. City of New York*, No. 14 CIV. 4386 LTS GWG, 2015 WL 524283, at \*5 (S.D.N.Y. Feb. 10, 2015) (internal citations omitted).

In the instant case, Plaintiff has met the first requirement of § 1024 as he exercised due diligence to identify the John Doe defendants. Plaintiff contends that "a record of correspondence between petitioner and the court, requesting additional information, [exists and] demonstrates due diligence on" his part. (Plaintiff's Opposition to the Motion to Dismiss, ECF No. 66, at 1.) As evidenced by the docket in this case, Plaintiff attempted to amend his complaint multiple times, and each time the amendment was denied for procedural and other deficiencies. (*See* ECF Nos. 17, 23, 25, 32, 34.) The amended complaints Plaintiff attempted to file on May 3 and 4, 2012, contained detailed descriptions of the events and identified the John Doe police officers by name. (ECF Nos. 17, 25.) Therefore, it cannot be said that Plaintiff did not exercise due diligence in identifying the defendants prior to the expiration of the statute of limitations where he in fact did attempt to file amended complaints that identified the defendants before the statute of limitations expired. Accordingly, Plaintiff has met the first *Hogan* requirement for relation back.[5]

To meet the second requirement, a complaint is "sufficient only if the actual defendants are adequately described and would have known, from the description in the complaint, that they were the intended defendants." *Lebowitz v. Fieldston Travel Bureau, Inc.*, 181 A.D.2d 481, 482 (1992) (internal citations and quotation marks omitted). A complaint can satisfy this requirement with details such as "the date, time, and location of the alleged incident," or "substantial detail concerning the appearance" of the alleged defendants.

*Hogan*, 738 F.3d at 519. Plaintiff has additionally met this second requirement. His complaint describes with particularity the date, time, and location of the arrest. In addition, the original complaint names defendants Tezlof and Hoffmen.[6] (Compl. at 3.) "Although Plaintiff did not describe the Defendants in detail, a simple review of the arrest paperwork would have revealed the [officers involved], who undoubtedly knew [the identity of the other officers on scene]. This level of detail is sufficient to have informed [the] John Doe officer[s] that they were the intended Defendants." *Heinz-Wright v. City of New York*, No. 15 CIV. 3269 RRM VMS, 2016 WL 3627323, at \*4 (E.D.N.Y. June 3, 2016),

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 126 of 154

Sanabria v. Detective Shawn Tezlof, Not Reported in Fed. Supp. (2016)

*report and recommendation adopted sub nom. Heinz-Wright v. New York,* No. 15CV3269RRMVMS, 2016 WL 3620759 (E.D.N.Y. June 29, 2016). Finally, as explained above, defendants were identified in ECF submissions (i.e., rejected amended complaints) as of May 2012—well within the statute of limitations. Therefore, it cannot be said that had the John Doe defendants read the complaint, they still would not have been apprised that they were the intended parties, and Plaintiff has met both *Hogan* requirements for relation back pursuant to § 1024. As a result, the Amended Complaint relates back to the original complaint and is deemed timely.

## II. Fourth Amendment Seizure/False Arrest

**\*4** "[T]he warrantless arrest of a person is a species of seizure required by the [Fourth] Amendment to be reasonable." *Payton v. New York,* 445 U.S. 573, 585 (1980). The § 1983 claim resting on the Fourth Amendment and resulting from unlawful seizure is false imprisonment. *See Covington v. City of New York,* 171 F.3d 117, 122 (2d Cir. 1999) (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996) ("A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law.").

Defendants argue that, pursuant to the Supreme Court's holding in *Heck v. Humphrey,* because Plaintiff was later convicted on criminal charges, Plaintiff may not recover damages for an unlawful seizure unless his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 487 (1994). However, the holding in *Heck* is explicitly limited to civil suits that would undermine or imply the invalidity of the conviction of the Plaintiff. *Id.* The Second Circuit has made clear that a § 1983 false arrest action only undermines the integrity of criminal proceedings when the prosecution's "only evidence for conviction was obtained pursuant to an arrest." *Covington v. City of New York,* 171 F.3d 117, 123 (2d Cir. 1999) ("[I]n a case where the only evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of

that evidence."). However, where there exists "independent evidence upon which a conviction could be obtained that was not in any way tainted by the unlawful arrest," the civil claim would not undermine the proceeding and therefore is not barred by *Heck. Id.*

In the instant case, the Court is unable to determine whether success on Plaintiff's § 1983 claim would "necessarily imply the invalidity" of Plaintiff's conviction for burglary and possession of a weapon, because the Court has no information as to the nature and extent of the evidence that was available and presented against Plaintiff in the criminal proceedings. *Covington,* 171 F.3d at 123; *see also McCord v. City of New York,* No. 13 CIV. 2008 AJN, 2014 WL 2567108, at \*3 (S.D.N.Y. June 6, 2014) ("The Court is not equipped to conduct such an analysis in this procedural posture because the parties have provided no basis from which to assess whether any seized evidence or self-incriminating statements were 'essential' to the prosecution's case."). As a result, the Court cannot rule at this stage of the litigation that Plaintiff's civil claims arising from his arrest are barred by *Heck.*

## III. Excessive Force

"Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is 'objectively unreasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.' " *Carpenter v. City of New York,* 984 F.Supp.2d 255, 267 (S.D.N.Y. 2013) (quoting *Papineau v. Parmley,* 465 F.3d 46, 61 (2d Cir. 2006)). Granting "a motion to dismiss an excessive force claim is appropriate if, accepting all of the allegations as true, it is clear that the force used by the officers was objectively reasonable under the circumstances." *Messina v. Mazzeo,* 854 F. Supp. 116, 128-29 (E.D.N.Y. 1994) (citing *Roundtree v. City of New York,* 778 F.Supp. 614 (E.D.N.Y. 1991)). "In determining whether the force used in a given arrest is reasonable, courts pay careful attention to the facts and circumstances of each case, including (1) the severity of the crime at issue, (2) whether the arrestee poses an immediate threat to the safety of the officers or others, and (3) whether the arrestee is actively resisting arrest or attempting to flee." *Gersbacher v. City of New York,* 134 F. Supp. 3d 711, 723 (S.D.N.Y. 2015) (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989); *Tennessee v. Garner,* 471 U.S. 1, 8-9 (1985)).

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 127 of 154

Sanabria v. Detective Shawn Tezlof, Not Reported in Fed. Supp. (2016)

**\*5**  Defendants contend that Plaintiff "has failed to allege action by [the Individual Defendants] that would subject them to liability." (Memorandum of Law in Support of Defendants' Motion to Dismiss, Section IV(e).) Accepting Plaintiff's allegations as true for purposes of this motion, the Court cannot conclude that it was objectively reasonable for Defendants to step on Plaintiff's hands and back and strike his knee once Plaintiff was on the ground. (Amended Compl., ¶ 1(a); Compl. at 3.) Additionally, it is not apparent from the pleadings that Plaintiff posed any threat to the officers' safety or that he was resisting arrest. Evidence uncovered during discovery may ultimately prove that Defendants' actions were objectively reasonable, to the extent they occurred as alleged by Plaintiff, but such a determination is best resolved on a motion for summary judgment or at trial. *See, e.g., Landy v. Irizarry,* 884 F. Supp. 788 (S.D.N.Y. 1995) (dismissing plaintiff's excessive force claim on a motion for summary judgment following the Court's review of the evidence, not on a motion to dismiss.)

Moreover, though Plaintiff has failed to allege with particularity which defendant specifically engaged in striking his knee and stepping on his back, he has alleged which defendants were involved in the incident. At this stage, before Plaintiff has had access to discovery, the Court cannot insist that Plaintiff identify which officer specifically engaged in which part of the excessive force incident. Accordingly, Defendants' motion to dismiss Plaintiff's excessive force claim arising from his arrest is denied.[7]

### IV. Failure to Intervene

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Bremen,* 17 F.3d 552, 557 (2d Cir. 1994). Liability may attach where an officer fails to intervene, but observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official. *Id.* For an officer to be held liable, he or she must have had a realistic opportunity to intervene to prevent the violation from happening. *Id.* (citing *O'Neill v. Krzeminski,* 839 F.2d 9, 11-12 (2d Cir. 1988)); *accord Russo v. DeMilia,* 894 F. Supp. 2d 391, 414 (S.D.N.Y. 2012). However, "there can be no failure to intervene claim without a primary constitutional violation." *Forney v. Forney,* 96 F. Supp. 3d 7,

13 (E.D.N.Y. 2015) (citing *Posner v. City of New York,* 11-CV-4859, 2014 WL 185880, at *8 (S.D.N.Y. Jan. 16, 2014)).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite for an award of damages under § 1983.' " *Provost v. City of Newburgh,* 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994)). With respect to a claim of failure to intervene, an officer is personally involved in the alleged constitutional deprivation if he was present when it occurred, "yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Russo v. DeMilia,* 894 F. Supp. 2d 391, 414 (S.D.N.Y. 2012) (quoting *Jeffreys v. Rossi,* 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003)). Where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable. *Simon v. City of New York,* No. 09 Cv. 1302 (ENV)(RER), 2011 WL 317975, at *12 (E.D.N.Y. Jan. 3, 2011) (dismissing plaintiff's claim as futile for failure to intervene "because these same officers actually arrested her.") (citing *Morgan v. County of Nassau,* No. 09 Cv. 4168 (ADS) (AKT), 2010 WL 2634125, at *9 (E.D.N.Y. July 1, 2010)) *report and recommendation adopted,* No. 09 Cv. 1302 (ENV)(RER), 2011 WL 344757 (E.D.N.Y. Feb. 1, 2011).

**\*6**  Defendants argue that "there has been no evidence adduced to suggest, let alone establish, that any officer knew of a constitutional violation, had an opportunity to prevent a violation, and failed to do so." (Memorandum of Law in Support of Defendants' Motion to Dismiss, Section IV(c).) However, at the motion to dismiss stage, Plaintiff need not present evidence in order for his claims to survive. Plaintiff must simply plead facts from which the Court could conclude, if accepted as true, that a violation has occurred. Plaintiff has alleged that Defendants witnessed the beating of Plaintiff and failed to intervene. Having already held that Plaintiff adequately pleaded a constitutional violation of excessive force and the presence of additional defendants during his arrest, his failure to intervene claim additionally must stand.

*See* *Gersbacher,* 134 F. Supp. 3d at 725 ("The failure to intervene claim is straightforward: because [plaintiff] has adequately pleaded underlying constitutional violations and the presence of multiple NYPD officers during his arrest he may move forward to discovery."). The Court notes, however, that Plaintiff names a number of officers that participated in the arrest and beating as well as failed to intervene. If

the officer was a direct participant in the excessive force violation, the failure to intervene theory will be inapplicable. *See Simon,* 2011 WL 317975, at *12. The determination of who was specifically involved in the beating will be left to discovery.

*V. Denial of Medical Care*

Plaintiff's cause of action for denial of medical care is brought pursuant to 42 U.S.C. § 1983 and relates to the Defendants' alleged denial of medical care during the time that Plaintiff was held at the Town of Warwick police station. Although the Eighth Amendment bar to cruel and unusual punishment does not apply to Plaintiff because he was not a prisoner but was simply being held at the police station, the denial of medical care claim arises under the Due Process Clause of the Fifth Amendment instead, and as a result, the same deliberate indifference test applies. *See Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir. 2000); *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996) (holding that denial of medical care subsequent to an arrest is analyzed under the Due Process Clause because the arrestee was a "pretrial detainee, not a person who had been convicted, and hence the Eighth Amendment did not apply").

To sustain a claim of deliberate indifference, Plaintiff must allege that (1) objectively, the deprivation of adequate medical care was sufficiently serious, and (2) subjectively, defendants acted with deliberate indifference. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Salahuddin v. Goord,* 467 F.3d 263, 279-81 (2d Cir. 2006). "The objective component requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011) (citing *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). For the subjective prong, the official charged with deliberate indifference must act with a "sufficiently culpable state of mind." *See Wilson v. Seiter,* 501 U.S. 294, 298 (1991). A prison official may only be found liable if "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837.

Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves

culpable recklessness—"an act or a failure to act ... that evinces a conscious disregard of a substantial risk of serious harm." *Hill,* 657 F.3d at 123 (citing *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir. 1998)) (internal quotation marks omitted); *see also Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996) (observing that "negligent malpractice do[es] not state a claim of deliberate indifference"). In the instant case, it cannot be said that Plaintiff experienced deliberate indifference to his medical needs. Though Plaintiff's injury may have caused extreme pain, there is no allegation that an official knew of and disregarded a serious risk to Plaintiff's health. Specifically, while at the police station, Plaintiff was provided with a knee brace and pain medication. Therefore, Plaintiff was provided with at least some treatment, and, at most, the treatment was negligent. However, even if negligent, the treatment does not rise to a level of deliberate indifference.

**\*7** Moreover, "[b]ecause Section 1983 imposes liability only upon those who actually cause a deprivation of rights, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir. 1999) (citation and internal quotation marks omitted). Plaintiff has not alleged that any officer or defendant, in particular, refused to provide him with medical care. Without knowing what, if any, part each defendant played in providing or not providing medical care to Plaintiff, it is impossible for this Court to draw an inference that the Defendants could be liable for the alleged conduct. Because Plaintiff has not alleged personal involvement of any defendant, the denial of medical care claims must be dismissed. *See Thomas v. Ashcroft,* 470 F.3d 491, 496 (2d Cir. 2006) ("[A] plaintiff must allege that the individual defendant was personally involved in the constitutional violation").

*VI. Qualified Immunity*

Defendants assert qualified immunity as a defense to all of Plaintiff's claims. Plaintiff's only remaining claims against the Individual Defendants are false arrest, excessive force, and failure to intervene. It is well established that qualified immunity may operate as a defense to false arrest and excessive force claims. *See Cowan ex rel. Estate of Cooper v. Breen,* 352 F.3d 756, 761 (2d Cir. 2003); *Lennon v. Miller,* 66 F.3d 416, 423 (2d Cir. 1995). Additionally, a

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 129 of 154

Sanabria v. Detective Shawn Tezlof, Not Reported in Fed. Supp. (2016)

police officer is not entitled to qualified immunity if his failure to intervene "permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known" and "the failure to intercede [occurred] ..... under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." *Riciutti v. New York City Transit Authority,* 941 F.2d 119, 129 (2d Cir. 1991).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. alKidd,* 131 S.Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818-19. It is within the Court's discretion to determine the order in which the two prongs are analyzed. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Having already decided that Plaintiff sufficiently alleges claims of false arrest, excessive force, and failure to intervene, the Court turns to the second prong of the test. There is no question that the rights at issue in this case—to be free from false arrest and excessive force and for an officer to intervene when witnessing a violation of constitutional rights—were clearly established at the time of the incident. *See Lennon v. Miller,* 66 F.3d 416, 423 (2d Cir. 1995) (collecting cases regarding false arrest and excessive force); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."). Thus, because Plaintiff sufficiently alleges claims of false arrest, excessive force, and failure to intervene and because the law is clearly established with regards to each of those rights, Defendants' request for qualified immunity is denied.

However, this is not to say that a defense of qualified immunity would necessarily fail at the summary judgment stage. In the case where Defendants are alleged to have violated clearly established lights, "the question of qualified immunity ... turns on whether the actions of [the officers] were objectively reasonable under the circumstances." *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir. 1996), *amended* (May 21, 1996).

*VII.* Monell *Claim against Town of Warwick*

**\*8** Finally, Plaintiff asserts that the Town of Warwick is liable for the constitutional violations because "it was the policy and/or custom of the Town of Warwick to inadequately supervise and train its police officers." (Amended Compl. ¶ 10.) A municipality may be sued under 42 U.S.C. § 1983 only "when execution of [the] government's policy or custom ... inflicts the injury." *Monell,* 436 U.S. at 694. Therefore, any § 1983 claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004). Courts in this Circuit apply a two prong test for § 1983 claims brought against a municipal entity. *Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985) (internal citation omitted). First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id.* (internal citation omitted). Second, the plaintiff must establish a " 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.' " *Hayes v. Cnty. of Sullivan,* 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)). "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir. 1993); *see also Davis v. City of New York,* 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008) (holding that "conclusory allegations that a municipality failed to train and supervise its employees" are insufficient to state a *Monell* claim absent supporting factual allegations).

Here, the complaint lacks sufficient factual details concerning *Monell* liability and contains boilerplate allegations of unconstitutional policies and practices. Specifically, Plaintiff's *Monell* claim is based on one conclusory allegation

that "it was the policy and/or custom of the Town of Warwick to inadequately supervise and train its police officers." (*See* Amended Compl. ¶ 10.) As a mere recitation of failure to train is not enough to sustain a *Monell* claim, Plaintiff's claim fails.

Moreover, Plaintiff's claim relates only to a single incident. Although a plaintiff is not required to identify an express rule or regulation in order to establish a *Monell* claim and a court may infer a municipal policy from acts or omissions of the municipality's policy makers, in the absence of other evidence, a "single incident of errant behavior is an insufficient basis for finding that a municipal policy caused plaintiff's injury." *Sams v.* ⚑ *Rotundo,* 831 F.2d 397, 402-03 (2d Cir. 1987); *see also DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.") (internal citations and quotation marks omitted). Plaintiff has not alleged any incidents of excessive force or false arrest involving the Town of Warwick Police Department prior to March 25, 2010. (*Id.*) As a result, the complaint lacks sufficient factual details concerning *Monell* liability. *See* ⚑ *Plair v. City of New York,* 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases that dismiss *Monell* claim where the only factual assertions in complaint were

conclusory and constituted a boilerplate recitation of the elements of a *Monell* claim). Without any further factual allegations to support the existence of an unconstitutional municipal policy, Plaintiff's *Monell* claim against the Town of Warwick fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED in part and DENIED in part. Plaintiff's claims for false arrest, excessive force, and failure to intervene remain; the claim for denial of medical care and all of Plaintiff's claims against the Town of Warwick are dismissed. The Individual Defendants are directed to file an answer to the Complaint within 30 days of the date of this Order. The parties are directed to appear for an initial pre-trial conference on September 22, 2016 at 12:00 p.m. The parties are further directed to complete and bring a completed case management plan to the conference.

**\*9** SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4371750

## Footnotes

1    In his papers in opposition to the current motion, Plaintiff additionally asserts an equal protection claim, "stem[ming] from the fact that even during an unlawful arrest, plaintiff should have been treated accordingly to the law and established police procedure, as any individual in the same circumstances." (Plaintiff's Opposition to the Motion to Dismiss, ECF No. 66, at 2.) While Plaintiff uses the term "equal protection," this is not a cognizable equal protection claim as Plaintiff has not alleged he was treated differently from any class of persons or similarly situated individuals.

2    In its order of service dated March 4, 2015, the Court mistakenly determined the Town of Warwick was dropped as a defendant, because Plaintiff removed the Town of Warwick from the caption in his Amended Complaint. However, Plaintiff maintained allegations concerning the Town of Warwick, and, as a result, the claims against the Town of Warwick stand. *See* ⚑⚠ *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir. 2006) (the court should read the complaint "to raise the strongest arguments [it] suggests."). As a result, the Town of Warwick was not properly served, but defense counsel entered an appearance for the Town of Warwick and made arguments in the motion to dismiss on its behalf. The Court will therefore consider the arguments, and because the Court determines Plaintiff's claims against the Town of Warwick must be dismissed, there is no issue of service or lack of notice.

**Sanabria v. Detective Shawn Tezlof, Not Reported in Fed. Supp. (2016)**

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 131 of 154

3    The Court notes that Defendants did not properly submit a motion to this Court. Local Civil Rule 5.2 of the United States District Courts for the Southern and Eastern Districts of New York directs the parties to "follow the instructions regarding Electronic Case Filing (ECF) published on the website of each respective Court." Local Rule 5.2(a). Pursuant to this Court's rules, all "Motion papers shall be filed via ECF." Individual Practices in Civil Cases, Judge Nelson S. Román, Rule 3(c), *available at* http://www.nysd.uscourts.gov/ cases/show.php?db=judge_info&id=826. Defendants did not file a notice of motion or motion papers electronically, which resulted in significant delay for the Plaintiff in this case.

4    The New York CPLR § 203 "requirement closely tracks the federal relation-back requirement of Rule 15(c) (1)(C)," and thus, Plaintiff "fails to satisfy the state's corollary to that rule, as well." *Id.; see also Buran v. Coupal,* 87 N.Y.2d 173, 179, 638 N.Y.S.2d 405, 661 N.E.2d 978 (1995) (noting that § 203 was largely modeled after Rule 15(c) of the Federal Rules of Civil Procedure).

5    As previously explained in this district, "all *pro se* litigants are required to submit their complaints to the Pro Se Clerk, [who] reviews all complaints for form and substance [ ]." *Simpson v. Bank of New York,* No. 81 CIV. 0407 (CBM), 1981 WL 245, at * 1 (S.D.N.Y. Aug. 26, 1981) (internal citations omitted). The Pro Se Clerk determined Plaintiff's submissions were unclear or procedurally confusing for reasons unrelated to the identification of John Doe defendants. (*See* ECF No. 17 at 1; ECF No. 25 at 1.) Providing *pro se* Plaintiff with the necessary leniency in light of his attempts to name the defendants, Plaintiff should not be punished for his failed attempts to amend his complaint clearly and correctly when such attempts were (albeit, correctly) "bounced" by the Pro Se Clerk.

6    Plaintiff spelled defendant Hoffmen's name incorrectly as Hommein in the original complaint. However, in later submissions, Plaintiff refers to the defendant as "Detective Hoffmen/Hommein?" (ECF No. 17 at 2.) This clearly indicates that Plaintiff was merely mistaken about the correct spelling of defendant Hoffmen 's name.

7    It should be noted that Defendants do not explicitly make an argument that Plaintiff's excessive force claim was not adequately plead. Instead, Defendants argue that the Court "must analyze the specific actions of an individual official when addressing the qualified immunity defense" and that Plaintiff "has failed to allege action by [the Individual Defendants] that would subject them to liability." (Memorandum of Law in Support of Defendants' Motion to Dismiss, Section IV(e).) It is unclear what specifically Defendants intended to argue with regards to the sufficiency of the allegations, but the analysis in this section as well as the qualified immunity section fully address any argument that could have been made by Defendants.

---

**End of Document**                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4935993
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brandon T. MCNAIR, Plaintiff,

v.

UTICA POLICE DEPARTMENT, et al., Defendants.

6:23-CV-699 (DNH/ATB)
|
Signed June 26, 2023

**Attorneys and Law Firms**

BRANDON T. McNAIR, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court for review a pro se complaint filed by plaintiff Brandon T. McNair, in which he has sued various defendants based on several civil rights claims pursuant to 42 U.S.C. § 1983. (Dkt. No. 1) ("Compl."). Plaintiff has also moved to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

**I. IFP Application**
Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application and supporting documents, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325

(1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Colleman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at \*2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that " 'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)). The court will now turn to a consideration of plaintiff's complaint under the above standards.

**II. Complaint**
**\*2** Plaintiff alleges that on July 27, 2021 at approximately 10:00 a.m., he was on the "east side" of Utica, New York when the "cops hopped out [and] detained [him and] tried to search [him.]" (Compl. at 4). He further alleges that, based off a general description, the police searched plaintiff because he

was "black in a certain area where a man with a gun had been alleged to be there." (*Id.*). Plaintiff was arrested after "running for [his] life in an attempt to keep [the police] from violating [his] rights." (*Id.*). Plaintiff was "thrown in jail" and charged with "possession of an instrument that was found almost an hour after, under some car in the parking lot of a car shop." (*Id.* at 7).

Plaintiff then states that he appeared at a bail hearing in Oneida County Court, with the defendants District Attorney ("DA") McNamara and Judge Michael L. Dwyer. (Compl. at 7). Plaintiff alleges that when Judge Dwyer learned of plaintiff's intention to post bail, he "then raised it in a clear attempt to make it unreachable post bail reform[.]" (*Id.*). Plaintiff states that he was "denied audience with the Supreme Court and [his] habeas corpus was illegally unheard," having been put "right back in front of [Judge] Dwyer for him to answer[.]" (*Id.*). Plaintiff claims that this is "not how the process works," and that Judge Dwyer "didn't have the authority to answer [his] habeas corpus." (*Id.*).

Plaintiff further alleges that Judge Dwyer and DA McNamara proceeded to "violate [his] rights in every court proceeding leading up to trial." (Compl. at 7). Plaintiff cites to a decision from the Fourth Department relative to his criminal case for the underlying facts surrounding his claims. According to *Matter of McNair v. McNamara*, plaintiff's jury trial commenced on November 1, 2021, at which time a jury was selected and sworn, and three witnesses testified. 206 A.D. 3d 1689, 1690 (4th Dep't 2022). November 2 $^{nd}$ was a holiday, during which the trial was recessed. (*Id.*). On November 3 $^{rd}$, Judge Dwyer's secretary notified plaintiff's counsel that the Judge had a cold, wanted to make sure it was not COVID-19, he would not be in that day, and the jury would be sent home. (*Id.*). Plaintiff's counsel was notified several days later that the matter would be scheduled for a retrial on November 15 $^{th}$. (*Id.*). Essentially, the Judge believed a mistrial was necessary because it was "physically impossible" for him to come to court and proceed with the trial, while he waited three to five days for the result of his COVID-19 test. (*Id.*). Over plaintiff's counsel's objections, the mistrial was declared as of November 3 $^{rd}$. (*Id.*). The Fourth Department ultimately agreed with plaintiff in concluding that there was no "manifest necessity" for the mistrial, and that the county court abused its discretion in granting the mistrial sua sponte. (*Id.* at 1690-92). Accordingly, the government was prohibited from retrying plaintiff on the underlying indictment based on double jeopardy grounds. Liberally construed, this court

interprets plaintiff's claims of constitutional violations in the instant complaint to relate to the underlying trial proceedings as described in *Matter of McNair*. Plaintiff also alleges that the police were "selective [and] omitted certain facts to allow the proceedings to continue," and that DA McNamara "also did not reveal certain facts in order to secure an indictment." (Compl. at 7).

Plaintiff alleges damages including mental and physical injuries sustained during his incarceration. (Compl. at 5). He seeks monetary damages in the amount of twenty million dollars, as well as "punitive damages of relieving the officials of their official capacities." (*Id.*).

## DISCUSSION

### III. Sovereign and Judicial Immunities

**\*3** The complaint must be dismissed as against named defendants Oneida County Courts and Officials and Judge Dwyer, because they are immune from suit. The Second Circuit has ruled that "the New York State Unified Court System is unquestionably an arm of the State, and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Because the Oneida County Court is a part of the New York State Unified Court System, it is entitled to sovereign immunity. Similarly, judges within the New York State Unified Court System are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity. *See Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y. 2014) (dismissing claim against a Delaware County judge on sovereign immunity grounds). As both the Oneida County Court and Judge Dwyer are arms of the State, they are entitled to Eleventh Amendment immunity, and it is recommended that the complaint against them be dismissed with prejudice.

The complaint against Judge Dwyer in his personal capacity is subject to dismissal on judicial immunity grounds. *See, e.g., Washington v. Ciccone*, No. 3:21-CV-0564 (MAD/ML), 2021 WL 2935950, at \*4 (N.D.N.Y. July 13, 2021) (Judicial immunity "shields judges from suit to the extent they are sued in their individual capacities[.]"), *report and recommendation adopted*, 2021 WL 4859663 (N.D.N.Y. Oct. 19, 2021). It is well settled that judges have absolutely immunity for their judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Forrester v. White*, 484 U.S. 219, 225 (1988); *Shtrauch v. Dowd*, 651

F. App'x 72, 73-74 (2d Cir. 2016) ("Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature' ") (quoting 🚩 *Bliven v. Hunt,* 579 F.3d 204, 210 (2d Cir. 2009)); *Kim v. Saccento,* No. 21-2865, 2022 WL 9583756, at *2 (2d Cir. Oct. 17, 2022), *cert. denied,* No. 22-732, 2023 WL 2959393 (U.S. Apr. 17, 2023) ("the actions that [plaintiff] complains of – adverse decisions in a criminal proceeding – are plainly judicial in nature"); *Root v. Liston,* 444 F.3d 127, 132 (2d Cir. 2006) (judges who set bail enjoy absolute immunity) (collecting cases). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." *Coon v. Merola,* No. 1:19-CV-394 (DNH/ATB), 2019 WL 1981416, at *3 (N.D.N.Y. Apr. 8, 2019) (citing 🚩 *Imbler v. Pachtman,* 424 U.S. 409, 419 n.12 (1976)), *report and recommendation adopted,* 2019 WL 1978595 (N.D.N.Y. May 3, 2019).

"The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " *Id.* (quoting 🚩 *Mireles,* 502 U.S. at 11-12). Here, plaintiff has failed to plausibly allege that Judge Dwyer was acting outside of his judicial capacity or in the absence of jurisdiction. To the extent that plaintiff alleges that his habeas corpus petition was not properly before Judge Dwyer, Article 70 of the New York Civil Practice Law and Rules specifically authorizes a petition for the writ to be made to a county judge being or residing within the county in which the petitioner is detained. N.Y. C.P.L.R. § 7002(b)(4). In the absence of any other allegation suggesting that the general rule regarding judicial immunity can be overcome, the court recommends dismissing with prejudice the complaint as against Judge Dwyer in his individual capacity. *See Edwardsen v. Aloi,* No. 5:17-CV-00202 (LEK/TWD), 2017 WL 1283496, at *3 (N.D.N.Y. Mar. 3, 2017) (recommending dismissal with prejudice on judicial immunity grounds), *report and recommendation adopted,* 2017 WL 1283763 (N.D.N.Y. Apr. 5, 2017).

Plaintiff has also included unidentified "officials" of the Oneida County Court as defendants in the caption of his complaint. There is, however, no specific allegation anywhere in the complaint referencing any other court official who was involved in the alleged violations of plaintiff's constitutional rights. In any event, even if plaintiff had identified another court "official" as a defendant, judicial immunity has been extended to " 'certain others who perform functions closely associated with the judicial process.' " 🚩 *Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.,* 374 F. Supp. 3d 276, 288 (W.D.N.Y. 2019) (quoting inter alia 🚩 *Cleavinger v. Saxner,* 474 U.S. 193, 200 (1985)). Quasi-judicial immunity is absolute if the official's role "is 'functionally comparable' to that of a judge." 🚩 *Butz v. Economou,* 438 U.S. 478, 513 (1978); *see* 🚩 *Cleavinger,* 474 U.S. at 201 ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); 🚩 *Gross v. Rell,* 585 F.3d 72, 81 (2d Cir. 2009) ("Judicial and quasi-judicial immunity are both absolute immunities." (citations omitted)). Much like judicial immunity, "[a] defendant entitled to quasi-judicial immunity loses that privilege only if [he or] she acts in the clear absence of all jurisdiction." 🚩 *Finn v. Anderson,* 592 F. App'x 16, 19 (2d Cir. 2014) (internal quotation marks and citation omitted). Thus, it is likely that the unidentified court official defendants would also be protected from suit based on the doctrine of quasi-judicial immunity.

## IV. Prosecutorial Immunity

**\*4** The complaint is also subject to dismissal as against DA McNamara. The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a 🚩 § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota,* 27 F.4th 855, 863-64 (2d Cir. 2022) (citing 🚩 *Imbler v. Pachtman,* 424 U.S. 409, 427 (1976)). In *Anilao,* the Second Circuit explained:

> Our cases make clear that prosecutors enjoy "absolute immunity from 🚩 § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." 🚩 *Barr v. Abrams,* 810 F.2d 358, 361 (2d Cir. 1987)(quotation marks omitted). The immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." 🚩 *Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir. 1995) (quoting 🚩 *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir. 1994)). For example, a prosecutor enjoys absolute immunity when determining which offenses to charge, initiating a prosecution, presenting a case to a

grand jury, and preparing for trial. *See id.*; 🔖*Imbler*, 424 U.S. at 431, 96 S. Ct. 984 (concluding that a prosecutor is absolutely immune from a 🔖§ 1983 suit for damages based on his "initiating a prosecution and ... presenting the State's case"). For that reason, we have held that absolute immunity extends even to a prosecutor who "conspir[es] to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." 🔖*Dory*, 25 F.3d at 83 (cleaned up).

*Id.* at 864. *See also* 🔖*Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (holding that absolute prosecutorial immunity protects a prosecutor for advocacy in connection with a bail application).

"By contrast, prosecutors receive only qualified immunity when performing 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.' " 🔖*Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) (quoting 🔖*Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors, and they do not become prosecutorial functions merely because a prosecutor has chosen to participate." *Id.* (interior quotation marks and citations omitted); *see* 🔖*Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012) (" '[A]ctions taken as an investigator enjoy only qualified immunity.' ") (quoting 🔖*Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000)). "Under a functional approach, actions are not shielded by absolute immunity merely because they are performed by a prosecutor. 'A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.' " 🔖*Giraldo*, 694 F.3d at 166 (quoting 🔖*Buckley*, 509 U.S. at 273).

Liberally construed, in this case plaintiff alleges that DA McNamara violated his rights by "hold[ing] plaintiff in an attempt to retry [him] illegally for 7 months" after the mistrial (Compl. at 7), and for failing to "reveal certain facts in order

to secure an indictment" (*id.*). Otherwise, plaintiff generally alleges that DA McNamara violated his rights "in every court proceeding leading up to trial[,] "in the trial [and] after the first trial[.]" (*Id.*). With respect to the indictment, the courts have long held that a prosecutor's determination to bring charges against an individual by presentment of a case to the grand jury is an act by an advocate intimately related to the judicial phase of the criminal process to which absolute prosecutorial immunity applies. *See* 🔖*Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (The act of "knowingly presenting false evidence to, while at the same time withholding exculpatory evidence from [the grand jury] ... lie[s] at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process.") (citing 🔖*Imbler*, 424 U.S. at 431 & n. 34); 🔖*Pinaud v. County of Suffolk*, 52 F.3d at 1149 (holding district attorneys absolutely immune from claim for malicious prosecution and presentation of false evidence to the grand jury); *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984) ("The presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity...."); *J. & W. Trading & Leasing Inc. v. New York*, No. 5:15-CV-327 (GLS/DEP), 2015 WL 4135961, at *3 (N.D.N.Y. 2015) (granting absolute immunity where prosecutor allegedly presented false testimony before grand jury). Accordingly, plaintiff may not pursue his 🔖§ 1983 action against DA McNamara based on his alleged failure to disclose evidence to the grand jury.

**\*5** The court concludes that DA McNamara is also immune from any suit by plaintiff based on his efforts to continue the prosecution of plaintiff's criminal case, although there is certainly less case law involving this scenario. Bearing in mind the standard of determining whether the specific conduct at issue is 'intimately associated with the judicial phase of the criminal process,' the court cannot conclude that DA McNamara's efforts to retry plaintiff's case after Judge Dwyer granted a mistrial runs afoul of the prosecutor's protected function of initiating a prosecution and presenting the State's case. *See, e.g., Davis v. State of N.Y.*, No. 90 Civ. 6170, 1991 WL 156351, at *6 (S.D.N.Y. Aug. 6, 1991) (whatever the defendant prosecutors may have done to delay plaintiff's criminal retrial, "they acted in their capacity as advocates in the state's prosecution ... [and] are entitled to absolute immunity ...."), *aff'd sub nom. Davis v. New York*, 106 F. App'x 82 (2d Cir. 2004); *Russo v. Vermont*, No. 1:10-CV-296, 2011 WL 4537956, at *6, 8 (D. Vt. July 29, 2011) (notwithstanding the plaintiff's claim that the prosecutors in

his case were "obsessed and won't let go[,]" their decision "to proceed with a retrial ... is protected by prosecutorial immunity"), *report and recommendation adopted*, 2011 WL 4566303 (D. Vt. Sept. 29, 2011).

There is no evidence that DA McNamara's conduct in this regard fell outside the scope of his function as an advocate. *See Anilao,* 27 F.4th at 865 (" '[A]bsolute immunity must be denied' only where there is both the absence of all authority (because, for example, no statute authorizes the prosecutor's conduct) and the absence of any doubt that the challenged action falls well outside the scope of prosecutorial authority.... Prosecutors thus have absolute immunity in a § 1983 action ... so long as 'they have at least a semblance of jurisdiction' that does not run far afield of their job description.' ") (citations omitted). In particular, there is no suggestion that DA McNamara's conduct in this respect could be interpreted as an "investigative or administrative task[ ]", for which the prosecutor would only be eligible for qualified immunity. *Van de Kamp v. Goldstein,* 555 U.S. 335, 342 (2009) (quoting *Imbler,* 424 U.S. at 431 n.33); *see also McDonough v. Smith,* No. 1:15-CV-1505 (MAD/DJS), 2022 WL 3279348, at *17 (N.D.N.Y. Aug. 11, 2022) ("Investigative tasks beyond the scope of absolute immunity are those 'normally performed by a detective or police officer.' ") (quoting *Buckley,* 509 U.S. at 273); *Moye v. City of New York,* 11 Civ. 316, 2012 WL 2569085, at *6 (S.D.N.Y. July 3, 2012) ("[T]he Second Circuit has distinguished between 'preparing for the presentation of an existing case,' on the one hand, and attempting to 'furnish evidence on which a prosecution could be based,' on the other hand, with only the former entitling a prosecutor to absolute immunity.") (quoting *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir. 1998)). Accordingly, the complaint should be dismissed as against DA McNamara based on his absolute prosecutorial immunity.

## V. Defendant Utica Police Department

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't,* No. 5:18-CV-1471(GTS/DEP), 2019 WL 981850, at *1 (N.D.N.Y. Jan. 7, 2019), *report and recommendation adopted,* 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (citing

*Krug v. Cnty. of Rennselaer,* 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008)); *see also Turczyn ex rel. McGregor v. City of Utica,* No. 13-CV-1357 (GLS/ATB), 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014). Accordingly, the complaint as against defendant Utica Police Department must be dismissed for failure to state a claim upon which relief may be granted.

Even if the court were to construe plaintiff's claims against the Utica Police Department as against the City of Utica, dismissal would still be warranted. A municipality may only be named as a defendant in certain circumstances. Pursuant to the standard for establishing municipal liability laid out in *Monell,* in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven,* 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell,* 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.").

**\*6** A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 388-89 (1989). A plaintiff must also establish a causal connection - an affirmative link - between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle,* 471 U.S. 808, 823 (1985). Indeed, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of respondeat superior." *Jeffes v. Barnes,* 208 F.3d 49, 56 (2d Cir. 2000).

"[A] prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York,* 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a

municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also id.* (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

In this case, plaintiff has (1) not identified any of the Utica police officers who allegedly violated his constitutional rights as defendants in this action, and (2) has offered no evidence that any such officer was acting pursuant to a policy or custom of the City when they detained and/or arrested plaintiff, or throughout the course of plaintiff's criminal proceeding. Accordingly, the City cannot be held liable for plaintiff's allegations of false arrest/imprisonment, malicious prosecution or unspecified due process violations, as stated in the complaint.

## VI. Eighth Amendment Cruel and Unusual Punishment

Plaintiff has alleged an Eighth Amendment claim of cruel and unusual punishment. (Compl. at 7-8). Plaintiff does not specify against whom he alleges this violation of his constitutional rights. (*Id.*). In any event, these protections of the Eighth Amendment "only apply to a person who has been criminally convicted and sentenced; they do not apply to the conduct of police officers in connection with the investigation and arrest of suspects prior to conviction and sentencing." *Spicer v. Burden*, 564 F. Supp. 3d 22, 31 (D. Conn. 2021) (citing *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986)); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Accordingly, any claim purportedly brought by plaintiff under the Eighth Amendment for cruel and unusual punishment must be dismissed.

## VII. Opportunity to Amend

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the court is recommending dismissal with prejudice as to defendant Utica Police Department, because the department may not be sued under § 1983. The court is further recommending dismissal with prejudice as to defendants Judge Dwyer, the Oneida County Courts and Officials, and DA McNamara, based on their absolute immunity from suit.

**\*7** Notwithstanding my recommendation that each of the named defendants be dismissed with prejudice, the court cannot say at this early stage of the litigation that plaintiff would be unable to amend his complaint to state a viable claim. Thus, the court recommends providing plaintiff the opportunity to amend his complaint for the limited purpose of asserting those claims alleging constitutional violations surrounding his detention, arrest, and subsequent criminal prosecution as set forth in his complaint, against the appropriate defendants. Plaintiff is reminded that if he intends to name the City of Utica as a defendant, he must plead, and ultimately prove, that a deprivation of his constitutional rights was caused by a custom, policy, or usage of the municipality. Likewise, plaintiff must specifically identify any individual law enforcement officer he is alleging violated his constitutional rights. If plaintiff chooses to amend his complaint, he must also specifically set forth the personal involvement of each named defendant relative to the conduct alleged to have violated his constitutional rights.

If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint must be a ***complete and separate pleading***. Plaintiff must state all of his claims in the new pleading and may not incorporate by reference any part of his original complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, [1] and it is

**RECOMMENDED**, that this action be **DISMISSED WITH PREJUDICE** as against named defendants **UTICA POLICE DEPARTMENT, JUDGE MICHAEL L. DWYER, ONEIDA COUNTY COURTS a/k/a/ ONEIDA COUNTY COURTS AND OFFICIALS, and DISTRICT ATTORNEY SCOTT McNAMARA**, and it is

**RECOMMENDED**, that plaintiff's complaint otherwise be **DISMISSED WITHOUT PREJUDICE,** and that, if the District Court adopts this recommendation, plaintiff be given forty-five (45) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERSEDE THE ORIGINAL**, and that plaintiff must include all remaining facts and causes of action in the amended complaint. No facts or claims from the original complaint may be incorporated by reference, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff does not elect to amend his complaint within the imposed deadline, the case be dismissed in its entirety, with prejudice, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned to me for review of the amended complaint and any orders relating to service on the defendants, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to ⚑28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** ⚑*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing ⚑*Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); ⚑28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2023 WL 4935993

## Footnotes

1    Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

---

**End of Document**                                             © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4931609
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brandon T. MCNAIR, Plaintiff,

v.

UTICA POLICE DEPARTMENT et al., Defendants.

6:23-CV-699
|
Signed August 1, 2023

**Attorneys and Law Firms**

BRANDON T. MCNAIR, Plaintiff, Pro Se, 421 Margaret Street, Herkimer, NY 13350.

**ORDER ON REPORT & RECOMMENDATION**

DAVID N. HURD, United States District Judge

**\*1** On June 12, 2023, *pro se* plaintiff Brandon T. McNair ("plaintiff") filed this 📁 42 U.S.C. § 1983 action alleging that various defendants violated his civil rights. Dkt. No. 1. Along with his complaint, plaintiff also sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On June 26, 2023, U.S. Magistrate Judge Andrew T. Baxter granted plaintiff's IFP application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with partial leave to amend. Dkt. No. 4. As Judge Baxter explained, plaintiff's claims against defendants Utica Police Department, Judge Michael L. Dwyer, Oneida County Courts, and District Attorney Scott McNamara must be dismissed with prejudice because those defendants were shielded from plaintiff's claims by various immunity doctrines. *Id.* However, Judge Baxter concluded that plaintiff might still be able to assert a viable claim, or perhaps claims, for "alleged constitutional violations surrounding his

detention, arrest, and subsequent criminal prosecution as set forth in his complaint, against the appropriate defendants." *Id.*

Plaintiff has not filed objections. The time period in which to do so has expired. *See* Dkt. No. 4. Upon review for clear error, the R&R is accepted and will be adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with prejudice against defendants Utica Police Department, Judge Michael L. Dwyer, Oneida County Courts a/k/a Oneida County Courts and Officials, and District Attorney Scott McNamara;

3. Plaintiff's complaint is otherwise DISMISSED without prejudice;

4. Plaintiff shall have forty-five days in which to file an amended complaint that conforms with the instructions set forth in Judge Baxter's June 26, 2023 Report & Recommendation;

5. If plaintiff files an amended complaint within this forty-five-day period, the matter shall be REFERRED to Judge Baxter for further review and any other action as appropriate; and

6. If plaintiff does not file an amended complaint within this forty-five-day period, the Clerk of the Court is directed to close this action without further Order of this Court.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 4931609

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising their discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

Case 5:22-cv-01011-BKS-ML Document 30 Filed 09/20/23 Page 141 of 154

Brown v. Peters, Not Reported in F.Supp. (1997)

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss— the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

 **\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 143 of 154

Brown v. Peters, Not Reported in F.Supp. (1997)

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 144 of 154

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), 🚩*Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." 🚩*Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable 🚩§ 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. 🚩*Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); 🚩*Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (🚩section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under 🚩§ 1983. 🚩*Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under 🚩§ 1983. 🚩*Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 145 of 154

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

1995 WL 316935
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of
Minnesota and Olmested County Court Systeam, and
State of Minnesota, Saint Peter State Hospital, Doctor
Gammel Stephelton, et el Erickson, North West Bank
and Trust, Olmested County Social Service, J.C. Penny
Insurnce, Metmore Finicial, Traveler Insurnce, Comecial
Union Insurnce, Hirman Insurnce, Amrican State
Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi
Insurnce, Steven Youngquist, Kent Chirstain, Micheal
Benson, United Airline, Kowate Airline, Fordmotor
Cridite, First Bank Rochester, George Restwich,
British Airways, Western Union, Prudenial Insurnce,
T.C.F. Bank, Judge Sandy Kieth, Judge Niergari,
Olmestead County Judgering, Judge Mores, Judge
Jacobson, Judge Challien, Judge Collin, Judge Thomase,
Judge Buttler, Judge Morke, Judge Moweer, Sera
Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.
|
May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn.,
St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel,
for Hubert H. Humphry, III, Judicial System of the State
of Minnesota, St. Peter Regional Treatment Center, Gerald
Gammell, MD, William Erickson, MD, Thomas Stapleton,
MD, the Honorable James L. Mork, Chief Judge Anne
Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge
Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon,
Michael J. Holland, of counsel, for British Airways, P.L.C.
and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths,
of counsel, for Olmsted County, Raymond Schmitz, Susan
Mundahl, Norwest Bank Minnesota, N.A. (the Northwest
Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A.,
Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for
J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of
counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert
J. Smith, of counsel, for Travelers Ins. Companies; Hirman
Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas
N. Kaufmann, of counsel, for American States Ins. Co. and
Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F.
Larkin, Asst. U. S. Atty., of counsel, for Michael Benson,
Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F.
Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P, Watertown, NY,
George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

**\*1** In the four and one-half months since she filed this
action, plaintiff Mina Pourzandvakil has filed three amended
complaints and ten motions. She also has sought and received
entry of default against ten defendants, none of whom she
properly served. She twice has sought and been denied
temporary restraining orders. She has included in her action
defendants with no apparent connection to this forum, that
were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of
defendants have filed a total of twelve motions, some seeking
vacation of the defaults entered against them, some seeking
dismissal and others seeking both. We grant defendants'
motions insofar as they seek vacation of the clerk's entries of
default and dismissal of the complaint. We vacate *sua sponte*

Case 5:22-cv-01011-BKS-ML   Document 30   Filed 09/20/23   Page 147 of 154

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy

easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*)[2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper[3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3**  Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against

them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults
We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 149 of 154

Pourzandvakil v. Humphry, Not Reported in F.Supp. (1995)

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

 **\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party.

⚐ *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

 **\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a).

Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

### C. Venue
Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 151 of 154

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

transfer this case to another district. The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

 **\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She

also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F. 2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil*

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 152 of 154

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

*v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics. [9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (*per curiam*) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740 (1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied.

Case 5:22-cv-01011-BKS-ML    Document 30    Filed 09/20/23    Page 153 of 154

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

## Footnotes

1    Names in the caption are spelled to reflect plaintiff's complaint.

2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4    The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5    The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

Case 5:22-cv-01011-BKS-ML     Document 30     Filed 09/20/23     Page 154 of 154

affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under ⚑ 28 U.S.C. § 1332.

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.