**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

PATRICK M. BOOTH,

           Plaintiff,

    -v-                                            5:22-CV-1011 (AJB/ML)

DUSTIN C. SHAWCROSS and
PEARCE A. PARSONS,

           Defendants.

---

**APPEARANCES:**                                      **OF COUNSEL:**

PATRICK M. BOOTH
Plaintiff, Pro Se
Jefferson County Jail
753 Waterman Drive
Watertown, NY 13601

BOND, SCHOENECK & KING, PLLC          JONATHAN B. FELLOWS, ESQ.
Attorneys for Defendants
One Lincoln Center
Syracuse, NY 13202

**Hon. Anthony Brindisi, U.S. District Judge:**

## ORDER ON REPORT & RECOMMENDATION

On September 26, 2022, *pro se* plaintiff Patrick M. Booth ("plaintiff"), who was at that time detained at the Jefferson County Jail, filed this 42 U.S.C. § 1983 action alleging that several law enforcement officials employed by the City of Watertown had violated his civil rights. Dkt. No. 1. Along with his complaint, plaintiff also sought leave to proceed *in forma pauperis* ("IFP Application"), Dkt. Nos. 2, 3, 4, moved for the appointment of counsel, Dkt. No. 5, and asked the Court to "put liens" on certain defendants pending the outcome of this litigation, Dkt. No. 6.

The case was assigned to Chief U.S. District Judge Brenda K. Sannes, who referred the matter to U.S. Magistrate Judge Miroslav Lovric. On February 7, 2023, Judge Lovric denied plaintiff's IFP Application without prejudice because it failed to "reflect his current [ ] financial condition." Dkt. No. 8. At that time, Judge Lovric gave plaintiff thirty days in which to pay the filing fee or to submit a renewed IFP Application that accurately reflected his current financial information. *Id*. In addition, Judge Lovric cautioned plaintiff that "[f]ailure to comply with this directive will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed." *Id*.

Because plaintiff represented to the Court that he had recently been transferred to the Elmira Correctional Facility, Dkt. No. 7, the Clerk mailed Judge Lovric's order to that address and, out of an abundance of caution, to a second address in Dexter, New York that plaintiff had identified in a cover letter submitted with his complaint, Dkt. No. 8. Notably, only the copy of Judge Lovric's order mailed to the Elmira address was returned as undeliverable. Dkt. No. 9.

Even so, the thirty-day deadline imposed in that order passed without any communication from plaintiff. Thus, on March 14, 2023, Judge Lovric followed through with his plan: he denied plaintiff's motions for counsel and for liens and advised by Report & Recommendation ("R&R") that plaintiff's complaint should be dismissed without prejudice. Dkt. No. 10. Unlike the first order, though, and for reasons unclear from the record, this R&R was mailed *only* to plaintiff's most recent address on file with the Court; *i.e.*, at the Elmira Correctional Facility. *See id*. As before, the order mailed to that address was soon returned as undeliverable. Dkt. No. 11.

Almost another full month passed without any communication from plaintiff. On April 3, 2023, a Clerk's Office staff member conducted a periodic review of the docket, determined that plaintiff had been released from the Elmira Correctional Facility, and updated the Court's

docket to reflect that plaintiff's most likely current mailing address would be the one in Dexter, New York that he had identified in the cover letter of his complaint. Later that day, in light of plaintiff's *pro se* status and due to the fact that the other mailing had returned undelivered, Chief Judge Sannes directed the Clerk of the Court to mail a copy of Judge Lovric's R&R to plaintiff's Dexter, New York address. Dkt. No. 13. At that time, Judge Sannes also *sua sponte* extended plaintiff's deadline for filing objections to this R&R by fourteen days; *i.e.*, to April 17, 2023. *Id*.

This fourteen-day deadline came and went without a word from plaintiff. Chief Judge Sannes waited nearly two more weeks but, faced with continued silence from plaintiff, on April 28, 2023, she adopted the R&R and dismissed plaintiff's complaint without prejudice. Dkt. No. 13. The Clerk of the Court entered a judgment and the case was closed.[1] Dkt. No. 14.

About two weeks later, plaintiff filed a notice of change of address. Dkt. No. 15. There, plaintiff stated that he was currently incarcerated as a "sentenced inmate" at the Jefferson County Jail and indicated that he planned to pay the filing fee "in a week or so." *Id*. This prompted the Clerk of the Court to mail to plaintiff updated copies of the docket, Chief Judge Sannes's Order, and the judgment of dismissal. *Id*. Within a few days, plaintiff moved for reconsideration, Dkt. No. 16, filed a notice of appeal, Dkt. No. 17, and sought leave to "renew or refile" his dismissed pleading, Dkt. No. 20.[2]

On May 23, 2023, Chief Judge Sannes determined that "it appears that Plaintiff's re-incarceration or transfer to a different facility prevented him from notifying the Court of his change in address and from responding to prior orders directing payment of the filing fee or filing an IFP application." Dkt. No. 22. Accordingly, Chief Judge Sannes granted plaintiff's

---

[1] The order and the judgment, which were served by regular and certified mail to the Dexter, New York address, were eventually received by a family member acting on plaintiff's behalf. *See* Dkt. No. 19.

[2] Plaintiff's letter mentioned that he had initiated a second action, which is docketed at 9:22-CV-1010 (LEK/CFH).

motion for reconsideration, directed the Clerk of the Court to reopen the case, and gave plaintiff thirty more days in which to either pay the filing fee or to submit a proper IFP Application. *Id*.

Thereafter, plaintiff paid the filing fee, *see* Text Minute Entry at 6/5/23, and filed another notice of change of address indicating that he had been released from jail but could still receive mail at the Dexter, New York address. Dkt. No. 29. Thus, after months of procedural delay, the matter was finally referred to Judge Lovric for an initial review of the pleading. *See* Dkt. No. 22.

On September 20, 2023, Judge Lovric recommended by R&R that plaintiff's complaint be accepted for filing to the extent it asserted § 1983 Fourth Amendment claims against defendants Shawcross and Parsons. Dkt. No. 30. However, Judge Lovric recommended that plaintiff's other claims be dismissed with leave to replead. *Id*. Chief Judge Sannes adopted Judge Lovric's R&R over plaintiff's objections on November 15, 2023. Dkt. No. 32. After plaintiff filed two more notices of change of address, Dkt. Nos. 34, 46, and received assistance with service, Dkt. No. 40, defendants answered the pleading on April 17, 2024, Dkt. No. 47.

On June 18, 2024, almost two years after this action was initially filed, Judge Lovric was finally able to conduct an initial conference with the parties. Plaintiff, who was then being held at Mohawk Correctional Facility, appeared in person. There, Judge Lovric cautioned plaintiff:

> It's extremely important and not only important, but it's required under our local rules that you always maintain a correct mailing address with the Clerk of Court . . . . if [your] address changes, you must in writing, as soon as possible and no longer than 10 days after the change of address, in writing inform the Clerk of Course of your new address. Failure to do that can cause a number of things to happen. One, your case could be dismissed for failing to follow the local rules and it could also be dismissed for failure to prosecute your case because you most likely will not then get court orders and things of that nature and will miss deadlines and therefore you will have cause your case to come to a standstill. So that can lead to dismissal of the case. So I want to very strongly advise you and urge you to make sure that you keep your address current, whether you are incarcerated or not.

Text Minute Entry at 6/18/24 (FTR recording maintained in Court records). At that time, Judge Lovric emphasized to plaintiff that he should be in "very good communication" with defendants' counsel and needed to "exchange very good contact information" with him. Thereafter, Judge Lovric issued a pre-trial scheduling order, Dkt. No. 59, and sent the parties off to discovery, *see, e.g.*, Dkt. No. 62.

But the case was soon halted again. When plaintiff failed to file a status report that was due on September 12, *see* Dkt. No. 58, Judge Lovric issued an order directing plaintiff to file the missing report no later than October 2, 2024. Dkt. No. 65. In that order, Judge Lovric "advised and cautioned" plaintiff "that it is his responsibility to notify the Court and opposing counsel in writing of changes to address" and warned him that "[f]ailure to keep current his address with the Court may result in dismissal of this case." *Id*.

This order was mailed to plaintiff at the Mohawk Correctional Facility because it was the most recent address that he had left on file with the Court. Dkt. No. 55. But it was still returned as undeliverable. Dkt. No. 66. Over the next month, Judge Lovric issued a series of three more orders directing plaintiff to file the still-overdue status report. Dkt. Nos. 67, 69, 71. In each of these orders, Judge Lovric "advised and cautioned" plaintiff that "it is his responsibility to notify the Court and opposing counsel in writing of changes to address" and warned him that "[f]ailure to keep current his address with the Court may result in dismissal of this case." *Id*. This series of orders, which were mailed to the Mohawk Correctional Facility address left on file, were all returned undelivered, Dkt. Nos. 68, 70, 73.

On November 12, 2024, defendants filed a status report. Dkt. No. 72. There, defendants' counsel explained that he had noticed plaintiff's deposition for that date; *i.e.*, November 12, and that he had mailed the deposition notice to plaintiff's current address on file (at Mohawk) *and* to

a second address—the one in Dexter, New York—that plaintiff had given him at the June 18, 2024 conference with Judge Lovric. *Id*. Defendants' counsel asserted that plaintiff failed to appear for this deposition. *Id*. Further, counsel stated that plaintiff had not responded to his discovery disclosures or communicated with him since an August 20, 2024 letter that had been sent from the address at Mohawk Correctional Facility.[3] *Id*. In short, defendants' counsel was seeking guidance about what to do next to move this litigation forward. *See id*.

On November 25, 2024, nearly four months after plaintiff's last communication with the Court, and after learning that plaintiff had failed to communicate with opposing counsel for a similar span of time, Judge Lovric decided to act: he advised by R&R that plaintiff's complaint should be *sua sponte* dismissed under Rule 41(b). Dkt. No. 74. There, Judge Lovric recounted the same tortured procedural history set out *supra* and, after briefly considering the Rule 41(b) factors, concluded that a dismissal with prejudice was warranted. *See id*.

This order, which was sent to plaintiff's last address on file with the Court (at Mohawk), was returned as undeliverable a couple weeks later. Dkt. No. 75. Soon after, though, plaintiff filed a notice of change of address in which he explained that he had been arrested again. Dkt. No. 76. Plaintiff sought to update his mailing address to the Jefferson County Jail. *Id*. Plaintiff also sought the appointment of counsel. *Id*. Chief Judge Sannes denied the request for counsel but *sua sponte* extended the period of time in which plaintiff could file objections to the R&R advising that this case should be dismissed. Dkt. No. 77

Plaintiff has lodged timely objections. Dkt. No. 78. There, plaintiff claims that shortly after his release from Mohawk Correctional Facility, he mailed to the Court and to defendants a letter in which he updated his address to the Dexter, New York one that "the Court already had

---

[3] Notably, defendants' status report was also mailed to the Dexter, New York address. Dkt. No. 72.

on file." *Id*. Plaintiff contends that his mother's ongoing illness and scheduling conflicts with his state-court criminal matters precluded him from being more responsive. *Id*. According to plaintiff, he tried to contact defendants' counsel by telephone to reschedule his deposition but had not received a call back. *Id*.

In response, defendants' counsel avers that plaintiff was advised by Judge Lovric during the in-person conference on June 18, 2024 about the need to keep current his address on file with the Court. Fellows Decl. ¶ 4, Dkt. No. 79. Counsel asserts that neither he nor the Court received the mailing in which plaintiff claims to have updated his address. *Id*. ¶ 7. Importantly, though, defendants' counsel explains that "[i]n an attempt to move this case forward," he sent copies of several of Judge Lovric's undelivered orders to plaintiff at the Dexter, New York address: first on October 23, 2024, and again on November 5, 2024. Ex. A to Fellows Decl., Dkt. No. 79-1 (enclosing Dkt. Nos. 68, 69); Ex. B, Dkt. No. 79-2 (enclosing Dkt. No. 71).

Defendants' counsel attests that he also mailed plaintiff's deposition notice to the Dexter, New York, address on October 10, 2024. Ex. C, Dkt. No. 79-3. Although counsel acknowledges that he received one voicemail message from plaintiff that references rescheduling the November 12 deposition, he emphasizes that this message was received by his firm on November 13, 2024; *i.e.*, the day *after* the deposition was scheduled to take place. Fellows Decl. ¶ 13.

Further, while counsel concedes that he did not return plaintiff's November 13 message, he explains that in his view there was nothing left for them to discuss: "I had responded to all of his discovery demands, . . . Mr. Booth was ignoring numerous text orders from the Court, and ignoring my attempts to conduct his deposition . . . ." Fellows Decl. ¶ 16. Indeed, defendants argue that:

> What is missing from Mr. Booth's objection is any reasonable
> explanation for his failure to comply with repeated text orders of the

> Court over a period of months, and his ignoring the Court's directive that it is his responsibility to keep the Court informed of his address. He ignored not only the orders available on the public docket, but the letters I sent enclosing those orders by United States Mail to the Dexter, New York address.

Fellows Decl. ¶ 20. Further, to the extent plaintiff contends that he did not receive any of the mailings to the Dexter, New York address, defendants' counsel argues that "it is apparent that Mr. Booth <u>did</u> receive such correspondence because he referenced his scheduled deposition in the voice mail message he left with my Firm on November 13, 2024." *Id*. ¶ 21 (emphasis in original).

    The matter has recently been reassigned to this Court for a decision. Upon *de novo* review, plaintiff's objections must be overruled. Under Rule 41 of the Federal Rules of Civil Procedure, a trial court may dismiss an action "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." FED. R. CIV. P. 41(b); *Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006) (explaining that "these rules" includes the Federal Rules and a district's local rules of practice). Although the Rule itself speaks about a *defendant's* motion to dismiss, it is "unquestioned that Rule 41(b) also gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001).

    Of course, the outright dismissal of a plaintiff's case is a "harsh remedy to be utilized only in extreme situations," *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004), and courts should be particularly hesitant to dismiss a *pro se* litigant's action for simple procedural deficiencies, *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). Even so, the authority to dismiss a case when a litigant—*pro se* or not—has failed to prosecute it or to comply with a court's orders "is vital to the efficient administration of judicial affairs and provides meaningful

access for other prospective litigants to overcrowded courts." *Lyell Theatre Corp. v. Loews Corp.*, 683 F.3d 37, 42 (2d Cir. 1982).

To determine whether a dismissal (as opposed to a lesser sanction) is warranted, a trial court must weigh: "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal." *Lucas*, 84 F.3d at 535. As the Second Circuit has explained, "[n]o single factor is generally dispositive." *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (per curiam).

Judge Lovric applied this five-factor balancing test, determined that plaintiff's conduct warranted a sanction, and concluded that no lesser sanction than dismissal with prejudice would be effective. Dkt. No. 74. A *de novo* consideration of the procedural history of this matter leads the Court to the same exact conclusion: a reasonable application of the balancing test under these particular circumstances requires a dismissal with prejudice.

First, the duration of plaintiff's latest instance of non-compliance is significant. Although defendants' counsel's status report indicated that his last letter from plaintiff came on August 20, 2024, plaintiff's last letter to the Court dates back to July 15, 2024. *Compare* Dkt. No. 63, *with* Dkt. No. 72. Thus, as of November 25, 2024, the date on which Judge Lovric recommended dismissal, over four months had elapsed. In this circuit, delays measured in "months" are generally sufficient to support dismissal under this first factor. *Yadav v. Brookhaven Nat'l Lab'y*, 487 F. App'x 671, 673 (2d Cir. 2012) (summary order) (finding this factor satisfied with three-month delay); *Jean-Fils v. HSBC Bank USA*, 2024 WL 3927248, at *3 (E.D.N.Y. Aug. 23,

2024) (collecting cases finding delays closer to two months suffice); *Smith v. Dep't of Corr.*, 2021 WL 11646319, at *2 (S.D.N.Y. Aug. 13, 2021) (collecting cases finding four-month delays warranted dismissal).

Second, there is no question that plaintiff was on notice that his failure to comply would result in dismissal of this action. To be sure, the undelivered mailings that litter the docket make plain that he did not receive *every* warning notice issued by the Court. That is no excuse: courts in this circuit have repeatedly held that this factor does not depend on the actual receipt of the order. *Thorton v. Moroney*, 2014 WL 2805236, *2 (S.D.N.Y. June 20, 2014) ("[R]egardless of whether Plaintiff actually received notice that delay could result in dismissal, it remained his duty to diligently pursue this case and to inform [the Court] of any change of address.").

But even if it did, the existing record confirms that plaintiff received actual notice on multiple occasions about his obligation to keep his address current. For example, during the initial conference, Judge Lovric advised plaintiff of this obligation and emphasized the need for him to be in good communication with opposing counsel. Well before this meeting took place, the record demonstrates that plaintiff actually received several court orders informing him that his failure to keep his address on file with the Court up to date would result in dismissal.

For example, plaintiff received and responded to Chief Judge Sannes's Order dismissing this action without prejudice. *See* Dkt. No. 16 (seeking reconsideration). Plaintiff received and responded to Chief Judge Sannes's Order granting reconsideration and directing him to pay the filing fee. *See* Dkt. No. 27 (explaining status of the filing fee). In addition, plaintiff eventually received, and later responded to, Chief Judge Sannes's Order permitting some of his claims to proceed to discovery. *See* Dkt. No. 39 (enclosing documents for service). Each of these orders included cautionary language about the obligation to keep his address current. Notably, each of

these orders were also mailed to plaintiff's static, constant address in Dexter, New York.[4]  In short, plaintiff has received ample notice.

Third, a further delay would prejudice defendants.  This factor "turns on the degree to which the delay was lengthy and inexcusable."  *Drake*, 375 F.3d at 256.  Although the prejudice to defendants at this point might be relatively minimal, it is not non-existent: they have expended resources investigating plaintiff's claims, providing discovery material, and attempting to depose plaintiff, who failed to appear.  Where, as here, the plaintiff becomes unreachable for months at a time, courts are typically willing to presume at least some minimal degree of prejudice.  *See, e.g.*, *Caussade v. United States*, 293 F.R.D. 625, 630 (S.D.N.Y. 2013) (collecting cases).

Fourth, dismissal at this juncture would not violate plaintiff's interest in receiving a fair chance to be heard.  Although *pro se* litigants "should be granted special leniency regarding procedural matters," *LeSane*, 239 F.3d at 209, courts also have "a strong interest" in managing their civil dockets and "cannot wait indefinitely for [a *pro se* plaintiff] to turn his attention to [the] case."  *Pena v. Zazzle Inc.*, 587 F. Supp. 3d 109, 114 (S.D.N.Y. 2022); *Hibbert v. Apfel*, 2000 WL 977683, at *3 (S.D.N.Y. July 17, 2000) ("It is not the function of this Court to chase dilatory plaintiffs while other litigants in this district seek access to the courts.").  Notably, this factor only weakly favors dismissal in light of the fact that plaintiff is *pro se*, has been in and out of jail, and has been non-responsive as opposed to actively vexatious.  *Baptiste*, 768 F.3d at 218 (requiring evidence that plaintiff strained the docket in an "unusual way," such as with vexatious and burdensome filings).

Fifth, no lesser sanction than a dismissal with prejudice would be effective under these circumstances.  Where, as here, a *pro se* plaintiff's delay has not yet impacted the court's trial

---

[4] As noted *supra*, defendants' counsel also mailed several of Judge Lovric's recent orders directing compliance to this Dexter, New York address.  Dkt. Nos. 79-1, 79-2.

calendar, the appropriate sanction is typically just a dismissal *without* prejudice.  This approach statistically closes out a stalled case without definitively closing the door to the *pro se* litigant's claims.  *See, e.g.*, *Thrall v. Cent. N.Y. Reg'l Transp. Auth.*, 399 F. App'x 663, 666 (2d Cir. 2010) (summary order).

But that approach has already proven to be ineffective.  Chief Judge Sannes previously dismissed this action without prejudice after plaintiff failed to timely comply with her initial order.  Dkt. No. 13.  Notably, the underlying R&R and Chief Judge Sannes's initial order were both sent to the Dexter, New York address where plaintiff has repeatedly represented to the Court and to opposing counsel that he can receive mail.  Dkt. Nos. 12, 13.  Notably, even after plaintiff blew this initial deadline, Chief Judge Sannes ordered the matter reopened out of deference to plaintiff's *pro se* status and in light of his incarceration.  Dkt. No. 22.

Plaintiff attributes the most recent months' long delay to the difficulties associated with his incarceration.  The Court finds this excuse to be unpersuasive.  To be clear, the Court is not unsympathetic to plaintiff's *pro se* status, his family's health problems, or even to the obstacles imposed by incarceration.  But this District handles a large volume of prisoner litigation and this Court is well-familiar with the need to strike a fair balance between giving incarcerated litigants procedural leeway and the ever-present duty to keep cases moving forward in a timely manner.

Although filings and orders sometimes cross in the mail or need to be re-sent by the Clerk's Office when a litigant changes addresses or moves between facilities, the dockets in those cases do not look nearly as bad as this one.  That is especially so where, as here, plaintiff has repeatedly ignored the many orders that were mailed to an address wholly unaffected by his incarceration, such as the one in Dexter, New York.

In short, while confusion is sometimes unavoidable in the incarcerated *pro se* context, the record shows that plaintiff has long been on notice of what is required of him. Indeed, the record shows that plaintiff knows how to promptly update his address when he is paying attention to this lawsuit. *See, e.g.*, Dkt. Nos. 15, 29, 34, 46, 55, 76. Thus, even accounting for plaintiff's *pro se* incarcerated status, it is clear from this record that plaintiff has routinely neglected this case and repeatedly disregarded a host of court orders. In light of this pattern of conduct, the Court has no confidence at all that some lesser sanction would prove sufficient instead.

This procedural history aside, the Court agrees with defendants' counsel's bottom-line observation: that plaintiff's objection "provides no reason why he paid no attention to this case from the date of his release from the Mohawk Correctional Facility on September 5, 2024, until he was arrested on December 5, 2024, and filed a notice of change of address on December 19, 2024, advising that he was in the Jefferson County Jail." Fellows Decl. ¶ 23.

In sum, because plaintiff "has failed to explain his failure to prosecute this action during the months after his release on September 5, 2024," Fellows Decl. ¶ 24, and because the docket reflects a clear, almost unrelenting pattern of non-compliance with judicial attempts to keep this case moving forward at a reasonable pace, the appropriate remedy under these circumstances is a dismissal with prejudice. *See Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 665 (2d Cir. 1980). Accordingly, Judge Lovric's R&R is accepted and will be adopted.

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 74) is ACCEPTED; and

2. Plaintiff's complaint is DISMISSED with prejudice pursuant to Rule 41(b).

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

**IT IS SO ORDERED.**

Anthony J. Brindisi
U.S. District Judge

Dated: January 22, 2025
Utica, New York.